PILLSBURY WINTHROP SHAW PITTMAN LLP
PAUL J. FRAIDENBURGH (280354)
MICHELLE A. HERRERA (209842)
J. RYAN STASELL (307431)
ALEXANDER P. CARROLL (339890)
11682 El Camino Real, Suite 200
San Diego, CA 92130
Telephone:  858-509-4000; Facsimile: 858-509-4010
Email:  paul.fraidenburgh@pillsburylaw.com
        michelle.herrera@pillsburylaw.com
        ryan.stasell@pillsburylaw.com
        alexander.carroll@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
THOMAS C. HILL (DC 242974)
1200 Seventeenth Street, NW
Washington, DC  20036
Telephone:  202-663-8000; Facsimile: 202-663-8007
Email:  thomas.hill@pillsburylaw.com
(*Admitted Pro Hac Vice*)

Attorneys for Defendant MVM, Inc.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PADRE (*alias*) and JUNIOR (*alias*), *on behalf of themselves and all others similarly situated,*<br><br>                    Plaintiffs,<br><br>        vs.<br><br>MVM, INC.,<br><br>                    Defendant. | Case No. 3:24-cv-01265-DMS-AHG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MVM, INC.'S MOTION TO DISMISS UNDER RULES 12(b)(6) AND 12(b)(7)**<br><br>Date:        December 20, 2024<br>Time:        1:30 p.m.<br>Courtroom:  13A<br><br>Judge: Hon. Dana M. Sabraw<br>Complaint Filed:  July 23, 2024<br>Trial Date:  None Set |

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................ 1

II.   FACTUAL BACKGROUND ............................................... 2

    A.   MVM, Inc. is a Government Contractor that has Fulfilled Government Transportation Contracts Since at Least 2014. ...................2

    B.   The United States Creates and Implements a Strict Immigration Policy in 2017. ........................................................................3

    C.   Separated Family Members Initiate Numerous Lawsuits Against the United States Seeking both Equitable Relief and Damages. ............4

        1.   This Court Oversaw the Related Class-Action, *Ms. L. v. U.S. Immigration and Customs Enforcement.* ...........................5

        2.   Numerous other cases have been filed seeking damages under similar claims and have either been dismissed or settled. ......6

    D.   Plaintiffs Sue MVM for Merely Fulfilling its Duties Under Contracts with the United States that Implement the Government's Immigration Policy. ........................................7

        1.   Plaintiffs Allege the United States Separated Plaintiffs at the Border and MVM Transported Junior to an ORR Shelter Pursuant to its Contractual Obligations. ...........................7

        2.   Plaintiffs Take Issue with the Immigration Policy of the United States and its Government Agencies. ................................8

III.  LEGAL STANDARDS ...................................................... 10

IV.   ARGUMENT ...................................................................... 11

    A.   Plaintiffs' Claims Must Be Dismissed Because the United States Is a Required Party That Cannot Be Joined to This Action (F.R.C.P. 12(b)(7)). ...............................................................11

        1.   The United States Has a Strong and Preemptive Interest in Enforcing Federal Immigration Policy. .........................12

2.   Disposing of This Case Will Interfere with the Government's Interest in Federal Immigration Policy and Expose MVM to Inconsistent Obligations. ...............................15

B.   Plaintiffs' Claims Must Be Dismissed Because Each Is Barred by Derivative Sovereign Immunity (F.R.C.P. 12(b)(6))............................16

1.   The Government Would Be Immune from Suit if Plaintiffs Had Asserted Their Claims Against the United States...............17

    i.   Alien Tort Statute (Counts I – IV) ....................................17

    ii.   Federal Civil Rights Claims (Counts V – VI)..................18

    iii.   Child Abduction and IIED Claims (Counts VII – VIII)..............................................................................18

2.   MVM Performed the Contract and Followed the Express Direction of the United States Government. ...............................19

3.   MVM's Contract was Validly Conferred. ...................................20

C.   Plaintiffs' Alien Tort Statute Claims Must Be Dismissed for Failure to State a Claim (F.R.C.P. 12(b)(6))............................22

1.   Plaintiffs Fail to State a Claim for Enforced Disappearance Under the ATS...............................................................................23

2.   Plaintiffs Fail to State a Claim for Torture Under the ATS. .......24

D.   Plaintiffs' Civil Rights Conspiracy Claims Must Be Dismissed For Failure To State A Claim And Because They Are Time-Barred (F.R.C.P. 12(b)(6)). ....................................................25

1.   Plaintiffs Fail to State a Claim for Civil Rights Conspiracy or Failure to Prevent Civil Rights Conspiracy. .........................25

2.   Plaintiffs' Claims for Civil Rights Conspiracy and Failure to Prevent Civil Rights Conspiracy Are Time-Barred ...............29

E.   Plaintiffs' State Law Claims Must Be Dismissed For Failure to State a Claim Because They Are Time Barred By The Applicable Statute of Limitations (F.R.C.P. 12(b)(6))............................................33

1.   Plaintiffs' State Law Claims Are Time Barred ..........................34

ii

V.    CONCLUSION ............................................................................................... 35

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:24-cv-01265-DMS-AHG

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

<u>Cases</u>

4

5

*Adickes v. S. H. Kress & Co.*,
   398 U.S. 144 (1970) ...........................................................................26

6

*Arar v. Ashcroft*,
   532 F.3d 157 (2d Cir. 2008), *vacated and superseded on reh'g en banc on*
   *other grounds,* 585 F.3d 559 (2d Cir. 2009) ..........................................17

7

8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................10, 25, 28

9

10

*Backcountry Against Dumps v. United States Bureau of Indian Affairs*,
   2021 WL 3611049 (S.D. Cal. Aug. 6, 2021).........................................15

11

12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................10

13

14

*Bird v. Dep't of Hum. Servs.*,
   935 F.3d 738 (9th Cir. 2019)....................................................31, 32, 35

15

16

*Black v. City of San Diego*,
   No. 3:21-CV-1990-RBM-JLB, 2023 WL 2336894 (S.D. Cal. Mar. 2, 2023) ......29

17

18

*Block v. Neal*,
   460 U.S. 289 (1983) ...........................................................................19

19

20

*In re Border Infrastructure Environmental Litigation*,
   284 F.Supp.3d 1092 (S.D. Cal. 2018) ..................................................21

21

22

*Bowoto v. Chevron Corp.*,
   557 F. Supp. 2d 1080 (N.D. Cal. 2008)................................................24

23

24

*Bray v. Alexandria Women's Health Clinic*,
   506 U.S. 263 (1993) .....................................................................26, 28

25

26

*C.D.A. v. United States*,
   No. CV 21-469, 2023 WL 2666064 (E.D. Pa. Mar. 28, 2023) ...............25

27

28

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*,
   797 F.3d 720 (9th Cir. 2015) ..............................................................17

*Cachil Dehe Band of Wintun Indians of the Colusa Indian Community v. California,*
   547 F.3d 962 (9th Cir. 2008) ...................................................................13

*Caldeira v. County of Kauai,*
   866 F.2d 1175 ........................................................................................31

*Campbell-Ewald Co. v. Gomez,*
   577 U.S. 153 (2016) ........................................................................ *passim*

*Cantu v. Moody,*
   933 F.3d 414 (5th Cir. 2019) ...............................................................28

*Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara,*
   344 F.3d 822 (9th Cir. 2003) ...............................................................31

*Cherosky v. Henderson,*
   330 F.3d 1243 (9th Cir. 2003) .............................................................32

*Clover v. Camp Pendleton & Quantico Hous. LLC,*
   525 F. Supp. 3d 1140 (S.D. Cal. 2021) ..........................................17, 20

*F.A.A. v. Cooper,*
   566 U.S. 284 (2012) .............................................................................17

*Cowan v. Brown,*
   No. 3:14-CV-1886-GPC-WVG, 2014 WL 6621146 (S.D. Cal. Nov. 20, 2014) ........................................................................................................31

*D.J.C.V. v. United States,*
   605 F.Supp.3d 571 (2022) .....................................................................6

*D.J.C.V. v. United States,*
   No. 20 CIV. 5747 (PAE), 2022 WL 1912254 (S.D.N.Y. June 3, 2022)...............18

*Daniels-Hall v. Nat'l Educ. Ass'n,*
   629 F.3d 992 (9th Cir. 2010) ...............................................................10

*Dawavendewa v. Salt River Project Agr. Imp. And Power Dist.,*
   276 F.3d 1150 (9th Cir. 2002) .............................................................13

*Dep't of the Army v. Blue Fox, Inc.,*
   525 U.S. 255 (1999) .............................................................................17

*Deschutes River Alliance v. Portland Gen. Electric Co.*,
  1 F.4th 1153 (9th Cir. 2021) ...................................................................15

*Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*,
  932 F.3d 843 (9th Cir. 2019) ............................................................11, 12

*Doe I v. Cisco Sys., Inc.*,
  73 F.4th 700 (9th Cir. 2023) ...................................................................23

*Doe I v. Nestle USA, Inc.*,
  766 F.3d 1013 (9th Cir. 2014) .................................................................23

*Doe v. Qi*,
  349 F. Supp. 2d 1258 (N.D. Cal. 2004) ...................................................24

*East Bay Sanctuary Covenant v. Trump*,
  932 F.3d 742 (9th Cir. 2018) ...................................................................21

*Flores Benitez v. Miller, et al.*,
  687 F.Supp.3d 304 (2023) .................................................................6, 18

*Fonda v. Gray*,
  707 F.2d 435 (9th Cir. 1983) ...................................................................26

*Forti v. Suarez-Mason*,
  694 F. Supp. 707 (N.D. Cal. 1988) ....................................................23, 24

*Georgia Latino All. for Hum. Rts. v. Governor of Georgia*,
  691 F.3d 1250 (11th Cir. 2012) ...............................................................13

*Gerritsen v. Consulado Gen. De Mexico*,
  989 F.2d 340 (9th Cir. 1993) ...................................................................18

*Gilles v. Wineteer*,
  No. 3:19-CV-1492-GPC-BGS, 2019 WL 6037422 (S.D. Cal. Nov. 14, 2019) ......................................................................................................27

*Goldstar (Pan.) S.A. v. United States*,
  967 F.2d 965 (4th Cir. 1992) ...................................................................18

*Harris v. Cnty. of San Diego*,
  No. 18-CV-924-BTM-AHG, 2019 WL 6683367 (S.D. Cal. Dec. 5, 2019)..........30

*Hercules, Inc. v. United States*,
    516 U.S. 417 (1996) ............................................................................17

*Hernandez v. United States*,
    757 F.3d 249 (5th Cir. 2014), *adhered to in relevant part on reh'g en banc,*
    785 F.3d 117 (5th Cir. 2015) ..............................................................18

*House v. Dagnan*,
    No. 517CV01085DSFSK, 2017 WL 11599157 (C.D. Cal. Dec. 27, 2017) .........28

*Jachetta v. United States*,
    653 F.3d 898 (9th Cir. 2011) ..............................................................18

*Jean v. Nelson*,
    711 F.2d 1455 (11th Cir. 1983) ...........................................................21

