PILLSBURY WINTHROP SHAW PITTMAN LLP
PAUL J. FRAIDENBURGH (280354)
MICHELLE A. HERRERA (209842)
J. RYAN STASELL (307431)
ALEXANDER P. CARROLL (339890)
11682 El Camino Real, Suite 200
San Diego, CA 92130
Telephone:  858-509-4000; Facsimile: 858-509-4010
Email:  paul.fraidenburgh@pillsburylaw.com
        michelle.herrera@pillsburylaw.com
        ryan.stasell@pillsburylaw.com
        alexander.carroll@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
THOMAS C. HILL (DC 242974)
1200 Seventeenth Street, NW
Washington, DC  20036
Telephone:  202-663-8000; Facsimile: 202-663-8007
Email:  thomas.hill@pillsburylaw.com
(*Admitted Pro Hac Vice*)

Attorneys for Defendant MVM, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PADRE (*alias*) and JUNIOR (*alias*), *on behalf of themselves and all others similarly situated,*<br><br>Plaintiffs,<br><br>vs.<br><br>MVM, INC.,<br><br>Defendant. | Case No.  3:24-cv-01265-DMS-AHG<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT MVM, INC.'S MOTION TO DISMISS UNDER RULE 12(b)(6) AND 12(b)(7)**<br><br>Date:           December 20, 2024<br>Time:          1:30 p.m.<br>Courtroom:  13A<br><br>Judge: Hon. Dana M. Sabraw<br>Complaint Filed:  July 23, 2024<br>Trial Date:  None Set |

# I.    REQUEST FOR JUDICIAL NOTICE

Defendant MVM, Inc. ("MVM") respectfully requests this Court take judicial notice of the following documents, true and correct copies of which are attached hereto, pursuant to Rule 201 of the Federal Rules of Evidence:

1.    Joint Motion for Final Approval of Class Action Settlement, and to Certify Settlement Class, ECF No. 721, *Ms. L. v. U.S. Immigration and Customs Enforcement*, Case No. 3:18-cv-000428-DMS-AHG, U.S. District Court, Southern District of California;

2.    Order Granting Final Approval of Settlement Agreement and Certifying the Settlement Classes, ECF No. 727, *Ms. L. v. U.S. Immigration and Customs Enforcement*, Case No. 3:18-cv-000428-DMS-AHG, U.S. District Court, Southern District of California;

3.    [Proposed] Order of Dismissal, ECF No. 281, *D.J.C.V. v. United States*, Case No. 1:20-cv-05747-PAE, U.S. District Court, Southern District of New York;

4.    Order Approving Settlement of Minor's Claims, ECF No. 94, *F.R. v. United States of America*, Case No. 2:21-cv-00339-DLR, U.S. District Court, District of Arizona;

5.    Order, ECF No. 134, *A.I.I.L., et al. v. United States of America*, Case No. 4:19-cv-00481-JCH, U.S. District Court, District of Arizona;

6.    Order Approving Settlement of Minor's Claims, ECF No. 100, *E.S.M., et al. v. United States of America*, Case No. 4:21-cv-00029-JAS, U.S. District Court, District of Arizona;

7.    Order Approving Settlements of Minors' Claims, ECF No. 470, *C.M., et al. v. United States of America*, Case No. 2:19-cv-05217-SRB, U.S. District Court, District of Arizona;

8.    Order Granting Motion to Approve Settlement Involving Claims of A Minor, ECF No. 71, *J.R.G., et al. v. United States of America*,

2

1   Case No. 4:22-cv-05183-KAW, U.S. District Court, Northern

2   District of California;

3   9.   Order, ECF No. 92, *B.A.D.J v. United States of America*, Case No.

4   2:21-cv-00215, U.S. District Court, District of Arizona;

5   10.   First page of Complaint, *C.M., et al. v. United States*, Case No. 2:19-

6   cv-015217-SRB, U.S. District Court, District of Arizona;

7   11.   First page of Complaint, *A.I.I.L., et al. v. Sessions, et al.,* Case No.

8   4:19-cv-00481-JAS, U.S. District Court, District of Arizona;

9   12.   First page of Complaint, *J.J.P.B. v. United States*, Case No. 7:23-cv-

10   00133, U.S. District Court, District of Texas;

11   13.   First page of Complaint, *A.P.F., et al. v. United States of America*,

12   Case No. 2:20-cv-00065-SRB, U.S. District Court, District of

13   Arizona;

14   14.   First page of Complaint, *D.A., et al. v. United States of America, et*

15   *al.*, Case No. 3:22-cv-00295, U.S. District Court, Northern District

16   of Illinois, Eastern Division;

17   15.   First page of Complaint, *D.J.C.V., et al. v. United States of America*,

18   Case No. 1:20-cv-5747-PAE, U.S. District Court, Southern District

19   of New York;

20   16.   First page of Complaint, *R.Y.M.R., et al. v. United States of America,*

21   Case No. 1:20-cv-23598-KMW, U.S. District Court, Southern

22   District of Florida, Miami Division;

23   17.   First page of Complaint, *E.L.A., et al. v. United States of America*,

24   Case No. 2:20-cv-01524-RAJ, U.S. District Court, Western Division

25   of Washington at Seattle;

26   18.   First page of Complaint, *K.O., et al. v. United States of America*,

27   Case No. 1:20-cv-12015, U.S. District Court, District of

28   Massachusetts;

3

19.   First page of Complaint, *Fuentes-Ortega, et al. v. United States of America*, Case No. 2:22-cv-00449-DGC, U.S. District Court, Northern District of Georgia, Rome Division;

20.   First page of Complaint, *Nunez Euceda v. United States of America*, Case No. 2:20-cv-10793-VAP-GJS, U.S. District Court, Central District of California, Western Division;

21.   First page of Complaint, *E.S.M. v. United States of America*, Case No. 4:21-cv-00029-JAS, U.S. District Court, District of Arizona;

22.   First page of Complaint, *C.D.A., et al. v. United States of America*, Case No. 2:21-cv-00469, U.S. District Court, Eastern District of Pennsylvania;

23.   First page of Complaint, *S.E.B.M. v. The United States of America*, Case No. 1:21-cv-00095-JHR-LF, U.S. District Court, District of New Mexico;

24.   First page of Complaint, *B.A.D.J., et al. v. United States of America*, Case No. 2:21-cv-00215-SMB, U.S. District Court, District of Arizona;

25.   First page of Complaint, *F.R., et al. v. United States of America*, Case No. 2:21-cv-00339-DLR, U.S. District Court, District of Arizona;

26.   First page of Complaint, *C.M., et al. v. United States of America*, Case No. 5:21-cv-00234-JKP-ESC, U.S. District Court, Western District of Texas, San Antonio Division;

27.   First page of Complaint, *A.F.P., et al. v. United States of America*, Case No. 1:21-cv-00780-DAD-EPG, U.S. District Court, Eastern District of California;

28.   First page of Complaint, *W.P.V., et al. v. United States of America, et al.*, Case No. 3:23-cv-00074, U.S. District Court, Southern District of New York;

29.   First page of Complaint, *P.G., et al. v. United States of America*, Case No. 3:21-cv-04457, U.S. District Court, Northern District of California, San Francisco Division;

30.   First page of Complaint, *J.P, et al. v. United States of America*, Case No. 2:22-cv-00683-MTL, U.S. District Court, District of Arizona;

31.   First page of Complaint, *Arredondo Rodriguez v. United States of America*, Case No. 2:22-cv-02845, U.S. District Court, Central District of California, Western Division;

32.   First page of Complaint, *E.C.B., et al. v. United States of America*, Case No. 2:22-cv-00915-CDB, U.S. District Court, District of Arizona;

33.   First page of Complaint, *Flores Benitez, et al. v. Miller, et al.*, Case No. 3:22-cv-00884-JCH, U.S. District Court, District of Connecticut;

34.   First page of Complaint, *M.S.E., et al. v. United States of America*, Case No. 2:22-cv-01242-JZB, U.S. District Court, District of Arizona;

35.   First page of Complaint, *F.C.C., et al. v. United States of America*, Case No. 1:23-cv-03146-APM, U.S. District Court, Eastern District of New York;

36.   First page of Complaint, *S.M.F., et al. v. United States of America*, Case No. 2:22-cv-01193-LK, U.S. District Court, Western District of Washington at Seattle;

37.   First page of Complaint, *J.R.G., et al. v. United States of America*, Case No. 4:22-cv-01583-KAW, U.S. District Court, Northern District California;

5

38.   First page of Complaint, *Eduardo I.T., et al. v. United States of America*, Case No. 3:22-cv-05333, U.S. District Court, Northern District of California, Oakland Division;

39.   First page of Complaint, *B.Y.C.C., et al. v. United States of America*, Case No. 3:22-cv-06586-MAS-JTQ, U.S. District Court, District of New Jersey;

40.   First page of Complaint, *J.A.L.C., et al. v. United States of America*, Case No. 3:22-cv-06587-MAS-DEA, U.S. District Court, District of New Jersey;

41.   First page of Complaint, *R.J.P., et al. v. United States of America*, Case No. 3:22-cv-06588-MAS-DEA, United States District Court, District of New Jersey;

42.   First page of Answer, *A.E.S.E., et al. v. United States of America, et al.*, Case No. 2:21-cv-00569-RB-GBW, U.S. District Court, District of New Mexico;

43.   First page of Complaint, *Leticia, et al. v. The United States of America*, Case No. 1:22-cv-07527-NGG-RML, U.S. District Court, Eastern District of New York;

44.   First page of Complaint, *Caal, et al. v. United States of America*, Case No. 1:23-cv-00598, U.S. District Court, Northern District of Illinois;

45.   First page of Complaint, *Gonzales de Zuniga, et al. v. The United States of America*, Case No. 2:23-cv-00162-MV-JHR, U.S. District Court, District of New Mexico;

46.   First page of Complaint, *M.A.N.H., et al. v. United States of America*, Case No. 5:23-cv-00372-JGB-KK, U.S. District Court, Central District of California;

47.    First page of Complaint, *J.P., et al. v. United States of America*, Case No. 1:23-cv-01136-JES-JEH, U.S. District Court, Central District of Illinois;

48.    First page of Complaint, *M.M.C., et al. v. United States of America*, Case No. 1:23-cv-00158-WES-LDA, U.S. District Court, District of Rhode Island;

49.    First page of Complaint, *N.R., et al. v. United States of America*, Case No. 4:23-cv-00201-JR, U.S. District Court, District of Arizona;

50.    First page of Complaint, *P.C.J., et al. v. United States of America*, Case No. 2:23-cv-00780-DJH, U.S. District Court, District of Arizona;

51.    First page of Complaint, *Aguilar Morales, et al. v. United States of America*, Case No. 3:23-cv-00247, U.S. District Court, Western District of Texas, El Paso Division;

52.    First page of Complaint, *R.L.L., et al. v. United States of America*, Case No. 4:23-cv-04792, U.S. District Court, Northern District of California, Oakland Division;

53.    First page of Complaint, *J.C.O.C, et al. v. United States of America*, Case No. 3:23-cv-05268, U.S. District Court, Northern District of California;

54.    Daniel Dale, *Fact-checking Biden's 'garbage' claim about media reports on possible payments to separated migrant families*, CNN NEWS (Nov. 5, 2021, 7:21 AM), https://www.cnn.com/2021/11/05/politics/fact-check-biden-garbage-compensation-family-separation/index.html;

55.    Julia Ainsley and Jacob Soboroff, *Biden admin may pay millions to migrant families separated at border under Trump*, NBC NEWS (Oct. 28, 2021, 2:23 PM), https://www.nbcnews.com/politics/

1  immigration/biden-admin-may-pay-millions-migrant-families-
2  separated-border-under-n1282670;

3  56.  Nicole Acevedo and Jacob Soboroff, *Justice Dept. defends Trump*
4  *family separations in court, citing 'perceived humanitarian*
5  *considerations'*, NBC NEWS (June 1, 2023, 11:45 AM),
6  https://www.nbcnews.com/news/latino/biden-justice-dept-defends-
7  trump-family-separations-court-rcna87115;

8  57.  Miriam Jordan, *Family Members Separated at Border May Each Get*
9  *Up to $450,000*, N.Y. TIMES (October 28, 2021, 5:08 PM),
10  https://www.nytimes.com/2021/10/28/us/politics/trump-family-
11  separation-border.html.

## II.   ARGUMENT

Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources who accuracy cannot reasonably be questioned."

### A. This Court May Take Judicial Notice of Court Filings Because They Are Undisputed Matters of Public Record or Have Been Incorporated by Reference.

"Courts may take judicial notice of undisputed matters of public record." *California Parents for Equalization of Educ. Materials v. Torlakson*, 267 F. Supp. 3d 1218, 1223 n.4 (N.D. Cal. 2017), aff'd sub nom. *California Parents for the Equalization of Educ. Materials v. Torlakson*, 973 F.3d 1010 (9th Cir. 2020). "Courts may also consider documents incorporated by reference in the complaint." *Id.* citing *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

Here, MVM seeks judicial notice of Exhibits 1 and 2 on the grounds that Plaintiffs incorporated these documents by reference into their Complaint. *See* Complaint, ¶¶ 18, 180 n.62 (referencing settlement agreement entered into in *Ms. L.*

8

Litigation and Court order approving settlement agreement).  Because Plaintiffs reference Exhibit 1 and 2 to support the factual basis of their Complaint and to form the parameters of the instant putative class, the Court may take judicial notice of the *Ms. L.* settlement agreement and the order granting it.  Moreover, this Court is in a special position to affirm the accuracy of these documents as it has overseen the *Ms. L.* Litigation.

Additionally, Exhibits 1-53 are subject to judicial notice to the extent that they are undisputed matters of public record.  Each document may be downloaded from the applicable court website.  In other words, the court documents are not subject to reasonable dispute because their existence may "accurately and readily" be "determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. R. 201(b); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking notice of court filings and other matters of public record); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (noting that a court may take judicial notice of another court's opinion).

Because each document is either incorporated by reference in Plaintiffs' Complaint or is a matter of public record not subject to reasonable dispute, MVM requests the Court take judicial notice of Exhibits 1 through 53.

**B.  This Court May Take Judicial Notice of News Articles.**

Courts "may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" *Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1071 (S.D. Cal. 2021); *see also Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (judicially noticing "the fact that various newspapers, magazines, and books have published information about the [art that was the subject of the suit]").

Here, the Court may take judicial notice of Exhibits 54-57 to the extent that the articles show what was "in the public realm at the time," they were written.  As such, the Court may take notice that the Government had repeatedly publicly

9

1  discussed litigation surrounding the Family Separation Policy.  Defendants offer the

2  news articles attached as Exhibits 54-57 to show that the Government has an interest

3  in the instant lawsuit, not for the truth of the facts asserted in the news articles.

4  **III.    CONCLUSION**

5        Based on the foregoing, MVM respectfully requests the Court take judicial

6  notice of Exhibits 1-57 attached hereto.

7

8  Dated: November 12, 2024          PILLSBURY WINTHROP SHAW PITTMAN LLP

9

10                    By:  *s/ Paul J. Fraidenburgh*

11                      Paul J. Fraidenburgh (280354)

12                      Michelle A. Herrera (209842)
                    J. Ryan Stasell (307431)

13                      Alexander P. Carroll (339890)

14                      11682 El Camino Real, Suite 200
                    San Diego, CA 92130

15                      Telephone:  858-509-4000

16                      Facsimile: 858-509-4010
                    paul.fraidenburgh@pillsburylaw.com

17                      michelle.herrera@pillsburylaw.com

18                      ryan.stasell@pillsburylaw.com
                    alexander.carroll@pillsburylaw.com

19

20                      Thomas C. Hill (DC 242974)

21                      (*Admitted Pro Hac Vice*)
                    PILLSBURY WINTHROP SHAW PITTMAN LLP

22                      1200 Seventeenth Street, NW
                    Washington, DC  20036

23                      Telephone:  202-663-8000

24                      Facsimile:   202-663-8007
                    thomas.hill@pillsburylaw.com

25

26                      Attorneys for Defendant MVM, Inc.

27

28

# TABLE OF CONTENTS

| Exhibit | Description | Page |
|---------|-------------|------|
| 1 | Joint Motion for Final Approval of Class Action Settlement, and to Certify Settlement Class, ECF No. 721, *Ms. L. v. U.S. Immigration and Customs Enforcement*, Case No. 3:18-cv-000428-DMS-AHG, U.S. District Court, Southern District of California | 18 |
| 2 | Order Granting Final Approval of Settlement Agreement and Certifying the Settlement Classes, ECF No. 727, *Ms. L. v. U.S. Immigration and Customs Enforcement*, Case No. 3:18-cv-000428-DMS-AHG, U.S. District Court, Southern District of California | 77 |
| 3 | [Proposed] Order of Dismissal, ECF No. 281, *D.J.C.V. v. United States*, Case No. 1:20-cv-05747-PAE, U.S. District Court, Southern District of New York | 83 |
| 4 | Order Approving Settlement of Minor's Claims, ECF No. 94, *F.R. v. United States of America*, Case No. 2:21-cv-00339-DLR, U.S. District Court, District of Arizona | 100 |
| 5 | Order, ECF No. 134, *A.I.I.L., et al. v. United States of America*, Case No. 4:19-cv-00481-JCH, U.S. District Court, District of Arizona | 103 |
| 6 | Order Approving Settlement of Minor's Claims, ECF No. 100, *E.S.M., et al. v. United States of America*, Case No. 4:21-cv-00029-JAS, U.S. District Court, District of Arizona | 106 |
| 7 | Order Approving Settlements of Minors' Claims, ECF No. 470, *C.M., et al. v. United States of America*, Case No. 2:19-cv-05217-SRB, U.S. District Court, District of Arizona | 108 |

| 8 | Order Granting Motion to Approve Settlement Involving Claims of A Minor, ECF No. 71, *J.R.G., et al. v. United States of America*, Case No. 4:22-cv-05183-KAW, U.S. District Court, Northern District of California | 111 |
| 9 | Order, ECF No. 92, *B.A.D.J v. United States of America*, Case No. 2:21-cv-00215, U.S. District Court, District of Arizona | 115 |
| 10 | First page of Complaint, *C.M., et al. v. United States*, Case No. 2:19-cv-015217-SRB, U.S. District Court, District of Arizona | 118 |
| 11 | First page of Complaint, *A.I.I.L., et al. v. Sessions, et al.,* Case No. 4:19-cv-00481-JAS, U.S. District Court, District of Arizona | 120 |
| 12 | First page of Complaint, *J.J.P.B. v. United States*, Case No. 7:23-cv-00133, U.S. District Court, District of Texas | 122 |
| 13 | First page of Complaint, *A.P.F., et al. v. United States of America*, Case No. 2:20-cv-00065-SRB, U.S. District Court, District of Arizona | 124 |
| 14 | First page of Complaint, *D.A., et al. v. United States of America, et al.*, Case No. 3:22-cv-00295, U.S. District Court, Northern District of Illinois, Eastern Division | 126 |
| 15 | First page of Complaint, *D.J.C.V., et al. v. United States of America*, Case No. 1:20-cv-5747-PAE, U.S. District Court, Southern District of New York | 128 |
| 16 | First page of Complaint, *R.Y.M.R., et al. v. United States of America,* Case No. 1:20-cv-23598-KMW, U.S. District Court, Southern District of Florida, Miami Division | 130 |
| 17 | First page of Complaint, *E.L.A., et al. v. United States of America*, Case No. 2:20-cv-01524-RAJ, U.S. District Court, Western Division of Washington at Seattle | 132 |
| 18 | First page of Complaint, *K.O., et al. v. United States of America*, Case No. 1:20-cv-12015, U.S. District Court, District of Massachusetts | 134 |

| 19 | First page of Complaint, *Fuentes-Ortega, et al. v. United States of America*, Case No. 2:22-cv-00449-DGC, U.S. District Court, Northern District of Georgia, Rome Division | 136 |
|----|----|----|
| 20 | First page of Complaint, *Nunez Euceda v. United States of America*, Case No. 2:20-cv-10793-VAP-GJS, U.S. District Court, Central District of California, Western Division | 138 |
| 21 | First page of Complaint, *E.S.M. v. United States of America*, Case No. 4:21-cv-00029-JAS, U.S. District Court, District of Arizona | 140 |
| 22 | First page of Complaint, *C.D.A., et al. v. United States of America*, Case No. 2:21-cv-00469, U.S. District Court, Eastern District of Pennsylvania | 142 |
| 23 | First page of Complaint, *S.E.B.M. v. The United States of America*, Case No. 1:21-cv-00095-JHR-LF, U.S. District Court, District of New Mexico | 144 |
| 24 | First page of Complaint, *B.A.D.J., et al. v. United States of America*, Case No. 2:21-cv-00215-SMB, U.S. District Court, District of Arizona | 146 |
| 25 | First page of Complaint, *F.R., et al. v. United States of America*, Case No. 2:21-cv-00339-DLR, U.S. District Court, District of Arizona | 148 |
| 26 | First page of Complaint, *C.M., et al. v. United States of America*, Case No. 5:21-cv-00234-JKP-ESC, U.S. District Court, Western District of Texas, San Antonio Division | 150 |
| 27 | First page of Complaint, *A.F.P., et al. v. United States of America*, Case No. 1:21-cv-00780-DAD-EPG, U.S. District Court, Eastern District of California | 152 |
| 28 | First page of Complaint, *W.P.V., et al. v. United States of America, et al.*, Case No. 3:23-cv-00074, U.S. District Court, Southern District of New York | 154 |

| 29 | First page of Complaint, *P.G., et al. v. United States of America*, Case No. 3:21-cv-04457, U.S. District Court, Northern District of California, San Francisco Division | 156 |
|----|---|---|
| 30 | First page of Complaint, *J.P, et al. v. United States of America*, Case No. 2:22-cv-00683-MTL, U.S. District Court, District of Arizona | 158 |
| 31 | First page of Complaint, *Arredondo Rodriguez v. United States of America*, Case No. 2:22-cv-02845, U.S. District Court, Central District of California, Western Division | 160 |
| 32 | First page of Complaint, *E.C.B., et al. v. United States of America*, Case No. 2:22-cv-00915-CDB, U.S. District Court, District of Arizona | 162 |
| 33 | First page of Complaint, *Flores Benitez, et al. v. Miller, et al.*, Case No. 3:22-cv-00884-JCH, U.S. District Court, District of Connecticut | 164 |
| 34 | First page of Complaint, *M.S.E., et al. v. United States of America*, Case No. 2:22-cv-01242-JZB, U.S. District Court, District of Arizona | 166 |
| 35 | First page of Complaint, *F.C.C., et al. v. United States of America*, Case No. 1:23-cv-03146-APM, U.S. District Court, Eastern District of New York | 168 |
| 36 | First page of Complaint, *S.M.F., et al. v. United States of America*, Case No. 2:22-cv-01193-LK, U.S. District Court, Western District of Washington at Seattle | 170 |
| 37 | First page of Complaint, *J.R.G., et al. v. United States of America*, Case No. 4:22-cv-01583-KAW, U.S. District Court, Northern District California | 172 |
| 38 | First page of Complaint, *Eduardo I.T., et al. v. United States of America*, Case No. 3:22-cv-05333, U.S. District Court, Northern District of California, Oakland Division | 174 |

| 39 | First page of Complaint, *B.Y.C.C., et al. v. United States of America*, Case No. 3:22-cv-06586-MAS-JTQ, U.S. District Court, District of New Jersey | 176 |
| 40 | First page of Complaint, *J.A.L.C., et al. v. United States of America*, Case No. 3:22-cv-06587-MAS-DEA, U.S. District Court, District of New Jersey | 178 |
| 41 | First page of Complaint, *R.J.P., et al. v. United States of America*, Case No. 3:22-cv-06588-MAS-DEA, United States District Court, District of New Jersey | 180 |
| 42 | First page of Answer, *A.E.S.E., et al. v. United States of America, et al.*, Case No. 2:21-cv-00569-RB-GBW, U.S. District Court, District of New Mexico | 182 |
| 43 | First page of Complaint, *Leticia, et al. v. The United States of America*, Case No. 1:22-cv-07527-NGG-RML, U.S. District Court, Eastern District of New York | 184 |
| 44 | First page of Complaint, *Caal, et al. v. United States of America*, Case No. 1:23-cv-00598, U.S. District Court, Northern District of Illinois | 186 |
| 45 | First page of Complaint, *Gonzales de Zuniga, et al. v. The United States of America*, Case No. 2:23-cv-00162-MV-JHR, U.S. District Court, District of New Mexico | 188 |
| 46 | First page of Complaint, *M.A.N.H., et al. v. United States of America*, Case No. 5:23-cv-00372-JGB-KK, U.S. District Court, Central District of California | 190 |
| 47 | First page of Complaint, *J.P., et al. v. United States of America*, Case No. 1:23-cv-01136-JES-JEH, U.S. District Court, Central District of Illinois | 192 |
| 48 | First page of Complaint, *M.M.C., et al. v. United States of America*, Case No. 1:23-cv-00158-WES-LDA, U.S. District Court, District of Rhode Island | 194 |

| 49 | First page of Complaint, *N.R., et al. v. United States of America*, Case No. 4:23-cv-00201-JR, U.S. District Court, District of Arizona | 196 |
| 50 | First page of Complaint, *P.C.J., et al. v. United States of America*, Case No. 2:23-cv-00780-DJH, U.S. District Court, District of Arizona | 198 |
| 51 | First page of Complaint, *Aguilar Morales, et al. v. United States of America*, Case No. 3:23-cv-00247, U.S. District Court, Western District of Texas, El Paso Division | 200 |
| 52 | First page of Complaint, *R.L.L., et al. v. United States of America*, Case No. 4:23-cv-04792, U.S. District Court, Northern District of California, Oakland Division | 202 |
| 53 | First page of Complaint, *J.C.O.C, et al. v. United States of America*, Case No. 3:23-cv-05268, U.S. District Court, Northern District of California | 204 |
| 54 | Daniel Dale, *Fact-checking Biden's 'garbage' claim about media reports on possible payments to separated migrant families*, CNN NEWS (Nov. 5, 2021, 7:21 AM), https://www.cnn.com/2021/11/05/ politics/fact-check-biden-garbage-compensation-family-separation/ index.html | 206 |
| 55 | Julia Ainsley and Jacob Soboroff, *Biden admin may pay millions to migrant families separated at border under Trump*, NBC NEWS (Oct. 28, 2021, 2:23 PM), https://www.nbcnews.com/politics/ immigration/biden-admin-may-pay-millions-migrant-families-separated-border-under-n1282670 | 211 |
| 56 | Nicole Acevedo and Jacob Soboroff, *Justice Dept. defends Trump family separations in court, citing 'perceived humanitarian considerations'*, NBC NEWS (June 1, 2023, 11:45 AM), https://www.nbcnews.com/news/latino/biden-justice-dept-defends-trump-family-separations-court-rcna87115 | 216 |

| 57 | Miriam Jordan, *Family Members Separated at Border May Each Get Up to $450,000*, N.Y. TIMES (October 28, 2021, 5:08 PM), https://www.nytimes.com/2021/10/28/us/politics/trump-family-separation-border.html | 222 |

EXHIBIT 1

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General
CHRISTOPHER P. TENORIO
Deputy Assistant Attorney General
(SBN 166022)
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
U.S. Department of Justice
WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
FIZZA BATOOL
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962


*Attorneys for Federal Defendants*

Lee Gelernt*
Daniel A. Galindo (SBN 292854)
Anand Balakrishnan*
Judy Rabinovitz*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*


Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*


*Attorneys for Plaintiffs*
*\*Admitted Pro Hac Vice*

1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ms. L., et al.,

                    *Petitioners-Plaintiffs*,

v.

U.S. Immigration and Customs Enforcement
("ICE"), et al.

                    *Respondents-Defendants*.

Case No. 18-cv-00428-DMS-AHG

Date Filed: December 1, 2023

**JOINT MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT, AND TO
CERTIFY SETTLEMENT CLASS**

# INTRODUCTION

The parties hereby jointly move under Federal Rule of Civil Procedure 23 for final approval of the class action settlement in this case, and to certify the proposed *Ms. L.* Settlement Class. *See* Dkt. 711-1 ("Settlement Agreement").

As the parties previously described, the parties have agreed on the substantive terms of the relief that will be provided to *Ms. L.* Settlement Class members who were separated from their children. In addition, the parties have agreed on extensive procedures and criteria to limit separations in the future, as well as processes and information-sharing systems. The parties have also participated in discussions to clarify and modify the scope of the *Ms. L.* Settlement Class to include additional families and ensure that they are also provided relief.

The Settlement is limited to injunctive relief and does not address or waive any claims the Class members may have for money damages.

Since the date of this Court's order preliminarily approving the Settlement, the parties have provided notice to the Class according to their proposed notice plan, as well as in a variety of other ways. No Class Member has objected to the Settlement.

As the parties explained during a brief status conference with the Court on Thursday, November 30, 2023, the parties have made a set of amendments to the Settlement Agreement since the Court granted preliminary approval. The parties seek Court approval of the amended Settlement. The amendments extend the deadlines for certain Ms. L. Settlement Class members to seek asylum from one year to two years, to ensure that such Ms. L. Settlement Class members will have the benefit of the legal assistance provided in the Settlement Agreement. This amendment benefits Ms. L. Settlement Class members, and Defendants do not object to the amendment. The parties have attached the amended Settlement Agreement to this Motion, and will post the amended Settlement Agreement on the parties' web pages.

18cv00428

Accordingly, the parties respectfully request that the Court grant final approval of the Settlement Agreement and the proposed *Ms. L.* Settlement Class.

## BACKGROUND

The history of this case is set forth in numerous orders and filings in this case, including in the briefs filed in connection with the parties' request for preliminary approval of the Settlement. *See* Dkt. 711, 715. The motion will therefore focus on updates that have taken place since the Court's preliminary approval order.

Since October 24, 2023 (the date of this Court's approval order), the parties have complied with the proposed notice plan and undertaken efforts that go beyond the plan's requirements. Among other things:

- The parties promptly posted the English and Spanish versions of the Class Notice on the websites of the ACLU, as well as those of Defendant agencies, in prominent and easily accessible locations;

- Plaintiffs have disseminated information concerning the Settlement Agreement to a confidential listserv of hundreds of nonprofit immigration legal services providers, pro bono lawyers, private immigration lawyers, and other advocates who represent Class Members and separated families;

- Plaintiffs have distributed information concerning the Settlement to nonprofit organizations that represent or work with separated families, some of whom work with hundreds of Class Members. A nonexhaustive list of the organizations Plaintiffs have contacted include the following: Al Otro Lado, Asylum Seeker Advocacy Project (ASAP), CLINIC, Immigrant Defenders Law Center, the Florence Immigrant and Refugee Rights Project, Justice in Motion, Kids in Need of Defense (KIND), Lowenstein Sandler LLP, National Immigrant Justice Center (NIJC), National Immigration Project of the National Lawyers Guild (NIPNLG),

RAICES, Texas Civil Rights Project, Together & Free, and the Young Center;

- Plaintiffs have circulated information concerning the Settlement Agreement, and the Class Notices, via multiple listservs that focus on working with migrant children and families;

- Plaintiffs have communicated with numerous individual lawyers and advocates who represent Class Members, to explain the Settlement's terms.

The proposed Settlement has also received extensive media coverage, which has further helped publicize its terms.

As of the date of this filing, Plaintiffs have received no objections to the Settlement. *See* Dkt. 719. Should Plaintiffs receive any mailed objections, they will provide them promptly to the Court.

In addition to this Motion, the parties anticipate filing additional joint motions in the next week to implement the Settlement's terms, including a motion for a revised protective order and a motion for appointment of the independent adjudicator who will resolve any disputes concerning *Ms. L.* Settlement Class membership. And as the parties previously explained, the parties will enter fee negotiations after the Settlement is finally approved and anticipate submitting a motion for attorneys' fees to this Court for approval at a later date.