*Karim-Panahi v. Los Angeles Police Dep't*,
    839 F.2d 621 (9th Cir. 1988) .................................................18, 27, 29

*Khulumani v. Barclay Nat'l Bank Ltd.*,
    504 F.3d 254 (2d Cir.2007) (Katzmann, J., concurring) ......................23

*Kiobel v. Royal Dutch Petroleum Co.*,
    569 U.S. 108 (2013) ............................................................................22

*Lacey v. Maricopa Cty.*,
    693 F.3d 896 (9th Cir. 2012) ..............................................................27

*Lane v. Pena*,
    518 U.S. 187 (1996) ............................................................................17

*Loc United Bhd. of Carpenters & Joiners of Am.. 610, AFL-CIO v. Scott*,
    463 U.S. 825 (1983) ............................................................................27

*Lozano v. City of Hazleton*,
    724 F.3d 297 (3rd Cir. 2013)..............................................................13

*McClain v. SBC Sheriff Dep't*,
    No. EDCV171178CJCJCG, 2018 WL 6118516 (C.D. Cal. Jan. 24, 2018).........33

*McDougal v. Cnty. of Imperial*,
    942 F.2d 668 (9th Cir. 1991) ..............................................................29

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:24-cv-01265-DMS-AHG

*Molett v. AMR Corp Am. Airlines*,
    No. CV 21-8057 MCS (PVC), 2021 WL 6499934 (C.D. Cal. Dec. 10,
    2021) .......................................................................................................27

*Ms. L. v. U.S. Immigr. & Customs Enf't*,
    415 F. Supp. 3d 980 (S.D. Cal. 2020) ............................................5, 6

*Ms. L. v. U.S Immigr. & Customs Enf't ("ICE")*,
    310 F. Supp. 3d 1133 (S.D. Cal. 2018), modified, 330 F.R.D. 284 (S.D.
    Cal. 2019) .................................................................................. *passim*

*Mykles v. State Comp. Ins. Fund*,
    No. 18-CV-2675-WQH-LL, 2019 WL 13268109 (S.D. Cal. May 20, 2019).......30

*Nat'l Mech. Servs., Inc. v. Kinsale Ins. Co.*,
    620 F. Supp. 3d 1096 (S.D. Cal. 2022) ...............................................10

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002) ........................................................................31, 32

*United States v. Neustadt*,
    366 U.S. 696 (1961) ...............................................................................19

*O'Handley v. Padilla*,
    579 F. Supp. 3d 1163 (N.D. Cal. 2022)........................................26, 28

*O'Handley v. Weber*,
    62 F.4th 1145 (9th Cir. 2023), cert. denied, No. 22-1199, 2024 WL
    3259696 (U.S. July 2, 2024)..................................................................26

*Republic of Philippines v. Pimentel*,
    553 U.S. 851 (2008) ........................................................................11, 16

*Risk v. Kingdom of Norway*,
    707 F. Supp. 1159 (N.D. Cal. 1989), *aff'd sub nom. Risk v. Halvorsen*, 936
    F.2d 393 (9th Cir. 1991) ........................................................................34

*Rudley v. Tobias*,
    190 P.2d 984 (Cal. Ct. App. 1948).......................................................33

*Sanchez v. City of Santa Ana*,
    936 F.2d 1027 (9th Cir. 1990) .......................................................27, 29

*Sanchez-Espinoza v. Reagan*,
   770 F.2d 202 (D.C. Cir. 1985) ............................................................................. 18

*Sekerke v. Hoodenpyle*,
   No. 19CV00035WQHJLB, 2021 WL 148075 (S.D. Cal. Jan. 15, 2021),
   report and recommendation adopted, No. 19-CV-35-WQH-JLB, 2021 WL
   973565 (S.D. Cal. Mar. 16, 2021) ........................................................................ 29

*Sever v. Alaska Pulp Corp.*,
   978 F.2d 1529 (9th Cir. 1992) .................................................................. 26, 27, 28

*Sheehan v. United States*,
   896 F.2d 1168 (9th Cir.), amended, 917 F.2d 424 (9th Cir. 1990) ...................... 19

*Shermoen v. U.S.*,
   982 F.2d 1312 (9th Cir. 1992) ............................................................................. 16

*Sosa v. Alvarez-Machain*,
   542 U.S. 692 (2004) ...................................................................................... 22, 23

*United States v. South Carolina*,
   720 F.3d 518 (4th Cir. 2013) ............................................................................... 13

*Spencer Enterprises, Inc. v. U.S.*,
   229 F.Supp.2d 1025 (E.D.Cal. 2001) .................................................................. 21

*Tobar v. United States*,
   639 F.3d 1191 (9th Cir. 2011) ............................................................................. 17

*TwoRivers v. Lewis*,
   174 F.3d 987 (9th Cir. 1999) ......................................................................... 29, 30

*United Steelworks of Am. v. Phelps Dodge*,
   865 F.2d 1539 (9th Cir. 1989) ............................................................................. 27

*Valle del Sol Inc. v. Whiting*,
   732 F.3d 1006 (9th Cir. 2013) ............................................................................. 13

*Ward v. Valadez*,
   No. 19CV1267-LAB (WVG), 2020 WL 1026847 (S.D. Cal. Mar. 2, 2020) ........ 29

*Wassmann v. South Orange County Community College District*,
   24 Cal.App.5th 825 (2018) .................................................................................. 34

ix

*Western Watersheds Project v. Haaland*,
    22 F.4th 828 (9th Cir. 2022)................................................................14

*Wilson v. Wilson*,
    No. 20-CV-01076-JD, 2020 WL 4590281 (N.D. Cal. May 12, 2020) ...............33

*Yau v. Santa Margarita Ford, Inc.*,
    229 Cal. App. 4th 144 (2014)...............................................................34

*Yearsley v. W.A. Ross Constr. Co.*,
    309 U.S. 18 (1940) ...............................................................16, 19, 22

Constitutions

United States Constitution
    Article I.....................................................................................20
    Article II....................................................................................20

Statutes and Codes

United States Code
    Title 6, Section 101.........................................................................21
    Title 6, Section 202.........................................................................21
    Title 6, Section 251.........................................................................21
    Title 8, Section 236.3(f)....................................................................21
    Title 8, Section 1103(a)(1)..................................................................21
    Title 8, Section 1325..........................................................................3
    Title 8, Section 1326..........................................................................3
    Title 28, Section 1350..................................................................17, 22
    Title 28, Section 2680........................................................................18
    Title 28, Section 2680(h)....................................................................19
    Title 42, Section 1983.........................................................28, 29, 31
    Title 42, Section 1985.................................................................. *passim*
    Title 42, Section 1985(3)................................................................ *passim*
    Title 42, Section 1986................................................... 18, 19, 29, 30

California Civil Code
    Section 49...................................................................................33
    Section 49(a)............................................................ 18, 19, 33, 34

California Code of Civil Procedures
    Section 335.1 ..........................................................................29, 34
    Section 352 ...................................................................................30

## Rules and Regulations

Code of Federal Regulations
    Title 5, Section 4601.102.................................................................................21
    Title 8, Section 1208.18(a)(3) ......................................................................24

Federal Register
    Vol. 84, page 44,392 (Aug. 23, 2019) .....................................................22

Federal Rules of Civil Procedure
    Rule 12(b)(6) ............................................................................... *passim*
    Rule 12(b)(7) ............................................................................... *passim*
    Rule 19...........................................................................................10, 11
    Rule 19(a)(1).................................................................................11, 12
    Rule 19(a)(2)......................................................................................11
    Rule 19(b) ............................................................................................1

Local Rules
    Rule 40.1(g) ........................................................................................9

## Other Authorities

CRS Report No R43599 .......................................................................21

Kandel, William A. (2024, September 5). Unaccompanied Alien Children: An
    Overview. https://crsreports.congress.gov/product/pdf/R/R43599....................21

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case is essentially the damages phase of the "*Ms. L.* Litigation," *Ms. L. v. U.S. Immigration and Customs Enforcement* case, Case No. 3:18-cv-000428-DMS-AHG, with one critical component missing: the United States has not been joined as a party. The United States has not been joined because the United States is entitled to sovereign immunity against this suit for damages. Under Rule 19(b) of the Federal Rules of Civil Procedure, this case must be dismissed because the United States is a required party that cannot be joined. Likewise, the Court should dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim for relief.

Plaintiffs seek to hold MVM liable for the federal government's 2017-2018 policy of separating families at the border. Plaintiffs admit this case "arises from the same events and involves substantially overlapping parties, facts, and questions of law," as the *Ms. L. Litigation* (ECF No. 3), that "both class actions arise from the same or substantially identical events," (*Id.*) that "[b]oth *Ms. L.* and this case arise from the U.S. government's family separation policy that began in 2017," (*Id.*, 3:27-4:1), that the "policy was carried out jointly by the defendants in both cases: MVM – the defendant in this case – was the transport contractor of U.S. Immigration and Customs Enforcement – the primary *Ms. L.* defendant," (*Id.*, 4:4-6), and that "this case calls for determination of the same or substantially identical questions of law as *Ms. L.* . . . the legality and constitutionality of the separation of families under the same policy." *Id.* 4:21-23.  The United States is actively participating in the Related Case.

MVM has openly denounced the Family Separation Policy and has publicly expressed and continuously reaffirmed its tremendous empathy for the families and children arriving at the U.S. border. Since the United States would be immune from this suit for damages, MVM is entitled to derivative sovereign immunity and cannot be forced to defend "the legality and constitutionality of the separation of families" under the federal government's policy. Simply put, this was not MVM's policy.

The federal government has a strong interest in the subject matter of this case and has taken responsibility for the Trump Administration's Family Separation Policy by settling its claims with an identical class of plaintiffs in the *Ms. L. Litigation*. Plaintiffs now seek to certify the exact same class in this case, and to seek relief that overlaps with the *Ms. L.* settlement currently being overseen by the Department of Justice. *See, e.g.,* Complaint ¶ 243.f. (seeking a judgment against MVM for "Equitable relief in the form of a rehabilitation fund to provide for mental health, education, child development, and other services for the benefit of Class Members").

MVM had no role in establishing the Family Separation Policy, it is not an arm of the federal government, it acted solely pursuant to its contracts with the DHS, and it bears no responsibility for any failure by the government to reunite families as required by the 2018 preliminary injunction in the *Ms. L* litigation. In fact, MVM has *helped* to reunite families through its very limited role: providing transportation services to the federal government.

Plaintiffs' claims are subject to numerous defenses and this case should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7).

## II.    FACTUAL BACKGROUND

### A.    MVM, Inc. is a Government Contractor that has Fulfilled Government Transportation Contracts Since at Least 2014.

MVM is a private government contractor that provides the United States, the Department of Homeland Security, and Immigration and Customs Enforcement with transportation services through validly issued government contracts. Complaint, ¶¶ 7, 28, 62. MVM was formed in 1979 by three former U.S. Secret Service agents. *Id.* Since at least 2014, MVM has had the exclusive contract with ICE to transport "unaccompanied minors," *i.e.*, "UACs," from DHS custody to the Office of Refugee Resettlement ("ORR"). *Id.*, ¶ 62. While transporting children in the custody of the federal government, MVM was required to "comply with federal laws and regulations, as well as applicable DHA guidance, polices, and procedures." *Id.*, ¶¶ 7, 67.