## ARGUMENT

### I. The Court Should Grant Final Approval of the Proposed Settlement.

The Court should approve the Agreement. A court may approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court considers several factors, which include:

(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the . . . stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

The Court should presume the fairness of arms-length settlements reached by experienced counsel. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). "That the agreement was entered following litigation and negotiations facilitated by such counsel provides further support for approval." *Chan v. Sutter Health Sacramento Sierra Region*, No. LACV1502004JAKAGRX, 2017 WL 819903, at *5 (C.D. Cal. Feb. 14, 2017). "Additionally, there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

**A. The Agreement Provides the Class with Substantial Benefits and Avoids the Risk and Expense of Further Litigation.**

As the parties have explained, the Settlement provides numerous significant benefits to *Ms. L.* Settlement Class members. The Settlement would afford Class members a range of remedies, all designed to reunify separated families in the United States, as well as employment authorization, housing, and medical benefits. The Settlement also provides facilitation of *Ms. L.* Settlement Class members' asylum claims, to ensure that Defendants account for separation in the evaluation of the Class's asylum claims. As the parties have explained, although the Settlement Agreement preserves discretion on the part of immigration judges and officers to render the Agreement compatible with certain statutory and regulatory provisions, the

24

4

18cv00428

parties expect that Defendants will not abuse that discretion.  The Court will also maintain the ability to monitor good faith compliance with the Agreement.

The Settlement Agreement also establishes detailed procedures governing the separation and reunification of families apprehended at the border.  Section V contains substantive standards, *see, e.g.*, V.B., V.K.3.d, and procedures requiring Defendants to inform the parent of the reason for and facts supporting separation, to share the fact that a child was separated with Legal Service providers for the child's shelter, and to quickly put the child and parent in regular contact. Defendants also agree to ongoing reporting about any separations for three years after the Settlement's approval.

The Settlement also will avoid significant and needless expense.  The parties have vigorously litigated this case since early 2018, including multiple rounds of enforcement proceedings, various expansions and clarifications of the Class definition, and numerous status conferences to discuss the parties' efforts to identify separated families and facilitate their reunification.  The parties believe that further litigation in this case is unwarranted, especially given that the government has established the Family Reunification Task Force.  And in Plaintiffs' view, the Class would not benefit from any further delay and prompt resolution of this case would be greatly beneficial to the Class.

Upon final approval of the Settlement Agreement, the parties will ensure that the *Ms. L.* Settlement Class members receive notice of their rights, including via a third-party-managed outreach campaign to contact Class members both in the United States and abroad, *see* Settlement Agreement, Section VI.A.2.c.iv.

**B. The Agreement Is the Product of Extended Arms-Length Negotiations Between Well-Informed and Experienced Counsel.**

The Settlement is the product of extensive negotiation between counsel for both parties.  Prior to those negotiations, the parties vigorously contested this case for several years, litigating a motion for a preliminary injunction, multiple rounds of

enforcement proceedings, and various disputes concerning the scope of the Class.  The Parties have also negotiated over and engaged in wide-ranging efforts to find and reunify separated families.

The parties negotiated the Agreement over the course of two-and-a-half years, including multiple settlement conferences and meetings between the parties.  The negotiations have involved numerous stakeholders inside and outside the government. The parties' substantial litigation and negotiations over these issues further supports approval of the Agreement.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (affirming approval of settlement after finding "no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims").

Counsel for both parties also have deep experience with similar actions, which further supports preliminary approval.  Plaintiffs' counsel has substantial experience with complex immigration litigation, class actions, and civil rights actions, and has unique expertise in working with Class members in particular.  For their part, Defendants' lawyers are tasked specifically with defending lawsuits raising constitutional and statutory claims related to noncitizens in government custody.  *See* 28 C.F.R. § 0.45(k).  The parties agree that the proposed Settlement is fair, just, and reasonable, and the opinion of the parties' experienced counsel "should be afforded substantial consideration" in reviewing this Agreement.  *Chan*, 2017 WL 819903, at *5.

For all these reasons, the Court should grant approval of this Settlement.  Under Paragraph VII.A of the Settlement Agreement, the Settlement Agreement should be incorporated into the terms of the Court's Order approving the Settlement Agreement, which will constitute the final judgment of the Court with regard to this Action. Plaintiffs' claims should be dismissed with prejudice, with the Court retaining jurisdiction for specified purposes subject to the terms of the Settlement Agreement,

including retaining jurisdiction to enforce the terms of the Settlement Agreement and review any future modifications to the Settlement Agreement that the parties might enter into upon mutual agreement.[1]

## II. The Court Should Grant Certification of the Settlement Class.

As the parties have previously explained, the proposed Settlement Class meets all the requirements of Rule 23(a) and (b)(2). Section II of the Agreement describes the "backward-looking" Settlement Class, which focuses on the families separated by the prior Administration. Section III is procedural and describes the process to resolve disputes concerning membership in the "backward-looking" Class. Finally, Section V.A describes the "forward-looking" Class, focusing on those families that Defendants may separate in the future.

The Settlement Class is so numerous that joinder is impracticable; there are common questions of law and fact; the Named Plaintiffs' claims are typical; the Named Plaintiffs can adequately protect the interest of the Settlement Class; and the Class is ascertainable. Id. at 18-19 (citing Fed. R. Civ. P. 23(a)). Additionally, the Settlement Class meets the requirements of Rule 23(b)(2): Defendants maintain generally applicable policies and practices such that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

---

[1] The Settlement Agreement provides for behavioral health services to be made available to *Ms. L.* Settlement Class members. Those services are currently available to existing class members pursuant to a May 19, 2023 Order from this Court, ECF No. 689. To ensure that class members currently receiving services have time to register as *Ms. L.* Settlement Class members under the terms of the Settlement Agreement and have no gap in their available behavioral health services, the parties stipulate that the Court's Order authorizing those services, ECF No. 689, should remain in effect for 90 days following the Court's final approval of the Settlement Agreement, notwithstanding that the final approval order will otherwise terminate this litigation.

**CONCLUSION**

For all these reasons, the Court should grant the Parties' joint motion to finally approve the settlement and certify the *Ms. L.* Settlement Class.  Under Paragraph VII.A of the Settlement Agreement, the Settlement Agreement should be incorporated into the terms of the Court's Order approving the Settlement Agreement, which will constitute the final judgment of the Court with regard to this Action.  Plaintiffs' claims should be dismissed with prejudice, with the Court retaining jurisdiction for specified purposes subject to the terms of the Settlement Agreement, including retaining jurisdiction to enforce the Settlement Agreement and review any future modifications to the Settlement Agreement that the parties might enter into upon mutual agreement.

DATED: December 1, 2023          Respectfully submitted,


/s/ Lee Gelernt
Lee Gelernt*
Daniel A. Galindo (SBN 292854)
Anand Balakrishnan*
Judy Rabinovitz*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198

28

8

18cv00428

F: (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*\*Admitted Pro Hac Vice*

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CHRISTOPHER P. TENORIO
Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B/ Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
FIZZA BATOOL
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 616-4824 (phone)
(202) 305-7000 (facsimile)
Email: Sarah.B.Fabian@usdoj.gov

*Attorneys for Respondents-Defendants*

9

18cv00428

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2023, I electronically filed the foregoing with the Clerk for the United States District Court for the Southern District of California by using the appellate CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

/s/ *Sarah B. Fabian*
Sarah B. Fabian

| | |
|---|---|
| *Ms. L.*, et al., | |
| Plaintiffs, | Case No. 18-cv-00428 |
| v. | |
| *U.S. Immigration and Customs Enforcement*, et al., | SETTLEMENT AGREEMENT |
| Defendants. | |

## I.  Definitions

A.  **"Action"** or **"Ms. L."** The lawsuit captioned *Ms. L., et al. v. U.S. Immigration and Customs Enforcement, et al.*, Case No. 18-cv-00428 (S.D. Cal.).

B.  **"Class Counsel."** The American Civil Liberties Union Foundation ("ACLU") and the ACLU of San Diego & Imperial Counties.

C.  **"Defendants."** The Defendants in *Ms. L.*:[1] U.S. Department of Homeland Security ("DHS"); U.S. Immigration and Customs Enforcement ("ICE"); U.S. Customs and Border Protection ("CBP"); U.S. Department of Health and Human Services ("HHS"); Office of Refugee Resettlement ("ORR"); Patrick J. Lechleitner, Deputy Director and Senior Official Performing the Duties of the Director of ICE; Jamison Matuszewski, ICE San Diego Field Office Director; Mark Paramo, Luis Casillas, and Joseph Suazo, ICE San Diego Assistant Field Office Directors for the Otay Mesa Detention Center; Mary De Anda-Ybarra, ICE El Paso Field Office Director; ICE El Paso Assistant Field Office Director for the West Texas Detention Facility;[2] Alejandro Mayorkas, Secretary of Homeland Security; Merrick Garland, Attorney General of the United States; Ur M. Jaddou, Director of U.S. Citizenship and Immigration Services ("USCIS"); Troy A. Miller, Senior Official Performing the Duties of the Commissioner of CBP; Sidney Aki, Director, San Diego Field Office, CBP; Hector A. Mancha Jr., Director, El Paso Field Office, CBP; Xavier Becerra, Secretary of the Department of Health and Human Services; Robin Dunn Marcos, Director of the Office of Refugee Resettlement.

D.  **"Effective Date."** The Effective Date of this Settlement Agreement will be the date on which the Court enters a final approval order for the Settlement Agreement following notice to the class and a fairness hearing in accordance with Federal Rule of Civil Procedure 23.

---

[1] The names of the successors for the originally named Defendants who were sued in their official capacities have been automatically substituted here pursuant to the operation of Fed. R. Civ. P. 25(d).

[2] ICE is not currently using the West Texas Detention Facility. Therefore, no AFOD is assigned to it.

1

E. **"Family Reunification Task Force"** or **"FRTF."** The task force created by Executive Order 14011 (E.O. 14011), *Establishment of Interagency Task Force on the Reunification of Families*, on February 2, 2021.

F. **"Family Reunification Task Force Research Committee"** or **"FRTF Research Committee."** The research committee created within the Family Reunification Task Force to evaluate claims of class membership.

G. **"Final Registration Date."** The latest date that a *Ms. L.* Settlement Class member may register in together.gov or juntos.gov to be considered for relief under this Settlement Agreement, which is three years after the Effective Date.

H. **"Final Services Date."** The latest date that a *Ms. L.* Settlement Class member may begin receiving services under the Settlement Agreement, which is four years after the Effective Date.

I. **"Legal Guardian."** Legal Guardian means a person vested with legal custody of a child or vested with legal authority to act on or make decisions on the child's behalf.

J. **"*Ms. L.* Settlement Class."** Individuals included in the class for purposes of this Settlement Agreement as defined in Section II below, and as determined in accordance with the procedures in Section III below.

K. **"Parties."** Plaintiffs (including the named Plaintiffs along with all members of the *Ms. L.* Settlement Class) and Defendants.

L. **"Qualifying Additional Family Member."** An additional family member who (1) is part of a *Ms. L.* Settlement Class member's immediate household; or (2) can demonstrate one of the below familial relationships. If the Qualifying Additional Family Member is seeking return to the United States, the government will only pay for the return of Qualifying Additional Family Members who the FRTF Research Committee determines are necessary for reunification as described in Section IV.C.1. below.

1. To be considered a member of the immediate household the additional family member must occupy the same housing unit as the *Ms. L.* Settlement Class member or show that they would occupy the same housing unit but for the detention of the *Ms. L.* Settlement Class member.

2. Individuals who can show one of the below familial relationships with a *Ms. L.* Settlement Class member will be considered Qualifying Additional Family Members even if they cannot show that they are a member of the *Ms. L.* Settlement Class member's immediate household:

a. A spouse (including a common law spouse) of a *Ms. L.* Settlement Class member;

b. An unmarried child under the age of 21 of a *Ms. L.* Settlement Class member;

c. A separated child's biological sibling who is unmarried and under the age of 21;

2

    d.   A separated child's non-separated parent, stepparent, or legal guardian;

    e.   A separated parent or legal guardian's parent who is the primary caregiver for:

        i.    a minor child of a separated parent/legal guardian; or

       ii.    a separated child; and

    f.   A separated child's stepparent's biological unmarried children under the age of 21.

M. **"Settlement Agreement."** This settlement agreement between the Parties in the Action.

N. **"Settlement Class Member Confirmation Date."** The date that the FRTF Research Committee accepts an individual as a *Ms. L.* Settlement Class member and sends the case to receive services under this Settlement Agreement. If an individual was determined to be a *Ms. L.* Settlement Class member prior to the Effective Date of this Settlement Agreement, then their "Settlement Class Member Confirmation Date" will be the Effective Date.

O. **"Termination Date."** Six years after the Effective Date.

P. **"Termination Date – Future Separations."** Eight years after the Effective Date.

Q. **"Unfiled Notice to Appear" or "Unfiled NTA."** A Notice to Appear (NTA), Form I-862, that has been issued by a DHS component but not filed and docketed with the Executive Office for Immigration Review (EOIR).

## II. <u>The *Ms. L.* Settlement Class</u>

The **"*Ms. L.* Settlement Class"** consists of:

A. **Current *Ms. L.* Class Members:** All members of the class certified by the Court and identified by the Parties as class members in the course of the litigation. *See* Order Granting in Part Plaintiffs' Motion for Class Certification, ECF No. 82 (June 26, 2018); Order Granting Plaintiffs' Motion to Modify Class Definition, ECF No. 386 (Mar. 8, 2019). Prior to Settlement Approval Defendants shall provide Plaintiffs with the list of class members who meet the definition of this paragraph.

B. **All Separated Children of Class Members:** The Parties will amend the certified class to include in the *Ms. L.* Settlement Class any child who was separated from a parent or Legal Guardian who is either a Current *Ms. L.* Class Member or who becomes a member of the *Ms. L.* Settlement Class through the provisions of this Section.

C. **Certain Children of Parents Excluded from the Class:** The Parties also agree that Defendants will provide some limited relief as detailed below in Section IV.B.2.a. to children who were separated from their parent or Legal Guardian after January 20, 2017 and prior to June 26, 2018, and who would otherwise be *Ms. L* Settlement Class members, but who are excluded from the class based on the criminal history of their parent or Legal Guardian.

3

D. **Individuals Falling within the Expanded Date Range:** The Parties will amend the certified class to include in the *Ms. L.* Settlement Class all individuals who otherwise meet the definitions set forth in this Section, and who were separated from their children at any time between January 20, 2017 and July 1, 2017. The complete date range of the *Ms. L.* Settlement Class will therefore be January 20, 2017 through January 20, 2021, subject to any limitations contained elsewhere in this Settlement Agreement.

E. **Legal Guardians:** The Parties will amend the certified class to include in the *Ms. L.* Settlement Class, subject to the same parameters for inclusion and exclusion of parents described elsewhere in this Section, any individual who can establish that he or she was separated from a child at any time between January 20, 2017 and January 20, 2021, and who can provide official documentation, including documentation from indigenous or tribal authorities, that the individual was in fact the Legal Guardian of that child, as defined above, at the time of separation under the appropriate law.

    1. For purposes of establishing legal guardianship, "nunc pro tunc" documents that are official and verifiable from a competent legal authority that establish that legal guardianship existed at the time of the separation would be acceptable.

    2. Generally, a birth certificate or legally amended birth certificate is accepted as presumptive evidence of parentage. If, for some reason, there is conflicting evidence in the record of who is the parent, the individual can submit evidence from a competent legal authority that establishes the individual was the child's Legal Guardian at the time of separation.

F. **Parentage.** An adult who was separated from a child on the basis that he or she was determined not to be the parent of the child will be considered a member of the *Ms. L.* Settlement class if the adult can show that he or she is, in fact, the parent of the separated child. Where the separation was based on a belief that the adult was not the child's parent, Defendants will accept all available evidence as a means to verify parentage, including consultations with the consulate, HHS acknowledgement of a parent-child relationship, and DNA testing.

G. **Families Where the Separated Child is a U.S. Citizen:** The parties will amend the certified class to include in the *Ms. L.* Settlement Class, subject to the same parameters for inclusion and exclusion of parents described elsewhere in this Section, parents or Legal Guardians who were separated from their child at any time between January 20, 2017 and January 20, 2021, where the separated child is a U.S. citizen and therefore was not sent to ORR custody. The Parties agree that this Settlement Agreement does not create any obligation on the part of Defendants to identify or notify individuals in any particular manner or timeframe who fall under this subsection of the *Ms. L.* Settlement Class. However, the Defendants agree that they will meet and confer at Plaintiffs' request every three months until the Final Registration Date to evaluate methods by which Defendants may identify *Ms. L.* Settlement Class members who fall in this category, and the Defendants agree that when they identify U.S. citizen children who may be *Ms. L.* Settlement Class members, Defendants will provide the name and any contact information in Defendants' possession of such parents, Legal Guardians, and children to Class Counsel under the protective order.

4

H. **Separations Where the Noncitizen Child Was Not Sent to ORR**: With the exception of cases where the child was a U.S. citizen and therefore could not be sent to ORR, there is a presumption that if a parent or Legal Guardian and child entered CBP custody together, and the child was never sent to ORR custody, then the parent or Legal Guardian and his or her child are not class members. However, if a parent or Legal Guardian and noncitizen child entered CBP custody together and the parent or Legal Guardian and noncitizen child were separated, and the parent or Legal Guardian was referred for prosecution under 8 U.S.C. § 1325 or 8 U.S.C. § 1326(a) after January 20, 2017, and on or before June 26, 2018, then the parent or Legal Guardian and noncitizen child will be considered class members for the purposes of this Settlement Agreement, even if the parent or Legal Guardian and noncitizen child were reunified before leaving CBP custody. Any such inclusion determination will be subject to the other provisions of this Section.

I. **Individuals Separated for Medical Reasons, Because of an Active Warrant, or Due to Concerns about Fitness or Dangerousness**: The Parties agree that, in the following situations, the separation of a parent or Legal Guardian and child after January 20, 2017 and before January 20, 2021, may have been appropriate under the terms of the Court's preliminary injunction:

1. medical reasons that required outside care;

2. mental health concerns that required placement on suicide watch;

3. transfer to criminal custody based on an active warrant and confirmation from the issuing jurisdiction that the parent or Legal Guardian would be extradited; and

4. objective reasons to be concerned that the parent or Legal Guardian may have been unfit or posed a danger to the child.

In all of the cases identified in Sections II.I.1 through II.I.4 above, the government was obliged to reunify a parent or Legal Guardian and child if and when the basis for separation was resolved. In recognition of the fact that the Court's preliminary injunction required that such reunifications occur in an expedited fashion, the Parties agree that individuals separated for the reasons above will be eligible for the relief available to the *Ms. L.* Settlement Class under the following conditions:

• Any parent or Legal Guardian and child separated for the reasons identified in Sections II.I.1 through II.I.4 after January 20, 2017, and on or before June 26, 2018, will be included in the *Ms. L.* Settlement Class unless the parent or Legal Guardian would otherwise be excluded from the class on the basis of his or her criminal history as described in Section II.J.

• Any parent or Legal Guardian and child separated after June 26, 2018, and before January 20, 2021, for the reasons identified in Sections II.II.1 through II.I.3, will presumptively remain excluded from the *Ms. L* Settlement Class. However, a parent or Legal Guardian identified in Sections II.I.1 through II.I.3 who does not have a criminal history that would exclude him or her from the *Ms. L.* Settlement Class may establish a right to be included in the *Ms. L.* Settlement Class if he or she can show that when the medical reason that required outside care of the parent or Legal Guardian had ended, or

5

when the parent or Legal Guardian was released from criminal custody, he or she was not reunified in accordance with the "streamlined" procedures identified by the Court that provided for reunification upon a determination that: (1) he or she was the parent or Legal Guardian of the child; and (2) there was no information that raised a concern about the welfare of the child. *See* ECF No. 101 at 2-3.

- Any parent or Legal Guardian who was separated from his or her child after June 26, 2018 and before January 20, 2021 for the reasons identified in Section II.I.4 will presumptively be included in the *Ms. L* Settlement Class unless (a) the parent or Legal Guardian would otherwise be excluded from the class on the basis of his or her criminal history as described in Section II.J, or (b) the government provides evidence that the parent or Legal Guardian and child were promptly reunified immediately after any and all objective reasons to be concerned that the parent or Legal Guardian may have been unfit or posed a danger to the child were favorably resolved.

J. **Exclusions for Criminal History**: The Parties agree that those with the following criminal convictions at the time of the separation, or whose separation was the result of a prosecution and subsequent conviction for one of the following criminal convictions (excluding a separation as a result of a prosecution and subsequent conviction for a violation of 8 U.S.C. § 1325 or § 1326(a)), shall presumptively not be *Ms. L.* Settlement Class members, and that this presumption will be evaluated, on a case-by-case basis, and may be rebutted according to the process laid out below and in Section III.

1. Persons with one or more felony criminal conviction(s) in the United States, other than a single conviction for a felony violation of 8 U.S.C. § 1325 or § 1326(a);

2. Persons with one or more conviction(s) in the United States or an analogous conviction abroad for:

    a. a crime involving sexual abuse or exploitation of a minor, as defined in Application Note 1 of § 2G2.2 of the U.S. Sentencing Guidelines and also including trafficking in, or possession of, child pornography; or

    b. a crime involving prohibited sexual conduct, as defined in Application Note 1 of § 2A3.1 of the U.S. Sentencing Guidelines, provided, however, that it shall not be a basis for exclusion if:

        i. the crime arose from the fact that the person engaged in prostitution, or loitering for prostitution: or
        ii. if convicted in the United States, the person served a sentence of six months or less of incarceration; or
        iii. if convicted in a foreign country, the offense carried a penalty of six months or less of incarceration; or

    c. a crime of domestic violence, stalking, and child abuse, as defined in 8 U.S.C. § 1227(a)(2)(E)(i);

6

36

or:

3. Persons with a felony criminal conviction(s) in a foreign country where the conviction was for a crime analogous to a crime enumerated in 18 U.S.C. § 3559(c)(2)(F) or (c)(2)(H).

"Conviction" means a final judgment of conviction by a criminal court as governed by the jurisdiction of conviction's criminal laws. It does not include, for example, dispositions that are vacated, expunged, pardoned, or dismissed upon completion of rehabilitative programs. The FRTF Research Committee may examine deferred or withheld adjudications to ascertain whether such adjudications resulted in a conviction as of the time of separation. Class Counsel may provide the FRTF Research Committee with any information available to Class Counsel indicating that a conviction is not a final judgment of conviction at the time of separation.

As part of the process set forth in Section III below, the FRTF Research Committee will evaluate whether an individual has rebutted the presumption that he or she is not a member of the *Ms. L.* Settlement Class despite his or her convictions at the time of separation for an offense set forth above. The FRTF Research Committee will review the information provided by Class Counsel, as well as the record of criminal convictions at the time of separation, to make this determination. In its use of any foreign databases, the FRTF Research Committee shall consider only convictions for offenses described in subsections II.J.2 and II.J.3 above. Where the FRTF Research Committee considers information from foreign databases it shall, as in all cases, also consider any countervailing information provided on the individual's behalf.

To make case-by-case determinations of class membership for individuals presumed not to be *Ms. L.* Settlement Class members because of criminal convictions described in Sections II.J.1 through II.J.3 above, the FRTF Research Committee will be guided by the following considerations:

- Whether the criminal conviction(s) demonstrate a threat to national security or public safety. Factors that point to a public safety threat, or to the absence of such a threat, include whether the conduct at issue poses a danger of violence toward, or abuse or exploitation of, others; the number of criminal convictions; the length of time since the offense date of the most recent criminal conviction that falls within subsections II.J.1-3 above, at the time of the separation; and the nature of the injury to another resulting from the conduct related to the conviction(s), and

- The seriousness of the criminal conviction(s).

Information presented by Class Counsel and other mitigating information will also be considered in the review, including any explanation of or justification for the criminal activity (e.g., issues related to poverty, self-defense, or persecution of the individual by authorities), the age and maturity of the individual at the time of the conviction, evidence of rehabilitation, humanitarian factors about the individual or their family, and other relevant information about the individual's circumstances.

## III. Procedure for Determining Membership in the *Ms. L.* Settlement Class

This procedure will be used to resolve all issues regarding inclusion in the *Ms. L.* Settlement Class, including the submission of any documentation necessary for resolving such disputes. Parents or Legal Guardians who were separated from their child(ren) at the U.S.-Mexico border between January 20, 2017 and January 20, 2021, may seek inclusion in the *Ms. L.* Settlement Class and/or seek certain benefits available to the *Ms. L.* Settlement Class by presenting their information to the FRTF via the website together.gov or juntos.gov. By registering on the website, registrants are identifying themselves as current or potential class members. In order to be considered for relief under this Settlement Agreement, all potential *Ms. L.* Settlement Class members must register via the website together.gov or juntos.gov no later than the Final Registration Date.

If the individual has not already been included in the *Ms. L.* Settlement Class, the FRTF Research Committee will review the information a registrant provides to together.gov or juntos.gov, as well as DHS databases and National Criminal Information Center holdings, to determine if the individual is a member of the *Ms. L.* Settlement Class.

If the individual is *not* determined to be a member of the *Ms. L.* Settlement Class, including because of the individual's criminal history, Class Counsel and the individual will be notified of that fact by the FRTF Research Committee within 20 business days of registration on together.gov or juntos.gov. The written notification will explain the FRTF Research Committee's determination and include information and a copy of any document(s) that support the basis for the FRTF Research Committee's determination that the individual does not appear to be a presumptive member of the *Ms. L.* Settlement Class. If the FRTF Research Committee is legally prohibited from sharing a copy of the document(s), or if national security concerns would prohibit disclosure, then a summary of those documents shall suffice, as appropriate. Class Counsel will then have 60 business days to provide the FRTF Research Committee information to guide its case-by-case review; this 60-day period may be extended for up to 90 additional business days when Class Counsel notifies the FRTF Research Committee that such additional time is required. The FRTF Research Committee will then review the additional information provided by the Class Counsel and issue a decision as soon as practicable but not later than within 45 business days.

The FRTF Research Committee will promptly notify Class Counsel of the results of its case-by-case review. If the FRTF Research Committee determines that the individual should be part of the *Ms. L.* Settlement Class, the individual will be added to the list of *Ms. L.* Settlement Class members. If the FRTF Research Committee determines that the individual should not be part of the *Ms. L.* Settlement Class after reviewing the additional information, Class Counsel may appeal that decision to an independent adjudicator within thirty days of the FRTF Research Committee's decision. Class Counsel may seek one extension of the appeal deadline for up to 30 days, which shall be granted sparingly based on a showing of good cause at the discretion of the independent adjudicator. The parties will identify, agree to, and stipulate to the Court for appointment of an individual to serve as independent adjudicator. The independent adjudicator will review the FRTF Research Committee's decision, government documents the adjudicator deems relevant, and any submissions by Class Counsel, to determine *de novo* whether the preponderance of evidence supports the determination. The independent adjudicator will issue an order as to who pays the costs for any adjudication brought to him or her. Costs generally will be

8

38

paid by the losing party unless the independent adjudicator determines that the appeal, though unsuccessful, was reasonable and based on non-frivolous claims of error.

## IV. Relief Available to the *Ms. L.* Settlement Class

### A. Opportunity to Reunify for *Ms. L.* Settlement Class Members

Defendants will establish processes to provide the opportunity for all *Ms. L.* Settlement Class members to be able to reunify with their separated parent, Legal Guardian, or child. Defendants will also provide a process by which Qualifying Additional Family Members can similarly be provided an opportunity to live with the reunified parent or Legal Guardian and child in the United States. Defendants will return to the United States *Ms. L.* Settlement Class members and certain Qualifying Additional Family Members that the FRTF Research Committee determines are necessary for reunification at the government's expense, including the costs of travel and related support, to include travel support that is necessary to facilitate return and reunification. These processes are set forth in Section IV.C.1. of the Settlement Agreement.

### B. Support for *Ms. L.* Settlement Class Members Inside the United States

1.      The government will provide support and services to *Ms. L.* Settlement Class members already in the United States, or who have returned to the United States, as detailed below. The Parties agree that this support and services are necessary to facilitate successful reunifications and/or to prevent any ongoing harm caused by the initial separation. All services provided to *Ms. L.* Settlement Class members under this Section must begin no later than the Final Services Date.

2.      To facilitate the provision of the below support and services, the government will, consistent with applicable contract and grant requirements, expeditiously contract with, or enter into grants with, a third-party to provide benefit administration services for the housing benefits and will provide information to *Ms. L.* Settlement Class members concerning how to access the behavioral health and legal services described below. The provision of these services and benefits are subject to the availability of federal appropriations. The federal defendants may enter into an Economy Act Agreement among themselves under which one agency may award grants on their behalf to carry out the services provided under this Settlement Agreement. The government shall inform Class Counsel of the name of the selected contractor or grantee(s). A government contractor or grantee(s) will establish contact with the *Ms. L.* Settlement Class members to inform them of these services.

   *a.* Behavioral Health Services: To facilitate the successful reunification of families and/or prevent ongoing harm caused by the initial separation of *Ms. L.* Settlement Class members, Defendants will make behavioral health services available to *Ms. L.* Settlement Class members from the Effective Date until one year after the Termination Date. In addition, HHS may, at its discretion, allow its contractor to extend behavioral health services to other immediate family members of class members if HHS determines that providing such services will assist class members in their successful reunification. Any individual *Ms. L.* Settlement Class member will be eligible to receive up to three years of such services. This is the only form of relief that will be available to separated children

9

defined in Section II.C. above, who are members of the *Ms. L.* Settlement Class but whose parents or Legal Guardians are excluded from the *Ms. L.* Settlement Class on the basis of their criminal history. The behavioral health services to be provided under this provision of the Settlement Agreement include a continuation of the same child-centered pre-reunification counseling, clinical treatment services, behavioral health case management, psychoeducation, and parenting support that are being provided under an existing contract.

    *b.* <u>Assistance with Certain Medical Costs</u>: To support the successful reunification of *Ms. L.* Settlement Class member families who have returned and are returning to the United States for reunification, Defendants will make assistance available in paying the copayments incurred by *Ms. L.* Settlement Class members when receiving medical services at Federally Qualified Health Centers during a 12-month eligibility period.

- *Ms. L.* Settlement Class members in the United States who are registered in together.gov and confirmed as *Ms. L.* Settlement Class members as of the Effective Date have 12 months from the Effective Date to initiate their 12-month eligibility period;

- *Ms. L.* Settlement Class members in the United States who are not registered in together.gov or confirmed as *Ms. L.* Settlement Class members as of the Effective Date have 12 months from their Settlement Class Member Confirmation Date to initiate their 12-month eligibility period; and

- *Ms. L.* Settlement Class members not in the United States at the time of the settlement would be notified of the availability of the copayment assistance upon receiving confirmation that they are a *Ms. L.* Settlement Class member, and would have 12 months from the date they arrive in the United States to initiate their 12-month eligibility period.