### B. The United States Creates and Implements a Strict Immigration Policy in 2017.

Plaintiffs allege that "[b]etween 2017 and 2021, the U.S. government unlawfully separated more than 4,500 migrant children from their parents at the southern border." *Id.*, p. 1. This federal practice started in January 2017, when President Donald Trump was inaugurated as the President of the United States. *Id.* Nearly immediately, the Trump Administration "began preparing plans to deter immigration to the United States by forcibly removing children from their parents at the southern border." (the "Family Separation Policy") *Id.*, ¶ 30.

Stephen Miller, Trump's Senior Policy Advisor, was the "architect" of the Family Separation Policy. *Id.*, ¶ 31. In early 2017, Attorney General Jeff "Sessions, Miller, and other U.S. officials created and implemented" the Family Separation Policy, which they designed to slow immigration. *Id.*, ¶¶ 35, 60. Miller made the Family Separation Policy a "centerpiece of the Administration's agenda." *Id.*, ¶ 36.

In March 2017, the Trump Administration began enforcing the Family Separation Policy. *Id.*, ¶ 41. The Family Separation Policy was enforced by the United States through either administrative separation or pursuant to criminal prosecution. *Id.*, ¶ 42, 44. Border Patrol agents would intercept families crossing the border between ports of entry and would refer the adults to be prosecuted for unlawful entry under 8 U.S.C. § 1325 or re-entry under 8 U.S.C. § 1326. *Id.*, ¶ 44.

In early 2018, "Miller and other administration officials" pushed for the Family Separation Policy to become "formal DHS and DOJ policy." *Id.*, ¶ 47. The Family Separation Policy was formally announced on April 6, 2018, when Attorney General Sessions issued a formal memorandum explaining the United States' "zero tolerance policy for all offenses referred for prosecution under section 1325(a)." *Id.*, ¶ 48. This governmental policy is referred to as the "Zero Tolerance Policy." *Id.*

On April 6, 2018, President Trump issued a "Presidential memorandum," which "ordered the detention of all migrants apprehended between ports of entry." *Id.* On

April 2018, DHS leadership prepared a decisional memorandum which proposed "increased prosecution . . . of all adults who cross illegally, whether they present as a single adult or in family units." *Id.*, ¶ 50. This memorandum was signed by Secretary Nielson on May 4, 2018. *Id.*, ¶ 53.

On May 7, 2018, Attorney General Sessions and ICE Director Tom Homan announced at a press conference that the Family Separation Policy was going into effect nationwide. *Id.* Attorney General Sessions gave clear instructions to the DOJ regarding the Zero Tolerance Policy. *Id.*, ¶ 58. He instructed there was "no 'discretion to decline prosecution based upon unique case-specific circumstances.'" *Id.*

As required by its government contract, MVM had a duty to work with DHS to implement the Government's Family Separation Policy as the Transport Contractor. *Id.*, ¶¶ 77, 81. In this role, "[a]fter the initial separation, MVM transported children to ORR-operated shelters around the country." *Id.*, ¶ 80. After DHS completed its administrative processing, "DHS then transferred the children to MVM" for transportation. *Id.*, ¶ 88. Plaintiffs allege that MVM was the United States Government's "tool" and was a "co-conspirator and accomplice" to Customs and Border Patrol and Immigration and Customs Enforcement. *Id.*, ¶¶ 6, 7, 79.

### C. Separated Family Members Initiate Numerous Lawsuits Against the United States Seeking both Equitable Relief and Damages.

The instant lawsuit is not the first time those impacted by the United States' Family Separation Policy have sought to recover damages. This Court has overseen a separate class action in the *Ms. L. v. U.S. Immigration and Customs Enforcement* case, Case No. 3:18-cv-000428-DMS-AHG (the "*Ms. L* Litigation"), in which an identical class of plaintiffs sought declaratory and injunctive relief aimed at halting the Family Separation Policy. Additionally, at least forty-four cases have been filed and settled against the United States and its agents seeking monetary damages caused by the Family Separation Policy. See Request for Judicial Notice ("RJN"), Ex. 10-53.

### 1.    This Court Oversaw the Related Class-Action, *Ms. L. v. U.S. Immigration and Customs Enforcement.*

In February 2018, the *Ms. L* Litigation was filed. Complaint, ¶ 115. Plaintiffs here allege they are members of the *Ms. L.* class and bring the instant lawsuit against MVM on behalf of all similarly situated members of the *Ms. L.* class against MVM seeking monetary damages and the establishment of an equitable rehabilitation fund. *Id.*, ¶ 19. After the *Ms. L.* Litigation was initially filed, the *Ms. L.* plaintiffs expanded the case into a "nationwide class action seeking to enjoin the practice of separating families as a violation of the Fifth Amendment Due Process Clause." *Id.*

On June 20, 2018, after the *Ms. L.* Litigation was initiated, President Trump signed an Executive Order requiring the preservation of the family unit by "keeping migrant families together during criminal and immigration proceedings to the extent permitted by law, while also maintaining 'rigorous[]' enforcement of immigration laws." *Ms. L. v. U.S Immigr. & Customs Enf't ("ICE")*, 310 F. Supp. 3d 1133, 1136 (S.D. Cal. 2018), modified, 330 F.R.D. 284 (S.D. Cal. 2019).

The *Ms. L.* plaintiffs sought "injunctive relief to prohibit separation of class members from children in the future absent a finding the parent is unfit or presents a danger to the child, and to require reunification of these families once the parent is returned to immigration custody unless the parent is determined to be unfit or presents a danger to the child." *Id.* at 1137. This Court granted the preliminary injunction in the *Ms. L.* case on June 26, 2018. Complaint, ¶ 116. In granting the injunction, the Court noted the *Ms. L.* plaintiffs "leveled the serious accusation that our Government was engaged in a widespread practice of separating migrant families," a practice which became a "national policy." *Ms. L. v. U.S Immigr. & Customs Enf't ("ICE")*, 310 F. Supp. 3d 1133, 1136 (S.D. Cal. 2018), modified, 330 F.R.D. 284 (S.D. Cal. 2019).

After this Court issued the June 26, 2018 preliminary injunction, the Ms. *L.* plaintiffs brought a motion to enforce the injunction. *Ms. L. v. U.S. Immigr. & Customs Enf't*, 415 F. Supp. 3d 980, 983 (S.D. Cal. 2020) (the "Enforcement Order"). In the

5

January 13, 2020, Enforcement Order, the Court noted that the "day after this Court issued its preliminary injunction" the *Ms. L.* Defendants (i.e. the federal government) "implemented new guidelines and procedures in an attempt to comply with" the preliminary injunction. *Id.* Following a review of the evidence presented, the Court found the United States "abandoned the zero tolerance policy in favor of a policy to maintain family unity, and [the *Ms. L.*] Defendants have implemented policies and procedures that are largely consistent with this Court's orders prohibiting family separation in the absence of the factors discussed above." *Id.* In short, by June 27, 2018, the federal government had halted these practices, yet Plaintiffs here allege damages continued from March 7, 2017 to January 1, 2021. Complaint, ¶ 75.

The *Ms. L.* Litigation resulted in a class action settlement that was approved by the Court. *See* RJN, Ex. 1-2. The settlement provided various forms of relief, including reunification assistance, behavior health services, assistance with certain medical costs, immigration legal services, and housing assistance. RJN, Ex. 1, p. 21-25.

### 2. Numerous other cases have been filed seeking damages under similar claims and have either been dismissed or settled.

At least forty-four other cases have been filed directly against the United States and its various agents seeking damages under similar claims based on injuries caused by the Family Separation Policy. See RJN Ex. 10-53. Several of these cases asserted violations of the Alien Tort Statute ("ATS"), which were ultimately dismissed. For example, the United States District Court for the Southern District of New York in the case of *D.J.C.V. v. United States*, 605 F.Supp.3d 571, 609 (2022) found that plaintiff's claims brought under the Alien Tort Statute were barred by sovereign immunity. The court held "Bedrock principles of sovereign immunity require an express waiver" in order for a plaintiff to pursue ATS claims against the government. *Id.* Because there is no waiver in the ATS, the plaintiff's claims were barred. *Id.* Ultimately, the United States settled the remaining claims in the *D.J.C.V.* case for $65,000. RJN Ex. 3.

Similarly, in the case of *Flores Benitez v. Miller, et al.*, 687 F.Supp.3d 304, 325-

6

26 (2023), the United Stated District Court for the District of Connecticut found the
plaintiff's claims brought pursuant to the Alien Tort Statute should be dismissed
because they were barred by sovereign immunity because there has been no waiver.
The claims that were not dismissed at the pleading stage proceeded against the
Government and were also ultimately settled.

### D. Plaintiffs Sue MVM for Merely Fulfilling its Duties Under Contracts with the United States that Implement the Government's Immigration Policy.

Plaintiffs Padres and Junior (aliases), brought the instant lawsuit against MVM
for "committing, conspiring to commit, and aiding and abetting violations of safe
conduct, torture, enforced disappearance, and cruel, inhuman, and degrading treatment
under the Alien Tort Statute;" "conspiring to deprive Plaintiffs and the Class of
constitutional rights under the Civil Rights Acts of 1872;" and "for common-law child
abduction an intentional infliction of emotional distress." Complaint, p. 1-2.

#### 1. Plaintiffs Allege the United States Separated Plaintiffs at the Border and MVM Transported Junior to an ORR Shelter Pursuant to its Contractual Obligations.

Plaintiffs allegedly fled Guatemala to seek asylum in the United States. *Id.*, ¶
142. Plaintiffs allege that on or about November 3, 2017, Padre and Junior crossed the
U.S. border between ports of entry near Tecate, California, intending to seek asylum.
*Id.*, ¶ 143. Shortly after Plaintiffs crossed the border, they "were apprehended by
Border Patrol." *Id.*, ¶ 144. Plaintiffs were then brought to a short-term holding facility.
*Id.* Once there, "a non-uniformed woman entered the room without identifying herself
and announced that she was taking the children away." *Id.*, ¶ 145.

The woman "called out each child's name, including Junior, separating each
one from their parent." *Id.*, ¶ 146. After Junior was separated by the woman, he "was
put into a small, windowless cell with other minors of a similar age." *Id.*, ¶ 148. After
an unknown time, "Junior was removed from the cell and brought to a patrol car,"
which brought him to the San Diego Airport. *Id.*, ¶ 152. "At the airport, Junior was
transferred to the custody of two MVM employees." *Id.*, ¶ 153.

7

MVM carried out its contractual duty to the federal government to transport Junior safely to an ORR shelter from the San Diego Airport. *Id.*, ¶¶ 26, 159 ("After landing, the MVM employees escorted the children off the plane and out of the airport. Another MVM employee arrived . . . [and] drove Junior . . . away in an unmarked car" transporting him to a shelter operated by ORR in New York.)