    *c.* <u>Immigration Legal Services</u>: Defendants, with EOIR, will provide legal access and orientation as detailed below to specifically focus on *Ms. L.* Settlement Class members. The services will include:

      *i.* *Legal Access Services for Reunified Families*

      (a) In addition to the group information sessions, individual information sessions, and self-help workshops that EOIR's Immigration Court Helpdesk Program (ICH) currently offers, EOIR, through ICH or a separate similar program ("Program"), shall also provide assistance to *Ms. L.* Settlement Class members, short of full representation, including:
- legal advice, such as individualized consultations and counseling about relief for which *Ms. L.* Settlement Class members may be eligible, and the steps necessary to apply for such relief, as well as preparation for any interviews before USCIS;
- assistance with document preparation, including preparing immigration-related legal documents for submission to DHS (including

10

40

USCIS), and EOIR pursuant to EOIR's limited appearance regulations; and

- Friend of the Court services, where allowed by the immigration court, to facilitate the flow of information in the courtroom, including informing noncitizens of their rights and obligations and calling attention to law or facts that may be helpful to the immigration court. Where permitted by the immigration court, EOIR will facilitate remote or in-person access for Friend of Court services as appropriate given language needs or location of the participating family and legal services provider.
- The Program shall also provide transportation stipends for in-person legal services court appearance for families for whom remote services are inappropriate given language needs or disability.
- EOIR will provide trauma-informed interpretation for *Ms. L.* Settlement Class members receiving Program services.
- This Program will be available through at least eight regional offices.

(b) The Program will ensure that, in addition to providing the services listed above at existing ICH locations, and in person where possible, the Program will provide these services via remote technology to *Ms. L.* Settlement Class members who (1) live outside the ICH's geographic regions, or (2) are otherwise unable to obtain ICH services.

(c) The Program will create new resources and orientation presentations tailored to address the particular needs of *Ms. L.* Settlement Class members. The orientations will address, at a minimum, the immigration court process, any forms of relief that may allow the families to remain in the United States, and questions about family reunification and humanitarian parole. The Program will also develop written materials as resources for the families, to include self-help guides, videos, and more. The Program will offer additional tailored pro se workshops to assist *Ms. L.* Settlement Class members prepare any applications for relief, as needed, and will create guidance documents to explain any changes in the law or settlement processes that may impact *Ms. L.* Settlement Class members. The materials will be offered in the best language of the *Ms. L.* Settlement Class member.

(d) Defendants will ensure that the Program is adequately resourced and funded to provide services for all unrepresented *Ms. L.* Settlement Class members, with the ability to increase funding to meet projected needs as determined by Defendants, taking into account information about needs provided by Plaintiffs. EOIR will not decrease funding for its current legal access programs (ICH, LOPC, LOP, CCI/NQRP) in order to fund legal services under this Settlement.

ii.   *Program to Place Cases with Pro Bono Representatives*

   (a) EOIR cannot ensure that it can find a pro bono representative for every family. However, the Program will leverage its existing pro bono referral efforts, and provide additional funding, to recruit, train, mentor, and match pro bono attorneys to represent *Ms. L.* Settlement Class members. EOIR will facilitate Model Hearing Programs in connection with provider training for new pro bono representatives, where available.

   (b) The Program would identify cases for pro bono placement through in-depth individualized consultations of *Ms. L.* Settlement Class members. These cases would then be placed on an online pro bono platform to help match potential pro bono representatives with reunified families. The Program will provide pro bono attorneys with mentors to advise and consult with them throughout the case.

   (c) All pro bono attorneys to whom *Ms. L.* Settlement Class members are referred through EOIR will be notified that pro bono psychological evaluations will be made available through the existing HHS behavioral health contract with Seneca Family of Agencies.

   (d) The Program will create a library of written and recorded training materials to help pro bono attorneys and legal service providers to best assist *Ms. L.* Settlement Class members. The trainings will cover substantive and procedural immigration law issues, education on working with vulnerable populations, trauma-informed care, and child protection. Additionally, webinars/video trainings will also be provided on immigration-related topics to help with effective representation.

iii.   *Assistance Outside EOIR Proceedings*

   (a) To ensure *Ms. L.* Settlement Class members have the ability to reunify through the process set out in Section IV.C.1, and as part of the governmental assistance to Qualifying Additional Family Members in Section IV.C.1., Defendants will continue to contract with an independent contractor to communicate with *Ms. L.* Settlement Class members and assist *Ms. L.* Settlement Class members and Qualifying Additional Family Members with necessary parole and employment authorization applications.

   (b) Defendants will, under the Protective Order, ensure that contact information of *Ms. L.* Settlement Class members is provided to the contractor, and establish links between the contractor and other organizations that work

with, or have potential access to, *Ms. L.* Settlement Class members to facilitate referrals to the Program. This would include a call center (e.g., 'hotline' or telephonic help desk) that will conduct affirmative outreach to identify and screen people and refer them to services.

(c) The contractor will be authorized to coordinate with Class Counsel and the designated provider organization to ensure that *Ms. L.* Settlement Class members and Qualifying Additional Family Members are aware of legal services, to maintain continuity of services, and to assist where necessary to ensure reunification.

d. <u>Housing Support</u>: To support the successful reunification of families who have returned and are returning to the United States for reunification, Defendants will make housing assistance available to *Ms. L.* Settlement Class members in meeting housing needs, as determined necessary by a benefits administration contractor or grantee during a 12-month eligibility period. This may include assistance in locating housing; paying costs necessary to attain housing, e.g., security deposit and first and last month's rent; and assistance to avoid eviction and meet other emergency housing needs during the 12-month eligibility period. Payments would typically be made to landlords and not in the form of cash to the *Ms. L.* Settlement Class member, and would be for no more than a total of 6 months during the 12-month eligibility period absent extraordinary circumstances.

i. *If the housing assistance is available as of the Effective Date:*

(a) *Ms. L.* Settlement Class members in the United States who are registered in together.gov and confirmed to be a *Ms. L.* Settlement Class member as of the Effective Date would have 12 months from the Effective Date to initiate their 12-month eligibility period;

(b) *Ms. L.* Settlement Class members in the United States who are not registered in together.gov or not yet confirmed as a *Ms. L.* Settlement Class member as of the Effective Date would have 12 months after their Settlement Class Member Confirmation Date to initiate their 12-month eligibility period; and

(c) *Ms. L.* Settlement Class members not in the United States at the time of the Effective Date would be notified of the availability of the housing assistance upon receiving confirmation that they are a *Ms. L.* Settlement Class member, and would have 12 months from their arrival in the United States to initiate their 12-month eligibility period.

ii. *If the housing assistance becomes available after the Effective Date,* then a *Ms. L.* Settlement Class member will have one year from the date that all three of the following conditions are met to initiate their eligibility period: (1) the *Ms. L.* Settlement Class member is inside the United States; (2) he or she is confirmed to be a *Ms. L.* Settlement Class member; and (3) he or she is notified of the availability of the housing assistance benefit.

C. **Immigration Processing**

1. _Thirty-six months of Parole and Employment Authorization_

   Certain _Ms. L._ Settlement Class members and Qualifying Additional Family Members, as defined in Section I.L., will have the opportunity to apply for parole pursuant to section 212(d)(5) of the Immigration and Nationality Act (INA) with USCIS. This opportunity will extend to _Ms. L._ Settlement Class members and Qualifying Additional Family Members who are not currently in the United States, as well as those present in the United States who upon their last entry were not admitted. _Ms. L._ Settlement Class members and Qualifying Additional Family Members who are in removal proceedings, or who have a final order of removal or an order granting voluntary departure, can apply for parole with USCIS under this process. Parole for individuals already present in the United States is sometimes referred to as "parole in place" ("PIP"). Parole applications will be adjudicated on a case-by-case basis and approval of the request for parole is not guaranteed based on this Settlement Agreement. DHS retains its existing discretion to grant or deny applications for parole, as well as its existing discretion to grant or deny parole at the time of inspection at a port of entry.

   _Ms. L._ Settlement Class members who wish to request parole under this process must register on together.gov or juntos.gov. They may then file a parole application with USCIS on Form I-131, _Application for Travel Document_,[3] following the instructions set forth in the applicable FRTF Parole Filing Guidelines.[4] _Ms. L._ Settlement Class members will not be required to submit proof of financial support with their parole requests.

   Individuals seeking parole as Qualifying Additional Family Members must submit evidence of the familial relationship with, or membership in the immediate household of, a _Ms. L._ Settlement Class member, and an urgent humanitarian reason for consideration for parole. The Qualifying Additional Family Members must also follow the FRTF Parole Filing Guides. If the Qualifying Additional Family Member lives in the same country as the _Ms. L._ Settlement Class member, the parole requests must be filed at the same time as the request of the _Ms. L._ Settlement Class member, absent exceptional circumstances. If the Qualifying Additional Family Member is living in a different country from the _Ms. L._ Settlement Class member, they may file at different times, although concurrent filing is preferred.

   USCIS will exempt the filing fee for the Form I-131, _Application for Travel Document_ (parole application), for all _Ms. L._ Settlement Class members' and Qualifying Additional Family Members' parole requests submitted in compliance with the FRTF Parole Filing Guides. Requests for parole will be adjudicated on a case-by-case basis and parole is not guaranteed based on this Settlement Agreement. For evidentiary support, USCIS will accept and consider any relevant

---

[3] This includes successor versions of Form I-131.

[4] "Guide for Completing a Form I-131, _Application for Travel Document_, and Filing an Initial Parole Request under the Family Reunification Task Force (FRTF) Process on behalf of Individuals Outside the United States" or the "Guide for Completing a Form I-131, _Application for Travel Document_, and Filing an Initial Parole-in-Place (PIP) Request under the Family Reunification Task Force (FRTF) Process" or their replacements (collectively, FRTF Parole Filing Guides).

credible evidence, including a declaration from the applicant or the applicant's family member, or any other individual with direct personal knowledge of the relevant facts or circumstances of the qualifying relationship.

If the parole request is approved, USCIS will issue a travel document authorizing parole for a period of 36 months from the date the individual is paroled at the port of entry (for individuals outside the United States) or a Form I-94, *Arrival/Departure Record* valid for 36 months from the date parole is approved (for requests for parole in place). CBP has final authority to grant parole at the port of entry. The *Ms. L.* Settlement Class member or Qualifying Additional Family Member may apply for employment authorization pursuant to 8 C.F.R. § 274a.12(c)(11) once he or she is paroled into the United States. An initial Form I-765, *Application for Employment Authorization* (EAD application), will be accepted and adjudicated without a fee or a fee waiver required and, if approved, the time frame for employment authorization will align with the duration of parole.

*Ms. L.* Settlement Class members and Qualifying Additional Family Members who are in removal proceedings pursuant to Section 240 of the INA will not be required to obtain dismissal, termination, administrative closure, or continuances of their removal proceedings before requesting parole from USCIS.

The government's preference is that *Ms. L.* Settlement Class members and Qualifying Additional Family Members in the United States, who receive parole from USCIS as described in this section and are in INA § 240 removal proceedings or withholding-only proceedings before an Immigration Judge request, by contacting the applicable ICE Office of the Principal Legal Advisor (ICE OPLA) field location, that DHS agree to the filing of a joint motion to dismiss their removal proceedings without prejudice, or alternatively, to not oppose a motion for administrative closure of their removal proceedings, where permitted by law, with the immigration court. DHS will review such requests on a case-by-case basis, including whether dismissal or administrative closure of the case is warranted as a matter of prosecutorial discretion. DHS will consider membership in the *Ms. L.* Settlement Class, designation as a Qualifying Additional Family Member, and the grant of parole, as factors in determining whether to exercise prosecutorial discretion. DHS's agreement or non-opposition to the filing of such motions will also be contingent on the *Ms. L.* Settlement Class member or Qualifying Additional Family Member being neither potentially subject to nor been found to be subject to a statutory bar to asylum pursuant to 8 U.S.C. § 1158(b)(2)(A)(i)-(v), INA § 208(b)(2)(A)(i)-(v). An immigration judge's grant of a joint motion to dismiss or terminate removal proceedings shall not reflect an adjudication on the merits of the *Ms. L.* Settlement Class member's or Qualifying Additional Family Member's removability. In cases in which a *Ms. L.* Settlement Class member's or Qualifying Additional Family Member's INA § 240 removal proceedings have been administratively closed pursuant to this Settlement Agreement, either party may move to recalendar those proceedings through the filing of a motion to recalendar with the immigration court. *Ms. L.* Settlement Class members' or Qualifying Additional Family Members' receipt of parole shall not be conditioned on their taking any action to delay or dismiss their pending INA § 240 removal proceedings. The FRTF will communicate the A-numbers of individuals approved for parole to ICE Enforcement and Removal Operations (ERO) and ICE OPLA to ensure those DHS components remain fully informed.

*Ms. L.* Settlement Class members and Qualifying Additional Family Members who are in INA § 240 removal proceedings, or are in expedited removal proceedings, or are in withholding only proceedings, or have an expedited removal order with a pending credible fear interview (CFI), or have a reinstated order of removal with a pending reasonable fear interview (RFI), may request parole from USCIS under this Section; however, certain procedural steps must occur depending on the proceeding.

For *Ms. L.* Settlement Class members and Qualifying Additional Family Members in INA § 240 removal proceedings or withholding-only proceedings before an immigration judge:

    a. If USCIS denies the *Ms. L.* Settlement Class member's or Qualifying Additional Family Member's parole application, and the individual's INA § 240 or withholding-only proceedings have not been terminated, dismissed, or administratively closed, the proceedings will move forward until completion. If INA § 240 removal proceedings or withholding-only proceedings were administratively closed, DHS may move to recalendar the case.

    b. If USCIS approves the parole application and the *Ms. L.* Settlement Class member's or Qualifying Additional Family Member's INA § 240 removal proceedings have not been administratively closed, the individual may submit a request to ICE OPLA that it agree to the filing of a joint motion to dismiss, or not oppose a motion to administratively close his or her proceedings. The request must be submitted on or before one year after USCIS approves the parole application. This request deadline does not abrogate or shorten any potentially applicable deadlines set forth in Section IV.C.3., *infra.* The request must also contain, at minimum, evidence that the individual is a *Ms. L.* Settlement Class member or Qualifying Additional Family Member, including but not limited to USCIS' grant of parole, and the authorized period of parole must not have expired or been terminated. DHS will review properly submitted requests on a case-by-case basis within 90 days of the next scheduled hearing, or as soon as practicable if no hearing is scheduled, and agree to the filing of a joint motion for dismissal without prejudice or to not oppose a motion for administrative closure if DHS determines that such action is appropriate as a matter of prosecutorial discretion. DHS will consider membership in the *Ms. L.* Settlement Class and the grant of parole as factors in determining whether to exercise prosecutorial discretion. DHS's agreement to the filing of such motions will also be contingent on the *Ms. L.* Settlement Class member or Qualifying Additional Family Member being neither potentially subject to nor been found to be subject to a statutory bar to asylum pursuant to 8 U.S.C. § 1158(b)(2)(A)(i)-(v), INA § 208(b)(2)(A)(i)-(v) due to information unknown to USCIS at the time of adjudication or actions since the individual was granted parole by USCIS. The immigration judge's grant of a joint motion to dismiss or terminate shall not reflect an adjudication on the merits of the *Ms. L.* Settlement Class member's or Qualifying Additional Family Member's removability.

*Ms. L.* Settlement Class members and Qualifying Additional Family Members in INA § 240 removal proceedings or withholding-only proceedings before an immigration judge who have properly filed a parole request with USCIS and were issued a Form I-797, Notice of Action, reflecting USCIS receipt of their Form I-131 and a copy of their properly filed Form I-131, may

submit a request to the applicable ICE OPLA field location for DHS to join or not oppose a motion for a continuance of the proceeding at any time but no later than one year after USCIS issues the Form I-797. DHS will review the request on a case-by-case basis, including whether a continuance is warranted as a matter of prosecutorial discretion, within 90 days of the scheduled hearing. DHS will also respond to any inquiries by the FRTF regarding its review of or decision on the motion for a continuance. ICE OPLA will consider membership in the *Ms. L.* Settlement Class and designation as a Qualifying Additional Family Member as factors in determining whether to exercise prosecutorial discretion.

For *Ms. L.* Settlement Class members and Qualifying Additional Family Members who have expedited removal or reinstatement orders, are in expedited removal proceedings with a pending CFI, or have a reinstated order of removal with a pending RFI:

     a. The expedited removal order or reinstated order does not need to be cancelled in order to request parole.

     b. The underlying expedited removal order or reinstated order cannot be executed because of the pending CFI or RFI.

     c. USCIS may authorize a new parole period through this process if the individual was previously paroled by ICE or CBP for purposes of a CFI or RFI.

*Ms. L.* Settlement Class members and Qualifying Additional Family Members who have final orders of removal received in INA § 240 proceedings, and/or who have pending motions to reopen and petitions for review of such orders, may request parole in place without requesting reopening of the final removal order.

*Ms. L.* Settlement Class members with an Unfiled NTA, may request parole under this Section.

When considering whether to approve a request for parole by a *Ms. L.* Settlement Class member or a Qualifying Additional Family Member with prior conditions of release imposed by ICE or CBP, USCIS may consult with ICE or CBP regarding whether CBP or ICE intend to lift or modify the prior conditions of release following a USCIS parole approval. Decisions on conditions of release from custody are discretionary and this agreement does not guarantee that DHS will agree to lift or modify such conditions.

*Ms. L.* Settlement Class members and Qualifying Additional Family Members who are in the United States may request additional parole periods (i.e., re-parole) with USCIS prior to the expiration of their authorized parole period and prior to the Termination Date if there is a continued need to promote family well-being and unity or to continue behavioral health services under this Settlement Agreement. This showing of continued need may be based on the same or similar evidence that supported the initial application but must demonstrate that the need is ongoing. If approved for re-parole, the authorized period of parole will be for the period needed to achieve the stated purpose, up to an additional thirty-six months. *Ms. L.* Settlement Class members and Qualifying Additional Family Members requesting re-parole will not be required to pay the parole

application fee. Requests for re-parole will be determined on a case-by-case basis and parole is not guaranteed based on this Settlement Agreement. If the *Ms. L.* Settlement Class member or Qualifying Additional Family Member's re-parole request is approved, the applicant may apply for employment authorization pursuant to 8 C.F.R. § 274a.12(c)(11) to align with the period of re-parole. USCIS will also exempt the filing fee for one Form I-765 renewal application for employment authorization, with no fee waiver application required, based on a period of re-parole granted under this settlement for *Ms. L.* Settlement Class members and Qualifying Additional Family Members.

In cases where *Ms. L.* Settlement Class members' and Qualifying Additional Family Members' parole applications pursuant to this Settlement Agreement are denied by USCIS, USCIS will not use the denial of the parole application as the sole basis for referring the case for any enforcement action or issuance of an NTA. In all cases, USCIS will exercise its discretion on a case-by-case basis to determine whether issuance of an NTA or referral for enforcement action is necessary, weighing all aggravating and mitigating factors, including the harm caused by family separation.

### 2. *Further Immigration Relief*

DHS will create a single dedicated email inbox overseen by the Family Reunification Task Force, where certain immigration related requests can be sent, unless otherwise noted in the Settlement Agreement or in filing instructions provided by DHS.

### a. Procedures for *Ms. L.* Settlement Class Members in the United States to Apply for Asylum with USCIS

The government will provide the opportunity for *Ms. L.* Settlement Class members who are in the United States to file affirmative asylum applications with USCIS and have those applications adjudicated or have preexisting affirmative asylum applications already filed with USCIS adjudicated, according to the following terms. USCIS will provide filing instructions for *Ms. L.* Settlement Class members consistent with the terms of this Settlement Agreement. *Ms. L.* Settlement Class members must comply with any such filing guidance and other procedures provided by USCIS. Asylum applications will be adjudicated on a case-by-case basis and approval of the application is not guaranteed based on this Settlement Agreement. USCIS retains its discretion to grant, deny, dismiss, or refer applications to EOIR under 8 U.S.C. § 1158, INA § 208; 8 C.F.R. § 208.14.

All properly filed and complete asylum applications filed by *Ms. L.* Settlement Class members with USCIS on or before the deadlines specified in Section IV.C.3., shall qualify for an extraordinary circumstances exception under 8 U.S.C. § 1158(a)(2)(D), INA § 208(a)(2)(D); 8 C.F.R. §§ 208.4(a)(5), 1208.4(a)(5) and will be found to have been filed within a reasonable period given the circumstances under 8 C.F.R. §§ 208.4(a)(5), 1208.4(a)(5) for purposes of the statutory one-year filing deadline requirement under 8 U.S.C. § 1158(a)(2)(B), INA § 208(a)(2)(B). The date USCIS receives the properly filed and complete asylum application is considered the date the asylum application is filed. 8 C.F.R. § 208.4(a)(2)(ii).

*Ms. L.* Settlement Class members may submit written requests for expedited processing of their asylum applications to the asylum office with jurisdiction over their asylum application, consistent with the guidance for making expedite requests for an asylum application at https://www.uscis.gov/forms/filing-guidance/how-to-make-an-expedite-request and https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-scheduling. Requests for expedited processing are considered on a case-by-case basis and in light of workload priorities. DHS will instruct the asylum offices to consider membership in the *Ms. L.* Settlement Class as a favorable factor in any requests to expedite the interview.

USCIS will provide training to all relevant Asylum Division staff, including Asylum Officers, Training Officers, Supervisory Asylum Officers (SAOs), and relevant operational staff, on the *Ms. L.* litigation and the terms of this Settlement Agreement, and will remind officers of the relevant lesson plans to consult on issues potentially specific or germane to *Ms. L.* Settlement Class members. Among other topics, this training will address the unique and continuing effects of the trauma of forced family separation, which may affect *Ms. L.* Settlement Class members' demeanor and/or the ability to recall traumatic facts during an asylum interview, CFI/RFI, and/or immigration court hearing. The guidance shall instruct that Asylum Officers should account for the unique trauma of family separation when assessing matters such as credibility and the level of detail and consistency it is reasonable to expect in an applicant's testimony.

The training will also include a summary of asylum statutes, regulations, and case law that may be relevant to potential *Ms. L.* Settlement Class members' claims, including those claims involving a fear of persecution connected to forced family separation by the U.S. Government through the Zero Tolerance Policy and its associated policies and practices. The training will include a reminder to officers that *Ms. L.* Settlement Class members may present claims based on any of the five statutorily protected grounds, including membership in a particular social group (PSG). Whether *Ms. L.* Settlement Class members can establish past persecution or a well-founded fear of future persecution on account of membership in a PSG will depend on the factual circumstances that exist in the *Ms. L.* Settlement Class member's country of citizenship and the *Ms. L.* Settlement Class member's specific circumstances. Consistent with asylum law, the determination of whether a *Ms. L.* Settlement Class member has been persecuted or has a well-founded fear of future persecution on account of membership in a PSG must be conducted on an individualized basis, based on the particular facts presented in each case.

Within 75 days of the filing of the motion for preliminary approval of the Settlement Agreement, USCIS will share the non-privileged portions of the training materials with Class Counsel, under any necessary protective orders. Class Counsel will then have 21 days to return comments and feedback on the training to the government. USCIS will take Class Counsel's comments and feedback into consideration in finalizing the training and will share a final copy of the non-privileged portions of the training materials with Class Counsel.

*Ms. L.* Settlement Class members' affirmative asylum applications will be reviewed by a centralized group of SAOs or Asylum Officers detailed as SAOs, prior to any denial or referral to EOIR. Such officers will receive the training described above. In addition, USCIS Asylum Division Headquarters will conduct randomized pre-service review on a subset of *Ms. L.* Settlement Class members' asylum application decisions (grants, denials, dismissals, and referrals

to EOIR) on a rolling basis and offer additional guidance and calibration sessions to the field as deemed appropriate following review of such cases.

USCIS will identify the affirmative asylum applications filed by *Ms. L.* Settlement Class members pending before USCIS as of the final approval of the settlement, including affirmative applications filed by *Ms. L.* Settlement Class members over whom USCIS has initial jurisdiction as an Unaccompanied Child pursuant to 8 U.S.C. § 1158(b)(3)(C), INA § 208(b)(3)(C). Adjudication of such pending asylum applications will be governed by the procedures for USCIS asylum adjudications set forth in the Settlement Agreement.

If USCIS denied or referred to EOIR a *Ms. L.* Settlement Class member's affirmative asylum application prior to the Effective Date, USCIS will reopen the asylum application following the *Ms. L.* Settlement Class member's request, subject to the deadlines specified in Section IV.C.3., and adjudicate the asylum application pursuant to the procedures for asylum adjudications set forth in this Settlement Agreement. This requirement does not apply to subsequent denials or referrals to EOIR of a *Ms. L.* Settlement Class member's affirmative asylum application if the application was adjudicated pursuant to the procedures set forth in this Settlement Agreement. This paragraph includes Unfiled NTAs; see further information in Section IV.C.2.e. below. If the NTA was filed and docketed with the immigration court, the procedures set forth in Section IV.C.2.b. below will apply; USCIS will reopen and adjudicate such an asylum application after the *Ms. L.* Settlement Class member requests reopening from USCIS only if EOIR has dismissed or terminated the INA § 240 removal proceedings, consistent with Section IV.C.2.c, below. Additional and specific provisions concerning *Ms. L.* Settlement Class members in particular removal postures are set forth below.

    b.   <u>Dismissal or Termination, Recalendaring/Dismissal or Termination, and Reopening/Dismissal or Termination of INA § 240 Removal Proceedings for *Ms. L.* Settlement Class Members</u>

All requests for DHS to join or, where applicable, non-oppose motions or appeals discussed in this subsection will be adjudicated on a case-by-case basis. DHS's decision whether to join or not oppose a motion may be influenced by information unknown to USCIS at the time of the parole adjudication or by the *Ms. L.* Settlement Class member's actions after he or she was granted parole by USCIS, if applicable. DHS will ensure that the email addresses or mailboxes to be used for the submission of requests for DHS to join or not oppose motions discussed in this subsection are posted on its public facing page on ICE.gov, and will reference the required information to be included when submitting such requests (e.g., identifying in the subject line that the noncitizen is a *Ms. L.* Settlement Class member). DHS will endeavor to prioritize its review and handling of any properly submitted request, subject to any staffing or resource constraints.

*Ms. L.* Settlement Class members requesting that USCIS reopen a previously denied or referred asylum application who are in INA § 240 removal proceedings, whose removal proceedings were not previously dismissed or terminated, may submit a request to the applicable ICE OPLA field location that DHS agree to the filing of a joint motion to dismiss or terminate or a joint motion to recalendar and dismiss or terminate the removal proceedings before the immigration judge or the Board of Immigration Appeals (BIA), where applicable. DHS will review

properly submitted requests on a case-by-case basis and agree to the filing of a joint motion to dismiss or terminate, or a joint motion to reopen and dismiss or terminate the INA § 240 proceedings without prejudice if DHS determines that such action is appropriate as a matter of prosecutorial discretion. When determining if prosecutorial discretion is appropriate, DHS will take into consideration the fact that the individual is a *Ms. L.* Settlement Class member and was granted parole. DHS's agreement to the filing of such motions will also be contingent on the *Ms. L.* Settlement Class member being neither potentially subject to nor having been found to be subject to a statutory bar to asylum pursuant to 8 U.S.C. § 1158(b)(2)(A)(i)-(v), INA § 208(b)(2)(A)(i)-(v) due to information unknown to USCIS at the time of the parole adjudication or by the *Ms. L.* Settlement Class member's actions after he or she was granted parole by USCIS. The immigration judge's grant of a joint motion to dismiss or terminate shall not reflect an adjudication on the merits of the *Ms. L.* Settlement Class member's removability.

For *Ms. L.* Settlement Class members who are in consolidated INA § 240 removal proceedings with Qualifying Additional Family Members, the request submitted to DHS that it agree to the filing of a joint motion to dismiss or terminate, a non-opposition or joint motion to recalendar and dismiss or terminate, or a joint motion to reopen and dismiss or terminate INA § 240 removal proceedings without prejudice may include Qualified Additional Family Members who are in the consolidated INA § 240 removal proceeding with the *Ms. L.* Settlement Class member. Any filings submitted to the Immigration Court must comply with EOIR, Imm Ct. Practice Manual, Ch. 5.1(a). To the extent the *Ms. L.* Settlement Class member's INA § 240 proceedings have a hearing date docketed before the immigration court before the deadlines set forth in Section IV.C.3, *infra*, DHS will review requests submitted no earlier than 90 days prior to the *Ms. L.* Settlement Class member's scheduled master calendar or merits hearing on a case-by-case basis. DHS will review requests submitted by all other *Ms. L.* Settlement Class members as soon as practicable. DHS will agree to join or not oppose the filing of a motion to dismiss or terminate, or a motion to recalendar and dismiss or terminate, or a motion to reopen and dismiss or terminate that includes the *Ms. L.* Settlement Class members' Qualifying Additional Family Members if DHS determines such action is appropriate as a matter of prosecutorial discretion. DHS's agreement or non-opposition to the filing of such motions will also be contingent on the *Ms. L.* Settlement Class member and Qualifying Additional Family Member being neither potentially subject to nor having been found to be subject to a statutory bar to asylum pursuant to 8 U.S.C. § 1158(b)(2)(A)(i)-(v), INA § 208(b)(2)(A)(i)-(v) due to information unknown to USCIS at the time of adjudication of the parole application or by the *Ms. L.* Settlement Class member's or Qualified Additional Family Member's actions after he or she was granted parole by USCIS. The immigration judge's grant of a joint motion to dismiss or terminate shall not reflect an adjudication on the merits of the *Ms. L.* Settlement Class member's or Qualifying Additional Family Member's removability.

The Immigration Court (or, in some instances, the BIA) has sole discretion whether to grant or deny such motions. The motion should explain that it is not in DHS's interest to continue the case, because the individual is a *Ms. L.* Settlement Class member, and that dismissal or termination is being sought under this Settlement Agreement. Should an immigration judge deny a motion to dismiss or terminate or reopen an order under this provision, DHS will consider, on a case-by-case basis, joining or not opposing a motion to the Immigration Court to reconsider the denial and/or filing a statement of non-opposition in any appeal to the BIA of such a denial. EOIR will advise

adjudicators about the terms of this Settlement Agreement as it concerns EOIR and in a manner that is consistent with the independent judgment and discretion exercised by immigration judges and appellate immigration judges.

*Ms. L.* Settlement Class members described in this Section who have a pending petition for review of their INA § 240 proceedings orders under 8 U.S.C. § 1252, INA § 242, should coordinate with Class Counsel and the Department of Justice ("DOJ") attorney assigned to the petition for review, to ensure that the relevant circuit courts of appeals can enter appropriate orders remanding or dismissing the petitions. The Government's expectation is that, absent unusual circumstances, DOJ will agree to a motion for remand or dismissal, if requested by the *Ms. L.* Settlement Class member.

Requests to DHS to join motions to dismiss or terminate, reopen and dismiss or terminate, or remand from the BIA and dismiss or terminate INA § 240 proceedings under this Settlement Agreement must be submitted in accordance with the deadlines specified in Section IV.C.3.

    c.   Procedures for *Ms. L.* Settlement Class Members with Terminated or Dismissed INA § 240 Removal Proceedings Who Filed a Prior Asylum Application

For those *Ms. L.* Settlement Class members:

    i.   Whose INA § 240 proceedings are terminated or dismissed;
    ii.   Who already filed an asylum application directly with EOIR or with USCIS that USCIS then referred or sent to EOIR (both referred to as a "prior asylum application"); and
    iii.   Who subsequently properly file a new complete asylum application with USCIS or request that USCIS reopen their prior asylum application subject to the deadlines specified in Section IV.C.3:

USCIS agrees:

- To use the initial filing date of the prior asylum application, as defined above, for purposes of affirmative asylum interview scheduling, and will apply the scheduling priorities in place at the time of scheduling.
- To use the initial filing date of the prior asylum application, as defined above, for adjudicating EAD applications filed under 8 C.F.R. § 274a.12(c)(8) (pending asylum applications), if the *Ms. L.* Settlement Class member seeks an initial or renewal (c)(8) EAD after the new asylum application has been completed and properly filed with USCIS or reopened by USCIS.
- To inform EOIR that the individual is a *Ms. L.* Settlement Class member and is entitled to any applicable relief under this Settlement Agreement when subsequently referring *Ms. L.* Settlement Class members' asylum applications to EOIR for adjudication in INA § 240 proceedings, if applicable.