On December 26, 2017, Padre was removed to Guatemala without Junior. *Id.*, ¶ 150. Weeks after the separation, "Junior learned that his father had been removed to Guatemala." *Id.*, ¶ 166. On February 10, 2018, Junior was released by ORR to live with his uncle in San Diego. *Id.*, ¶ 167. After receiving a grant of parole through the *Ms. L.* Litigation, and re-entering the United States, Junior and Padre were reunited on or about July 20, 2023. *Id.*, ¶ 168. The average separation period of families separated under the Family Separation Policy was 154 days. *Id.*, ¶ 91.

MVM held a federal contract with the United States since 2014 to "escort and transport" unaccompanied minors "detained by ICE" "from DHS custody to ORR." (Complaint, ¶¶ 7, 62.) MVM's duties would begin "[a]fter the initial separation" when "MVM transported children to ORR-operating shelters around the country." *Id.*, ¶ 80. Plaintiffs have named MVM as the sole defendant in this action.

### 2. Plaintiffs Take Issue with the Immigration Policy of the United States and its Government Agencies.

The Family Separation Policy was "created and implemented" by the United States and its various government officials. *Id.*, ¶ 60. The Complaint expressly blames the United States, its agents, and federal immigration policies for Plaintiff's alleged harms. Specifically, Plaintiffs allege that "Plaintiffs and all members of the Class suffer the same common injury of being separated from their children or parents, as a result of the same unlawful conduct by MVM and its accomplices and co-conspirators pursuant to the Family Separation" Policy. *Id.*, ¶ 183.

Plaintiffs allege that questions of law and fact common to the Class include: "Whether MVM intentionally participated in the Family Separation" Policy; "Whether

8

1  MVM knowingly and substantially aided and abetted the Family Separation [Policy]

2  by transporting separated children;" "Whether the U.S. government and MVM

3  conspired to carry out the Family Separation [Policy];" and "Whether, as part of the

4  Family Separation [Policy], the U.S. government forcibly separated Class Members

5  from their parents and children." *Id.*, ¶ 186.a-d.

6      Plaintiffs allege that MVM is "the tool" the United States used to implement its

7  immigration policy but fail to include in this lawsuit the essential party – the United

8  States and its government agents. *Id.*, ¶ 79. Plaintiffs now seek damages and equitable

9  relief "in the form of a rehabilitation fund to provide for mental health, education,

10  child development, and other services" from only MVM. *Id.*, ¶ 243.

11      The instant case was originally assigned to Judge Roger T. Benitez and

12  Magistrate Judge Michael S. Berg. ECF No. 1. On July 23, 2024, when the Complaint

13  was filed, Plaintiffs noted in their Civil Case Cover sheet that their case was related to

14  the *Ms. L.* Litigation. ECF No. 1-1. Simultaneously, Plaintiffs filed a Notice of Related

15  Case. ECF No. 3. In their Notice of Related Case, Plaintiffs admit that this case should

16  be related to the *Ms. L.* Litigation because it "arises from the same events and involves

17  substantially overlapping parties, facts, and questions of law." *Id.*, 3:9-10. Plaintiffs

18  admit that "both class actions arise from the same or substantially identical events.

19  Both *Ms. L.* and this case arise from the U.S. government's family separation policy

20  that began in 2017." *Id.*, 3:27-4:1. Plaintiffs even admit: "[t]hat policy was carried out

21  jointly by the defendants in both cases: MVM – the defendant in this case – was the

22  transport contractor of U.S. Immigration and Customs Enforcement – the primary *Ms.

23  L.* defendant." *Id.*, 4:4-6 Plaintiffs made clear that "this case calls for determination

24  of the same or substantially identical questions of law as *Ms. L.* . . . the legality and

25  constitutionality of the separation of families under the same policy." *Id.* 4:21-23.

26      Plaintiffs served the Notice of Related Case on all counsel in the *Ms. L.*

27  Litigation, including the U.S. Attorney's Office for the Southern District of California

28  and U.S. Department of Justice. ECF No. 3-1. Pursuant to Civil Local Rule 40.1(g),

9

1  these United States Government parties were permitted "seven days" to "file and serve

2  a detailed statement setting forth reasons that the case does not qualify as a related

3  case under these rules," but chose not to. Instead, the United States allowed the parties

4  to be related.

5      On August 1, 2024, this case and the *Ms. L.* Litigation were deemed related and

6  consolidated before this Court because they "arise from the same or substantially

7  identical transactions, happenings or events," "involve the same or substantially the

8  same parties or property," and "call for determination of the same or substantially

9  identical questions of law."  ECF No. 4.

10  ## III.   LEGAL STANDARDS

11      To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain

12  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

13  its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v.

14  Twombly*, 550 U.S. 544, 570 (2007)). "Thus, the Court 'accept[s] factual allegations

15  in the complaint as true and construe[s] the pleadings in the light most favorable to the

16  nonmoving party.'" *Nat'l Mech. Servs., Inc. v. Kinsale Ins. Co.*, 620 F. Supp. 3d 1096,

17  1102 (S.D. Cal. 2022). On the other hand, the Court is "not bound to accept as true a

18  legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678; *see Twombly*,

19  550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]

20  to relief' requires more than labels and conclusions, and a formulaic recitation of the

21  elements of a cause of action will not do"). Nor is the Court "required to accept as true

22  allegations that contradict exhibits attached to the Complaint or matters properly

23  subject to judicial notice, or allegations that are merely conclusory, unwarranted

24  deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629

25  F.3d 992, 998 (9th Cir. 2010).

26      Under Federal Rule 12(b)(7), a party may file a motion to dismiss on the

27  grounds that a party "fail[ed] to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7).

28  "A person or entity is a 'required party' and 'must be joined' if feasible if either 'in

that [party's] absence, the court cannot accord complete relief among existing parties';
or if 'that [party] claims an interest relating to the subject of the action and is so situated
that disposing of the action in the [party]'s absence may . . . as a practical matter impair
or impede the [party]'s ability to protect the interest' or 'leave an existing party subject
to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations
because of the interest." *Dine Citizens Against Ruining Our Env't v. Bureau of Indian
Affs.*, 932 F.3d 843, 851 (9th Cir. 2019) (quoting Fed. R. Civ. P. 19(a)(1)). "If a person
has not been joined as required, the court must order that the person be made a party."
Fed. R. Civ. P. 19(a)(2).

## IV.    <u>ARGUMENT</u>

### A.    Plaintiffs' Claims Must Be Dismissed Because the United States Is a Required Party That Cannot Be Joined to This Action (F.R.C.P. 12(b)(7)).

The Supreme Court has held, "A case may not proceed when a required-entity
sovereign is not amenable to suit." *Republic of Philippines v. Pimentel*, 553 U.S. 851,
866-67 (2008).[1]

Under Rule 19 of the Federal Rules of Civil Procedure, a "person or entity is a
'required party' and 'must be joined' if feasible if either 'in that [party's] absence, the
court cannot accord complete relief among existing parties'; or if 'that [party] claims
an interest relating to the subject of the action and is so situated that disposing of the
action in the [party's] absence may…as a practical matter impair or impede the
[party's]'s ability to protect the interest' or 'leave an existing party subject to a
substantial risk of incurring double, multiple, or otherwise inconsistent obligations
because of the interest.'" *Dine Citizens Against Ruining Our Environment v. Bureau*

---

[1] Before 2007, parties that are now called "required" under Rule 19 were referred to
as "necessary," and parties without whom the litigation could not, in good conscience,
continue, were referred to as "indispensable." *See Republic of Philippines v. Pimentel*,
553 U.S. 851 (2008). Rule 19 was revised in 2007, but the revisions were intended to
be only "stylistic," and the Supreme Court has interpreted them as such. *Id.* at 855.

1  *of Indian Affairs*, 932 F.3d 843, 851 (9th Cir. 2019) (quoting Fed. R. Civ. P. 19(a)(1))

2  (alterations in original). "If the party 'who is required to be joined if feasible cannot

3  be joined, the court must determine whether, in equity and good conscience, the action

4  should proceed among the existing parties or should be dismissed.'" *Id*.

5      Here, dismissal under Rule 12(b)(7) is practically necessary and appropriate

6  because: (1) the United States has a strong interest related to this litigation;

7  (2) proceeding with MVM as the sole defendant will impede or impair that interest or

8  leave MVM subject to a substantial risk of inconsistent obligations; (3) MVM cannot

9  be placed in the position of defending the policies of the United States; and (4) in

10  equity and good conscience, the action should be dismissed absent the United States.

11
12  **1.    The United States Has a Strong and Preemptive Interest in Enforcing Federal Immigration Policy.**

13      Plaintiffs' claims arise from MVM's transportation services which were

14  provided to the federal government. *See, e.g.*, Complaint, ¶ 1 ("Between 2017 and

15  2021, the U.S. government unlawfully separated more the 4,500 migrant children from

16  their parents[.]"); ¶¶ 30-60 (30-paragraph discourse about the Family Separation

17  Policy); ¶¶ 61-69 (discussing MVM's alleged "indispensable role" in transporting

18  separated children from one government agency (DHS) to another (ORR) pursuant to

19  contracts with yet another government agency (ICE)); ¶ 186 (questions of law and fact

20  common to putative class include (i) whether the government separated children and

21  parents "as part of the Family Separation Campaign;" and (ii) whether the Family

22  Separation Policy constituted torture, cruel/inhuman/degrading treatment, violated the

23  Due Process Clause, and constituted child abduction or interference with parent-child

24  relations). Plaintiffs seek to hold MVM liable for the Family Separation Policy. In

25  other words, the conduct for which Plaintiffs seek to hold MVM liable is conduct that

26  was undertaken pursuant to federal immigration policy and MVM's contractual duties.

27  MVM is not alleged to have played any part in the creation of the government policies

28  which caused the Plaintiffs to be separated from their family members.

The federal government has a strong interest in enforcing federal immigration policy. Federal courts have uniformly acknowledged that the United States government's interest in setting and carrying out federal immigration policy is so pervasive as to preempt the field on issues regarding the transportation and sheltering of migrants. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1025–26 & n.17 (9th Cir. 2013) (Arizona law was field preempted because of the "comprehensive nature of [federal law] and, its place within the larger structure governing the movement and harboring of aliens, and [the] explicit but limited provision for state involvement"); *United States v. South Carolina*, 720 F.3d 518, 530–31 (4th Cir. 2013) ("Sections 4(B) and (D) of the Act make it a state felony to 'transport, move or attempt to transport' or 'conceal, harbor or shelter' a person 'with intent to further that person's unlawful entry into the United States' or to help that person avoid apprehension or detection .... We find the Eleventh Circuit's reasoning persuasive. Sections 4(B) and (D) of the Act are field preempted because the vast array of federal laws and regulations on this subject ... is so 'pervasive that Congress left no room for the States to supplement it." (cleaned up); *Lozano v. City of Hazleton*, 724 F.3d 297, 316 (3rd Cir. 2013) ("We agree with the Eleventh Circuit and other courts that have held that 'the federal government has clearly expressed more than a "peripheral concern" with the entry, movement, and residence of aliens within the United States and the breadth of these laws illustrates an overwhelmingly dominant federal interest in the field.'"(quoting *Georgia Latino All. for Hum. Rts. v. Governor of Georgia*, 691 F.3d 1250, 1264 (11th Cir. 2012)).