*Ms. L.* Settlement Class members described in this subsection must comply with any specific filing guidance or reopening procedures provided by USCIS for both the asylum application and EAD application.

For purposes of this subsection, Section IV.C.2.c, the date USCIS receives the subsequent properly filed and complete asylum application or receives the request to reopen the prior asylum application is considered the date the asylum application is filed, or the date reopening is requested.

For purposes of verifying immigration status information for benefit-granting agencies, and notwithstanding USCIS's agreement above, the USCIS Systematic Alien Verification for Entitlements Program (SAVE) will not reflect that an asylum application is pending if a benefits-granting agency queries SAVE during the period between dismissal or termination of INA § 240 proceedings and the date when the *Ms. L.* Settlement Class member properly files or requests reopening of an asylum application with USCIS pursuant to this Settlement Agreement.

    d.   <u>Procedures For *Ms. L.* Settlement Class Members Who Are in Expedited Removal or Reinstatement Proceedings or Have Expedited or Reinstated Removal Orders</u>

Following the Effective Date, *Ms. L.* Settlement Class members who have:

    i.   Pending expedited removal proceedings or reinstatement proceedings (including those pending a credible fear determination or a reasonable fear determination from USCIS, and those in withholding-only proceedings under 8 C.F.R. § 1208.2(c)(2)(i)); or

    ii.   Final expedited removal orders or reinstated orders of removal (including those with a negative credible fear determination or negative reasonable fear determination from USCIS or such determination that was affirmed by EOIR)

may request the DHS component that issued the charging document or removal order to exercise its prosecutorial discretion to cancel the pending proceeding or rescind the removal order. DHS, upon conducting an individualized review, will grant the request if it determines that such action is appropriate as a matter of discretion and the *Ms. L.* Settlement Class member is neither potentially subject to nor been found to be subject to a statutory bar to asylum pursuant to 8 U.S.C. § 1158(b)(2)(A)(i)-(v), INA § 208(b)(2)(A)(i)-(v). DHS will ensure that the email addresses or mailboxes to be used for the submission of such requests are posted on its public facing websites, and will reference the required information to be included when submitting such requests (e.g., identifying in the subject line of the email that the noncitizen is a *Ms. L.* Settlement Class member). DHS will endeavor to prioritize its review and handling of any properly submitted requests, subject to any staffing or resource constraints.

For those *Ms. L.* Settlement Class members in withholding-only proceedings, upon rescission of the *Ms. L.* Settlement Class member's reinstatement order, DHS will file, not oppose, or join a motion to terminate such proceedings before the Immigration Court or BIA.

Upon rescission of the unexecuted reinstatement or expedited removal order, and, if applicable, termination of withholding-only proceedings, the *Ms. L.* Settlement Class member shall

have the opportunity to apply for asylum with USCIS pursuant to Section IV.C.2.a., above. *Ms. L.* Settlement Class members whose reinstated orders of removal have been rescinded may request that DHS join or not oppose a properly filed motion to reopen the prior removal order that served as the basis for the reinstated order and dismiss the removal proceeding in which that order was originally entered  where: (1) the *Ms. L.* Settlement Class member was previously denied asylum in INA § 240 removal proceedings; (2) the *Ms. L.* Settlement Class member was not found to be subject to a statutory bar to asylum pursuant to 8 U.S.C. § 1158(b)(2)(A)(i)-(v), INA § 208(b)(2)(A)(i)-(v); (3) the prior asylum application was denied after the separation that renders the noncitizen a *Ms. L.* Settlement Class member occurred; and (4) DHS determines such action is appropriate as a matter of prosecutorial discretion. Requests will be adjudicated on a case-by-case basis, and approval or agreement may by affected due to information unknown to USCIS at the time of parole adjudication or actions since the individual was granted parole by USCIS.

e. <u>Procedures for *Ms. L.* Settlement Class Members with an Unfiled NTA</u>

USCIS will adjudicate asylum applications for *Ms. L.* Settlement Class members filed pursuant to the terms of this Settlement Agreement if USCIS has jurisdiction over the application pursuant to 8 C.F.R. § 208.2(a), notwithstanding the existence of an Unfiled NTA. However, *Ms. L.* Settlement Class members with an Unfiled NTA as of the Effective Date of the Settlement Agreement may request that the DHS component that issued the NTA exercise its prosecutorial discretion to cancel the NTA. The DHS component, upon conducting an individualized review, will grant the request and cancel the NTA if it determines that such action is appropriate as a matter of discretion and that the *Ms. L.* Settlement Class member is neither potentially subject to nor been found to be subject to a statutory bar to asylum pursuant to 8 U.S.C. § 1158(b)(2)(A)(i)-(v), INA § 208(b)(2)(A)(i)-(v). Cancellation of the NTA is not guaranteed and may be affected due to information unknown to USCIS at the time of parole adjudication under the terms of this Settlement Agreement or actions since the individual was granted parole, if at all, by USCIS.

f. <u>Provision of Procedural Protections for *Ms. L.* Settlement Class Members in Pending 240 Removal Proceedings</u>

EOIR will be advised concerning the rights of *Ms. L.* Settlement Class members under this Settlement Agreement as they pertain to EOIR. For *Ms. L.* Settlement Class members in INA § 240 removal proceedings who elect to proceed with their asylum claims in immigration court in lieu of seeking termination or dismissal of their removal proceedings under this Settlement Agreement, and who have pending asylum applications that were properly filed with the immigration court on or before the two years after their Settlement Class Member Confirmation Date, shall qualify for an extraordinary circumstances exception under 8 U.S.C. § 1158(a)(2)(D), INA § 208(a)(2)(D); 8 C.F.R. §§ 208.4(a)(5), 1208.4(a)(5) and will be found to have filed their asylum applications within a reasonable period given the circumstances under 8 C.F.R. §§ 208.4(a)(5), 1208.4(a)(5) for purposes of the statutory one-year filing deadline requirement under 8 U.S.C. § 1158(a)(2)(B), INA § 208(a)(2)(B).

3. _Deadlines for Seeking Relief Under this Settlement Agreement_

   a. <u>Deadline for Submission of Requests to Join or Non-oppose Motions to Dismiss or Terminate, Reopen and Dismiss or Terminate, or Remand and Dismiss or Terminate Removal Proceedings, Requests to Cancel Pending Expedited Removal and Reinstatement Proceedings, Requests to Rescind Expedited Removal and Reinstated Orders of Removal, and Requests to Cancel Unfiled NTAs</u>

   _Ms. L._ Settlement Class members seeking dismissal, administrative closure, continuance, termination, or reopening and dismissal or termination of their INA § 240 removal proceedings pursuant to Section IV.C.2.b. must submit their request to join or non-oppose their motion to ICE OPLA for consideration no later than two years after their Settlement Class Member Confirmation Date. _Ms. L._ Settlement Class members seeking cancellation of expedited removal or reinstatement proceedings, rescission of expedited removal or reinstated orders of removal, or cancellation of an Unfiled NTA pursuant to the provisions of this Settlement Agreement must submit their motion or request no later than two years after their Settlement Class Member Confirmation Date.

   b. <u>Deadlines for Submission of Asylum Application with USCIS or to Request Reopening of a Prior Asylum Application</u>

   To obtain benefits pursuant to this Section IV.C.2.:

   i. _Ms. L._ Settlement Class members who are filing motions to dismiss, terminate, or reopen and dismiss removal proceedings before EOIR pursuant to Section IV.C.2.b. must properly file a complete asylum application with USCIS or request that USCIS reopen their prior asylum application no later than two years after the date EOIR dismisses or terminates the _Ms. L._ Settlement member's removal proceedings;

   ii. _Ms. L._ Settlement Class members who are submitting requests to DHS to cancel pending expedited removal or reinstatement proceedings, or rescind a reinstatement or expedited removal order, pursuant to Section IV.C.2.d., must properly file a complete asylum application with USCIS or request that USCIS reopen a prior asylum application no later than two years after the date DHS cancels the pending expedited removal or reinstatement proceedings, or rescinds the expedited removal or reinstatement order;

   iii. _Ms. L._ Settlement Class members whose prior asylum application was denied by USCIS prior to the Effective Date must request that USCIS reopen their prior asylum application no later than two years after their Settlement Class Member Confirmation Date. This requirement does not apply to subsequent denials or referrals to EOIR of a _Ms. L._ Settlement Class member's affirmative asylum application if the application was adjudicated pursuant to the procedures set forth in this Settlement Agreement; and

   iv. _Ms. L._ Settlement Class members who do not require further action by DHS or EOIR before they can apply affirmatively for asylum before USCIS (e.g., they are not subject to INA § 240 removal proceedings, expedited removal or reinstatement proceedings, an expedited removal order or reinstated order of

25

removal, or are unaccompanied children filing pursuant to 8 U.S.C. § 1158(b)(3)(C), INA § 208(b)(3)(C), over whom USCIS has initial jurisdiction), including *Ms. L.* Settlement Class members who have an Unfiled NTA or whose removal orders have been executed and they subsequently returned to United States via parole or were admitted in a lawful status, must properly file a complete asylum application with USCIS no later than two years after their Settlement Class Member Confirmation Date.

v. For *Ms. L.* Settlement Class members who are outside the United States as of the time of their Settlement Class Member Confirmation Date, in order to have their asylum application adjudicated under the terms of this section, the *Ms. L.* Settlement Class member must properly file a complete asylum application with USCIS no later than two years after the date of their parole or lawful admission to the United States or before the Termination Date, whichever is earlier.

A *Ms. L.* Settlement Class member's asylum application that is filed with USCIS by the deadlines specified in this section will continue to be governed by procedures set forth in Section IV.C.2.a., even if the asylum application is pending on the Termination Date. Subsequent asylum applications filed by *Ms. L.* Settlement Class members will not be governed by this Settlement Agreement.

For purposes of this Settlement Agreement, the date USCIS receives the properly filed and complete asylum application or receives the request to reopen the prior asylum application is considered the date the asylum application is filed, or the date reopening is requested.

## V. Future Separations

A. This Section (Future Separations) will apply only to noncitizen parents and Legal Guardians who are apprehended or encountered at the Border, and whose minor noncitizen children are separated from them and held in ORR or DHS custody after the Effective Date. The Reunification provisions of this Section will also govern separations that occurred between January 20, 2021 and the Effective Date where the noncitizen parent or Legal Guardian has not been reunified with their noncitizen child(ren) before the Effective Date. This Settlement Agreement does not apply to noncitizen parents and Legal Guardians who are apprehended by DHS in the interior of the United States.

B. DHS is committed to protecting family unity by ensuring that noncitizen children in DHS custody are not separated from their accompanying noncitizen parent or Legal Guardian, except in limited permissible circumstances as detailed below. CBP will not transfer a family to ICE and ICE will not seek or complete a transfer for the purpose of effectuating a separation that could not otherwise be carried out under this Settlement Agreement. If a family is transferred from CBP to ICE for processing, ICE shall not separate the family in any manner that would be inconsistent with the terms of this Settlement Agreement if it had been done by CBP, and will create the documentation regarding the separation as set forth in Section V.K.1.a below.

C. The limited permissible circumstances for separation are the following:

1. CBP determines that the child or accompanying parent or Legal Guardian presents a public safety or national security risk to the United States as defined in Section V.D. below, and indicates the reason for separation is national security or public safety at the time of separation, if permitted;

2. the parent or Legal Guardian is taken into custody by another law enforcement entity to serve as a material witness in circumstances that make it impossible or unsafe for the child to remain with the parent or Legal Guardian;

3. the parent or Legal Guardian poses a threat to the safety of the child, as defined in Section V.H. below, and CBP documents that risk at the time of separation;

4. the parent or Legal Guardian is the subject of an active federal, state, or local warrant, for which the relevant authority takes active steps to extradite the parent or Legal Guardian;

5. the parent or Legal Guardian is referred for prosecution for a felony (other than for immigration related prosecution based on illegal reentry or prior removals). Where no other permissible circumstances for separation are present, CBP will not refer an adult for prosecution solely under 8 U.S.C. § 1325(a) if the adult is traveling with a minor, is the minor's parent or Legal Guardian, and is the only parent or Legal Guardian traveling with the child;

6. the parent, Legal Guardian, or the child requires hospitalization or outside medical care;

7. or when otherwise required by law.

D. National security and public safety risks shall be determined in relation to the specific circumstances of the individual. They will include, but are not limited to, an individual: who is determined to have engaged in or is suspected of terrorism, espionage, or terrorism-related or espionage-related activities; has been convicted of a violent felony and is deemed to pose an ongoing threat to public safety; or where a determination has been made that the parent or Legal Guardian is subject to a mandatory detention statute prohibiting release because of terrorism grounds or a criminal offense such as INA §§ 236(c) or 241(a)(2). Where national security and/or public safety risks are the basis of separation, CBP shall document that the reason for separation is national security and/or public safety at the time of separation or within a reasonable time afterward, to the extent such documentation does not require disclosing national security or sensitive information prohibited from disclosure by law.

E. When criminal history is the basis for separation and the individual is not subject to mandatory detention as described in Section V.D., CBP will consider the length of time since the arrest or conviction before separating a parent or legal guardian from the child. This does not apply to national security concerns.

F. When considering information from foreign databases as the basis for separation, CBP will also consider any countervailing information provided on the individual's behalf.

G. In material witness determinations, DOJ shall, in cooperation with other agencies and where practicable, make every effort to seek to avoid detention of a parent or Legal

27

57

Guardian who is alleged to be a material witness if such detention would result in separating them from their child.

H. A threat to the safety of a child shall be defined as a threat to life or health to the extent that injury or harm may be likely if the child were returned to or left in the custody of his or her parent or Legal Guardian. CBP shall evaluate any threat to the safety of a child on a case-by-case basis and may not employ a presumption of a threat to the safety of a child, based on a parent or Legal Guardian's past criminal or immigration history.

I. After consultation with HHS, CBP will develop standardized guidance and ensure that agents and officers follow the guidance when determining whether the parent or Legal Guardian poses a risk to the safety of the child. This guidance will be developed in coordination with and subject to the approval of the DHS Chief Medical Officer.

J. Training and guidance will be provided to all CBP agents and officers and supervisors who may be involved in separating a parent or Legal Guardian from their child which fully explains the new requirements in this settlement and makes clear that a parent or Legal Guardian shall not be separated from his/her/their child based solely on the parent or Legal Guardian's immigration history, including prior removals.

K. Defendants shall employ the following processes and procedures to ensure that family unity is maintained to the greatest extent possible when a parent or Legal Guardian and his or her child are separated. To the extent possible, information provided to the parent, Legal Guardian, or child under this section pertaining to the reason for the separation, the process for contesting the separation, or communication between the parent or Legal Guardian and the child shall be communicated in the language that the parent, Legal Guardian, or child best understands, using an interpreter or translation if necessary:

　　*1. Procedures at Initial Separation*

　　　　a. Initial internal documentation

CBP shall document the separation in its electronic systems of records. Such documentation shall include the fact of separation, the reason for separation, including facts specific to the separated individual which, in the discretion of the agency, explain the separation, to the extent such documentation does not require disclosing national security or sensitive information prohibited from disclosure by law, and known biographic (including A numbers) and location information of the separated parent(s) or Legal Guardian(s) and separated child(ren). CBP will include relevant documents supporting the decision to separate in the A-file of the separated child(ren) and separated parent or Legal Guardian.

　　　　b. Information disclosures to separated parents, Legal Guardians, and children

　　　　　　i. At the time of a separation, CBP shall provide a written explanation to the parent or Legal Guardian of what is occurring, and next steps, including the

28

58

reason(s) for the separation, including facts specific to the separated individual, which in the discretion of the agency, explain the separation, to the extent such documentation does not require disclosing national security or sensitive information prohibited from disclosure by law. The written explanation must also include information on how the parent or Legal Guardian can submit additional information to ICE regarding their separation using the Family Separation Supplemental Information Form (FSSIF) or successor forms, see Section V.K.3.c.i., or to HHS where relevant to parentage determinations, see Section V.K.3.d.ii, as well as contact information for making a complaint to the DHS Office for Civil Rights and Civil Liberties and the DHS and DOJ Offices of the Inspector General. DHS shall provide the parent with a copy of the FSSIF. The FRTF will also post the FSSIF on its DHS website. The FSSIF shall not require a parent or Legal Guardian to provide the reason they were separated.

ii. If a U.S. citizen child accompanies a noncitizen parent or Legal Guardian who enters CBP's custody at the Border and CBP refers the child to a state or local agency, CBP will endeavor to inform the noncitizen parent of the state and local entity where the child went and any known contact information for the agency. CBP will endeavor to inform any state or local agency, at the time that the child is referred, that the child was separated from their parent.

iii. HHS will create a one-pager explanation for CBP to provide to the separated parent or Legal Guardian and separated child at the time of separation. The one-pager will include notice that the child will be placed with an ORR care provider until reunification with the parent or Legal Guardian or release to another relative or other approved sponsor; that the child will be referred for the appointment of a child advocate; that the child will receive a Know Your Rights presentation and legal screening within 10 business days of entering ORR custody; and that federal agencies shall facilitate communication between children and their separated parent or Legal Guardian while the child is in ORR custody. HHS will ensure that the one-page explanation is age-appropriate for the child.

2. *Government information sharing related to any separation of a parent or Legal Guardian from his or her child*

a. CBP shall work with HHS and ICE to ensure that, consistent with information sharing agreements and legal obligations, HHS and ICE are provided the documents needed for operational purposes (e.g., criminal records, conviction documents, identity documents).

b. Defendants will ensure that the information specified in Sections V.K.2.(c) through (e) below is available to agencies identified in those Sections that may take custody of a separated parent, Legal Guardian, or child (whether it is made available through a shared database or other method of information exchange between agencies), so

29

59

that each agency has the information it needs to track a parent or Legal Guardian and his or her separated child, to identify when reunification is appropriate, and to facilitate such reunification.

c.  Information that will be made available to ORR

The following information shall be provided or made available to ORR at the time of the child's transfer or, in extraordinary circumstances, no later than three business days after the child's transfer. Within three business days after receiving the following information, ORR shall provide such information to the facility where the child is being held; the child's attorney of record and/or accredited representative as defined in 8 C.F.R. § 1292.1(a)(4), who has submitted Form L-3, Notice of Attorney Representation, to ORR, and to any Child Advocate appointed under 8 U.S.C. § 1232(c)(6). ORR shall provide information made available to ORR under this Section to an ORR contracted legal service provider who is not the child's attorney of record if ORR determines that the child does not have an attorney or accredited representative of record:

i.  The fact that a child transferred to ORR custody was separated from a parent or Legal Guardian, as set out in Section V.K.1.a;

ii.  The location to which the parent or Legal Guardian was initially transferred, and updates within 72 hours of the parent or Legal Guardian's transfer to another location;

iii.  The reason for the separation, including facts specific to the separated individual which, in the discretion of the agency, explain the separation, to the extent such documentation does not require disclosing national security or sensitive information prohibited from disclosure by law;

iv.  Any available contact information for the parent or Legal Guardian, including any contact information to reach the parent or Legal Guardian at their current detention facility, updated 72 hours after they are transferred to a new facility; and

v.  DHS and HHS shall work together to ensure that HHS has information needed for HHS operations, including information about a trusted third party, if a parent or Legal Guardian chooses to designate such a trusted third party to receive information about their location and their child's location, see Section V.K.1.g.

d.  Information that will be provided or made available to ICE

i.  The fact that a parent or Legal Guardian transferred to ICE custody was separated from his or her child;

ii.  Known biographical information for the separated parent or Legal Guardian and the separated child;

iii. The reason for the separation, including facts specific to the separated individual which, in the discretion of the agency, explain the separation, to the extent such documentation does not require disclosing national security or sensitive information prohibited from disclosure by law; and

iv. The location where the child is being held if the child is in ORR custody, including updated location information within 24 hours of any transfer of the child within ORR custody, and information on how the parent or Legal Guardian may contact the child, including contact information for the child's assigned case manager, the child's attorney of record and/or accredited representative as defined in 8 C.F.R. § 1292.1(a)(4) who has submitted Form L-3, Notice of Attorney Representation, to ORR, and any Child Advocate appointed under 8 U.S.C. § 1232(c)(6). ORR shall provide the contact information for an ORR contracted legal service provider who is not the child's attorney of record if ORR determines that the child does not have an attorney or accredited representative of record.

e. <u>In cases in which a separated parent or Legal Guardian is referred to the custody of the U.S. Marshals Service (USMS), information that will be provided or made available to USMS</u>

i. The fact that a parent or Legal Guardian transferred to USMS custody was separated from his or her child;

ii. The reason for the separation; and

iii. The location where the child is being held if the child is in ORR custody, including updated location information within 24 hours of any transfer of the child within ORR custody, and information on how the parent or Legal Guardian may contact the child including contact information for the child's assigned case manager, the child's attorney of record and/or accredited representative as defined in 8 C.F.R. § 1292.1(a)(4) who has submitted Form L-3, Notice of Attorney Representation, to ORR, and any Child Advocate appointed under 8 U.S.C. § 1232(c)(6). ORR shall provide the contact information for an ORR contracted legal service provider who is not the child's attorney of record if ORR determines that the child does not have an attorney or accredited representative of record.

f. <u>In cases in which a separated parent or Legal Guardian is in the custody of a state or local agency, information that CBP will endeavor to provide or make available to that agency:</u>

i. The fact that a parent or Legal Guardian transferred to that agency's custody was separated from their child; and

ii.   If the child is in ORR custody, information on how the parent or Legal Guardian may contact the child.

g.   HHS and ICE shall develop procedures by which a parent or Legal Guardian may make a singular notification designating one trusted third-party individual, who is not in ICE custody, to be kept updated promptly by HHS and ICE, as appropriate, any time the location of the separated parent or Legal Guardian or the separated child changes while in ICE or HHS custody, respectively. For a parent or Legal Guardian in ICE custody, ICE will notify the third-party individual regarding changes in the location of custody of the parent or Legal Guardian. For a child in ORR custody, ORR will update the third-party individual regarding changes in the location of the child if ORR has current contact information for the third-party individual.

3.   *Additional Procedures following the Initial Separation*

a.   Outside of lawful seizures of fraudulent documents or other evidence of criminal activity, in no circumstance shall any employee of DHS confiscate and fail to return a parent, Legal Guardian, or child's documents that might be relevant to showing the family relationship. DHS shall make reasonable efforts, in a manner within its discretion, to authenticate presented documents prior to separation and shall ensure the prompt return of documents believed not to be fraudulent upon confirmation of parentage.

b.   HHS will determine what information provided by DHS about the separation can be provided to the child in an age-appropriate and trauma-informed way. HHS will refer every separated child admitted to ORR custody for appointment of a child advocate, who will have been alerted that the child was separated from a parent or Legal Guardian pursuant to Section V.K.2.c.

c.   *Submission of additional information to ICE and processes for facilitating contact with children*:

i.   A separated parent or Legal Guardian in ICE custody can submit additional information to ICE regarding their separation using the FSSIF. FSSIFs will be made available to ICE detainees in all detainee housing units and the FRTF will post the FSSIF on its DHS website. ICE ERO Field Offices will collect completed FSSIFs, and any supporting documentation, in the same manner as a traditional Detainee Request Form. ICE officers are required to email the FSSIFs and supporting documentation to a dedicated email address specific to this process as soon as practicable, but in any event within 7 business days. A separated parent or Legal Guardian may submit subsequent FSSIFs if they are providing new information.

ii.   A separated child can submit additional information to ORR regarding their separation and ORR will update the child's ORR case file with that information.

32

ORR will also provide the updated information to the child's attorney of record and/or accredited representative as defined in 8 C.F.R. § 1292.1(a)(4), who has submitted Form L-3, Notice of Attorney Representation to ORR, or to an ORR contracted legal service provider who is not the child's attorney of record if ORR determines that the child does not have an attorney or accredited representative of record; and to any Child Advocate appointed under 8 U.S.C. § 1232(c)(6). Any update provided by the child may be conveyed to ICE by the child's attorney of record or, in the absence of an attorney of record, the contracted legal services provider if the child consents. If the child is not represented by an attorney of record, then the child advocate may provide updates to ICE when the child advocate determines that sharing such information with ICE would be in the child's best interest and the child consents.

iii.    ICE shall post fliers in all of its detention facilities to explain how parents and Legal Guardians can request to contact their children or provide supplemental information regarding the basis of their separation, or submit a complaint to the DHS Office for Civil Rights and Civil Liberties and/or the DHS Office of the Inspector General, or contact Class Counsel by mail.

iv.    ICE shall maintain a direct email inbox for legal representatives of separated parents or legal guardians in ICE or USMS custody to provide the FSSIF directly to ICE. The FRTF will post the FSSIF on its DHS website along with the email address. For individuals in ICE custody, ICE shall respond to inquiries within 72 hours. Individuals who submit the form while in USMS custody may be asked to re-submit the form if transferred to ICE custody.

v.    The USMS and ORR will enter into a Memorandum of Understanding (MOU) to establish an internal tracking system and procedures between the agencies to facilitate communication and reunification between a separated parent or Legal Guardian in USMS custody and their child(ren) who are in ORR custody. That MOU shall include a requirement that the USMS will alert ORR when a separated parent or Legal Guardian transfers out of USMS custody and, upon transfer, the location to which the parent or Legal Guardian has been transferred, unless restricted from doing so for detainee safety, security, or other related concerns. In no case shall a parent or Legal Guardian's transfer out of USMS custody be delayed because of this notification requirement.

d.   *Separations due to non-parentage*

DHS must justify the separation of a child and adult on the basis that the adult is not the parent or Legal Guardian of the child and must investigate and verify the non-parental relationship before any separation, which may include contacting the relevant consulate for the child and adult. Where DHS believes the adult is not the child's biological parent, it must offer to conduct a DNA test, with the consent of the adult, and receive and communicate the results to the parent prior to any separation. If any adult believes that DHS's determination that he or she is not the parent or

33

63

Legal Guardian of a separated child was in error, he or she can challenge the determination as follows:

    i.    If the adult is in ICE custody, he or she can submit additional information to ICE using the procedure in Section V.K.3.c.i. ICE must consider and respond to such additional information, and communicate its response to the separated parent or Legal Guardian, within 14 business days. If it is determined that the adult is the parent or Legal Guardian of the child and there is no other basis for continued separation, then ICE will coordinate with HHS to facilitate reunification if the child remains in HHS custody, under the streamlined *Ms. L.* process. Should HHS decline to facilitate reunification due to an alleged substantial child safety risk or alleged incapacity of the parent or Legal Guardian, HHS must provide the parent or Legal Guardian or his or her representative with a Notification of Denial letter (as laid out in ORR Policy Guide Section 2.7.7 (Notification of Denial)) and instructions on the appeal process pursuant to ORR Policy Guide Section 2.7.8 (Appeal of Release Denial). If the child is released from ORR custody to a sponsor, ICE will consider alternatives to detention for the parent or Legal Guardian to facilitate reunification. At the time of the child's release to a sponsor, ORR will also provide the sponsor information to the parent in ICE's legal custody. If parentage is determined after the child has been released from ORR custody and the parent is still in ICE custody, ORR will provide information at that time to the parent, for the purpose of facilitating reunification, concerning the sponsor to whom the child was released. If parentage is determined after the parent is no longer in ICE custody, and the parent contacts ORR, ORR will provide information at that time to the parent concerning the sponsor to whom the child was released. A copy of this information will also be sent to the parent's attorney (if ORR has the attorney's contact information) and the child's attorney (if they have one) or legal services provider (LSP).

    ii.    If the adult is not in ICE custody, he or she can submit evidence of parentage to HHS in the manner described in the written explanation provided to the adult upon separation, see Section V.K.1.b.i. If HHS determines that the adult is the parent or Legal Guardian of the child, then HHS shall facilitate reunification under the streamlined *Ms. L.* process unless there exists a child safety risk as defined in Section V.H., or the child or the parent or Legal Guardian is unavailable due to criminal custody or incapacity, is not physically present in the United States, or declines reunification. Should HHS decline to facilitate reunification due to an alleged substantial child safety risk or alleged incapacity of the parent or Legal Guardian, HHS must provide the parent or Legal Guardian or his or her representative with a Notification of Denial letter (as laid out in ORR Policy Guide Section 2.7.7 (Notification of Denial)) and instructions on the appeal process pursuant to ORR Policy Guide Section 2.7.8 (Appeal of Release Denial).

e. *Separations due to the transfer of the parent or Legal Guardian to criminal custody based on an active warrant or because the individual is being held as a material witness*:

      i. If a parent or Legal Guardian is transferred to criminal custody based on an active warrant or because the individual is being held as a material witness, as described in Section V.G. above, the child will be transferred to HHS. Absent an independent basis for separation, a parent or Legal Guardian who is returned to DHS custody at the end of their criminal custody shall be reunified with his or her child.

      ii. In such cases HHS shall facilitate reunification of the child under the streamlined *Ms. L.* process unless there exists a child safety risk as defined in Section V.H. or the child or the parent or Legal Guardian is unavailable due to incapacity, is not physically present in the United States, or declines reunification. Should HHS decline to facilitate reunification due to an alleged substantial child safety risk or alleged incapacity of the parent or Legal Guardian, HHS must provide the parent or Legal Guardian or his or her representative with a Notification of Denial letter (as laid out in ORR Policy Guide Section 2.7.7 (Notification of Denial)) and instructions on the appeal process pursuant to ORR Policy Guide Section 2.7.8 (Appeal of Release Denial).

f. *Separations due to hospitalization or outside medical care*

If a parent or Legal Guardian is separated from his or her child due to the hospitalization or need for outside medical care of a parent, Legal Guardian, and/or child, and there are no other grounds for separation, the parent or Legal Guardian will be entitled to reunification with his or her child once the family member is released from the hospital. Any decision that the child(ren) and parent or Legal Guardian cannot remain together shall be based on the needs, policies, and/or restrictions of the hospital or other care facility where the parent, Legal Guardian, and/or child is receiving care. Any separated child shall be placed in an ORR facility as close as possible to where the parent or Legal Guardian is receiving medical care if ORR has sufficient beds available within the demographic area to accommodate the child. When the family member is released from medical care, DHS and HHS will work to facilitate reunification under the streamlined *Ms. L.* process if the child is in ORR custody and the parent or Legal Guardian is in DHS custody, absent an independent reason to separate. Should HHS decline to facilitate reunification due to an alleged substantial child safety risk or alleged incapacity of the parent or Legal Guardian, HHS must provide the parent or Legal Guardian or his or her representative with a Notification of Denial letter (as laid out in ORR Policy Guide Section 2.7.7 (Notification of Denial)) and instructions on the appeal process pursuant to ORR Policy Guide Section 2.7.8 (Appeal of Release Denial). If the child will be released from ORR custody to an approved sponsor before the parent is released from DHS custody, ORR shall notify the hospitalized parent of the child's intended sponsor and plans for release and reunification with the sponsor, as well as the sponsor's address and contact information.

g.  *Separations for any other reason that does not preclude future eligibility for reunification*

If DHS determines that continued separation of a previously-separated parent or Legal Guardian who is in DHS custody is no longer warranted, DHS will coordinate with HHS to facilitate reunification under the streamlined *Ms. L.* process if the child remains in HHS custody. Should HHS decline to facilitate reunification due to an alleged substantial child safety risk or alleged incapacity of the parent or Legal Guardian, HHS must provide the parent or Legal Guardian or his or her representative with a Notification of Denial letter (as laid out in ORR Policy Guide Section 2.7.7 (Notification of Denial)) and instructions on the appeal process pursuant to ORR Policy Guide Section 2.7.8 (Appeal of Release Denial).

h.  *Removal*

If a separated parent or Legal Guardian who has been in custody throughout the pendency of their removal proceedings has not been reunified with his or her separated child at the time he or she is being removed from the United States, and there are no legal prohibitions or risk to the child as defined in Section V.H., ICE shall offer the parent or Legal Guardian the opportunity to be removed with his or her child as set forth below.

i.  ICE will provide the Notice of Potential Rights Form, or its successor forms, to the separated parent or Legal Guardian when he or she enters ICE custody. If reunification is requested, ICE shall notify HHS, through a dedicated ORR mailbox, of the request as soon as is operationally feasible and, in any event, within three business days of when the separated parent signs the form and informs ICE of the decision.  If the separated parent or Legal Guardian is released from ICE custody after he or she signs the Notice of Potential Rights Form, ICE shall notify HHS of the release, and the procedures in this subsection (h) (Removal) will no longer apply and ICE will follow its normal policies and procedures.

ii. If the child is in HHS custody, then HHS shall notify any attorney for the child or legal services provider at the child's shelter and any appointed child advocate within one business day of receiving the request for reunification. Within seven business days of receiving that request, the child will notify HHS through their representative, and HHS will notify ICE within one business day, whether the child prefers to be removed with their parent or Legal Guardian, objects to removal with their parent or Legal Guardian, or needs more time to make the decision. If the child needs more time to make a decision, including any discussion with the parent or Legal Guardian, the child shall be provided an additional seven business days in which to make their decision. Unless operationally infeasible, ICE shall not remove the parent or Legal Guardian prior to expiration of the relevant time period specified here. Where the child makes or changes their decision after the relevant time period but before removal and a delay in removal will not result, ICE, in its discretion, may, but will have no obligation to, consider such decision.

     iii.    Where the child has been released from HHS custody, HHS shall notify any attorney for the child on record with ORR and any appointed child advocate within one business day of being notified of the pending removal. If the child is no longer in HHS custody, the child may make any objection to removal to their attorney of record or appointed child advocate. Within seven business days of receiving notice, the attorney or child advocate may convey that the child agrees to removal, objects to removal, or needs more time to make the decision. If the child needs more time, the child shall be provided an additional seven business days in which to make their decision. Unless operationally infeasible, ICE shall not remove the parent or Legal Guardian prior to expiration of the relevant time period specified here. Where the child makes or changes their decision after the relevant time period but before removal and a delay in removal will not result, ICE, in its discretion, may, but will have no obligation to, consider such decision.

     iv.    If the child in ORR custody elects to be removed with the parent or Legal Guardian, ICE shall expeditiously coordinate with HHS to accomplish the reunification of the parent or Legal Guardian and child as is operationally feasible prior to the removal of the parent or Legal Guardian and child, as described above.