"An interest that arises from terms in bargained contracts may be protected," if that interest is "substantial." *Cachil Dehe Band of Wintun Indians of the Colusa Indian Community v. California*, 547 F.3d 962, 970 (9th Cir. 2008) (quotations omitted). The Ninth Circuit has repeatedly held that "a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract." *Dawavendewa v. Salt River Project Agr. Imp. And Power Dist.*, 276 F.3d 1150, 1157

13

1  (9th Cir. 2002); *Western Watersheds Project v. Haaland*, 22 F.4th 828, 842 (9th Cir.

2  2022) (same).

3      In *Haaland*, plaintiffs, non-profits, sued the Bureau of Land Management to

4  challenge the issuance of certain oil and gas leases. Chesapeake, party to some of those

5  leases, moved to intervene.[2] *Haaland*, 22 F.4th at 832. The district court denied

6  Chesapeake's motion. The Ninth Circuit reversed, finding that, "as a party with a

7  legally protected interest in contract rights with the federal government Chesapeake

8  would offer a necessary element to the proceeding that other parties would neglect."

9  *Id.* at 842.

10     Here, the United States has a substantial interest not only in protecting its ability

11 to enforce federal immigration policy through the use of contractors like MVM, but

12 also a substantial interest arising from two separate contractual relationships.  First,

13 the federal government has a substantial interest relating to the enforceability of the

14 underlying contractual relationship with MVM, which is an ongoing relationship. This

15 case is identical to the situation in *Haaland, supra,* but reversed: the federal contractor,

16 and not the federal government, is already a party to the litigation. Thus, the principle

17 holds: the two parties are not similarly situated, and both have interests that need to be

18 represented.  The Complaint concedes that the conduct for which Plaintiffs seek to

19 hold MVM liable arises exclusively from its contractual relationship with the federal

20 government.  Complaint, ¶¶ 7, 61-62.

21     Second, the United States has entered into a settlement contract with the same

22 class of plaintiffs purporting to sue MVM in this putative class action, covering

23 identical subject matter and ultimately creating a risk of inconsistent obligations.

24 Specifically, the *Ms. L.* Litigation resulted in a class action settlement that was

25 approved by the Court. *See* RJN, Ex. 1-2. The settlement provided various forms of

26 relief, including reunification assistance, behavior health services, assistance with

27

28 [2] *Haaland* is a Rule 24 case, which the Ninth Circuit held was an "analogous context." *Haaland*, 22 F.4th at 828.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:24-cv-01265-DMS-AHG

certain medical costs, immigration legal services, and housing assistance. RJN, Ex. 1, p. 21-25.  The relief sought against MVM in this case is not limited to damages; Plaintiffs seek relief that overlaps with the *Ms. L.* settlement currently being overseen by the Department of Justice. *See, e.g.,* Complaint ¶ 243.f. (seeking a judgment against MVM for "Equitable relief in the form of a rehabilitation fund to provide for mental health, education, child development, and other services for the benefit of Class Members").  Such relief cannot be accorded in the absence of the United States.

### 2. Disposing of This Case Will Interfere with the Government's Interest in Federal Immigration Policy and Expose MVM to Inconsistent Obligations.

MVM's liability in this case cannot be assessed without reaching factual and legal determinations regarding the legality and effects of the Family Separation Policy. As such, there can be no question that this litigation may impede or impair the United States' interest. The Complaint repeatedly refers to MVM's contracts with the government, describes MVM's role as "indispensable" to the Family Separation Policy (Complaint, II.A), and asserts that the government "would have been unable to execute the Family Separation Campaign without the willing assistance" of MVM (*id.*, ¶ 61). The Complaint clearly establishes an important government interest: the determination of the legality of Family Separation Policy itself. (*See also id.*, ¶ 186 (listing questions of law and fact concerning the legality of the Family Separation Policy). The Family Separation Policy is described as "the Trump Administration['s]…orchestrated campaign." (*Id.*, ¶ 2.) This is separate and apart from the government's property interest in the contract, which is a "pecuniary interest." *Backcountry Against Dumps v. United States Bureau of Indian Affairs*, 2021 WL 3611049, at *8 (S.D. Cal. Aug. 6, 2021) ("*Backcountry*"). That pecuniary interest (other than a reputational interest) is distinct from the policy interests at stake for the government, which are unique. *Deschutes River Alliance v. Portland Gen. Electric Co.*, 1 F.4th 1153, 1163 (9th Cir. 2021). The government's interest in this case is underscored by the fact that it has been sued by individuals affected by the Family

1 | Separation Policy in at least 44 separate lawsuits across the country that were either

2 | dismissed or, more often, settled. (*See* Section II.C., *supra*, and RJN Ex. 1-53.)

3 |     Here, the federal government's interest diverges from that of MVM. Plaintiffs

4 | cannot simply argue that MVM is incentivized to defend the legality of the Family

5 | Separation Policy – MVM publicly denounced that policy and cannot be forced into a

6 | position of defending federal policy. And even if MVM and the United States had a

7 | shared goal of defending the constitutionality of the underlying program (which they

8 | do not), it does not mean that the indispensable party's interests are represented. *See*

9 | *Shermoen v. U.S.*, 982 F.2d 1312, 1318 (9th Cir. 1992) ("While the United States

10 | might share the same ultimate goal as the absent tribes, namely that of vindicating the

11 | constitutionality of the Act, it is unlikely that the government could sufficiently

12 | represent the competing interests and divergent concerns of the tribes, for the

13 | government must also act in keeping with its role and obligations as trustee."). Thus,

14 | this case should be dismissed because the United States is a required-entity sovereign

15 | that is not amenable to suit. *See Republic of Philippines*, 553 U.S. at 866-67.

16
17 | **B.**     **Plaintiffs' Claims Must Be Dismissed Because Each Is Barred by Derivative Sovereign Immunity (F.R.C.P. 12(b)(6))**

18 |     Under the doctrine of derivative sovereign immunity, stemming from the

19 | Supreme Court's decision in *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940),

20 | "'there is no liability on the part of the contractor' who simply performed as the

21 | Government directed." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 167 (2016)

22 | (quoting *Yearsley,* 309 U.S. at 20-21).

23 |     Claims against a government contractor are barred by derivative sovereign

24 | immunity, if (1) the United States would have immunity for the claims (had they been

25 | brought against the government), (2) the contractor performed as the government

26 | directed and (3) the government's authority to carry out the contracted-for services

27 | was validly conferred, meaning it acted within its constitutional power. *Yearsley,* 309

28 | U.S. at 20-21. However, where a contractor "violates both federal law and the

Government's explicit instructions," (*Campbell-Ewald Co.*, 577 U.S. at 166), or where the claimed injuries "arise from [the contractor's] own discretionary activity", derivative immunity does not shield the contractor from liability (*Clover v. Camp Pendleton & Quantico Hous. LLC*, 525 F. Supp. 3d 1140, 1143 (S.D. Cal. 2021); *see also Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015) (contractor whose negligent exercise of discretion in storing fireworks caused an explosion that injured plaintiffs was not entitled to derivative sovereign immunity.)

Here, Plaintiffs' claims are barred by derivative sovereign immunity, because (1) the United States would be immune to the claims if they had been asserted against the government, (2) MVM performed the purportedly injury-causing conduct pursuant to valid government contracts, and (3) the contract was validly conferred.

### 1. The Government Would Be Immune from Suit if Plaintiffs Had Asserted Their Claims Against the United States.

"The United States, as sovereign, is immune from suit save as it consents to be sued." *Hercules, Inc. v. United States,* 516 U.S. 417, 422 (1996). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text ... and will not be implied." *Lane v. Pena,* 518 U.S. 187, 192 (1996). The Supreme Court has "frequently held" that waivers of sovereign immunity are "to be strictly construed, in terms of [their] scope, in favor of the sovereign." *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999). Courts may not "expand the scope of Congress' sovereign immunity waiver beyond what the statutory text clearly requires." *F.A.A. v. Cooper,* 566 U.S. 284, 299 (2012). The United States has not waived its immunity as to any of Plaintiffs' claims.

#### i.   *Alien Tort Statute (Counts I – IV)*

The Alien Tort Statute, 28 U.S.C. § 1350 does not provide the requisite waiver. Courts that have addressed the issue have held that the ATS does not waive sovereign immunity. *See Tobar v. United States,* 639 F.3d 1191, 1196 (9th Cir. 2011); *Arar v. Ashcroft,* 532 F.3d 157, 175 (2d Cir. 2008), *vacated and superseded on reh'g en banc*

17

1    *on other grounds,* 585 F.3d 559 (2d Cir. 2009); *Hernandez v. United States,* 757 F.3d
2    249 (5th Cir. 2014), *adhered to in relevant part on reh'g en banc,* 785 F.3d 117 (5th
3    Cir. 2015); *Goldstar (Pan.) S.A. v. United States,* 967 F.2d 965, 967-69 (4th Cir.
4    1992); *Sanchez-Espinoza v. Reagan,* 770 F.2d 202, 207 (D.C. Cir. 1985). Multiple
5    federal district courts have rejected claims by family members separated at the border
6    suing under the ATS, finding that the claims are barred by sovereign immunity. *See*
7    *Flores Benitez v. Miller*, 687 F. Supp. 3d 304, 326 (D. Conn. 2023) (dismissing all
8    ATS claims because the "United States has not consented to suits brought pursuant to
9    the ATS—even when violations of <u>jus cogens</u> norms are alleged"); *D.J.C.V. v. United*
10   *States,* No. 20 CIV. 5747 (PAE), 2022 WL 1912254, at *28 (S.D.N.Y. June 3, 2022).

11                      ii.    <u>*Federal Civil Rights Claims (Counts V – VI)*</u>

12           There is also "no evidence ... that Congress intended to subject federal agencies
13   to ... [42 U.S.C.] § 1985 liability." *Jachetta v. United States*, 653 F.3d 898, 908 (9th
14   Cir. 2011). Indeed, § 1985 imposes liability upon a "person," and a federal agency is
15   not a "person" within the meaning of these provisions. *Id.* Accordingly, § 1985 does
16   not waive sovereign immunity for the United States. *Id.; e.g., Gerritsen v. Consulado*
17   *Gen. De Mexic*o, 989 F.2d 340, 343 (9th Cir. 1993) (dismissing § 1985 claims against
18   federal agency). In addition, since there has been no waiver of sovereign immunity
19   under 42 USC § 1985, there cannot be a waiver under 42 USC § 1986, because it is
20   dependent upon the existence of a valid claim under § 1985. *See Karim-Panahi v. Los*
21   *Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) ("A claim can be stated under
22   section 1986 only if the complaint contains a valid claim under section 1985.")

23                      iii.   <u>*Child Abduction and IIED Claims (Counts VII – VIII)*</u>

24           The United States also has not waived immunity as to the tortious conduct
25   alleged in the Complaint under California Civil Code § 49(a) or Intentional Infliction
26   of Emotional Distress ("IIED"). While the Federal Tort Claims Act, 28 U.S.C. § 2680
27   ("FTCA"), provides a limited waiver when pre-filing conditions are met, Congress
28   exempted from the government's waiver a subset of intentional torts including, any

claim arising out of "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." FTCA, § 2680 (h). "Regardless of the plaintiff's characterization of the cause of action, § 2680(h) bars suit for claims based on *conduct* which constitutes one of the excepted torts[.]" *Sheehan v. United States*, 896 F.2d 1168, 1171 (9th Cir.), <u>amended,</u> 917 F.2d 424 (9th Cir. 1990) (emphasis added).