4.    <u>Communication between a separated parent or Legal Guardian and their child</u>

    a.   The government will take the following steps to facilitate communication between a separated parent or Legal Guardian and their child:

     i.    When the parent or Legal Guardian is in ICE custody and the child is in HHS custody, designated ICE field office points of contact will help facilitate communication between parent(s) or Legal Guardian(s) and children with the ORR case managers. If the child is in the custody of a state or local agency, designated ICE field office points of contact will attempt to facilitate communication between the child and parent(s) or Legal Guardian(s) when practical and legally permissible.

     ii.    When the parent or Legal Guardian is in USMS custody and the child is in HHS custody, designated USMS field office points of contact will help facilitate communication between parent(s) or Legal Guardian(s) and children with the ORR case managers. If the child is in the custody of a state or local agency, USMS will endeavor to assist the parent or Legal Guardian to facilitate communication with their child, consistent with federal, state, or local laws and policies that govern the facility where the parent or Legal Guardian is detained, and subject to operational or administrative feasibility.

     iii.    When the parent or Legal Guardian is in the custody of a state or local agency and the child is in HHS custody, designated HHS points of contact will help

attempt to facilitate communication between children and parent(s) or Legal Guardian(s).

    iv.    ICE and USMS shall offer separated parents or Legal Guardians information about how to request telephone contact with their separated child(ren).

    v.    ORR shall offer separated children information about how to request telephone contact with their parent or Legal Guardian.

    vi.    Contact between parents or Legal Guardians and their children shall be free of cost, meaning that in no case shall contact be denied because the separated parent or Legal Guardian lacks funds in their account to make calls.

    vii.    ICE and ORR shall coordinate to facilitate contact between a parent or Legal Guardian and their child within 48 hours of the child arriving to the ORR care provider. USMS shall coordinate with ORR to facilitate contact between a parent or Legal Guardian and their child upon the parent or Legal Guardian arriving in USMS custody. The frequency and mode of communication will be coordinated between the facility where the parent or Legal Guardian is being held and ORR based on the availability of the parent or Legal Guardian and the availability of resources at the facility where they are being detained. Alternative means of communication shall be explored and implemented whenever the parent, Legal Guardian, or child is unable to communicate effectively by verbal interaction alone. Facilities will endeavor to make such telephone or video contact available for a minimum of 20 minutes for each communication, subject to facility-wide protocols impacting all detainees.

L.    Nothing in this Section shall prohibit ICE from exercising its discretion to make safety-based housing decisions concerning families in its custody.

## VI. <u>Notice and Reporting</u>

### A. Notice to *Ms. L.* Settlement Class Members

1.    NOTICE UPON PRELIMINARY APPROVAL: The Preliminary Class Notice is attached hereto in English as Exhibit A to this Settlement Agreement. Once the Preliminary Class Notice is approved by the Court, the Parties will translate it into Spanish. Within 30 days of preliminary approval of this Settlement, the Parties will distribute the Preliminary Class Notice to *Ms. L.* Settlement Class members as follows:

    a.    Online/Electronic Notice
        i.    Defendants shall post a copy of the Preliminary Class Notice in English and Spanish in a reasonably accessible location on the websites of HHS and EOIR.
        ii.    Defendants shall post a copy of the Preliminary Class Notice on the Together.gov/Juntos.gov web site in English and Spanish

  iii. Class Counsel shall post a copy of the Preliminary Class Notice in English and Spanish in a reasonably accessible location on the websites of the National ACLU.

 b. Nothing in this paragraph or this Settlement Agreement shall prevent Class Counsel from further disseminating the Preliminary Class Notice to, inter alia, other non-profit organizations, legal services providers, or advocates working with separated families. Additionally, nothing in this paragraph or this Settlement Agreement shall prevent Class Counsel from issuing any press release regarding this Settlement Agreement or otherwise obtaining press attention for the Settlement Agreement.

 c. Receipt of a Preliminary Class Notice is not a determination that an individual is a *Ms. L.* Settlement Class Member.

2. NOTICE UPON FINAL APPROVAL: The Parties will meet and confer within seven days of Final Approval to update the language of the Preliminary Class Notice as appropriate (in English and Spanish), in order to reflect the final settlement agreement (the Final Class Notice). Within seven days after the Final Class Notice is agreed upon by the Parties, the Parties shall provide the Final Class Notice to the *Ms. L.* Settlement Class members by the following means:

 a. Within 30 days posting the Final Class Notice (in English and Spanish), in or at the same websites as set forth above;

 b. The Parties agree to negotiate in good faith to amend the Class Notices and these agreed-upon notice procedures if required to obtain final Court approval of the Settlement.

 c. Defendants will work with Class Counsel to ensure that reasonable efforts are taken to contact all *Ms. L.* Settlement Class members and provide them with the Final Class Notice to the extent necessary to ensure that they are provided all benefits owed to them under the Settlement. Reasonable efforts to contact *Ms. L.* Settlement Class members include:

  i. Defendants will identify parents and Legal Guardians and their separated child(ren) who may meet the definition of a *Ms. L.* Settlement Class member. Defendants will share this information with Class Counsel, under the protective order, and provide notice as described in this settlement agreement to those individuals.

  ii. Defendants will provide available e-mail, mailing, and phone contact information under the protective order for all those who have registered with together.gov/juntos.gov, and the same available information for any attorneys or preparers who are listed on a together.gov/juntos.gov registration.

      iii.    Defendants will maintain the existing registration website (together.gov/juntos.gov) until the Termination Date, but potential *Ms. L.* Settlement Class members must register on together.gov or juntos.gov prior to the Final Registration Date.

      iv.    Defendants will fund a third-party managed outreach campaign until the Final Registration Date, to contact *Ms. L.* Settlement Class members and potential *Ms. L.* Settlement Class members both in the United States and abroad, including outreach to *Ms. L.* Settlement Class members who speak indigenous languages, and to explain reunification support, social services and benefits, and how to register on together.gov/juntos.gov. Defendants will also fund a helpdesk to field inquiries from *Ms. L.* Settlement Class members and potential *Ms. L.* Settlement Class members until the Termination Date.

3. Defendants will provide updates every 60 days identifying any new *Ms. L.* Settlement Class members, along with contact information from government records, which includes contact information for any attorneys for the *Ms. L.* Settlement Class members.

4. On a quarterly basis from the Effective Date until the Final Registration Date, Class Counsel will provide to Defendants a list of identified *Ms. L.* Settlement Class members whom Class Counsel have not been able to contact. No later than 60 days after such list is provided, Defendants will search relevant HHS, DHS, and DOJ databases that may contain new or updated address or contact information or attorney contact information for those *Ms. L.* Settlement Class members and any sponsors of *Ms. L.* Settlement Class members, and will share such information with Class Counsel for those *Ms. L.* Settlement Class members identified for that quarter, except as prohibited by law or any applicable privilege.

5. Until the Final Registration Date, Defendants will provide quarterly reports to Class Counsel of their contact efforts. Class Counsel will provide quarterly reports to Defendants detailing progress made in contact efforts, estimates on the remaining efforts to contact *Ms. L.* Settlement Class members, challenges experienced in their contact efforts, and recommendations to improve contact efforts.

## B. Reporting Provisions

1. Defendants will provide reports, subject to an appropriate protective order, to Class Counsel to allow Class Counsel to track progress and identify any problems or delays in providing benefits of this settlement to *Ms. L.* Settlement Class members and their Qualifying Additional Family Members. The Parties may modify the categories of information Defendants provide by mutual agreement, in writing, and may submit any disputes for resolution by the Court. The Defendants' reports shall include, at a minimum, the following information:

    a.    <u>Parole Reporting (Including Parole in Place)</u>

i. Every 60 days, the government will provide a report that provides updates on progress toward obtaining parole for *Ms. L.* Settlement Class members and Qualifying Additional Family Members as follows:

(a) identifying *Ms. L.* Settlement Class members who have submitted applications for parole from within the United States (or "parole in place"), and, separately, those who have submitted applications for parole from outside the United States, whether the *Ms. L.* Settlement Class member has received or been denied parole, dates they applied for and received parole or were denied; and

(b) providing aggregate numbers of Qualifying Additional Family Members who have submitted applications for parole in place or parole from outside the United States, and how many have received parole or have been denied.

ii. Reporting shall also make clear in which cases the DHS contractor is assisting the *Ms. L.* Settlement Class members and their Qualifying Additional Family Members with parole applications.

iii. Any further data points that have been exchanged to date – as of the Effective Date – until the Termination Date.

b. Humanitarian Services Reporting

i. Every 90 days, Defendants will provide a report that includes the aggregate numbers of *Ms. L.* Settlement Class members who are receiving behavioral health services.

ii. Every 90 days, Defendants will provide a report that includes the aggregate numbers of *Ms. L.* Settlement Class members who are receiving housing services.

c. Ongoing Separations

Defendants shall provide monthly reports to Class Counsel concerning ongoing separations for one year after the Effective Date. Defendants shall provide quarterly reports to Class Counsel concerning ongoing separations for two additional years. The government will report the information in the same manner that it has been reported throughout the litigation.

C. Except as otherwise specified herein, all reporting requirements will terminate on the Termination Date.

**VII.**   **Dispute Resolution**

A. The terms of the Settlement Agreement shall be incorporated into the Order of the Court approving the Settlement Agreement. The Order shall constitute the final judgement of the Court with regard to the Action. The Order shall include a statement that the Order of the Court and all

41

obligations of the Parties under the Settlement Agreement will terminate on the Termination Date except that:

   1. Defendants' obligations under Section V (Future Separations) will terminate on the Termination Date – Future Separations; and

   2.  Defendants will continue to provide Behavioral Health Services as described in Section IV.B.2.a. above for one year following the Termination Date.

B.  From the Effective Date until the Termination Date, the Court will retain jurisdiction over the Action only for the purpose of enforcing the terms of the Settlement Agreement, except that the Court shall retain jurisdiction over Section V (Future Separations) until the "Termination Date – Future Separations," and shall retain jurisdiction to resolve disputes regarding the provision of Mental Health Services as described in Section IV.B.2.a. above for one year following the Termination Date; and shall retain jurisdiction to resolve disputes concerning any applications for relief filed pursuant to this Settlement Agreement that remain pending as of the Termination Date.

C.      The Parties agree that they will apply the following dispute resolution mechanisms before seeking enforcement from the Court:

   1.  Should counsel for either party believe in good faith that the other party has failed to implement or comply with a specific term of this Settlement Agreement, counsel shall, within 7 days of learning of the alleged noncompliance, notify counsel for the opposing side, in writing, of the specific grounds upon which non-compliance is alleged. Disagreement with a sole individual discretionary decision or final adjudicative determination provided for in the Settlement Agreement is not a valid basis for alleging non-compliance.

   2.  Any allegations of violations of this Settlement Agreement must be substantiated with specific detailed information about the violations sufficient to enable the responding party to investigate and respond.

   3.  The responding party shall respond in writing within a reasonable period, but no later than thirty (30) calendar days following the receipt of notice of the alleged failure to comply, and provide the responding party's position and any action it has taken or intends to take to address the alleged non-compliance. The Parties shall negotiate in good faith in an effort to resolve any remaining disputes. The Parties agree to make good faith attempts to resolve the issues informally, including a good faith attempt to agree on a reasonable date by which to cure instances of non-compliance.

   4.  If the Parties have exhausted the process set out in the preceding paragraphs and the complaining Party believes that the alleged instances of non-compliance have not been remedied, the Parties may (1) jointly refer any unresolved dispute to a mediator agreed upon by the Parties; or, alternatively, (2) seek relief before the Court in the *Ms. L.* case.

   5.  Any request or communication to a mediator or potential mediator to begin the mediation process must be a joint request or communication from both Parties. The Parties agree that the mediation process described in this Section shall be conducted confidentially and that no public disclosure shall be made regarding the mediation process at any time before,

during, or after the mediation process, except that the final result of the mediation may be disclosed. Plaintiffs retain the right to share information obtained via the mediation process—subject to the Protective Order in this case—with outside stakeholders or organizations that brought the dispute to Plaintiffs' attention, or any other stakeholders or organizations with relevant information or expertise Plaintiffs wish to consult with regarding issues raised in the mediation process. Any documents or information disclosed by either party during the mediation process shall not be admissible in any judicial proceeding. All statements or conclusions of the mediator shall not be admissible in any subsequent judicial proceeding.

6.   If the Parties do not reach resolution under the procedures of Paragraphs 1-6, either party may file a motion requesting that the Court resolve the dispute.

7.   If Plaintiff has a good faith belief that immediate, irreparable harm to a *Ms. L.* Settlement Class member who is eligible for benefits under this Agreement is imminent and cannot be resolved within the time frames specified in this Section, Plaintiffs may make an immediate application for relief to the Court in the *Ms. L.* case, after providing notice of such harm to Defendants' Counsel.

D.   The Parties agree that any action or proceeding to enforce the terms of this Agreement shall be brought exclusively to the Court in the *Ms. L.* case. The Court shall have the power to award such relief and issue such judgments as the Court deems necessary for enforcement of the Settlement Agreement.

E.   The Parties will endeavor to avoid using the dispute resolution process set forth in this Section to address allegations of temporary or de minimis breaches of the Settlement Agreement. This paragraph does not prevent Plaintiffs from raising individual and case-specific instances of violations of the Settlement Agreement for resolution.

## VIII.   Fees and Expenses

Defendants agree that they will pay reasonable fees and other expenses incurred by Class Counsel in the litigation of this Action, in accordance with the Equal Access to Justice Act, 28 U.S.C. § 2412(d). Defendants reserve their right to raise defenses related to the reasonableness of Class Counsel's request for fees and expenses, but otherwise waive their available defenses to a claim brought by Class Counsel under 28 U.S.C. § 2412(d) for the litigation of this Action through the Effective Date of the Settlement Agreement. No later than 60 days following the Effective Date Plaintiffs will serve a fee demand on Defendants, and the Parties will then enter into negotiations to determine the amount of reasonable fees and expenses to be paid by Defendants. If the Parties cannot reach agreement on the amount of reasonable fees and expenses to be paid, then they will submit the issue to the Court in the *Ms. L.* case for binding resolution. This Section does not affect or waive any party's rights or defenses concerning any requests for fees or expenses incurred more than 60 days after the Effective Date related to enforcement of this Settlement Agreement.

## IX. Additional Provisions

A.   By entering into this Settlement Agreement, Plaintiffs and all *Ms. L.* Settlement Class members waive and release all Defendants in their individual and official capacities, the United

73

States, and past, present, or future department or component heads, inferior officers, employees, agents, representatives, or contractors from all Released Claims. The Released Claims are all claims, demands, rights, liabilities and causes of action for declaratory or injunctive relief, known or unknown, arising from or related to the alleged separation of any *Ms. L.* Settlement Class member from his or her parent, Legal Guardian, or child, where such claims existed prior to the Effective Date of this Settlement Agreement and were or could have been alleged in the Action based on the same common nucleus of operative facts alleged by Plaintiffs in their pleadings and the arguments made in the Action. The Released Claims under this Settlement Agreement do not include claims for damages.

B.  This Settlement Agreement and its exhibits constitute the entire agreement among the Parties hereto concerning the settlement of the Action, and no representations, warranties, or inducements have been made by any party hereto other than those contained and memorialized in such documents.

C.  Other than as set forth herein, this Settlement Agreement shall not be construed to waive, reduce, or otherwise diminish the authority of the Defendants to enforce the laws of the United States against *Ms. L.* Settlement Class members, consistent with the Constitution and laws of the United States, and applicable regulations.

D.  This Settlement Agreement shall not be offered or received against the Defendants or the United States as evidence of, or construed as or deemed to be evidence of, any presumption, concession, or admission by any of the Defendants or the United States of the truth of any fact alleged by the Plaintiffs or the validity of any claim that had been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action, or of any liability, negligence, fault, or wrongdoing of the Defendants or the United States or its employees, officers, or agents; or any admission by the Defendants or the United States or its employees, officers, or agents of any violations of, or failure to comply with, the Constitution, laws or regulations.

E.  The Settlement Agreement shall not be offered or received against the Defendants or the United States as evidence of a presumption, concession, or admission of any liability, negligence, fault, or wrongdoing, nor shall it create any substantive rights or causes of action against Defendants or the United States, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to enforce the provisions of this Settlement Agreement.

F.  This Settlement Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Parties hereto or their successors-in-interest.

G.  All deadlines in this Settlement Agreement will be calculated in accordance with the guidelines set forth in Federal Rule of Civil Procedure 6(a) unless otherwise provided in the Settlement Agreement.

H.  This Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that

counsel for the Parties to this Settlement Agreement shall exchange among themselves original signed counterparts.

I.   This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

J.   The waiver by one party of any breach of this Settlement Agreement by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

K.   All counsel and any other person executing this Settlement Agreement and any of the exhibits hereto, or any related settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken under the Settlement Agreement to effectuate its terms.

L.   Class Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement Agreement.

DATED: December 1 , 2023               Respectfully submitted,


                                     BRIAN BOYNTON
                                     Principal Deputy Assistant Attorney General

_____
Lee Gelernt*                      CHRISTOPHER P. TENORIO
Judy Rabinovitz*               Deputy Assistant Attorney General
Anand Balakrishnan*
Daniel A. Galindo (SBN 292854)
AMERICAN CIVIL LIBERTIES      WILLIAM C. PEACHEY
UNION FOUNDATION            Director
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660              WILLIAM C. SILVIS
F:  (212) 549-2654              Assistant Director
lgelernt@aclu.org
jrabinovitz@aclu.org
abalakrishnan@aclu.org
dgalindo@aclu.org               _____
                                     SARAH B. FABIAN
Stephen B. Kang (SBN 292280)      Senior Litigation Counsel
Spencer E. Amdur (SBN 320069)    FIZZA BATOOL
AMERICAN CIVIL LIBERTIES      Trial Attorney
UNION FOUNDATION            Office of Immigration Litigation
39 Drumm Street                Civil Division
San Francisco, CA 94111         U.S. Department of Justice
T:  (415) 343-1198             P.O. Box 868, Ben Franklin Station
F:  (415) 395-0950             Washington, DC 20044
skang@aclu.org                (202) 532-4824
samdur@aclu.org              (202) 616-8962 (facsimile)
                                       Sarah.B.Fabian@usdoj.gov

*Attorneys for Plaintiffs*             *Attorneys for Defendants*
*\*Admitted Pro Hac Vice*

EXHIBIT 2

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
CHRISTOPHER P. TENORIO
Deputy Assistant Attorney General
(SBN 166022)
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
U.S. Department of Justice
WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
FIZZA BATOOL
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962


*Attorneys for Federal Defendants*

Lee Gelernt*
Daniel A. Galindo (SBN 292854)
Anand Balakrishnan*
Judy Rabinovitz*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-1198
F: (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Plaintiffs*
*\*Admitted Pro Hac Vice*

1
2
3
4
5
6
7
8      **UNITED STATES DISTRICT COURT**
9      **SOUTHERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| Ms. L, et al.,<br><br>        Plaintiff,<br>v.<br><br>U.S. Immigration and Customs Enforcement, et al.,<br><br>        Defendant. | Case No.  3:18-cv-428-DMS (AHG)<br><br>**ORDER GRANTING FINAL APPROVAL OF SETTLEMENT AGREEMENT AND CERTIFYING THE SETTLEMENT CLASSES** |

18      Upon consideration of the Parties' Joint Motion for Approval of Proposed
19 Settlement and Certification of Settlement Class, as well as any argument by the
20 parties at the fairness hearing held on December 8, 2023, at 1:00 PM in Courtroom
21 13A, 13th Floor, Suite 1310, 333 West Broadway, San Diego, CA 92101,

22      **IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS**
23 **FOLLOWS:**

24      1.    The Motion is **GRANTED,** the Settlement Agreement is
25 **APPROVED**, the *Ms. L.* Settlement Class is **CERTIFIED** and Plaintiffs' claims
26 are hereby **DISMISSED WITH PREJUDICE**, subject to the terms of the
27 Settlement Agreement and with retention of jurisdiction as set forth in this Order.
28

2.    The Court finds that the Settlement Agreement is a compromise reached by the parties as a result of arms-length negotiations. The Settlement Agreement benefits the *Ms. L.* Settlement Class and was not the result of collusion between the parties. The *Ms. L.* Settlement Class has received notice of the terms of the Settlement Agreement that complied with the requirements of Federal Rule of Civil Procedure 23(e)(1), and no *Ms. L.* Settlement Class member has objected to the Settlement Agreement.

3.    The Court therefore finds that approval is appropriate and hereby grants approval of the Settlement Agreement, as amended. Pursuant to Paragraph VII.A of the Settlement Agreement, the Settlement Agreement is hereby incorporated into the terms of this Order. This Order constitutes the final judgment of the Court with regard to this Action, and Plaintiffs' claims are hereby dismissed with prejudice, except that the Court retains jurisdiction for specified purposes subject to the terms of the Settlement Agreement, including retaining jurisdiction to enforce the Settlement Agreement's terms and to review any future modifications to the Settlement Agreement that the parties might enter into upon mutual agreement.

4.    Notwithstanding the terms of Paragraph 3, the Court's May 19, 2023 Order, ECF No. 689, shall remain in place for 90 days following issuance of this Order.

5.    This Order and all obligations of the parties under the Settlement Agreement will terminate on the Termination Date of the Settlement Agreement, except that:

  a.    Defendants' obligations under Section V (Future Separations) will terminate on the Termination Date – Future Separations; and

  b.    Defendants will continue to provide Behavioral Health Services as described in Section IV.B.2.a. above for one year following the Termination Date.

6. From the Effective Date until the Termination Date, the Court will retain jurisdiction over the Action only for the purpose of enforcing the terms of the Settlement Agreement, except that the Court shall retain jurisdiction over Section V (Future Separations) until the "Termination Date – Future Separations," and shall retain jurisdiction to resolve disputes regarding the provision of Behavioral Health Services as described in Section IV.B.2.a. for one year following the Termination Date; and shall retain jurisdiction to resolve disputes concerning any applications for relief filed pursuant to this Settlement Agreement that remain pending as of the Termination Date.

7. For purposes of the Settlement Agreement, the Court further finds that the requirements for a class action are met, and hereby defines the *Ms. L.* Settlement Class set forth in the parties' Settlement Agreement. Specifically:

a. The Court finds that certification is warranted under the requirements of Federal Rule of Civil Procedure 23(a) because: (1) the members of the proposed *Ms. L.* Settlement Class are so numerous that joinder is impracticable; (2) there are issues of law and fact common to the proposed *Ms. L.* Settlement Class; (3) the claims of the named Plaintiffs are typical of the claims of the *Ms. L.* Settlement Class members; and (4) the proposed Class Counsel will fairly and adequately represent the interests of the *Ms. L.* Settlement Class members.

b. The Court also finds that certification of the *Ms. L.* Settlement Class is warranted under the requirements of Federal Rule of Civil Procedure 23(b)(2) because Defendants are alleged to have acted or refused to act on grounds that apply generally to the proposed *Ms. L.* Settlement Class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the *Ms. L.* Settlement Class as a whole.

8.   The requirements of Rule 23(g) of the Federal Rules of Civil Procedure are met, and the Court hereby confirms the appointment of the ACLU Immigrants' Rights Project as counsel for the *Ms. L.* Settlement Class.

**IT IS SO ORDERED**.

Dated:  December 11, 2023

Hon. Dana M. Sabraw, Chief Judge
United States District Court

EXHIBIT 3

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

D.J.C.V., minor child, and G.C., his father,

               Plaintiffs,

   v.

UNITED STATES of AMERICA,                        No. 20-cv-05747 (PAE)

              Defendant.

## [PROPOSED] ORDER OF DISMISSAL

WHEREAS, the parties to the above-captioned action have stipulated to settle and release, with prejudice, all claims in this action;

WHEREAS, the complete and precise terms and conditions of the parties' settlement agreement are set forth in the Stipulation for Compromise Settlement and Release (the "Stipulation"), attached as Exhibit 1 (with redactions to protect the identities of the plaintiffs);

WHEREAS, on May 8, 2024, the Court issued an Order Approving Settlement on Behalf of a Minor, ECF No. 280 (under seal);

IT IS HEREBY ORDERED that this case is dismissed with prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, with each party to bear its own costs, expenses, and fees.

IT IS FURTHER ORDERED that this Court does not retain jurisdiction over this action, the Stipulation, or the United States.

SO ORDERED:

_____

HON. PAUL ENGELMAYER
United States District Judge

Dated:_____

2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW**
**YORK**

| | |
|---|---|
| D.J.C.V., a minor child, and G.C., his father,<br><br>      Plaintiffs,<br><br>   -v-<br><br>UNITED STATES OF AMERICA,<br><br>      Defendant. | Case No. 20 Civ. 5747 (PAE)<br><br>**STIPULATION FOR COMPROMISE SETTLEMENT AND RELEASE** |

It is hereby stipulated and agreed by and between the undersigned Plaintiffs (meaning D.J.C.V. and G███████ C██ and any person, other than the Defendant and the Parties' attorneys, signing this agreement waiving and releasing claims, whether or not a party to this civil action), and the Defendant, United States of America, including its agents, servants, and employees (hereinafter "United States" and collectively with Plaintiffs "the Parties"), by and through their respective attorneys, as follows:

1.  The Parties to this Stipulation for Compromise Settlement and Release (hereinafter "Stipulation") do hereby agree to settle and compromise each and every claim of any kind, whether known or unknown, including claims for wrongful death, arising directly or indirectly from the acts or omissions that gave rise to the above-captioned action under the terms and conditions set forth in this Stipulation. This release does not apply to or affect in any way any claims for immigration relief, which Plaintiffs have or may advance against the United States or any non-monetary relief to which Plaintiffs may be or become entitled by virtue of any class action lawsuit.

2.  This Stipulation is not, is in no way intended to be, and should not be construed as, an admission of liability or fault on the part of the United States, its agents,

Page **1** of **14**

servants, or employees, and it is specifically denied that they are liable to Plaintiffs. This Stipulation is entered into by all Parties for the purpose of compromising disputed claims under the Federal Tort Claims Act and avoiding the expenses and risks of further litigation.

3.     In consideration for Plaintiffs' agreement to accept the terms and conditions of this settlement, the United States agrees to pay Plaintiffs the amount of Sixty-Five Thousand Dollars ($65,000.00) (hereinafter "Settlement Amount") as follows:

a.     Within five (5) business days after counsel for the United States receives (1) this Stipulation signed by all Parties to said document; (2) Order(s) approving the settlement on behalf of plaintiff D.J.C.V., who is a minor, and authorizing an individual or entity to sign on his behalf; (3) the Social Security numbers or tax identification numbers of Plaintiffs and Plaintiffs' attorneys; (4) Plaintiffs' attorney's bank account number, bank routing information, and all information required for an electronic funds transfer ("EFT") of the Settlement Amount; and (5) an authorization by the Attorney General or his designee to conclude negotiations and to consummate the settlement, counsel for the United States will submit a request to the United States Treasury, requesting an EFT for the Settlement Amount, made payable to the "LatinoJustice PRLDEF IOLTA Account." Plaintiffs' attorneys agree to distribute the Settlement Amount to Plaintiffs, in accordance with the terms and conditions of this Stipulation.

b.     With respect to the payment of the Settlement Amount, Plaintiffs stipulate and agree that the United States will not sign an annuity application form, a uniform qualified settlement form, or any equivalent such forms, and that the United States will not pay the Settlement Amount into a qualified settlement fund or an equivalent fund or account, settlement preservation trust, or special or supplemental needs trust. Plaintiffs

further stipulate and agree that Plaintiffs, Plaintiffs' attorney(s), any Guardian Ad Litem, and Plaintiffs' representatives (including any structured settlement annuity broker, regardless of whether said broker was retained by them or by someone else, either before, during, or after the settlement) will not attempt to structure the Settlement Amount in any way, form, or manner, including by placing any of the Settlement Amount into any qualified settlement fund or its equivalent. However, nothing in this Paragraph 3.b. precludes Plaintiffs from purchasing non-qualified annuities after Plaintiffs have received the Settlement Amount, but Plaintiffs agree not to represent to any person, entity, or agency that Plaintiffs are purchasing qualified structured settlement annuities, and Plaintiffs agree not to attempt to purchase such structured settlement annuities.

      c.     Plaintiffs stipulate and agree that Plaintiffs' attorneys shall escrow the aggregate face value of any and all currently known liens and currently known claims for payment or reimbursement, including any such liens or claims by Medicaid or Medicare, arising directly or indirectly from the acts or omissions that gave rise to the above-captioned action, whether disputed as legally valid or not, and shall not distribute to Plaintiffs any portion of the escrowed amount unless and until said liens and claims have been paid or resolved.

      d.     The Parties agree that any attorneys' fees owed by Plaintiffs relating to this Federal Tort Claims Act matter shall not exceed twenty-five percent (25%) of the Settlement Amount. 28 U.S.C. § 2678. The Parties further agree that any such attorneys' fees, along with Plaintiffs' costs and expenses incurred in bringing the above-captioned action, and their costs, expenses, and fees (including all fees of any legal Guardian Ad Litem) associated with obtaining court approval of this settlement on behalf of any minor,

incompetent adult, or estate required to sign this Stipulation, shall be paid out of the Settlement Amount, and not in addition thereto. The Parties agree that any fees, including fees of any legal Guardian Ad Litem, incurred in providing legal services in this matter and in any court proceedings reviewing the settlement for approval purposes shall be considered attorneys' fees and not costs, and shall be subject to the provisions of 28 U.S.C. § 2678. Notwithstanding the terms and conditions set forth above in this paragraph 3.d, undersigned counsel for Plaintiffs agree to not seek from Plaintiffs or the United States any attorneys' fees, costs, and/or expenses related to this action.