Here, the conduct alleged under both the § 49(a) claim and the IIED claim is substantially similar, namely, MVM is alleged to have intentionally abducted minor children, which injured the children through fear, loss of liberty, and emotional distress. Complaint, ¶¶ 231-234, 238-240. This alleged conduct aligns closely with the traditional elements of the torts of battery (non-consensual intentional act by defendant resulting in harmful or offensive contact to plaintiff's person), and false imprisonment/false arrest (non-consensual, intentional confinement, without legal justification). Because the conduct upon which the claims is based falls within the definition of a tort enumerated in § 2680(h), the United States has not waived its immunity to these torts in this case. *See Block v. Neal,* 460 U.S. 289, 296 (1983); *United States v. Neustadt,* 366 U.S. 696, 705–08 (1961). Likewise, Plaintiffs have failed to plead facts showing that they satisfied the pre-filing requirements of the FTCA. Thus, the United States has not waived its sovereign immunity with respect to claims under the ATS, § 1985, § 1986, IIED, or Child Abduction under Civil Code § 49(a), and as such, if Counts I through VIII in this case were brought against the United States, the claims would be barred by sovereign immunity.

### 2.    MVM Performed the Contract and Followed the Express Direction of the United States Government.

MVM is named in this lawsuit for "simply perform[ing its contract] as the Government directed." *Campbell-Ewald Co.*, 577 U.S. at 167 (2016) (quoting *Yearsley,* 309 U.S. at 20-21). Since at least 2014, MVM held an exclusive contract with the United States to "escort and transport" unaccompanied minors "detained by

19

ICE" "from DHS custody to ORR." (Complaint, ¶¶ 7, 62.) MVM's role began "[a]fter the initial separation" when "MVM transported children to ORR-operating shelters around the country." *Id.*, ¶ 80. The Family Separation Policy was "created and implemented" by the United States and its various government officials, and carried the force of law. *Id.*, ¶ 60. Plaintiffs allege that MVM was "the tool" the United States used to carry out its Family Separation Policy. *Id.*, ¶ 79.

The Complaint's allegations for the named Plaintiffs, Padre and Junior, track MVM's contractual obligations to the government precisely. After illegally crossing the border and being apprehended by Border Patrol, Padre and Junior were separated at a short-term holding facility by an unidentified "non-uniformed woman", whereafter Junior was transported to the San Diego Airport and transferred to the custody of two MVM employees. *Id.*, ¶¶ 143-146, 152-153. "After landing, the MVM employees escorted the children off the plane and out of the airport. Another MVM employee arrived . . . [and] drove Junior . . . away in an unmarked car" transporting him to a shelter operated by ORR in New York. *Id.*, ¶¶ 26, 159. In other words, MVM is now being sued for injuries suffered by Plaintiffs resulting directly from MVM carrying out its contractual obligations to transport Junior, an unaccompanied minor, safely "from DHS custody to [an] ORR" shelter after taking custody of him at the San Diego Airport. *Id.*, ¶¶ 7, 62, 80.

Plaintiffs have also not alleged that MVM "violate[d] both federal law and the Government's explicit instructions[.]" *Campbell-Ewald Co.*, 577 U.S. at 166. Neither do the claimed injuries here "arise from [MVM's] own discretionary activity[.]" *Clover*, 525 F. Supp. 3d at 1143. MVM is alleged to have carried out federal policy.

### 3.    MVM's Contract was Validly Conferred.

Article I of the Constitution vests in Congress "the principal power to control the nation's borders" while Article II vests in the President the power "to regulate the entry of aliens into the United States." Thus, "Congress has the power to regulate naturalization, [and] it shares its related power to admit or exclude aliens with the

20

Executive." *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 755-56 (9th Cir. 2018). Therefore, "Congress and the Executive branch share the immigration power." *See Spencer Enterprises, Inc. v. U.S.*, 229 F.Supp.2d 1025, 1036 (E.D.Cal. 2001); *see also Jean v. Nelson*, 711 F.2d 1455, 1465 (11th Cir. 1983) (while the two branches share the immigration power "Congress may, and has chosen to, delegate wide discretionary authority to the Executive to administer immigration matters.").

In 2002, Congress established the Homeland Security Act of 2002 ("HSA"). See 6 U.S.C. § 101. The HSA abolished the Immigration and Naturalization Service and established a new executive department of the federal government, the Department of Homeland Security ("DHS"). Some of the responsibilities of the DHS include "securing the borders," "managing and coordinating. . . functions . . . at ports of entry" and "carrying out the immigration enforcement functions." See 6 U.S.C. § 202. The Secretary of Homeland Security is charged with the administration and enforcement of all laws relating to the immigration and naturalization of aliens. See 8 U.S.C. § 1103(a)(1); *see also In re Border Infrastructure Environmental Litigation*, 284 F.Supp.3d 1092 (S.D. Cal. 2018) ("the DHS Secretary, acting as an agent of the Executive Branch, has significant, independent authority over immigration, Congress is justified in delegating broad authority.").

The Border Patrol program, currently known as the U.S. Immigration and Customs Enforcement (ICE) became a component under DHS with the establishment of HSA. See 6 U.S.C. § 251; see also 5 C.F.R § 4601.102. ICE "is responsible for physically transferring unaccompanied children from CBP to ORR custody, and apprehending them in the U.S. interior during immigration enforcement actions." Kandel, William A. (2024, September 5). Unaccompanied Alien Children: An Overview. https://crsreports.congress.gov/product/pdf/R/R43599; see generally 8 U.S.C. 236.3(f) ("granting ICE the authority to transport illegal immigrants, to include unaccompanied children.) (CRS Report No R43599).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:24-cv-01265-DMS-AHG

DHS contracts with private contractors to provide transportation of UACs. *See*
84 Fed. Reg. 44,392 (Aug. 23, 2019). Pursuant to these "validly conferred" authorities,
DHS awarded MVM contracts to transport UACs beginning "[s]ince at least 2014"
(Complaint, ¶7), with a follow-on contract "from March 2020 through January 2021"
(Complaint, ¶138).

Thus, Plaintiffs' claims are barred under the doctrine of derivative sovereign
immunity because the United States would be immune to the claims, MVM performed
the purportedly injury-causing conduct pursuant to valid government contracts, and
the government's authority for the contract was validly conferred. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 167 (2016) (quoting *Yearsley,* 309 U.S. at 20-21).

**C.    Plaintiffs' Alien Tort Statute Claims Must Be Dismissed for Failure
to State a Claim (F.R.C.P. 12(b)(6)).**

The Alien Tort Statute or ATS, provides, "[t]he district courts shall have
original jurisdiction of any civil action by an alien for a tort only, committed in
violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350.
Enacted as part of the Judiciary Act of 1789, *see Sosa v. Alvarez-Machain*, 542 U.S.
692, 712 (2004), the ATS is solely a jurisdictional statute and creates "no new causes
of action," *id.* at 724; *see also Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108,
116 (2013) ("[The ATS] does not directly regulate conduct or afford relief. It only
allows federal courts to recognize certain causes of action based on sufficiently
definite norms of international law."). Instead, the "very limited category" of claims
available under the ATS are "defined by the law of nations and recognized at common
law." *Sosa*, 542 U.S. at 712.

At the time of its passage, the ATS intended to grant jurisdiction over tort
claims seeking relief only for three violations of international law: piracy, violation
of safe conducts, and infringement of the rights of ambassadors. *Sosa,* 542 U.S. at
724. The Court in *Sosa* held, however, that contemporary ATS claims can invoke the
rights created by the "present-day law of nations," but that such judicial power (to

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:24-cv-01265-DMS-AHG

recognize new law of nations violations) "should be exercised on the understanding that the door is still ajar subject to *vigilant door keeping.*" *Id.* at 725, 729. Applying this standard, a cause of action under the ATS must: (i) allege a violation of a "specific, universal, and obligatory" norm under international law; and (ii) seek a proper exercise of judicial discretion that does not overstep into foreign policy. *Doe I v. Cisco Sys., Inc.*, 73 F.4th 700, 715 (9th Cir. 2023).

The body of international law that supplies the norms underlying an ATS claim is often referred to as "customary international law," which consists of "rules that States universally abide by, or accede to, out of a sense of legal obligation and mutual concern." *Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1019–20 (9th Cir. 2014) (quoting *Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254, 267 (2d Cir.2007) (Katzmann, J., concurring). To determine the content of customary international law, courts "look to the sources of law identified by the Statute of the International Court of Justice." *Khulumani,* 504 F.3d at 267 (Katzmann, J., concurring). These sources include international conventions, international customs, "the general principles of law recognized by civilized nations," "judicial decisions," and the works of scholars. *Id.; see also, Doe I v. Cisco Sys., Inc.*, 73 F.4th 700, 717 (9th Cir. 2023).

Plaintiffs' ATS claims based on Enforced Disappearance (Count II), and Torture (Count III) are each subject to dismissal because Plaintiffs fail to allege facts that meet the definition of each claim under customary international law.

### 1. Plaintiffs Fail to State a Claim for Enforced Disappearance Under the ATS.

The consensus definition among the international community for "disappearance" has "two essential elements: (a) abduction by a state official or by persons acting under state approval or authority; and (b) refusal by the state to acknowledge the abduction and detention." *Forti v. Suarez-Mason*, 694 F. Supp. 707, 710 (N.D. Cal. 1988). "The denial of accountability is the factor which makes disappearance unique among human rights violations." *Id.* at 711 (citations omitted).

23

Here, the Complaint fails to plausibly allege against MVM abduction by a state official and makes no attempt to plead facts supporting the second element requiring "refusal by the state to acknowledge the abduction and detention." *Forti,* 694 F. Supp. At 710. In fact, the Complaint alleges the opposite, that U.S. officials and publicly affirmed that children were being separated from their families as part of the United States' immigration policy at the southern border. Because Plaintiffs have failed to allege both elements of the "specific, universal, and obligatory" definition of "disappearance," the Second Cause of Action under the ATS fails as a matter of law.

### 2. Plaintiffs Fail to State a Claim for Torture Under the ATS.

Courts have found that torture can be actionable under the ATS if it is done "in violation of the law of nations." *Bowoto v. Chevron Corp.*, 557 F. Supp. 2d 1080, 1086 (N.D. Cal. 2008). The definition for state-sponsored torture is found in the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (the "CAT"), to which the United States is a party:

> [T]he term 'torture' means any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. **It does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions**.

*Doe v. Qi*, 349 F. Supp. 2d 1258, 1313 (N.D. Cal. 2004) (quoting the CAT) (emphasis added). This definition has also been incorporated into federal law by way of regulation. *See* 8 C.F.R. § 1208.18(a)(3) ("Torture does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions. Lawful sanctions include judicially imposed sanctions and other enforcement actions authorized by law, including the death penalty....").