4.     Plaintiffs and Plaintiffs' guardians, Guardian Ad Litem (if any), heirs, executors, administrators, and assigns hereby accept the settlement and the payment of the Settlement Amount in full settlement, satisfaction, and release of any and all claims, demands, rights, and causes of action of any kind, whether known or unknown, including any future claims for survival or wrongful death, and any claims for fees, interest, costs, and expenses, arising from, and by reason of, any and all known and unknown, foreseen and unforeseen, bodily and personal injuries, including the death of either plaintiff G███████ C███ or plaintiff D.J.C.V., or damage to property, and the consequences thereof, which Plaintiffs or their heirs, executors, administrators, or assigns have had, now have, or hereafter may have against the United States on account of the acts or omissions that gave rise to the above-captioned action.

Plaintiffs, on behalf of themselves, their respective heirs, executors, administrators, assigns, predecessors and successors in interest, do hereby, for good and valuable consideration, the receipt of which is hereby acknowledged, release and forever discharge the United States, and its respective officials, agencies, representatives, officers,

employees, agents, assigns and attorneys, from any and all claims, demands, rights, causes of actions, liens, and all other liabilities whatsoever, whether known or unknown, suspected or unsuspected, that Plaintiffs have had, now have, or hereafter may have on account of the acts or omissions that gave rise to the above-captioned action, as well as claims relating to or arising out of the acts or omissions that gave rise to the above-captioned action that could have been but were not alleged in this action.

Plaintiffs and Plaintiffs' guardians, heirs, executors, administrators, and assigns further agree to reimburse, indemnify, and hold harmless the United States from and against any and all claims, causes of action, liens, rights, or subrogated or contribution interests (whether such claims, causes of action, liens, rights, subrogated interests, or contribution interests sound in tort, contract, or statute) incident to, or resulting or arising from, the acts or omissions that gave rise to the above-captioned action, including claims or causes of action for wrongful death.

Plaintiffs and Plaintiffs' guardians, heirs, executors, administrators, and assigns further stipulate and agree that they are legally responsible for any and all past, present, and future liens and past, present, and future claims for payment or reimbursement, including any past, present, and future liens or claims for payment or reimbursement by any individual or entity, including an insurance company or Medicaid (including the States of Texas and New York), from the acts or omissions that gave rise to the above-captioned action.  Plaintiffs stipulate and agree that they will satisfy or resolve any and all such past, present, and future liens or claims for payment or reimbursement asserted by any such individual or entity.  Plaintiffs agree that, no later than thirty (30) days from the date any past, present, or future lien or claim for payment or reimbursement is paid or resolved by

Plaintiffs, they will provide to the United States evidence that said lien or claim has been satisfied or resolved and that said lienholder has waived and released such lien or claim. The evidence required by the terms of this Paragraph may be satisfied by a letter from Plaintiffs' attorneys representing to counsel for the United States that such lien or claim has been satisfied or resolved and that the lienholder has waived and released such lien and claim.

5.  This compromise settlement is specifically subject to each of the following conditions:

a.  The Attorney General or the Attorney General's designee must approve the terms and conditions of the settlement and authorize the attorney representing the United States to consummate a settlement for the amount and upon the terms and conditions agreed upon by the Parties, as set forth in this Stipulation.

b.  The Parties must agree in writing to the terms, conditions, and requirements of this Stipulation. The Parties stipulate and agree that the Stipulation and the compromise settlement are null and void in the event the Parties cannot agree on the terms, conditions, and requirements of this Stipulation. The terms, conditions, and requirements of this Stipulation are not severable and the failure to agree, fulfill, or comply with any term, condition, or requirement renders the entire Stipulation and the compromise settlement null and void. The Parties must agree to the terms, conditions, and requirements of this Stipulation before the United States Attorney's Office will seek settlement authority from the Attorney General or the Attorney General's designee.

c.  Plaintiffs must obtain, at their expense, approval of the settlement by a court of competent jurisdiction on behalf of plaintiff D.J.C.V. The Order approving

the settlement on behalf of D.J.C.V. may be obtained from either the United States District Court for the Southern District of New York or a state court of competent jurisdiction. It is a condition of this settlement that Plaintiffs shall provide a draft of any such proposed Order to the United States and the United States must agree to the terms contained in the proposed Order prior to its submission to the reviewing Court, and once the United States provides its consent, Plaintiffs cannot change the terms of such proposed Order without the prior written consent of the United States. Plaintiffs agree to obtain such approval(s) in a timely manner, time being of the essence. Plaintiffs further agree that the United States may void this settlement at its option in the event any such approval is not obtained in a timely manner. In the event Plaintiffs fail to obtain such court approval(s), the entire Stipulation and the compromise settlement are null and void. Plaintiffs must obtain such court Order before the United States Attorney's Office will seek settlement authority from the Attorney General or the Attorney General's designee.

        d.     Plaintiffs must obtain a release and waiver of any claim or cause of action (whether sounding in tort, contract, statute, or otherwise) that any alleged tortfeasor, if any, has or may have in the future against the United States arising out of the acts or omissions that gave rise to the above-captioned action. This condition is for the benefit of the United States exclusively. The United States will provide the form of Release and Waiver, or any changes to the form required by the United States, to be used by Plaintiffs in obtaining a Release and Waiver from any alleged tortfeasor. Before the United States Attorney's Office will seek settlement authority from the Attorney General or the Attorney General's designee, Plaintiffs must provide the United States with either (i) all such releases and waivers required by this Paragraph 5.d., or (ii) a written representation by Plaintiffs'

attorneys stating that, after a diligent search of counsel's law firms' records and files, including expert and consultant reports, and of Plaintiffs' records and files, Plaintiffs and their attorneys are unaware of any such potential tortfeasor.

   e. Plaintiffs must obtain an Order from the United States District Court for the Southern District of New York dismissing this action in its entirety with prejudice, with each side bearing its own costs, expenses, and fees, and with the District Court not retaining jurisdiction over the above captioned action, this settlement, or the United States ("Dismissal Order"). This Stipulation shall be included as an attachment to the Dismissal Order. If the Dismissal Order is not approved and entered by the Court, this Stipulation shall be null and void, with no force or effect.

  6. The Parties agree that this Stipulation, including all the terms and conditions of this compromise settlement and any additional agreements relating thereto, may be made public in their entirety, and Plaintiffs expressly consent to such release and disclosure pursuant to 5 U.S.C. § 552a(b).

  7. Plaintiffs shall be solely responsible for full compliance with all applicable Federal, state, and local tax requirements. Plaintiffs execute this Stipulation without reliance upon any representation by the United States as to tax consequences, and Plaintiffs agree that they are responsible for the payment of all taxes that may be associated with this settlement. Further, nothing in this Stipulation waives or modifies Federal, state, or local laws pertaining to taxes, offsets, levies, and liens that may apply to this Stipulation or the Settlement Amount proceeds. Plaintiffs execute this Stipulation without reliance on any representation by the United States as to the application of any such law. Plaintiffs, on behalf of themselves and their guardians, heirs, executors, administrators, assigns,

subrogees, predecessors in interest, and successors in interest, understand and agree that this transaction may be reported to the Internal Revenue Service and other government agencies in the ordinary course of the business of the United States and may be subject to offset pursuant to the Treasury Offset Program.

8.      Plaintiffs represent that they have read, reviewed and understand this Stipulation, and that they are fully authorized to enter into the terms and conditions of this agreement and that they agree to be bound thereby.  Plaintiffs further acknowledge that they enter into this Stipulation freely and voluntarily.  Plaintiffs further acknowledge that they have had sufficient opportunity to discuss this Stipulation with their attorneys, who have explained the documents to Plaintiffs, and that Plaintiffs understand all of the terms and conditions of this Stipulation.

9.      The Parties understand and agree that this Stipulation contains the entire agreement among them and that no statements, representations, promises, agreements, or negotiations, oral or otherwise, between Plaintiffs, the United States, or any other parties or their counsel, that are not included herein shall be of any force or effect.

10.     It is contemplated that this Stipulation may be executed in several counterparts, with a separate signature page for each party.  All such counterparts and signature pages, together, shall be deemed to be one document.

WHEREAS, the Parties accept the terms of this Stipulation for Compromise Settlement and Release as of the dates written below:

Dated: June 21, 2024
New York, New York

DAMIAN WILLIAMS
United States Attorney for
the Southern District of New York

By:

Mollie Kornreich
Carly Weinreb
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Tel: (212) 637-3274/2769
Email: mollie.kornreich@usdoj.gov
        carly.weinreb@usdoj.gov

*Counsel for United States of America*

Dated:   April 17, 2024
         New York, New York


By:      _____

         Meeha Roldan Oberdick
         Rayza B. Goldsmith
         Ghita Schwartz
         LATINOJUSTICE PRLDEF
         475 Riverside Drive, Suite #1901
         New York, New York 10115
         Tel: (212) 256-1910
         Email: moberdick@latinojustice.org

         *Counsel for Plaintiffs*

Dated: April 17       , 2024
        Philadelphia, PA

By:

Zane Memeger
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel: (215) 963-5750
Email: zane.memeger@morganlewis.com

Jonathan York
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 200004-2541
Tel: (202) 739-5394
Email: Jonathan.york@morganlewis.com

*Counsel for Plaintiffs*

Dated: ___April 17, 2024

_____, _____

By: _____

Jessica Vosburgh *PHV
Baher Azmy
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6427
Email: bazmy@ccrjustice.org

*Counsel for Plaintiffs*

Dated: _____ __, 2024
_____, _____

PLAINTIFFS



Plaintiff G████ C██, individually

Plaintiff Gerardino Coto on behalf of his son,
Plaintiff D.J.C.V.

# EXHIBIT 4

1
2
3
4
5
6            **IN THE UNITED STATES DISTRICT COURT**

7            **FOR THE DISTRICT OF ARIZONA**

8

9    F.R.,                                    No. CV-21-00339-PHX-DLR

10                    Plaintiff,             **ORDER APPROVING**
                                             **SETTLEMENT OF MINOR'S**
11   v.                                      **CLAIMS**

12   United States of America,

13                    Defendant.

14

15

16        The Court having reviewed Plaintiff's Motion for Court Approval of Settlement of

17   Minor's Claims (Doc. 93), to which Defendant has no objection, and good cause appearing;

18        **IT IS ORDERED**:

19        1.    The Court approves the settlement of the Lawsuit.

20        2.    The Court approves the allocation of the settlement proceeds as requested

21              between F.R. and A.A. ($45,000 to F.R., $65,000 to A.A.)

22        3.    The Court approves placement of A.A.'s portion of the Settlement into a

23              pooled minor's trust operated by Legacy Enhancement until A.A. reaches the

24              age of 21.

25   / / /

26   / / /

27   / / /

28

4.       Plaintiffs' counsel Peter Rukin shall coordinate with F.R. and Legacy Enhancement for the execution of all necessary paperwork and the funding of the pooled minor's trust on behalf of A.A. and shall report back to the Court once funding is completed.

Dated this 1st day of November, 2023.


_____
Douglas L. Rayes
United States District Judge

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| A.I.I.L., et al., | No. CV-19-00481-TUC-JCH |
| Plaintiffs, | **ORDER** |
| v. | |
| United States of America, | |
| Defendant. | |

Before the Court is Plaintiffs' "Unopposed Motion for Court Approval of Settlement of Minors' Claims" (Doc. 133), to which Defendant has no objection. The Court has reviewed Plaintiffs' Memorandum of Points and Authorities and the attached proposed settlement agreements. *Id.* Upon consideration, and good cause appearing,

**IT IS HEREBY ORDERED**:

1. The Court approves the Settlements of minors J.A.H.I., M.E.H.I., D.S.V.H., and B.L.S.P.'s claims in this Lawsuit.

2. The Court approves the allocation of the Settlement proceeds as follows:

| Plaintiff | Settlement Share |
|---|---|
| A.I.I.L. | $131,666.66 |
| J.A.H.I. | $131,666.67 |
| M.E.H.I. | $131,666.67 |
| J.L.V.A. | $137,500.00 |

| D.S.V.H. | $137,500.00 |
| --- | --- |
| J.I.S. | $97,500.00 |
| B.L.S.P. | $97,500.00 |

3. The Court approves placement of J.A.H.I., M.E.H.I., D.S.V.H., and B.L.S.P.'s portions of the Settlement into pooled minors' trusts operated by Legacy Enhancement until they reach the age of 21.

4. Plaintiffs' counsel shall coordinate with A.I.I.L., J.L.V.A., J.I.S., and Legacy Enhancement Trust for the execution of all necessary paperwork and the funding of the pooled minors' trusts on behalf of J.A.H.I., M.E.H.I., D.S.V.H., and B.L.S.P. and shall report back to the Court once funding is completed.

Dated this 11th day of March, 2024.

John C. Hinderaker
United States District Judge

- 2 -

105

EXHIBIT 6

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| E.S.M., on his own behalf and on behalf of his minor child, H.S.S.,<br><br>        Plaintiffs,<br><br>   vs.<br><br>United States of America,<br><br>        Defendant. | CV-21-00029-TUC-JAS<br><br>**ORDER APPROVING SETTLEMENT OF MINOR'S CLAIMS** |

The Court has reviewed Plaintiffs' Motion for Court Approval of the Settlement of the Minor's Claims. Defendant United States of America does not oppose Plaintiffs' motion. For good cause shown, **IT IS HEREBY ORDERED** as follows:

1. The Court approves the settlement of the claims of minor Plaintiff H.S.S. in this Lawsuit.

2. The Court approves the allocation of the settlement proceeds such that Plaintiff E.S.M., the father, receives $157,500 and minor Plaintiff H.S.S. receives $157,500, for a total Settlement Amount of $315,000.

3. The Court approves the placement of the minor Plaintiff's Settlement funds into the Mercer County Surrogate's Court Intermingled Trust Fund until minor Plaintiff reaches the age of 18.

4. Plaintiffs' counsel shall coordinate with Plaintiffs and with the Mercer County Surrogate's Court for the execution of all necessary paperwork and the transfer of the minor's Settlement Share into the Mercer County Surrogate's Intermingled Trust Fund. Plaintiffs' counsel shall report back to the Court once funding of the minor's Settlement funds have been transferred.

Dated this 27th day of March, 2024.

Honorable James A. Soto
United States District Judge

# EXHIBIT 7

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| C.M., on her own behalf and on behalf of her minor child, B.M.; L.G., on her own behalf and on behalf of her minor child, B.G.; M.R., on her own behalf and on behalf of her minor child, J.R.; O.A., on her own behalf and on behalf of her minor child, L.A.; and V.C., on her own behalf and on behalf of her minor child, G.A. | No. CV-19-05217-PHX-SRB |
| Plaintiffs, | |
| v. | ORDER APPROVING SETTLEMENTS OF MINORS' CLAIMS |
| United States of America, | |
| Defendant. | |

The Court has reviewed Plaintiffs' Unopposed Motion for Court Approval of Settlements of Minors' Claims. Defendant United States of America does not oppose the relief sought in Plaintiffs' motion. Upon consideration, and for good cause shown,

IT IS HEREBY ORDERED:

1. The Court approves the Settlements of the claims of minor Plaintiffs B.M., B.G., L.A., and G.A. in this Lawsuit.

2. The Court approves the allocation of the Settlement proceeds as follows:

     a.  Plaintiff C.M. and minor Plaintiff B.M. each receiving $189,500, for a total Settlement Amount of $379,000;

     b.  Plaintiff L.G. and minor Plaintiff B.G. each receiving $108,000, for a total Settlement Amount of $216,000;

     c.  Plaintiff O.A. and minor Plaintiff L.A. each receiving $189,500, for a total Settlement Amount of $379,000;

     d.  Plaintiff V.C. and minor Plaintiff G.A. each receiving $189,500, for a total Settlement Amount of $379,000.

3. The Court approves placement of B.M., B.G., L.A., and G.A.'s portions of the Settlements into pooled minors' trusts operated by Legacy Enhancement until they reach the age of 18, 21, or 25.

4. Plaintiffs' counsel shall coordinate with C.M., L.G., O.A., and V.C. and Legacy Enhancement Trust for the execution of all necessary paperwork and funding of the pooled minors' trusts on behalf of B.M., B.G., L.A., and G.A.'s and shall report back to the Court once funding is completed.

Dated this 2nd day of July, 2024.

_____
Susan R. Bolton
United States District Judge

110

EXHIBIT 8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

J.R.G., et al.,

             Plaintiffs,

     v.

UNITED STATES OF AMERICA,

             Defendant.

Case No. 4:22-cv-05183-KAW

**ORDER GRANTING MOTION TO APPROVE SETTLEMENT INVOLVING CLAIMS OF A MINOR**

Re: Dkt. No. 64

M.A.R., a minor child, and her mother, J.R.G., filed an action against the United States under the Federal Tort Claims Act ("FTCA"), seeking damages for the harms they suffered as a result of the federal government's family separation policy when they entered the country in 2018.

On May 2, 2024, Plaintiffs filed a motion to approve a settlement involving the claims of a minor. (Pl.'s Mot., Dkt. No. 64.) On May 9, 2024, Defendant filed a statement of non-opposition. (Dkt. No. 68.)

The Court deems this matter suitable for disposition without a hearing pursuant to Civil Local Rule 7-1(b). Having considered the filings and the relevant legal authority, the Court GRANTS the motion to approve.

## I.    BACKGROUND

Plaintiff M.A.R. was eight years old when she fled El Salvador with her mother, J.R.G., to seek refuge in the United States. (Compl., Dkt. No. 1 ¶ 17.) On May 20, 2018, they entered the United States near El Paso, Texas. (Compl. ¶ 18.) Shortly after they crossed the border, they were apprehended by U.S. Customs and Border Protection officers, and they were ultimately separated pursuant to the Zero Tolerance Policy, which was allegedly devised to deter Central American asylum seekers at the border through systematic family separation. (Compl. ¶¶ 18-20, 36-39.)

United States District Court
Northern District of California

1    Under that policy, immigration officials would refer the parent for federal criminal prosecution

2    and designate the child as an "unaccompanied minor," and place the child in Department of Health

3    and Human Services' Office of Refugee Resettlement ("ORR") custody. (Compl. ¶¶ 44, 65-66.)

4    After they were separated, M.A.R. did not see her mother again for over ten months, as her mother

5    remained in immigration detention even after ORR released M.A.R. to her father. (Compl. ¶¶ 25,

6    68, 73.)  As was the case in many of these criminal prosecutions, J.R.G. was sentenced to no jail

7    time. (Compl. ¶ 41.)  M.A.R. has suffered lasting emotional harm due to the separation from her

8    mother. (Compl. ¶¶ 70-76, 84.)

9         On September 12, 2022, Plaintiffs filed this lawsuit pursuant to the FTCA.  In April 2024,

10    the parties reached a proposed settlement for $300,000. (Proposed Settlement Agreement, Dkt.

11    No. 64-1 ¶ 3.)  Under the proposed settlement, each Plaintiff will receive $150,000, minus $37,500

12    (25%) for attorneys' fees. *Id.*; *see also* Decl. of Julianna Rivera Maul, "Maul Decl.," Dkt. No. 64-2

13    ¶¶ 7, 11.  Counsel will deposit M.A.R.'s remaining $112,500 balance into an interest-bearing,

14    federally insured blocked account at Chase Bank, which M.A.R. will be entitled to receive once

15    she reaches 18 years of age. (Maul Decl. ¶ 12.)

16                              **II.    LEGAL STANDARD**

17         "District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to

18    safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181

19    (9th Cir. 2011).  "[T]his special duty requires a district court to conduct its own inquiry to

20    determine whether the settlement serves the best interests of the minor." *Id.* (internal quotation

21    omitted).  Thus, the district court considers whether the settlement, including any net recovery, "is

22    fair and reasonable as to each minor plaintiff." *Id.* at 1182.

23                              **III.    DISCUSSION**

24         The Court finds that the proposed settlement is fair and reasonable.  Plaintiff's counsel

25    explains that the settlement total is higher than settlement amounts for actively litigated claims for

26    similarly situated plaintiffs separated at the southern border. (Maul Decl. ¶¶ 8.)  Counsel further

27    explained that settlement is in M.A.R.'s best interest because it will avoid further litigation that

28    would require her and J.R.G. to relive their separation and retraumatize them both. (Maul Decl. ¶

United States District Court
Northern District of California

9.)

The Court also finds that the settlement amount is reasonable to M.A.R., ultimately resulting in her receiving $112,500. (Maul Decl. ¶¶ 7, 12.) This is exclusive of attorney's fees and costs; the Court further notes that Plaintiffs' counsel's fee is 25% of the gross settlement per their fee agreement, and counsel is not seeking to recover any additional costs. (Maul Decl. ¶ 11.) Additionally, the settlement requires that M.A.R.'s funds be deposited into a blocked bank account in her name, and she will receive those funds when she turns 18 years old. (Maul Decl. ¶ 12.)

Thus, considering the circumstances and the amount of recovery, the Court concludes that the settlement reflects a fair and reasonable compromise intended for M.A.R.'s benefit.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that the settlement is fair and reasonable, and GRANTS the motion to approve the settlement involving claims of a minor as follows:

(a) Plaintiff J.R.G. is hereby authorized to sign the final settlement agreement on behalf of her child, M.A.R.;

(b) Defendant will deposit the total settlement amount agreed upon of $300,000, in Counsel for Plaintiffs, The Law Office of Julianna Rivera P.C.'s IOLTA account;

(c) Each Plaintiff is entitled to half of the settlement amount, $150,000, less the attorneys' fee of $37,500;

(d) For Plaintiff M.A.R., The Law Office of Julianna Rivera, P.C. is directed to deposit $112,500.00, in a blocked account in Plaintiff M.A.R.'s name with the Chase Bank; and

(e) On her eighteenth birthday, M.A.R. is entitled to withdraw any and all funds from her account as she desires, including any and all interest that accrued to the account.

Finally, the Clerk of the Court shall close this case.

IT IS SO ORDERED.

Dated: July 9, 2024

KANDIS A. WESTMORE
United States Magistrate Judge

EXHIBIT 9

1
2
3
4
5
6                    **IN THE UNITED STATES DISTRICT COURT**

7                    **FOR THE DISTRICT OF ARIZONA**

8
9   B.A.D.J.,                                    No. CV-21-00215-PHX-SMB

10              Plaintiff,                        **ORDER**

11  v.

12  United States of America,

13              Defendant.

14  _____

15          The Court has reviewed Plaintiffs' Motion for Court Approval of the Settlement of

16  the Minor's Claims (Doc. 90). Defendant United States of America does not oppose

17  Plaintiffs' motion. For good cause shown,

18          **IT IS HEREBY ORDERED**:

19          1. The Court approves the Settlements of minor X.B.J.A.'s claims in this Lawsuit.

20          2. The Court approves the allocation of the settlement proceeds such that Plaintiff

21  B.A.D.J., the mother, receives $130,000 and minor Plaintiff X.B.J.A. receives $130,000,

22  for a total Settlement Amount of $260,000.

23          3. The Court approves the placement of the minor Plaintiff's Settlement funds into

24  a Mission Management & Trust Company trust fund until minor Plaintiff X.B.J.A.

25  reaches the age of 25.

26          ///

27          ///

28          ///

116

4. Plaintiffs' counsel shall coordinate with B.A.D.J. and Mission Management & Trust Company for the execution of all necessary paperwork and the funding of the pooled minor's trusts on behalf of X.B.J.A.

Dated this 25th day of July, 2024.

_____
Honorable Susan M. Brnovich
United States District Judge

EXHIBIT 10

David B. Rosenbaum, 009819
Emma J. Cone-Roddy, 034285
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
drosenbaum@omlaw.com
econe-roddy@omlaw.com

*(Additional Counsel for Plaintiffs Listed on the Following Page)*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| C.M., on her own behalf and on behalf of her minor child, B.M.; L.G., on her own behalf and on behalf of her minor child, B.G.; M.R., on her own behalf and on behalf of her minor child, J.R.; O.A., on her own behalf and on behalf of her minor child, L.A.; and V.C., on her own behalf and on behalf of her minor child, G.A., <br><br> Plaintiffs, <br><br> v. <br><br> United States of America, <br><br> Defendant. | No. <br><br> **COMPLAINT** |

EXHIBIT 11

Marty Lieberman (Bar No. 007442)
ACLU FOUNDATION OF ARIZONA
3707 N. 7th Street, Suite 235
Phoenix, AZ 85014
Tel. (602) 650-1854
mlieberman@acluaz.org

*(Additional Counsel for Plaintiffs Listed on Signature Page)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| A.I.I.L., on behalf of herself and her minor children, J.A.H.I. and M.E.H.I.; L.L.H.O., on behalf of herself and her minor child, K.E.O.H.; J.L.V.A., on behalf of himself and his minor child, D.S.V.H.; J.I.S., on behalf of himself and his minor child, B.L.S.P.; and J.J.P.B., on behalf of himself and his minor child, A.E.P.F., | No. |
| Plaintiffs, | |
| - v - | |
| Jefferson Beauregard Sessions III, Former Attorney General of the United States; Gene Hamilton, Counselor to the Attorney General; John F. Kelly, Former White House Chief of Staff and Former Secretary of the United States Department of Homeland Security (DHS); Stephen Miller, Senior Advisor to the President; Kirstjen Nielsen, Former Secretary of DHS; Kevin K. McAleenan, Acting Secretary of DHS and Former Commissioner of United States Customs and Border Protection (CBP); Mark Morgan, Acting Commissioner of CBP; Thomas Homan, Former Director of United States Immigration and Customs Enforcement (ICE); Ronald D. Vitiello, Former Acting Director of ICE; Matthew Albence, Acting Director of ICE; L. Francis Cissna, Former Director of United States Citizenship and Immigration Services (USCIS); Carla Provost, Chief of CBP U.S. Border Control; Alex Azar, Secretary of the United States Department of Health and Human Services (HHS); Margaret Wynne, Former HHS Counselor for Human Services Policy; E. Scott Lloyd, Former Director of the United States Office of Refugee Resettlement (ORR); John/Jane Doe DHS Defendants; and John/Jane Doe HHS/ORR Defendants, | **CLASS ACTION COMPLAINT** **JURY TRIAL DEMANDED** |
| Defendants. | |

EXHIBIT 12

Marty Lieberman (Bar No. 007442)
ACLU FOUNDATION OF ARIZONA
3707 N. 7th Street, Suite 235
Phoenix, AZ 85014
Tel. (602) 650-1854
mlieberman@acluaz.org

*(Additional Counsel for Plaintiffs Listed on Signature Page)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| A.I.I.L., on behalf of herself and her minor children, J.A.H.I. and M.E.H.I.; L.L.H.O., on behalf of herself and her minor child, K.E.O.H.; J.L.V.A., on behalf of himself and his minor child, D.S.V.H.; J.I.S., on behalf of himself and his minor child, B.L.S.P.; and J.J.P.B., on behalf of himself and his minor child, A.E.P.F., <br><br> Plaintiffs, <br><br> - v - <br><br> Jefferson Beauregard Sessions III, Former Attorney General of the United States; Gene Hamilton, Counselor to the Attorney General; John F. Kelly, Former White House Chief of Staff and Former Secretary of the United States Department of Homeland Security (DHS); Stephen Miller, Senior Advisor to the President; Kirstjen Nielsen, Former Secretary of DHS; Kevin K. McAleenan, Acting Secretary of DHS and Former Commissioner of United States Customs and Border Protection (CBP); Mark Morgan, Acting Commissioner of CBP; Thomas Homan, Former Director of United States Immigration and Customs Enforcement (ICE); Ronald D. Vitiello, Former Acting Director of ICE; Matthew Albence, Acting Director of ICE; L. Francis Cissna, Former Director of United States Citizenship and Immigration Services (USCIS); Carla Provost, Chief of CBP U.S. Border Control; Alex Azar, Secretary of the United States Department of Health and Human Services (HHS); Margaret Wynne, Former HHS Counselor for Human Services Policy; E. Scott Lloyd, Former Director of the United States Office of Refugee Resettlement (ORR); John/Jane Doe DHS Defendants; and John/Jane Doe HHS/ORR Defendants, <br><br> Defendants. | No. <br><br><br><br><br><br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

EXHIBIT 13

124

1 Keith Beauchamp (012434)
Shelley Tolman (030945)
2 COPPERSMITH BROCKELMAN PLC
2800 N. Central Avenue, Suite 1900
3 Phoenix, AZ 85004
Telephone: (602) 381-5488
4 kbeauchamp@cblawyers.com
stolman@cblawyers.com
5
Michelle Lapointe*
6 Norma Ventura*
SOUTHERN POVERTY LAW CENTER
7 P.O. Box 1287
Decatur, GA 30031
8 Telephone: (404) 521-6700
michelle.lapointe@splcenter.org
9 norma.ventura@splcenter.org

10 Matthew J. Schlesinger*
Jason A. Carey*
11 Terra White Fulham*
COVINGTON & BURLING LLP
12 One City Center, 850 Tenth Street, NW
Washington, DC 20001-4956
13 Telephone: (202) 662-5581
mschlesinger@cov.com
14 jcarey@cov.com
tfulham@cov.com
15
[Additional Counsel Listed on Signature Page]
16
[*Pro hac vice application forthcoming]
17
18 **UNITED STATES DISTRICT COURT**
19 **DISTRICT OF ARIZONA**

20 A.P.F. on his own behalf and on behalf of his | No.
minor child, O.B.; and J.V.S. on his own behalf
21 and on behalf of his minor child, H.Y., | **COMPLAINT**
22 Plaintiffs,
23 v. | **JURY TRIAL DEMANDED**
24 United States of America,
25 Defendant.
26
27
28
{00478117.1 }

125

EXHIBIT 14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| D. A., A.A., and Lucinda del Carmen Padilla-Gonzales, | ) )  | |
| | ) | Case No. 20-cv-3082 |
| Plaintiffs, | ) | |
| | ) | JURY TRIAL DEMANDED AS TO |
| v. | ) | THOSE CLAIMS SO TRIABLE |
| | ) | |
| The United States of America, Heartland Alliance for Human Needs and Human Rights, and Heartland Human Care Services, Inc., | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs D.A. and A.A. and their mother, Lucinda Padilla-Gonzales, by their attorneys,

bring this complaint against the United States of America pursuant to the Federal Tort Claims

Act ("FTCA"), 28 U.S.C. § 1346(b), and against Heartland Alliance for Human Needs and

Human Rights and Heartland Human Care Services under the Rehabilitation Act, 29 U.S.C. §

794, 42 U.S.C. § 12102(1) and under state law, stating as follows:

### INTRODUCTION

1.      This action seeks damages for the mistreatment of siblings D.A. and A.A. and

their mother, Lucinda Padilla-Gonzales, while they were in the custody of the United States

government and its contractors.

2.      D.A. and A.A. fled Honduras for the United States with Lucinda in May 2018 to

seek safety and asylum from political violence that had been directed against the family in

Honduras. D.A. and A.A.'s father, Luis Ardón-Castellanos, and their older brother, L.A., had

already fled Honduras the month before.