Here, the Complaint attempts to plead around this exception to the universally accepted definition of torture by alleging a bald legal conclusion that "[t]his suffering was not inherent in or incidental to lawful sanctions." Compl., ¶ 210. While a court accepts the factual allegations in a complaint as true, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs have not alleged any facts plausibly demonstrating that the suffering by the separated families was not incidental to lawful sanctions. In fact, the opposite is true. The Complaint alleges that MVM's transportation of migrants was pursuant to a validly issued government contract. Compl., ¶¶ 7, 42, 61-62. Because Plaintiffs do not allege facts meeting the definition of torture under international law, Plaintiffs' ATS claim under Count III fails to state a claim and must be dismissed. *See also C.D.A. v. United States*, No. CV 21-469, 2023 WL 2666064, at *27 (E.D. Pa. Mar. 28, 2023) (emphasis added) (dismissing under Rule 12(b)(6) plaintiffs' ATS claim for torture reasoning that despite "political disagreement over the appropriateness of the Government's zero-tolerance policy, the Government acted well within its legitimate powers by enforcing criminal provisions barring illegal entry and by prosecuting individuals who violated said provisions … *These acts were 'lawful sanctions,'* and all other factual allegations … arose from said lawful sanctions.")

**D.    Plaintiffs' Civil Rights Conspiracy Claims Must Be Dismissed For Failure To State A Claim And Because They Are Time-Barred (F.R.C.P. 12(b)(6)).**

**1.    Plaintiffs Fail to State a Claim for Civil Rights Conspiracy or Failure to Prevent Civil Rights Conspiracy.**

To prevail on a claim for conspiracy under Section 1985(3), the plaintiff must prove: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:24-cv-01265-DMS-AHG

privilege of a citizen of the United States; (5) a racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action; and (6) that the conspiracy was aimed at interfering with rights that are protected against private, as well as official, encroachment." *See Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993); *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1185 (N.D. Cal. 2022), aff'd sub nom. *O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023), cert. denied, No. 22-1199, 2024 WL 3259696 (U.S. July 2, 2024). Where, as a here, a plaintiff alleges a conspiracy between a private party and the government, "an agreement or 'meeting of the minds' to violate constitutional rights must be shown." *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983), *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158 (1970).

In Count V of their Complaint, Plaintiffs allege, "By agreeing with the U.S. government and its agents to transport children abducted from their parents without due process and on the basis of their race, ethnicity, alienage, or national origin, Defendant conspired to deprive Plaintiffs and the Class of the equal protection of the laws of the United States and of constitutionally protected liberty interests in family integrity, in violation of 42 U.S.C. § 1985(3)."  Complaint, ¶ 221.  Plaintiffs make similar non-descript, lip-service references to an alleged conspiracy in other sections of their Complaint. *See, e.g.*, *id*. at ¶¶ 6-7 (MVM was a "knowing and willing co-conspirator and accomplice" to the "[abduction of] children without due process" by the Border Patrol and ICE); ¶ 9 ("MVM knowingly agreed to carry out the Family Separation Campaign[.]"); ¶ 76 ("MVM and DHS carried out the Family Separation Campaign through a coordinated modus operandi."); ¶ 108 ["MVM acted in concert with Border Patrol and ICE officers[.]"].)  In so doing, Plaintiffs fail to plead sufficient facts to support their conspiracy claim against MVM, and instead rest solely on conclusory and unsupported *allegations* of conspiracy.

"A claim under [Section 1985] must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual

specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). *See also Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir. 1990), as amended on denial of reh'g (Feb. 27, 1991), as amended on denial of reh'g (May 24, 1991) ("A mere allegation of conspiracy without factual specificity is insufficient to support a claim."). Here, Plaintiffs' conspiracy allegations are bereft of factual specificity.

Moreover, as stated above, in order to be liable for conspiracy under Section 1985(3), each participant in the conspiracy must share the common objective of the conspiracy. *See United Steelworks of Am. v. Phelps Dodge*, 865 F.2d 1539, 1540-1541 (9th Cir. 1989). "A conspiracy exists where 'the conspiring parties reach[ ] a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement.'" *Gilles v. Wineteer*, No. 3:19-CV-1492-GPC-BGS, 2019 WL 6037422, at *8 (S.D. Cal. Nov. 14, 2019), quoting *Lacey v. Maricopa Cty.*, 693 F.3d 896, 935 (9th Cir. 2012). "If the defendants' harmful conduct was motivated not by hatred toward a protected class but 'by a concern for economic well-being,' the claim will not fall within the scope of § 1985(3)." *Molett v. AMR Corp Am. Airlines*, No. CV 21-8057 MCS (PVC), 2021 WL 6499934, at *5 (C.D. Cal. Dec. 10, 2021), quoting *Sever*, *supra*, 978 F.2d at 1538. *See also Loc United Bhd. of Carpenters & Joiners of Am.. 610, AFL-CIO v. Scott*, 463 U.S. 825, 838 (1983) ("We . . . cannot construe § 1985(3) to reach conspiracies motivated by economic or commercial animus.").

Here, Plaintiffs do not allege that MVM and the government actors had a "meeting of the minds" or common objective to violate Plaintiffs' civil rights. Plaintiffs do not allege anywhere in their Complaint that MVM harbored a hatred or animus toward the putative class. In fact, the Complaint is replete with allegations that MVM was motivated by an economic interest, i.e., lucrative contracts to transport unaccompanied minors. *See, e.g.*, Complaint, ¶ 69 ("MVM signed dozens of multi-million dollar 'task orders' . . . for transportation and escort services[.]"); ¶¶ 125-127 (discussing MVM's agreements to provide child transportation services totaling more

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:24-cv-01265-DMS-AHG

than $39M). Although Plaintiffs allege that "MVM knowingly agreed to carry out the Family Separation Campaign," (*id*., ¶ 9), they fail to plead facts showing that MVM did so with hatred toward a protected class or for the purpose of depriving Plaintiffs due process of law or equal protection of the laws. *See Sever*, *supra*, 978 F.2d at 153, 1538. The Complaint attempts to make much of MVM's purported knowledge and awareness of the illegality of the government's actions, (*see, e.g.*, Complaint, ¶¶ 70-75, 86, 117), but such is insufficient to state a claim for conspiracy under Section 1985(3). *See Bray*, 506 U.S. at 276 ("the 'intent to deprive of a right' requirement demands that the defendant do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; he must act at least in part for the very purpose of producing it."); *accord*, *House v. Dagnan*, No. 517CV01085DSFSK, 2017 WL 11599157, at *2 (C.D. Cal. Dec. 27, 2017).

Plaintiffs have done nothing more than plead assertions that are merely consistent with liability, which is insufficient to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For example, bare assertions that a defendant was the "principal architect" of an allegedly unlawful policy, or was "instrumental" in adopting and executing it, "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim." *Id*. at 681. As such, they are deemed conclusory allegations that are not entitled to be assumed as true. *Id. Accord*, *O'Handley*, *supra*, 579 F. Supp. 3d at 1177 (addressing conspiracy claim under 42 U.S.C. § 1983). *See also Cantu v. Moody*, 933 F.3d 414, 420 (5th Cir. 2019) (allegation that defendants "[d]iscussed and willfully and knowingly agreed with other DEFENDANTS to fabricate evidence ... in order to have [Cantú] convicted" found to be conclusory and insufficient to state a claim under 42 U.S.C. § 1985(3).)

Despite its hundreds of paragraphs, Plaintiffs' Complaint falls far short of alleging facts sufficient to state a claim for civil rights conspiracy under 42 USC § 1985(3). Count V of Plaintiffs' Complaint should therefore be dismissed pursuant to

Rule 12(b)(6). Count VI of Plaintiff's Complaint, for failure to prevent civil rights conspiracy under 42 USC § 1986, should likewise be dismissed because it is dependent upon the existence of a valid claim under Section 1985. *See Karim–Panahi*, *supra*, 839 F.2d at 626 ("A claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985."); *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1040 (9th Cir. 1990), as amended on denial of reh'g (Feb. 27, 1991), as amended on denial of reh'g (May 24, 1991) ("A violation of section 1986 thus depends on the existence of a valid claim under 1985."); *Black v. City of San Diego*, No. 3:21-CV-1990-RBM-JLB, 2023 WL 2336894, at *22 (S.D. Cal. Mar. 2, 2023) ("Since Plaintiff has not stated a claim under Section 1985, his claim fails under Section 1986.").

### 2.    Plaintiffs' Claims for Civil Rights Conspiracy and Failure to Prevent Civil Rights Conspiracy Are Time-Barred

Even if Plaintiffs could state a claim for civil rights conspiracy or failure to prevent civil rights conspiracy (they cannot), both claims are time-barred and subject to dismissal on that basis. "[A]n action under § 1985(3) alleging a conspiracy to deprive a person of constitutional rights is designed to remedy the same types of harms as the deprivations actionable under § 1983. Accordingly, we hold that suits under § 1985(3) are also best characterized as personal injury actions and are governed by the same statute of limitations as actions under § 1983." *McDougal v. Cnty. of Imperial*, 942 F.2d 668, 673–74 (9th Cir. 1991). *See also Ward v. Valadez*, No. 19CV1267-LAB (WVG), 2020 WL 1026847, at *1 (S.D. Cal. Mar. 2, 2020) (the statute of limitations for a Section 1985 claim is the same as a 1983 claim).

Federal courts apply the statute of limitations governing personal injury claims in the forum state under Section 1983 and, by extension, Section 1985. *See TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). California Civil Procedure Code Section 335.1 establishes a two-year statute of limitations on personal injury claims. *See Sekerke v. Hoodenpyle*, No. 19CV00035WQHJLB, 2021 WL 148075, at *5 (S.D. Cal. Jan. 15, 2021), report and recommendation adopted, No. 19-CV-35-WQH-JLB, 2021

29

WL 973565 (S.D. Cal. Mar. 16, 2021). As such, the limitations period for a Section 1985 claim is two years. *Harris v. Cnty. of San Diego*, No. 18-CV-924-BTM-AHG, 2019 WL 6683367, at *3 (S.D. Cal. Dec. 5, 2019).

Plaintiffs' Complaint alleges that *Padre* and *Junior* were separated on November 3, 2017, at which time *Junior* was 16 years old (Complaint, ¶¶ 143-149); on February 10, 2018, *Junior* was released to live with an uncle in San Diego (*id.*, ¶ 167); and *Padre* and *Junior* were reunified on July 20, 2023 (*id.*, ¶ 168). While California law establishes the statute of limitations applicable to Plaintiffs' Section 1985 claim, federal law determines when that claim accrued. "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *TwoRivers*, 174 F.3d at 991. *Accord*, *Mykles v. State Comp. Ins. Fund*, No. 18-CV-2675-WQH-LL, 2019 WL 13268109, at *3 (S.D. Cal. May 20, 2019). As such, Plaintiffs' conspiracy claim accrued when they were allegedly separated in November 2017. While *Junior* was a minor at the time, his claims were tolled only until he reached the age of 18 which presumably occurred at some point in 2019. Cal. Civ. Proc. Code § 352. *Padre's* claims were not subject to any form of tolling. Plaintiffs filed their Complaint more than six years after their claim under Section 1985 accrued; therefore, it is time barred. So is their claim for failure to prevent civil rights conspiracy under Section 1986, "which imposes its own one-year statute of limitations." *Harris v. Cnty. of San Diego*, No. 18-CV-924-BTM-AHG, 2019 WL 6683367, at *3 (S.D. Cal. Dec. 5, 2019); *see* 42 U.S.C. § 1986 ("But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.").[3]

---

[3] Assuming for the sake of argument that Plaintiffs pleaded a valid claim under Section 1985 (they did not), or that their continuing violation doctrine argument had merit (it does not), their Section 1986 claim would still be time barred because the Complaint was filed on July 23, 2024, one year and three days after Padre and Junior were reunited.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:24-cv-01265-DMS-AHG

1      In apparent recognition of their daunting statute of limitations problem,

2  Plaintiffs artfully allege that "[t]he forcible separation of families alleged herein were

3  continuing violations that did not cease until the reunification of the family."