# EXHIBIT 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| D.J.C.V., minor child, and G.C., his father | } | No. 1:20-cv-5747 |
| | } | |
| Plaintiffs, | } | |
| | } | |
| v. | } | |
| | } | |
| United States of America, | } | |
| | } | |
| Defendant. | } | |

**COMPLAINT**

### INTRODUCTION

1.      This matter concerns a cruel and inhumane policy crafted, issued, and carried out by the Trump Administration's Department of Homeland Security ("DHS"), Health and Human Services ("HHS") and subsidiary agencies to forcibly separate asylum-seeking parents from their children as part of the Administration's efforts to systemically terrorize and punish those vulnerable migrants and thereby deter future migration to the United States. The implementation of the policy and its corresponding long-term separation and isolation had the intended effect of causing extraordinary and profound trauma to thousands of families, including Plaintiffs, G C. and his then-19-month-old son, D.J.C.V., in a manner that meets the U.S. statutory and international law definitions of torture, *i.e.*, the intentional infliction of severe physical or mental pain or suffering.[1]

---

[1]      *See, e.g.*, OFFICE OF INSPECTOR GEN., U.S. DEP'T OF HEALTH & HUMAN SERVS., OEI-09-18-00431, CARE PROVIDER FACILITIES DESCRIBED CHALLENGES ADDRESSING MENTAL HEALTH NEEDS OF CHILDREN IN HHS CUSTODY (Sept. 2019), *available at* https://oig.hhs.gov/oei/reports/oei-09-18-00431.pdf.

1

129

EXHIBIT 16

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| **R.Y.M.R. and Eric Matute Castro,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **United States of America,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Plaintiffs R.Y.M.R.[1] and his father, Eric Matute Castro ("Mr. Matute"), by their

attorneys, bring this complaint against the United States of America pursuant to the Federal

Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), and under state law, stating as follows:

### INTRODUCTION

1.      This matter concerns a barbaric policy issued at the highest levels of the federal

government to separate asylum-seeking parents from their children. The government's policy of

forcibly taking children from their parents caused extraordinary trauma to thousands of families,

including the Plaintiffs—a father and his son – who were 33 and 3 years old respectively when,

under threat of violence, they were torn apart and separated for months. The trauma suffered by

this boy and his father was no incidental byproduct of the policy. Indeed, it was the very point. In

---

[1] Because Plaintiff R.Y.M.R. is a minor child, his initials are used to protect his privacy.

EXHIBIT 17

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| E.L.A. and O.L.C., | |
| Plaintiffs, | Case No. 2:20-cv-1524 |
| v. | **COMPLAINT** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## <u>INTRODUCTION</u>

1.      This case is about the unprecedented policy issued at the highest levels of the federal government to separate asylum-seeking parents and children. The government's policy of forcibly taking children from their parents caused extraordinary trauma to thousands of families, including Plaintiffs E.L.A. and his son O.L.C, whom the United States government forcibly separated for nine months.[1] The trauma that Plaintiffs and other parents and children suffered was not an incidental byproduct of the policy. It was the very point. The government *sought* to inflict extreme emotional distress and other harms in order to deter parents and children from

---

[1] Consecutive with this Complaint, Plaintiffs will file a motion for leave to proceed under pseudonyms to protect their identities from public disclosure due to the trauma inflicted upon them. Plaintiffs have already disclosed their full names to the relevant government agencies in their administrative claims filed in accordance with 28 U.S.C. § 3401(b).

COMPLAINT – 1
Case No. 2:20-cv-1524

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

EXHIBIT 18

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

K.O. and E.O., Jr., by and through their parents and next
friends, E.O. and L.J.; and C.J, by and through his father
and next friend F.C.; each individually and on behalf of
all others similarly situated,

                 Plaintiffs,

     v.

UNITED STATES OF AMERICA,

                 Defendant.

CIVIL ACTION NO.

## CLASS ACTION COMPLAINT AND JURY DEMAND

## Introduction

1.     The United States of America was founded on the bedrock principle that our nation is a beacon of hope to people everywhere seeking refuge from poverty, persecution, and violence.  Emma Lazarus's sonnet on the Statue of Liberty famously rings out: "Give me your tired, your poor, your huddled masses yearning to breathe free."  Defendant has betrayed this fundamental principle and the constitutional rights that protect everyone within the territory of the United States regardless of citizenship.  In doing so, Defendant has harmed those most vulnerable: children.  Through this lawsuit, Plaintiffs, on behalf of a class of similarly situated children, seek to hold Defendant accountable for its actions in accordance with the rule of law.

2.     Plaintiffs seek damages and the establishment of a fund for the mental health treatment of all class members to remedy the harm caused by the Defendant's: (i) forcible separation of thousands of children from their parents in immigration detention with no legal justification and without their consent; (ii) seizing those children and separating them from their

135

EXHIBIT 19

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| Lilian Fuentes-Ortega, on her own behalf and on behalf of her minor children, H.Y.L.F. and B.M.L.F., | ) ) ) ) | Civil Action File No. |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| United States of America, | ) ) | |
| Defendant | ) | |

## COMPLAINT

### INTRODUCTION

1.     This action seeks damages for the minor children, H.Y.L.F. and B.M.L.F., caused by the United States government forcibly separating them from their mother, Lilian Fuentes-Ortega, when they lawfully entered the United States to seek asylum.  In all, H.Y.L.F. and B.M.L.F. were separated from their mother and deprived of her love, care, and support for one year, eight months, and fourteen days.

2.     This action also seeks damages for Lilian Fuentes-Ortega caused by the United States government's separation of her from her children.

3.     H.Y.L.F., B.M.L.F., and Lilian Fuentes-Ortega (collectively, "Plaintiffs") bring their claims against the United States government under the

137

EXHIBIT 20

138

MARCELLUS MCRAE, SBN 140308
  mmcrae@gibsondunn.com
ABIEL GARCIA, SBN 289052
  agarcia@gibsondunn.com
DANIEL M. RUBIN, SBN 319962
  drubin@gibsondunn.com
CAROLINE K. MONROY, SBN 329018
  cmonroy@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071
Telephone:  213.229.7000
Facsimile:   213.229.7520

Attorneys for Plaintiff
Oscar Enrique Nuñez Euceda

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Oscar Enrique Nuñez Euceda, | CASE NO. 2:20-cv-10793 |
| Plaintiff, | **COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| United States of America, | |
| Defendant. | |

## **COMPLAINT**

For being forcefully separated and isolated from his children, Plaintiff Oscar Enrique Nuñez Euceda brings this complaint against the United States of America pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) and §§ 2671–2680, stating as follows:

### INTRODUCTION

1.    This case seeks redress for the forced separation of Mr. Nuñez Euceda from his children by the government of the United States when they arrived here seeking asylum.  It further concerns the inhumane and cruel treatment of Mr. Nuñez Euceda while he was in the custody of the United States government.

EXHIBIT 21

Keith Beauchamp (012434)
D. Andrew Gaona (028414)
COPPERSMITH BROCKELMAN PLC
2800 N. Central Avenue, Suite 1900
Phoenix, AZ 85004
Telephone: (602) 381-5488
kbeauchamp@cblawyers.com
agaona@cblawyers.com

Gillian Gillers*
Norma Ventura*
James M. Knoepp*
SOUTHERN POVERTY LAW CENTER
P.O. Box 1287
Decatur, GA 30031
Telephone: (404) 521-6700
gillian.gillers@splcenter.org
norma.ventura@splcenter.org
jim.knoepp@splcenter.org

Matthew J. Schlesinger*
Jason A. Carey*
Terra White Fulham*
Patrick Lee*
COVINGTON & BURLING LLP
One City Center, 850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-5581
mschlesinger@cov.com
jcarey@cov.com
tfulham@cov.com
plee@cov.com

[Additional Counsel Listed on Signature Page]

[*Pro hac vice application forthcoming]

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| E.S.M. on his own behalf and on behalf of his minor child, H.S.S., | No. |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| United States of America, | |
| Defendant. | |

EXHIBIT 22

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| C.D.A., minor child, and Mr. A., his father; and E.A.Q.A., minor child, and Mr. Q., his father, | Case No. _____ |
|---|---|
| *Plaintiffs*, | **ELECTRONICALLY FILED** |
| v. | |
| United States of America, | **JURY TRIAL DEMANDED AS TO THOSE CLAIMS SO TRIABLE** |
| *Defendant*. | |

## COMPLAINT

### INTRODUCTION

1.      This matter concerns a cruel and inhumane policy crafted, issued, and carried out by the Trump Administration's Department of Homeland Security ("DHS"), Department of Health and Human Services ("HHS"), and subsidiary agencies/offices to forcibly separate asylum-seeking parents from their children as part of the Administration's efforts to systemically terrorize and punish those vulnerable migrants exercising their right under the asylum statute to seek the protection of the United States. Defendant's improper purpose was to thereby deter future migration to the United States. The implementation of the family separation policy and the corresponding long-term separation and isolation of children from their parents had the intended effect of causing extraordinary and profound trauma

143

EXHIBIT 23

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

|  |  |  |
|---|---|---|
| S.E.B.M., a minor, by and through her next friend, MARIA MENDEZ FELIPE, | ) ) ) | |
| | ) | **CIVIL ACTION** |
| Petitioner, | ) | |
| | ) | **Case No.** |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT UNDER FEDERAL TORT CLAIMS ACT

## INTRODUCTION

1.      This matter arises from implementation of the 2017 "pilot program" for the inhumane and unconstitutional plan that would become known as "Family Separation." The government's policy of forcibly taking children from their parents that caused extraordinary trauma to thousands of children and families began in 2017, long before most of this country was aware of what was occurring, and it ensnared the young Plaintiff, who was two years old at the time. The trauma suffered by Plaintiff—who is now six years old—as well as to other parents and other young children was no incidental by-product of the government's policy. Instead, it was the very point. The government sought to inflict emotional distress in order to deter parents and children from seeking asylum in this country.

2.      Executive branch officials intended to use the trauma resulting from family separations, and the consequent media reporting about that trauma, to deter future asylum seekers.

145

EXHIBIT 24

Joel W. Nomkin (AZ Bar No. 011939)
Christopher D. Thomas (AZ Bar No. 010482)
Austin Yost (AZ Bar No. 034602)
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ  85012
Telephone:  (602) 351-8000
jnomkin@perkinscoie.com
cthomas@perkinscoie.com
ayost@perkinscoie.com

David Almeling* (CA Bar No. 235449)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone:  (415) 984-8700
Facsimile:  (415) 984-8701
dalmeling@omm.com

R. Collins Kilgore* (CA Bar No. 295084)
Vanessa Guerrero* (CA Bar No. 329915)
Greg Suhr* (CA Bar No. 328967)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA  90071
Telephone:  (213) 430-6000
Facsimile:  (213) 430-6400
ckilgore@omm.com
vguerrero@omm.com
gsuhr@omm.com

*Attorneys for Plaintiffs*

[*Pro hac vice applications forthcoming*]

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| B.A.D.J. on her own behalf and on behalf of her minor child, X.B.J.A., | No. _____ |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| United States of America, | |
| Defendant. | |

COMPLAINT

CASE NO. _____

147

EXHIBIT 25

1    Kathleen E. Brody (026331)
2    kathy@mscclaw.com
     Molly Brizgys (#29216)
3    molly@mscclaw.com
4    MITCHELL | STEIN | CAREY | CHAPMAN, PC
     One Renaissance Square
5    2 North Central Avenue, Suite 1450
     Phoenix, AZ 85004
6    Telephone: (602) 358-0293
7    Facsimile: (602) 358-0291

8    Peter Rukin (SBN 178336)*
     prukin@rukinhyland.com
9    Jessica Riggin (SBN 281712)*
     jriggin@rukinhyland.com
10   Valerie Brender (SBN 298224)*
     vbrender@rukinhyland.com
11   RUKIN HYLAND & RIGGIN LLP
     1939 Harrison Street, Suite 290
12   Oakland, CA 94612
     Tel: (415) 421-1800
13   Fax: (415) 421-1700

14

15   (*Additional Counsel for Plaintiffs Listed on the Following Page*)

16   (*Pro hac vice application forthcoming)

17

18                  **UNITED STATES DISTRICT COURT**

19                  **FOR THE DISTRICT OF ARIZONA**

20

21   F.R., on his own behalf and on behalf of      Case No.
     his minor child, A.A.,
22                                                  **COMPLAINT**
23                     Plaintiffs,

     v.
24
     United States of America,
25
                       Defendant.
26

27

28
                              Complaint for Damages

EXHIBIT 26

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION



| | | |
|---|---|---|
| C.M., on his own behalf and on behalf of his minor child, D.V., | § § § | Civil Action No. 5:21-CV-234 |
| Plaintiffs, | § § | COMPLAINT |
| v. | § § | |
| UNITED STATES OF AMERICA, | § § | |
| Defendant. | § § § | |

1)    Plaintiffs C.E.A.M. ("C.M.") and his young son, D.J.A.V. ("D.V."), bring this complaint against the United States of America pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), and under state law, stating as follows:

**I.    INTRODUCTION**

2)    This action seeks damages for the mistreatment of D.V., a minor, and his father, C.M., while they were in the custody of the United States government. Plaintiffs came to the United States seeking asylum but were instead forcibly separated for four months.

3)    The forced separation by Defendant caused long-lasting injury and ongoing trauma to Plaintiffs C.M. and D.V.

4)    These injuries were a direct and intended result of Defendant's family separation policy. The decision to separate children from their parents at the border was made at the highest levels of government, with the purpose of deterring families from seeking refuge in the United States despite the United States' international and domestic legal obligations to asylum-seekers.

5)    Not only were parents like C.M. traumatized by the initial forced separation from their children, but the trauma was ongoing as agents withheld information concerning their children's whereabouts.

6)    The lack of information as to their children's whereabouts and misrepresentations

1

151

EXHIBIT 27

1   **MORGAN, LEWIS & BOCKIUS LLP**
    Susan Baker Manning, CA Bar No. 197350
2   1111 Pennsylvania Avenue, NW
    Washington, DC 20004
3   Tel:    +1.202.739.3000
    Fax:    +1.202.739.3001
4   susan.manning@morganlewis.com

5   Lisa R. Weddle, CA Bar No. 259050
    Kent W. Kraushaar, CA Bar No. 307536
6   300 South Grand Avenue
    Twenty-Second Floor
7   Los Angeles, CA 90071-3132
    Tel:    +1.213.612.2500
8   Fax:    +1.213.612.2501
    lisa.weddle@morganlewis.com
9   kent.kraushaar@morganlewis.com

10  Attorneys for Plaintiffs
    A.F.P and J.F.C.

11

12                  UNITED STATES DISTRICT COURT

13                  EASTERN DISTRICT OF CALIFORNIA

14

15  A.F.P. and J.F.C.,                    Case No. 21-548

16              Plaintiffs,

17       v.                               COMPLAINT

18  UNITED STATES OF AMERICA,

19              Defendant.

20

21                       **INTRODUCTION**

22       1.     This case is about the unprecedented policy issued at the highest levels of the United

23  States government to separate asylum-seeking parents and children. The government's policy of

24  forcibly taking children from their parents caused extraordinary trauma to thousands of families,

25  including Plaintiffs A.F.P. and his son J.F.C.,[1] whom the United States government forcibly

26

27  _____
    [1] Consecutive with this Complaint, Plaintiffs will file a motion for leave to proceed under
28  pseudonyms to protect their identities from public disclosure due to the trauma inflicted upon them.
    Plaintiffs have already disclosed their full names to the relevant government agencies in their
    administrative claims filed in accordance with 28 U.S.C. § 3401(b).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

153
                              1                    COMPLAINT

EXHIBIT 28

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| W.P.V., on his own behalf and on behalf of his minor child, W.P.O., ) ) ) | |
| Plaintiff, ) | C.A. No.: |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| United States of America, Cayuga Home for Children, Inc. d/b/a Cayuga Centers ) ) ) | |
| ) | |
| Defendant. ) | |

## I.     INTRODUCTION

1.     Long before border walls, Emma Lazarus penned a message that has been enshrined on the Statute of Liberty for more than 100 years: "Give me your tired, your poor, your huddled masses yearning to breathe free. . . . The wretched refuse of your teeming shore. Send these, the homeless, tempest-tost to me, I lift my lamp beside the golden door!" These words greeted immigrants at the Ellis Island immigration center—a welcoming message to all who approached.

2.     Despite this public proclamation, the United States government instituted a policy to forcibly separate children from their parents and discourage immigration.

3.     This policy of family separation at the hands of the United States government has caused extraordinary trauma to thousands of families, including Plaintiffs – a father and his child who was only about four years old at the time of separation. The government designed this policy to inflict emotional distress on families like the plaintiffs to deter parents and children from immigrating to this country.

4.     Executive branch officials in the Trump administration intended to use the trauma resulting from family separations, and media reporting of that trauma, to deter future immigrants

155

EXHIBIT 29

KEKER, VAN NEST & PETERS LLP
BROOK DOOLEY - # 230423
bdooley@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY AREA
BREE BERNWANGER - # 331731*
bbernwanger@lccrsf.org
HAYDEN RODARTE - # 329432
hrodarte@lccrsf.org
131 Steuart Street #400
San Francisco, CA 94105
Telephone:     415 814 7631
*N.D. Cal. admission pending*

Attorneys for Plaintiffs WILBUR P. G.;
WILFREDO BALTAZAR P. E., a minor child;
ERENDIRA C. M.; YASMIN ALICIA M. C., a
minor child; JOSHUA G. G.; and KARL LUIS
G. G., minor child

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WILBUR P. G.; WILFREDO BALTAZAR P. E. a minor child; ERENDIRA C. M.; YASMIN ALICIA M. C. a minor child; JOSHUA G. G.; and KARL LUIS G. G. minor child,<br><br>       Plaintiffs,<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br><br>       Defendant. | Case No. 3:21-cv-4457<br><br>**COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT**<br><br><br>**JURY TRIAL DEMANDED ON ANY CLAIM SO TRIABLE** |

EXHIBIT 30

1   Daniel B. Pasternak (SBN 023751)
    SQUIRE PATTON BOGGS (US) LLP
2   2325 East Camelback Road, Suite 700
    Phoenix, AZ 85016
3   Telephone:    602.528.4000
    Facsimile:    602.253.8129
4   daniel.pasternak@squirepb.com
5
    Manuel F. Cachán*
6   William C. Rose*
    PROSKAUER ROSE LLP
7   2029 Century Park East, Suite 2400
    Los Angeles, CA 90067-3010
8   Telephone:    310.557.2900
    Facsimile:    310.557.2193
9   mcachan@proskauer.com
    wrose@proskauer.com
10
11
    Hena M. Vora*
    PROSKAUER ROSE LLP
    Eleven Times Square
    New York, NY 10036
    Telephone:    212.969.3000
    Facsimile:    212.969.2900
    hvora@proskauer.com

    Sara Van Hofwegen*
    Joel Frost-Tift*
    PUBLIC COUNSEL
    610 South Ardmore Avenue
    Los Angeles, CA 90005
    Telephone:    213.385.2977
    Facsimile:    212.385.9089
    svanhofwegen@publiccounsel.org
    jfrost-tift@publiccounsel.org

    *Attorneys for Plaintiffs*
    *\* Pro hac vice applications forthcoming*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| J.P. and L.C., | No. |
| Plaintiffs, | |
| vs. | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| United States of America, | |
| Defendant. | |

EXHIBIT 31

1   MILBANK LLP
    Linda Dakin-Grimm (SBN 119630)
2   Ldakin-grimm@milbank.com
    Asena Baran (SBN 342626)
3   Abaran@milbank.com
    Lya Ferreyra (SBN 340148)
4   Lferreyra@milbank.com
    2029 Century Park East, 33rd Floor
5   Los Angeles, CA 90067
    Telephone: 424-386-4000
6   Facsimile: 213-629-5063

7   *Pro Bono* Attorneys for Plaintiff,
    Esvin Fernando Arredondo Rodriguez
8

9
                **UNITED STATES DISTRICT COURT**
10              **CENTRAL DISTRICT OF CALIFORNIA**
                      **WESTERN DIVISION**
11

12
    Esvin Fernando Arredondo          )
13  Rodriguez,                        )
                                      )
14                                    )   Civil Action No.  2:22-CV-02845
                  Plaintiff,          )
15                                    )
                                      )   **COMPLAINT FOR DAMAGES**
16         v.                         )
                                      )
17  United States of America,         )
                                      )
18                Defendant.          )
19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES

EXHIBIT 32

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road
Suite 205
Scottsdale, AZ 85254

**Randy Papetti** (State Bar No. 014586)
Direct Dial: 480.800.3525
Email: rpapetti@PSWMlaw.com

**Jennifer Lee-Cota** (State Bar No. 033190)
Direct Dial: 480.800.3528
Email: jleecota@PSWMlaw.com

**Orrick, Herrington & Sutcliffe LLP**
The Orrick Building, 405 Howard Street
San Francisco, CA 94105-2669
Telephone: 415.773.5700

Karen G. Johnson-McKewan* (CA Bar No. 121570)
Email: kjohnson-mckewan@orrick.com

Russell P. Cohen* (CA Bar No. 213105)
Email: rcohen@orrick.com

Ryann R. McMurry* (CA Bar No. 336116)
Email: rmcmurry@orrick.com

**Orrick, Herrington & Sutcliffe LLP**
400 Capitol Mall, Suite 3000
Sacramento, CA 95814-4497
Telephone: 916.329.7966

Megan B. Benton* (CA Bar No. 329299)
Email: mbenton@orrick.com

*Pro hac vice applications forthcoming*

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE STATE OF ARIZONA

| | |
|---|---|
| E.C.B., on behalf of himself and his minor child, J.R., | Case No. |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| United States of America, | **(Jury Trial Demanded)** |
| Defendant. | |

## INTRODUCTION

1.     This action seeks damages for an asylum-seeking family forcibly separated by the United States ("U.S.") government in May 2018: Plaintiffs E.C.B. (hereafter,

EXHIBIT 33

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| VIKY SARAI FLORES BENITEZ, ANA DELMI BENITEZ ALVARADO, JAVIN BENIGNO SANTOS GALVEZ, and J.S.R., a minor, | |
| *Plaintiffs,* | **No.** |
| v. | **COMPLAINT** |
| STEPHEN MILLER,  JEFFERSON B. SESSIONS, KIRSTJEN NIELSEN, KEVIN McALEENAN, and UNITED STATES OF AMERICA, | |
| *Defendants.* | |

## INTRODUCTION

1.     In summer 2018, Defendants and other U.S. government employees cruelly separated fourteen-year-old Viky Sarai Flores Benitez from her mother, Ana Benitez Alvarado, and nine-year-old J.S.R. from his father, Javin Benigno Santos Galvez, in an attempt to coerce the two families to abandon their asylum claims and to deter others fleeing violence and danger in Central America from seeking refuge in the United States. Defendants then sent both children thousands of miles away to Connecticut while incarcerating each parent in Texas and preventing communications between parent and child.

2.     With force and deceit, Defendants caused extraordinary trauma, in violation of U.S. and international law prohibitions against torture. Plaintiffs are among the thousands of asylum-seeking families whom the government irreparably traumatized pursuant to its unconscionable family separation policy — a policy that Defendants and other senior officials at the White House,

1

# EXHIBIT 34

1  Gary Bendinger (036251)
   Alejandro Barrientos (034129)
2  Katie Derrig (037110)
   LEWIS ROCA ROTHGERBER CHRISTIE LLP
3  201 East Washington Street, Suite 1200
   Phoenix, AZ 85004
4  Tel: (602) 262-5311
   Fax: (602) 262-5747
5  gbendinger@lewisroca.com
   abarrientos@lewisroca.com
6  kderrig@lewisroca.com

7  Justin W. Bernick*
   Danielle Desaulniers Stempel*
8  Michael J. West*
   HOGAN LOVELLS US LLP
9  Columbia Square
   555 Thirteenth Street, NW
10 Washington, DC 20004
   Tel: (202) 637-5600
11 Fax: (202) 637-5910
   justin.bernick@hoganlovells.com
12 danielle.stempel@hoganlovells.com
   michael.west@hoganlovells.com
13
   (*Additional Counsel for Plaintiffs Listed on the Following Page*)
14
   (*Pro hac vice application forthcoming*)
15

16                **IN THE UNITED STATES DISTRICT COURT**

17                  **FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| 18  M.S.E., on her own behalf and on behalf of her minor child, J.M.; | Case No.:_____ |
| 19  M.V.A., on her own behalf and on behalf of her minor child, B.E.; | |
| 20  B.C.O., on his own behalf and on behalf of his minor child, M.A.; and | **COMPLAINT** |
| 21  U.O.L., on his own behalf and on behalf of his minor child, F.R. | |
| 22 | |
| 23        Plaintiffs, | |
|    v. | |
| 24 | |
| 25  United States of America, | |
|          Defendant. | |
| 26 | |

27

28

# EXHIBIT 35

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| F.C.C., on his own behalf and on behalf of his minor child, A.C.L., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.    2:22-cv-05057 |
| United States of America | ) ) | |
| Defendant. | ) ) | |

## **COMPLAINT**

This complaint seeks to hold the United States Government accountable for its cruel, illegal, and inhumane treatment of F.C.C. and his then seven-year-old daughter A.C.L., who arrived at the United States border seeking asylum, only to be forcibly separated from each other for several months.[1]  The United States Government purposefully inflicted severe and long-lasting trauma on F.C.C. and A.C.L. as part of the "zero tolerance" policy aimed at deterring migrants from requesting asylum in the United States.

Executive branch officials purposefully separated families like F.C.C. and A.C.L. to inflict trauma upon them and deter future asylum seekers.  Federal officials at the highest levels have made repeated statements acknowledging that deterrence was the purpose of the family separation policy.[2]

---

[1] To protect Plaintiffs' identities, they will be referred to using their initials F.C.C. and A.C.L. Plaintiffs will file a separate motion to proceed with pseudonyms.

[2] *See, e.g.* Philip Bump, Here Are the Admin. Officials Who Have Said that Fam. Separation Is Meant as a Deterrent, WASH. POST, June 19, 2018, https://www.washingtonpost.com/news/politics/wp/2018/06/19/here-are-the-administration-officials-who-have-said-that-family-separation-is-meant-as-a-deterrent/.

1

EXHIBIT 36

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

S.M.F. and A.R.M.,[1]

        Plaintiffs,

        v.

UNITED STATES OF AMERICA,

        Defendant.

Case No. 2:22-cv-1193

**COMPLAINT**

## INTRODUCTION

1.    In 2018, the United States implemented an unprecedented policy of intentionally separating asylum-seeking parents and children at the nation's southern border. While the policy was in effect, U.S. officials systematically and forcibly took children from their parents, causing extraordinary trauma to thousands of families. Plaintiffs became victims of this horrific policy when government officials ripped six-year-old A.R.M. away from her mother S.M.F. and sent her to an undisclosed location across the country. The mother and child were separated for over two months.

---

[1] Plaintiffs are concurrently filing a motion for leave to proceed under pseudonyms, in order to protect their identities from public disclosure and thereby to minimize the risk of compounding the trauma they have experienced as a result of Defendant's unlawful policy and actions. Plaintiffs have already disclosed their full names to the relevant government agencies in their administrative claims filed in accordance with 28 U.S.C. § 2675.

EXHIBIT 37

Julianna Rivera Maul (SBN 290955)
The Law Office of Julianna Rivera
420 3rd St., Ste 200
Oakland, CA 94067
Tel: 510-473-2141

Matt Adams*
Aaron Korthuis*
Northwest Immigrant Rights Project
615 2nd Ave, Ste 400
Seattle, WA 98104
Tel: 206-957-8611

*Pro hac vice applications forthcoming

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.R.G. and M.A.R.,[1] | Case No. 4:22-cv-5183 |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

---

[1] Plaintiffs are concurrently filing a motion for leave to proceed under pseudonyms to protect their identities from public disclosure due to the trauma inflicted upon them. Plaintiffs have already disclosed their full names to the relevant government agencies in their administrative claims filed in accordance with 28 U.S.C. § 2675.

COMPL. – 1
Case No. 4:22-cv-5183

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

173

EXHIBIT 38

174

1    PILLSBURY WINTHROP SHAW PITTMAN LLP
    BLAINE I. GREEN (SBN 193028)
2    blaine.green@pillsburylaw.com
    DUSTIN CHASE-WOODS (SBN 318628)
3    dustin.chasewoods@pillsburylaw.com
    Four Embarcadero Center, 22nd Floor
4    San Francisco, CA 94111-5998
    Telephone:      415.983.1000
5    Facsimile:      415.983.1200

6

7    LAWYERS' COMMITTEE FOR CIVIL RIGHTS
    OF THE SAN FRANCISCO BAY AREA
8    BREE BERNWANGER (SBN 331731)
    bbernwanger@lccrsf.org
9    VICTORIA PETTY (SBN 338689)
    vpetty@lccrsf.org
10   131 Steuart Street #400
    San Francisco, CA 94105
11   Telephone:   415.814.7631

12

13   Attorneys for Plaintiffs Eduardo I.T.; Edwin E.I.I.; Ignacio P.G.; Leonel Y.P.G., a minor child;
    Benjamin J.R.; and William A.J.M.

14                   **UNITED STATES DISTRICT COURT**

15       **NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION**

16

17   EDUARDO I.T., EDWIN E.I.I., IGNACIO P.G.,     Case No.
    LEONEL Y.P.G., A MINOR CHILD,
18   BENJAMIN J.R., AND WILLIAM A.J.M.     **COMPLAINT FOR DAMAGES UNDER**
19                  Plaintiffs,     **THE FEDERAL TORT CLAIMS ACT**

20

21        vs.

22   UNITED STATES OF AMERICA

23           Defendant.     **DEMAND FOR JURY TRIAL**

24

25

26

27

28

-1-

COMPLAINT
Case No:

EXHIBIT 39

Natalie J. Kraner
(nkraner@lowenstein.com)
Stephanie Ashley
(sashley@lowenstein.com)
Logan Vickery *(admission pending)*
(lvickery@lowenstein.com)
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
973-597-2500

*Pro Bono Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| B.Y.C.C. on behalf of herself and on behalf of her minor child, M.S.C.C., | Civil Action No._____ |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

177

EXHIBIT 40

Catherine Weiss
(cweiss@lowenstein.com)
Amanda Sewanan *(admission pending)*
(asewanan@lowenstein.com)
Michelle L. Goldman
(mgoldman@lowenstein.com)
Pati Candelario
(pcandelario@lowenstein.com)
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
973-597-2500

*Pro Bono Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| J.A.L.C. on behalf of himself and on behalf of his minor child, L.L.G., | Civil Action No._____ |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

EXHIBIT 41

180

Jennifer Fiorica Delgado
(jdelgado@lowenstein.com)
Markiana J. Julceus
(mjulceus@lowenstein.com)
Raymond S. Cooper
(rcooper@lowenstein.com)
**LOWENSTEIN SANDLER LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
973-597-2500

*Pro Bono Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| R.J.P. on behalf of himself and on behalf of his minor child, O.R.J.J, | Civil Action No._____ |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

EXHIBIT 42

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

A.E.S.E., a minor child, and Eusebio
Daniel Sabillon Paz, her father,
                    Plaintiffs,

v.                                          No. 2:21-CV-00569-SMV-GBW

United States of America and
Management & Training Corporation,

                    Defendants.

**<u>ANSWER TO THE COMPLAINT</u>**

        The United States of America submits the following Answer to Plaintiff's

Complaint (ECF No.1) as follows:

**<u>General Answer</u>**

        Plaintiffs quote various documents throughout their Complaint including cases,

media articles, and investigatory reports. Plaintiffs include 13 footnotes throughout their

Complaint. Most of these footnotes consist of citations to cases, media reports and

articles, investigatory reports, and reports by the Office of Inspector General of the

Department of Health and Human Services (OIG HHS). Accordingly, in the following

Specific Answers, to the extent a paragraph or footnote cites a source solely as support

for a factual allegation, the United States answers the allegation in accordance with

Rule 8 by either admitting, denying, or pleading lack of sufficient information with

respect to the factual allegation. The citation of the source underlying the factual

allegation is in and of itself not a factual allegation requiring a response. However, to the

extent a paragraph or footnote contains a factual allegation, quotes a source in whole or

in part in a manner requiring a response as to its truthfulness or accuracy, or specifically

1

183

EXHIBIT 43

FILED

IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 12 2022 ★

BROOKLYN OFFICE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

Leticia and Yovany[1],

      Plaintiffs,

v.

The United States of America,

      Defendant

**CV 22 - 7597**

Case No. _____

GARAUFIS, J.

LEVY, M.J.

### COMPLAINT

1.      Plaintiffs Leticia and her then-fifteen-year-old son, Yovany (together, the "Plaintiffs"), came to the United States as asylum seekers in search of safety. Instead of providing them the refuge they sought, federal agents forcibly separated Yovany from his mother, beginning a 792-day ordeal in which Yovany was placed in foster care and Leticia was unlawfully deported. Although the lasting effects of this family's forced separation may never fully heal, Leticia and Yovany seek justice in the form of damages for their unlawful mistreatment.

2.      Leticia and Yovany fled Guatemala in 2017 to escape persecution and gang violence. Due to the extreme violence suffered by Yovany, U.S. Citizenship and Immigration Services ("USCIS") has granted his application for asylum. Leticia's asylum case is currently ongoing.

3.      As Customs and Border Protection ("CBP") officers were processing Plaintiffs' case, they took Leticia and Yovany to separate holding areas for men and women. Unknown to either Plaintiff, this was the last time that Leticia would see her son for 792 days.

---

[1] Plaintiffs are filing a Motion to Proceed Pseudonymously concurrently with this Complaint.

1

EXHIBIT 44

A. NICOLE HALLETT
Illinois State Bar No.: 6334828
nhallett@uchicago.edu
EDWIN F. MANDEL LEGAL AID CLINIC
6020 S. University Ave.
Chicago, IL 60637
Tel: (203) 910-1980

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Selvin Argueta Caal and Selvin Aldair Argueta Najera, | ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 1:23-cv-00598 |
| v. | ) ) | |
| United States of America, | ) ) | |
| Defendant. | ) ) | |

## COMPLAINT

For the forced separation of a father and his minor child, plaintiffs Selvin Argueta Caal ("Selvin Sr.") and Selvin Aldair Argueta Najera ("Selvin Jr.") bring this complaint against the United States of America pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) and §§ 2671–2680, stating as follows:

## INTRODUCTION

1.    This action seeks damages for the U.S. government's forced separation of the Plaintiffs when they arrived in the United States seeking asylum. It concerns the government's inhumane and cruel policy of separating migrant families, as well as government officials' negligent and willful misconduct resulting in the Plaintiffs' severe physical and mental trauma that continues to this day.

187

# EXHIBIT 45

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| KELDY GONZALES DE ZUNIGA, | § | |
| ERICK ZUNIGA GONZALES, and | § | |
| MINO ZUNIGA GONZALES | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:23-CV-162 |
| | § | |
| THE UNITED STATES OF | § | |
| AMERICA, | § | |
| | § | |
| *Defendant*, | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

**INTRODUCTION**

1.     In 2017, the federal government implemented a "pilot program" which later became known as "Family Separation." The government implemented an intentional policy by which government agents would forcibly separate children from their parents without any notice – a policy that would cause trauma to thousands of children and families across the U.S.-Mexico border.

2.     The government's express purpose in implementing this "Family Separation" policy was to inflict emotional distress on these families with the goal of deterring parents and children from seeking asylum in this country as was their right.

3.     The government has acknowledged that between July of 2017 and June 2018, it separated nearly 4,000 children from their parents or guardians. This number is likely higher.

4.     In this case, Ms. Gonzales left her country of Honduras with her two boys seeking refuge from death threats. She crossed the border into the United States in New Mexico and sought refuge. Upon arrival, Customs and Border Patrol agents kept her and her children together

EXHIBIT 46

1   Geoffrey H. Yost (S.B. #159687)
    gyost@omm.com
2   **O'MELVENY & MYERS LLP**
    Two Embarcadero Center, 28th Floor
3   San Francisco, CA 94111-3823
    Telephone: 415-984-8724
4
    Taylor Simeone (S.B. #327313)
5   tsimeone@omm.com
    **O'MELVENY & MYERS LLP**
6   400 South Hope Street, 18th Floor
    Los Angeles, California 90071-2899
7   Telephone: 213-430-6000
    Facsimile: 213-430-6407
8
    Wendy Wylegala*
9   wwylegala@supportkind.org
    **KIDS IN NEED OF DEFENSE**
10  252 West 37th Street, Floor 15
    New York, NY 10018
11  Telephone: 646-970-2913
12  Esther Araya*
    earaya@supportkind.org
13  **KIDS IN NEED OF DEFENSE**
    1411 K St. NW, Suite 200
14  Washington, DC 20005
    Telephone: 202-417-1907
15
16  *Attorneys for Plaintiffs*
    [*Additional counsel listed on signature page*]
17  [*Pro hac vice applications forthcoming*]
18
19          **UNITED STATES DISTRICT COURT**
20          **CENTRAL DISTRICT OF CALIFORNIA**

21  M.A.N.H., individually and as parent
    and next friend of his minor child,
22  E.B.N.A.,

23              Plaintiffs,                   Case No. 5:23-cv-00372

24      v.                                    **COMPLAINT FOR DAMAGES
                                              UNDER THE FEDERAL TORT
25  UNITED STATES OF AMERICA,                 CLAIMS ACT**

26              Defendant.

27

28

# EXHIBIT 47

MORRISON & FOERSTER LLP
DARALYN J. DURIE (*application for admission to be submitted*)
ddurie@mofo.com
MATTHAEUS MARTINO-WEINHARDT (*application for admission to be submitted*)
mmartinoweinhardt@mofo.com
BETHANY D. BENGFORT (*application for admission to be submitted*)
bbengfort@mofo.com
HANNA M. LAURITZEN (*application for admission to be submitted*)
hlauritzen@mofo.com
425 Market Street
San Francisco, CA  94105
Telephone:    415-268-7000
Facsimile:    415-268-7522

ELLIS LEGAL, P.C.
JOHN C. ELLIS
jellis@ellislegal.com
JUSTIN DELUCA
jdeluca@ellislegal.com
DAVID A. DESCHEPPER
ddeschepper@ellislegal.com
SOPHIA MAIETTA
smaietta@ellislegal.com
200 W. Madison St., Suite 2670
Chicago, IL 60606
Telephone: 312-967-7629

Attorneys for Plaintiffs
J.P., on her own behalf and on behalf of
her minor child, M.A.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF ILLINOIS

J.P., on her own behalf and on behalf of her minor child, M.A.,

                         Plaintiffs,

         v.

United States of America,

                         Defendant.

**COMPLAINT**

CASE NO. 23-CV-1136

# EXHIBIT 48

194

# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| M.M.C., ON HER OWN BEHALF AND ON BEHALF OF HER MINOR CHILDREN, M.C.C. AND A.T.C. AND N.A.B., ON HIS OWN BEHALF AND ON BEHALF OF HIS MINOR CHILD, N.A.C., | Case No. |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

EXHIBIT 49

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | | |
|---|---|---|
| N.R., I.E.C.G., M.V.A., J.V.T., and E.A.G.V, on their own behalves and on behalf of their minor children, S.N.M.M., A.C.C., B.V.M., V.E.V.H., and Y.Y.G.P., | ) ) ) ) ) ) | Civil Action No. |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| United States of America, | ) ) | |
| Defendant. | | |

**COMPLAINT**

**INTRODUCTION**

1.     This action is brought by five minor children (S.N.M.M., A.C.C., B.V.M., V.E.V.H., and Y.Y.G.P.)[1] seeking compensation for damages suffered when the United States government forcibly separated these children from their parents when they entered the United States together.  Each of the child Plaintiffs (hereinafter "child Plaintiffs" or "Plaintiff children") was separated from their parents and deprived of their parents' love, care, and support for significant periods of time.

2.     This action is also brought by the parents of the forcibly separated children – Plaintiffs  N.R., I.E.C.G., M.V.A., J.V.T., and E.A.G.V (hereinafter "parent Plaintiffs" or "Plaintiff parents")  – who also seek damages caused by the United States government's

---

[1] Concurrent with filing this Complaint, Plaintiffs are filing a motion for leave to proceed under pseudonyms in this case.

197

# EXHIBIT 50

1    Allison Whitehill (036339)
     Gary Bendinger (036251)
2    Katie Derrig (037110)
     LEWIS ROCA ROTHGERBER CHRISTIE LLP
3    201 East Washington Street, Suite 1200
     Phoenix, AZ 85004
4    602.262.5311
     awhitehill@lewisroca.com
5    gbendinger@lewisroca.com
     kderrig@lewisroca.com
6

7    Justin W. Bernick*
     Danielle Desaulniers Stempel*
     Michael J. West*
8    HOGAN LOVELLS US LLP
     Columbia Square
9    555 Thirteenth Street, NW
     Washington, DC 20004
10   202.637.5600
     justin.bernick@hoganlovells.com
11   danielle.stempel@hoganlovells.com
     michael.west@hoganlovells.com
12

13   (*Additional Counsel for Plaintiffs Listed on the Following Page*)

14   (**Pro hac vice application forthcoming*)

15

## IN THE UNITED STATES DISTRICT COURT

16

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| P.C.J., on his own behalf and on behalf of his minor child, M.C.J.; and O.P.V. on his own behalf and on behalf of his minor child, T.P.C. | No. _____ |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| United States of America, | |
| Defendant. | |

EXHIBIT 51

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

ARMANDO AGUILAR MORALES, on
behalf of himself and his minor daughter
J.J.A.R., and PEDRO RAMOS PEREZ on
behalf of himself and his minor son F.R.I.,

        *Plaintiffs*,

v.

UNITED STATES OF AMERICA,

        *Defendant*.

Civil Action No. 3:23-cv-00247

## PLAINTIFFS' ORIGINAL COMPLAINT

### INTRODUCTION

1.      This case is brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), and seeks damages for the actions by the United States of America cruelly and deliberately inflicting emotional distress and for other tortious conduct by forcibly separating migrants Armando Aguilar Morales and his then-nine-year-old daughter J.J.A.R. (the "Aguilar Family"), and Pedro Ramos Perez and his then-twelve-year-old son F.R.I. (the "Ramos Family"). Both the Aguilar and Ramos Families travelled to the United States from Guatemala. However, unbeknownst to them, members of the United States Government (the "Government") had commenced a practice of inflicting distress and suffering so severe that Plaintiffs and future Central American migrants would abandon any hope of seeking asylum or other lawful entry to the United States. The Government did this by forcibly separating parents and children, putting parents and children in separate squalid conditions where they were ill-treated, and deliberately causing trauma to both parents and children by separating them and denying them contact with each other for many months.

201

EXHIBIT 52

Case 4:23-cv-04792   Document 1   Filed 09/18/23   Page 1 of 40

1 | EMILY A. REITMEIER (SBN 305512)
emily.reitmeier@probonolaw.com
2 | JOSHUA S. BROWN (SBN 344711)
joshua.brown@probonolaw.com
3 | CHRISTIAN D. SOLER (SBN 346693)
christian.soler@probonolaw.com
4 | 525 University Avenue
Palo Alto, California 94301
5 | Telephone: (650) 470-4500
Facsimile: (650) 470-4570
6 |
*Attorneys for Plaintiffs*
7 |

8 |                    **UNITED STATES DISTRICT COURT**

9 |                 **NORTHERN DISTRICT OF CALIFORNIA**

10 |                        **OAKLAND DIVISION**

11 | KAREN R.L.L. and HENRRY E.C.L.,              CASE NO.:

12 |                         Plaintiffs,           **COMPLAINT FOR DAMAGES**
                                                   **UNDER THE FEDERAL TORT**
13 |              v.                               **CLAIMS ACT**

14 | UNITED STATES OF AMERICA,                     **JURY TRIAL DEMANDED**

15 |                         Defendant.

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

203

EXHIBIT 53

Akshay S. Deoras (SBN 301962)
Yan-Xin Li (SBN 332329)
Jenny Quang (SBN 345742)
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
T: (415) 439-1400
F: (415) 439-1500
akshay.deoras@kirkland.com
yanxin.li@kirkland.com
jenny.quang@kirkland.com

Victoria Petty (SBN 338689)
Jordan Wells (SBN 326491)
LAWYERS' COMMITTEE FOR CIVIL
    RIGHTS OF THE SAN FRANCISCO BAY
    AREA
131 Steuart Street, Suite 400
San Francisco, CA 94105
T: (415) 543-9444
F: (415) 543-0296
vpetty@lccrsf.org
jwells@lccrsf.org

*Attorneys for Plaintiffs J.C.O.C. and M.M.O.S.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.C.O.C. on his behalf and on behalf of his minor child, M.M.O.S.,<br><br>   Plaintiffs,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>   Defendant. | Case No.: 3:23-cv-5268<br><br>**COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT** |

COMPLAINT                CASE NO. 3:23-CV-5268

EXHIBIT 54



# Fact-checking Biden's 'garbage' claim about media reports on possible payments to separated migrant families

By Daniel Dale, CNN

🕐 4 minute read · Published 7:21 AM EDT, Fri November 5, 2021



Subscribe          **Sign in**

CNN reporter fact-checks Biden after he calls a report 'garbage'

Video Ad Feedback

02:40 - Source: CNN

**Washington (CNN) —** President Joe Biden was asked by a Fox News reporter on Wednesday about a Wall Street Journal article last week that had reported "the Biden administration is in talks to offer immigrant families that were separated during the Trump administration around $450,000 a person in compensation."

The reporter asked Biden if such payments – which the Journal said "could amount to close to $1 million a family" – could serve as an incentive for additional undocumented people to try to enter the US. Biden responded, "If you guys keep sending that garbage out, yeah. But it's not true."

When the reporter asked Biden directly if "this is a garbage report," Biden replied, "Yeah." Then, offering the first inkling of what specifically he was denying, Biden disputed the "$450,000" figure the Wall Street Journal used.

Biden asked, "Four hundred and fifty thousand dollars per person. Is that what you're saying?" When the reporter confirmed, Biden said, "That's not gonna happen."

**Facts First**: *The White House says Biden's "garbage" claim on Wednesday was specifically a denial that the administration is considering payments of $450,000 to families affected by the Trump-era separation policy – not a denial that the administration is considering giving some amount of money to these families. The Journal was correct that there are ongoing negotiations in which, in response to lawsuits, the Biden administration is talking about providing financial compensation. Since CNN doesn't have all of the details of these confidential negotiations, we can't definitively fact-check Biden's denial that $450,000 payments in particular were being discussed at the time.*

Politicians' aides sometimes try to rewrite the meaning of their bosses' comments after the fact. In this case, though, it did seem in context on Wednesday that Biden was taking issue with the $450,000 figure in particular.

Still, Biden could certainly have been clearer about what he meant. White House deputy press secretary Karine Jean-Pierre was far more precise at a White House briefing on Thursday.



**Do you want the latest in US politics summarized each day?**

Sign up for CNN's What Matters newsletter.

Email address

By subscribing you agree to our Privacy Policy.

Sign me up

208

Jean-Pierre told reporters that Biden had been commenting on "the dollar figure that was mentioned," not on the idea of settling with the families. Jean-Pierre said that, "if it saves taxpayer dollars and puts the disastrous history of the previous administration's use of 'zero tolerance' and family separation behind us," Biden is "perfectly comfortable with the Department of Justice settling with the individuals and families who are currently in litigation with the US government."

Jean-Pierre would not say what figure lower than $450,000 Biden is comfortable with. She did confirm something American Civil Liberties Union executive director Anthony D. Romero told CNN: after Biden's public remarks on Wednesday, the Justice Department communicated to people involved in the negotiations that "the numbers reported in the press are higher than anywhere that settlement can land."

We can't say with confidence what numbers were being contemplated in the private discussions before Biden's comments on Wednesday. On Thursday, Romero said in another statement to CNN that settlement negotiations had been "admittedly in flux" even before "the president's comments and congressional pushback" did "appear to have affected" the talks. (Romero also said he could not comment on specific details.)

Lawsuits over the Trump-era separations have been filed both by the ACLU and by attorneys representing affected families. Here some background context from a Thursday article by CNN immigration reporter Priscilla Alvarez:

*More than 3,000 children were separated from their families at the US-Mexico border under former President Donald Trump. It's unclear how many people would be eligible for payments.*

*Outside groups and a government watchdog have found over the years that children separated from their families under the "zero tolerance" policy experienced trauma. A 2019 Health and Human Services inspector general report included accounts of facility staff detailing the inconsolable crying of children when they were separated, the kids' confusion and belief they had been abandoned by their parents.*

*The Physicians for Human Rights likened it to "torture," and the American Academy of Pediatrics told CNN the Trump administration's practice of separating families at the border was "child abuse."*

*More than three years later, attorneys are still trying to reach the parents of 270 migrant children who were separated at the US-Mexico border under the Trump administration, according to a federal court filing Wednesday.*

209

*The Biden administration has committed to helping reunite families as part of a family reunification task force. Since the creation of the task force, 58 children have been reunified with their parents in the United States, according to the filing.*

CNN's Priscilla Alvarez contributed to this report.

Recommended for you



Sponsored

**Home battery backup for CA homes**

Sunrun Solar


Sponsored

**What Happens When You Take 1 Shot Of Oli…**

enrichyourfood.com


Sponsored

**When Vertigo & Dizziness Hits, Do Thi…**

The Vertigo Protocol



EXHIBIT 55

IMMIGRATION

# Biden admin may pay millions to migrant families separated at border under Trump

Under Trump's "zero tolerance" policy in 2018 and a 2017 pilot program, more than 5,600 migrant children were separated from their parents at the border.



—— Children and workers at a tent encampment near the Tornillo Port of Entry, in Tornillo, Texas, on June 19, 2018.  Joe Raedle / Getty Images file

Oct. 28, 2021, 2:23 PM PDT / Updated Oct. 28, 2021, 2:35 PM PDT

**By Julia Ainsley and Jacob Soboroff**

WASHINGTON – Thousands of migrant parents and children separated from each other at the U.S. border by Trump administration policies may soon be eligible for hundreds of thousands of dollars per person in compensation, according to three sources familiar with ongoing negotiations in a lawsuit brought on behalf of separated families.

The Wall Street Journal first reported on Thursday that the Biden administration is in talks to offer separated migrant parents and children around $450,000 per person. That would mean that if a parent and a child were separated at the border, together they would be eligible for a combined payment of $900,000.

The talks are part of negotiations between the Justice Department and lawyers representing the separated families in a number of tort cases that have claimed the families experienced harm when they were forcibly separated.

Guatemalan mother reunites with daughter 4 years after being separated at the border
04:27



The sum total of the payments remains unknown as negotiations continue, the sources said. But if enough parents and children are located, one source said, the U.S. government could be paying out hundreds of millions of dollars to compensate these families for what they went through.

213

Under former President Donald Trump's "zero tolerance" policy in 2018, and a pilot program in 2017, more than 5,600 children were separated from their parents simply because their parents crossed the border illegally with them. Until the policy, crossing the border illegally, a misdemeanor under U.S. law, did not result in parents who crossed with children being federally prosecuted and therefore separated from their children.

The Trump administration did not have a system in place to quickly reunite the families it separated. Today, more than 1,000 families are estimated to still be separated from each other, according to the White House. In many cases the parents were deported back to their home countries while their children remained in the U.S. And, according to court records, more than 300 parents of separated children have still not been located.

**Nonprofit group offers mental health services for families separated by Trump immigration policy**
08:26



"These families, particularly the young children, were deliberately traumatized by our government and deserve not only adequate compensation but the chance to remain here so they can begin to heal," said Lee Gelernt, an attorney for the ACLU who is representing separated families in a federal lawsuit.

The Biden administration established a task force to track down and work toward reunification for separated migrant families. So far, the task force has reunited just over 50 families. Lawyers representing those families hope many more may soon be reunited after the Biden

214

administration agrees to allow deported parents to return to the United States on a permanent or temporary parole basis.

The payments under negotiation would go to the parents and children whether they are in the U.S. or Central America. Some lawyers worry the large influx of cash may make them targets for gangs in Central American countries.

The Justice Department declined to comment on the status of the negotiations.

---



### Julia Ainsley

Julia Ainsley is the homeland security correspondent for NBC News and covers the Department of Homeland Security for the NBC News Investigative Unit.

---



### Jacob Soboroff

Jacob Soboroff is a correspondent for NBC News and MSNBC and author of "Separated: Inside an American Tragedy."

---

215

EXHIBIT 56

IMMIGRATION

# Justice Dept. defends Trump family separations in court, citing 'perceived humanitarian considerations'

Despite President Joe Biden's past criticism of the policy, the DOJ stated that the separated families don't have legal standing to sue, angering advocates.



— Protesters rally in Los Angeles in 2018 against the forced separation of migrant children from their parents at the U.S.-Mexico border. Robyn Beck / AFP via Getty Images file

June 1, 2023, 11:45 AM PDT

**By Nicole Acevedo and Jacob Soboroff**

Attorneys from President Joe Biden's Justice Department are still defending actions from the Trump administration that led to the forced separation of thousands of migrant children from their parents at the U.S.-Mexico border – including the argument that the families were separated out of "perceived humanitarian considerations," a recent court filing shows.

The argument shows a stark contrast with Biden's past criticisms of the separations as "criminal."

In fighting five asylum-seeking mothers who are suing the federal government for the trauma they say they and their children suffered because of the separation policy, the Justice Department has also questioned the families' ability to seek monetary damages through the Federal Tort Claims Act, which allows people to sue for injuries resulting from federal officers' unlawful conduct.

Attorneys from the Justice Department argued in a court document filed May 24 that the mothers' claims were "not cognizable" under the Federal Tort Claims Act, also known as FTCA. They also justified immigration enforcement actions from some Trump administration officials, saying the U.S. government has ample discretion when it decides how to regulate immigration.

The separations were part of Trump's broader "zero-tolerance" policy, which focused on prosecuting anyone illegally crossing the southwest border, as well as a pilot program that preceded it, officials said at the time. It separated more than 5,600 children from their parents in 2017 and 2018.

The agencies implementing the policy did not adequately plan how the children would be reunited with their parents, leaving hundreds of them still separated years later.

The Justice Department said in its filing that when Trump administration Homeland Security Secretary Kirstjen Nielsen claimed to have signed a memo in May 2018 directing immigration agents to refer migrant parents for prosecution, and thereby separating families, her intention was not "to use separations of parents and children to inflict harm," but instead it was "in furtherance of policy objectives relating to immigration enforcement." That made the department immune to legal challenges under the law, according to the filing.

The immigration enforcement objectives cited were "border security, allocation of personnel and resources, and perceived humanitarian considerations," the Justice Department wrote.

The argument seems to gloss over statements made by officials in the Trump administration who discussed using family separations to "deter" migrant families from seeking asylum in the U.S.

218

The Justice Department also said the families that are suing are trying to circumvent the government's legal immunity by basing their claims "upon their separations, not law enforcement actions."

The five asylum-seeking mothers and their children are among multiple migrant families who have filed nearly 30 lawsuits against the federal government seeking monetary damages through FTCA for how they were treated under the family separation policy.

## 'Seeking to minimize the unthinkable'

A task force of the Department of Homeland Security, which is in charge of immigration enforcement, is working to reunite the remaining children with their parents. It has reunited around 700 families in the U.S., but hundreds more remain separated.

The Justice Department has used similar arguments in other FTCA lawsuits. It also highlighted Biden's opposition to the policy in an initial court filing, but that hasn't stopped his administration from fighting the families in court, leaving advocates outraged.

The lead lawyer in the case that ended the Trump administration's policy, Lee Gelernt, the deputy director of the American Civil Liberty Union's Immigrant Civil Rights Project, had harsh words after the recent Justice Department filing.

"I think the Biden administration will come to regret not only defending these lawsuits but seeking to minimize the unthinkable damage done to these little children," Gelernt said.

The nonprofit Young Center for Immigrant Children's Rights tweeted Tuesday, "It is appalling to see the Biden administration defend one of the most egregious human rights violations in recent memory."

Attorneys representing the migrant families in FTCA cases declined to comment.

In late April, the Justice Department said it had reached a settlement with a separated parent in a different lawsuit; specifics have not been released.

The arguments from Biden's Justice Department seem to contradict statements from Biden and high-ranking officials at the departments of Justice and Homeland Security.

As a candidate, Biden described the deliberate separations by the Trump administration as "criminal" and "abhorrent."

219

At his confirmation hearings, Attorney General Merrick Garland said that the policy was "shameful" and that he "couldn't imagine anything worse." Homeland Security Secretary Alejandro Mayorkas called the policy "cruel and inhumane."

The White House and the Department of Homeland Security declined to answer questions about last week's filing, referring NBC News to the Justice Department, which declined to comment on the recent filings, citing the pending litigation.

Asked why the Justice Department is still fighting the families in court considering senior administration officials' statements, it declined to comment but referred NBC News to a 2021 statement from the agency that said, "While the parties have been unable to reach a global settlement agreement at this time, we remain committed to engaging with the plaintiffs and to bringing justice to the victims of this abhorrent policy."

Given the multitude of lawsuits separated families have filed against the federal government, court efforts to reach a global settlement to compensate families emerged in 2021. Each affected family initially stood to received hundreds of thousands of dollars in damages. But later that year, the Biden administration walked away from the negotiations.

They ended after Biden publicly criticized the size of the reported settlements in response to a question from a Fox News reporter. Lawyers from the Justice Department first pushed to lower the amount paid to the families before they walked away entirely, even though Biden ultimately voiced his support for a settlement.

"You deserve some kind of compensation, no matter what the circumstance," Biden said at a news conference then. "What that will be I have no idea."

**CORRECTION** (June 1, 2023, 8:30 p.m. ET): A previous version of this article misspelled the first name of former President Donald Trump's homeland security secretary. She is Kirstjen Nielsen, not Kristjen. It also misspelled the last name of President Joe Biden's homeland security secretary. He is Alejandro Mayorkas, not Majorkas. And it misstated when the Justice Department filed a court document. It filed the document May 24, not Wednesday.

---

 Nicole Acevedo

Nicole Acevedo is a reporter for NBC Latino.

---

Jacob Soboroff

Jacob Soboroff is a correspondent for NBC News and MSNBC and author of "Separated: Inside an American Tragedy."

EXHIBIT 57

11/11/24, 8:33 AM    Family Members Separated at Border Under Trump Policy May Each Receive Up to $450,000 - The New York Times

Case 3:24-cv-01265-DMS-AHG    Document 42-3    Filed 11/12/24    PageID.427    Page
223 of 228

The New York Times | https://www.nytimes.com/2021/10/28/us/politics/trump-family-separation-border.html

# *Family Members Separated at Border May Each Get Up to $450,000*

After the Trump administration separated migrant parents from children at the southern border, President Biden pledged to make it up to the families.

 **By Miriam Jordan**

Oct. 28, 2021

Migrant families separated at the border by the Trump administration may be eligible to each receive hundreds of thousands of dollars in compensation for the damage inflicted on them by the policy, according to several people familiar with the matter.

Some families could receive as much as $450,000 for each member who was directly affected, the sources said. However, negotiations between the Biden administration and lawyers representing the families are not over, and many might get far less, they said.

About 5,500 children were separated from parents at the southern border under President Donald J. Trump's "zero-tolerance" policy, mainly in the spring of 2018. Most were from Central America, but the measure also affected people from Brazil, Mexico and Romania, among other countries.

"There is no question that the Biden administration is doing the right thing by providing meaningful monetary compensation, given that the U.S. government deliberately brutalized these families, including babies and toddlers," said Lee Gelernt, a lead negotiator on behalf of the families and deputy director of the American Civil Liberties Union's immigrant rights project.

YOUR TIMES ACCESS

# Have a moment? Play these games.



## Connections

Group words that share a
common thread.

Play



## Spelling Bee

Make as many words as you
can with 7 letters.

Play



## The Crossword

Crack the clues in today's
puzzle.

Play

"But ultimately," he added, "the Biden administration will be judged on whether it
provides a pathway for these families to remain in the United States, to allow them
to once and for all try to put this trauma behind them."

In one set of negotiations, the lawyers have alleged that the United States
government, including the Homeland Security Department, had wronged the
families by separating parents from children, and that they should be entitled to
financial compensation. In parallel negotiations, the A.C.L.U. is trying to reach a
settlement with the government that would provide, among other things, a
pathway to remain in the United States and social services for the families.

The family separation policy was a key component of the Trump administration's
crackdown on unauthorized immigration. The goal was to create a powerful
deterrent for those hoping to come to the United States — and it affected even

families who may have been legally entitled to asylum due to persecution in their home countries.

The policy was first made public with a memo in April 2018. Later it surfaced that families had been separated as early as 2017 as part of a pilot program conducted near El Paso, Texas. About 1,000 of the 5,500 families have yet to be reunited because the parents were deported to their home country.

Under the policy, Border Patrol agents criminally charged parents with illegally entering the United States, imprisoned them and placed their children in government-licensed shelters around the country. Images and audio recordings of children weeping after being forcibly removed from their parents drew widespread condemnation.

In June 2018, a federal judge in California ordered the government to rescind the policy and promptly reunify families, saying that the practice "shocks the conscience" and violates the Constitution. Government officials struggled to meet a series of court-ordered deadlines to reunite families.

Reunions were marked by heartbreak and confusion: Many young children did not recognize their parents after months apart. Some cried, rejecting their parents. Children who had been potty-trained before the separation had regressed to diapers.

President Biden pledged to make it up to the families after taking office.

In February, his administration formed a task force, with representatives of the Departments of Homeland Security, Health and Human Services and State, to reunite migrant families that remained separated and determine how to make amends for the harm caused by the policy.

In recent months, a few dozen parents who were deported after separation from their children have been allowed to enter the United States, with permission to remain here for two years. The government has allowed entire families, including siblings, to come.

225

Only a minority of the families may be eligible for financial compensation, according to sources familiar with the talks. Many have not filed an administrative complaint to the government for fear of reprisal, and lawyers are still negotiating to secure compensation for them.

The maximum $450,000 per family member that is under discussion was first reported by The Wall Street Journal.

Following a federal court order last year, Seneca Family of Agencies, a social services provider, has been coordinating counseling for parents and children reunified in the United States.

"What we have seen is that families desperately need mental health services and are eagerly receiving them," said Mark Rosenbaum, the lead counsel in the case, who sought the services for the families.

The scope of the services is under negotiation as part of the settlement, as is the question of whether or not additional services should be provided.



Joselaine Cordeiro was separated from her son James, then 14, for more than nine months.  Philip Keith for The New York Times

Joselaine Cordeiro of Brazil and her son, James, then 14, were among the first migrant families separated at the border in 2017. They were apart for more than nine months. She remained in immigration detention and he lived at a government-run shelter for children.

Ms. Cordeiro, 35, became the second named plaintiff in a class-action lawsuit that the A.C.L.U. brought against the family separation policy; the A.C.L.U. and its partners have accomplished much of the work of identifying relatives all over the

227

world.

After filing an asylum claim, Ms. Cordeiro got permission to work in the U.S. She is now employed as a housekeeper in the Boston area. Her son cannot work because he lacks any legal status, and she cannot afford to pay for him to attend community college.

"If there's some financial help, it would make a huge difference," she said.

"This separation caused me depression that has impeded me from working consistently," she added. "I have been trying to be strong."

Eileen Sullivan contributed reporting from Washington, D.C.

**Miriam Jordan** is a national correspondent who reports on the impact of immigration on the society, culture and economy of the United States. Before joining The Times, she covered immigration at the Wall Street Journal and was a correspondent in Brazil, India, Hong Kong and Israel. More about Miriam Jordan

A version of this article appears in print on , Section A, Page 18 of the New York edition with the headline: Families Separated by Trump Policy Could Get Compensatory Payments