4  (Complaint, ¶¶ 224, 229.)   This, however, is a conclusory allegation that is not

5  assumed to be true. It is also contrary to Ninth Circuit law. *See Bird v. Dep't of Hum.*

6  *Servs.*, 935 F.3d 738, 748 (9th Cir. 2019) ("[C]ontinuing effect [of a past violation] is

7  insufficient to constitute a continuing violation."). Beyond the initial separation of

8  *Padre* and *Junior* in November 2017 (at the specific direction of the government), the

9  Complaint does not allege that MVM undertook any further action to deprive them of

10  their civil rights.[4]  *See id.* at 748 (noting that after the Supreme Court's decision in

11  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), "little remains of

12  the continuing violations doctrine.")

13      Even if the Complaint did plead additional discrete acts of an alleged civil rights

14  conspiracy (it does not), it would not save their conspiracy claims from being time-

15  barred because the Supreme Court has determined that, within the context of Title VII

16  discrimination claims, "discrete discriminatory acts are not actionable if time barred,

17  even when they are related to acts alleged in timely filed charges." *Morgan, supra*,

18  536 U.S. at 113. The Ninth Circuit has extended this rule "to bar § 1983 claims

19  predicated on discrete timebarred acts, not-withstanding that those acts are related to

20  timely-filed claims." *Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara*, 344

21  F.3d 822, 829 (9th Cir. 2003). Given that Section 1985 conspiracy claims require a

22  Section 1983 predicate act,[5] and the same statute of limitations applies to both Section

23

---

24  [4] As for the putative class, Plaintiffs acknowledge that the preliminary injunction in

25  the *Ms. L.* litigation "prohibited further separations except in limited circumstances,

26  and ordered the reunification of families[,]" and concede that the last act of separation
took place on January 1, 2021. (Complaint, ¶¶ 75, 116.)

27  [5] "[A]ny 42 U.S.C. § 1985 cause of action requires at the outset a 42 U.S.C. § 1983

28  violation." *Cowan v. Brown*, No. 3:14-CV-1886-GPC-WVG, 2014 WL 6621146, at
*3 (S.D. Cal. Nov. 20, 2014), citing *Caldeira v. County of Kauai*, 866 F.2d 1175, 1182

1983 and 1985, the same rule should apply here. *See Cherosky v. Henderson*, 330 F.3d 1243, 1246 (9th Cir. 2003) ("Although *Morgan* involved Title VII of the Civil Rights Act of 1964, the Supreme Court's analysis of the continuing violations doctrine is not limited to Title VII actions. It applies with equal force to the Rehabilitation Act and to actions arising under other civil rights laws.").

An alternative theory of the continuing violation doctrine that Plaintiffs may seek to invoke is known as the "systematic branch," which originally "allowed the plaintiff to recover for acts that occurred prior to the limitations period as long as (1) those acts were conducted pursuant to a policy or practice that remained in effect within the statute of limitations period and (2) the plaintiff remained subject or susceptible to the policy within the limitations period." *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 747 (9th Cir. 2019). The Ninth Circuit, however, has since "abrogate[d] the systematic branch of the continuing violations doctrine" (*id*), including in class action claims. *See Cherosky v. Henderson*, 330 F.3d 1243 (9th Cir. 2003) (plaintiffs "cannot challenge conduct that occurred prior to the limitations period merely by alleging that the conduct was undertaken pursuant to a policy that was still in effect during the limitations period.").

Here, the Complaint alleges that the Plaintiffs' separation caused immediate harm and injury. Plaintiffs cannot avoid the statutes of limitations that bar both of their civil rights conspiracy claims by a conclusory reference to a continuing violations doctrine that the Ninth Circuit does not recognize. The untimeliness of Plaintiffs' claims is revealed by the allegations in their Complaint, and dismissal on that basis is required.[6]

---

(9th Cir.1989).

[6] Even if the Plaintiffs civil conspiracy claims were not time barred (they are), the same cannot be said for the majority of the putative class for whom the average separation period was 154 days. (Complaint, ¶ 91.) This (among other things) raises serious questions about whether Plaintiffs will be able to prove the requirements for class certification, but that issue is beyond the scope of this motion.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:24-cv-01265-DMS-AHG

**E.      Plaintiffs' State Law Claims Must Be Dismissed For Failure to State
a Claim Because They Are Time Barred By The Applicable Statute
of Limitations (F.R.C.P. 12(b)(6))**

Civil Code section 49(a) states: "The rights of personal relations forbid: [¶] (a)
The abduction or enticement of a child from a parent, or from a guardian entitled to its
custody." "California courts have long held that Section 49 'definitely limits the
causes of action' to the predicates enumerated in the statute, which in this case are
abduction or enticement of a child." *Wilson v. Wilson*, No. 20-CV-01076-JD, 2020
WL 4590281, at *1 (N.D. Cal. May 12, 2020) citing *Rudley v. Tobias*, 190 P.2d 984,
986 (Cal. Ct. App. 1948) (dismissing claim noting: "There is no plausible allegation
in the complaint that Wilson's daughter was kidnapped or enticed."); *see also McClain
v. SBC Sheriff Dep't*, No. EDCV171178CJCJCG, 2018 WL 6118516, at *5 (C.D. Cal.
Jan. 24, 2018) (dismissing Civil Code section 49 claim where "there are no allegations
that Defendants 'abducted' the children or 'enticed' them away from
Plaintiffs. . . . They were removed by CFS-defendants under color of law.")

Here, Plaintiffs fail to state facts sufficient to state a claim for child abduction
under Civil Code section 49. The Complaint alleges that MVM was fulfilling its duties
under validly issued government contracts to transport children from ICE to ORR. The
Complaint does not allege that these contracts were invalid. Moreover, the Complaint
does not allege that MVM abducted or enticed Junior from Padre. Instead, the
Complaint alleges that Junior was then transported by the government in "patrol car"
to San Diego Airport, and only then was Junior "transferred to the custody of two
MVM employees." Complaint, ¶¶ 145-48, 152-53. Far from alleging that MVM
abducted or enticed Junior away from Padre, the Complaint appears to allege another
woman, likely an agent for the United States, separated Junior and Padre pursuant to
the federal immigration policy in place at the time, and then delivered Junior to the
custody of MVM. Because Plaintiffs have not alleged sufficient facts to state a claim
for Civil Code section 49(a), the cause of action must be dismissed.

1

**1.    Plaintiffs' State Law Claims Are Time Barred**

2    A claim under Civil Code section 49(a) for child abduction and interference

3 with parent-child relations is governed by the California statute of limitations for

4 personal injury. *See Risk v. Kingdom of Norway*, 707 F. Supp. 1159, 1169 (N.D. Cal.

5 1989), *aff'd sub nom. Risk v. Halvorsen*, 936 F.2d 393 (9th Cir. 1991) (claims for

6 intentional infliction of emotional distress and for interference with parental

7 relationship are governed by personal injury statute of limitations). The statute of

8 limitations for personal injury claims is two years. Cal. Code Civ. Proc. § 335.1.

9    Similarly, "[i]ntentional infliction of emotional distress ["IIED"] has a two-year

10 statute of limitations." *Wassmann v. South Orange County Community College*

11 *District*, 24 Cal.App.5th 825, 852–853 (2018) (citing Code Civ. Proc., § 335.1). "'A

12 cause of action for intentional infliction of emotional distress accrues, and the statute

13 of limitations begins to run, once the plaintiff suffers severe emotional distress as a

14 result of outrageous conduct on the part of the defendant.'" *Id.* To state a cause of

15 action for intentional infliction of emotional distress a plaintiff must show: "(1)

16 outrageous conduct by the defendant; (2) the defendant's intention of causing or

17 reckless disregard of the probability of causing emotional distress; (3) the plaintiff's

18 suffering severe or extreme emotional distress; and (4) actual and proximate causation

19 of the emotional distress by the defendant's outrageous conduct." *Yau v. Santa*

20 *Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 160–61 (2014).

21    Here, assuming arguendo that Plaintiffs alleged all necessary elements (they did

22 not) the claims for both state law claims accrued when Padre and Junior were

23 separated. The Complaint alleges that "Padre's separation from his son caused him

24 severe distress, humiliation, and emotional pain and suffering" and "Junior's forcible

25 separation and inability to be reunited with his father caused him to suffer severe

26 distress, loss of dignity, and emotional pain and suffering." Complaint, ¶¶ 169-70. The

27 Complaint further alleges that this separation took place on or about November 3,

28 2017. *Id.*, ¶ 26. Each element of the child abduction claim and the IIED claim accrued

34

1  upon separation. Thus, the statutes of limitations began to run in November 2017 and

2  expired in November 2019.

3      Plaintiffs again attempt to plead around these statute of limitations problems.

4  They artfully allege the same conclusory statement that "[t]he forcible separation of

5  families alleged herein were continuing violations that did not cease until the

6  reunification of the family." Complaint, ¶¶ 236, 242. This remains a conclusory

7  allegation that is not assumed to be true and remains contrary to Ninth Circuit law. *See*

8  *Bird*, 935 F.3d at 748 ("[C]ontinuing effect [of a past violation] is insufficient to

9  constitute a continuing violation."). Beyond the initial separation of Padre and Junior

10  in November 2017, the Complaint does not allege that MVM undertook any further

11  action to deprive them of the ability to reunite. The last interaction either Plaintiff had

12  with MVM was when MVM delivered Junior to ORR custody as required under its

13  contract. *See* Complaint, ¶ 161. Because the claims are time barred, they must be

14  dismissed.

15  **V.    CONCLUSION**

16      For the reasons stated herein, Defendant MVM respectfully requests that this

17  Court dismiss with prejudice the entirety of this action pursuant to Federal Rules of

18  Civil Procedure 12(b)(6) and 12(b)(7).

19
20  Dated: November 12, 2024        PILLSBURY WINTHROP SHAW PITTMAN LLP

21

22                      By:  *s/ Paul J. Fraidenburgh*
23                          Paul J. Fraidenburgh
24                          Thomas C. Hill
                            Michelle A. Herrera
25                          J. Ryan Stasell
                            Alexander P. Carroll
26

27                          Attorneys for Defendant MVM, Inc.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS