1 | Scott A. Gilmore (SBN 284961)
2 | Amanda Lee-DasGupta (D.C. Bar No. 1619712)
  | Mary S. Van Houten Harper (D.C. Bar No. 1045137)
3 | Amanda V. Boltax (D.C. Bar No. 90013893)
4 | **Hausfeld LLP**
  | 888 16th Street N.W., Suite 300
5 | Washington, DC 20006
6 | (202) 540-7200
  | sgilmore@hausfeld.com
7 | alee@hausfeld.com
8 | mvanhouten@hausfeld.com
  | mboltax@hausfeld.com
9 |
10 | *List of counsel continued below signature line*

11

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Padre (*alias*) and Junior (*alias*), *on behalf of themselves and all others similarly situated*,

      *Plaintiffs*,

  v.

 MVM, Inc.,

      *Defendant*.

Case No. 3:24-cv-01265-DMS-AHG

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

DATE:    December 20, 2024
TIME:    1:30 PM
JUDGE:  Hon. Dana M. Sabraw
CTRM:  13A

# **TABLE OF CONTENTS**

I.    INTRODUCTION: "FAMILY UNIT DELETED" ................................................1

II.    FACTS AND PROCEDURE ................................................................3

III.    MVM'S RULE 12(B)(7) MOTION SHOULD BE DENIED. .................................6

   A.  Joint Tortfeasors Are Not Required Parties Under Rule 19(a)(1)(A).....................6

   B.  The United States Has Not Claimed an Interest Under Rule 19(A)(1)(B)..............7

   C.  The United States Has No Legally Protected Interest in an Enjoined Policy...........8

   D.  Neither MVM's Contract nor the *Ms. L.* Settlement Are Impaired, Since Both
      Prohibit Punitive Family Separation.......................................................10

   E.  Equity and Good Conscience Require the Case to Proceed. ...............................12

IV.    MVM'S RULE 12(B)(6) MOTION SHOULD BE DENIED. .................................13

   A.  Plaintiffs State Human Rights Claims Under the Alien Tort Statute. ...................13

      1.  It Is Uncontested That Family Separation Violated Safe Conducts and Was
          Cruel, Inhuman, and Degrading Treatment. ...................................14

      2.  Family Separation Was Torture, Not a Lawful Sanction. .............................16

      3.  MVM Forcibly Disappeared Children, Concealing Their Whereabouts........17

   B.  Plaintiffs Adequately Allege a Conspiracy Under §§ 1985 and 1986: Family
      Separation Was a Concerted Effort, Driven by Animus. ................................19

   C.  Plaintiffs State California Law Claims for Child Abduction and IIED. .................22

   D.  Plaintiffs' State Law and Civil Rights Claims Are Timely. ..............................24

   E. MVM Is Not Entitled to Government Contractor Immunity. .............................28

      1.  MVM's Authority to Commit Unconstitutional Family Separation Was Not
          Validly Conferred..........................................................................28

2.   MVM Breached Its Contractual Duties to Comply with DHS Standards and the Best Interests of the Child. .................................................................. 31

3.   MVM Had Discretion to Act More Humanely. ............................................... 33

4.   The Supreme Court Has Foreclosed MVM's Claim to Absolute Derivative Sovereign Immunity. .......................................................................................34

V.    CONCLUSION ............................................................................................................... 35

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*A.F.P. v. U.S.,*
  No. 1:21-cv-00780-DAD-EPG (E.D. Cal.) ...................................................................9

*A.P.F. v. U.S.,*
  492 F. Supp. 3d 989 (D. Ariz. 2020) .......................................................................8

*Al–Quraishi v. Nakhla,*
  728 F. Supp. 2d 702 (D. Md. 2010) ......................................................................29

*Al Shimari v. CACI Premier Tech., Inc.,*
  368 F. Supp. 3d 935 (E.D. Va. 2019) .............................. 13, 30, 31, 32, 35

*Al Shimari v. CACI Premier Tech., Inc.,*
  No. 1:08-cv-00827 (E.D. Va. Nov. 12, 2024) ............................................30

*Altmann v. Republic of Austria,*
  317 F.3d 954 (9th Cir. 2002) ...................................................................8

*Anchorage v. Integrated Concepts & Rsch. Corp.,*
  1 F. Supp. 3d 1001 (D. Alaska 2014) .................................................. 7, 10

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...........................................................................13

*B.A.D.J. v. U.S.,*
  2022 WL 11631016 (D. Ariz. Sept. 30, 2022) ............................................8

*Backcountry Against Dumps v. U.S. Bureau of Indian Affs.,*
  2021 WL 3611049 (S.D. Cal. Aug. 6, 2021) ...........................................12

*Bedford v. City of Hayward,*
  2012 WL 4901434 (N.D. Cal. Oct. 15, 2012) ..................................... 20, 21

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ..........................................................................13

*Bird v. Dep't of Hum. Servs.*,
   935 F.3d 738 (9th Cir. 2019) ................................................................26

*Blair v. Toran*,
   1999 WL 1270802 (D. Ore. Dec. 2, 1999) .........................................25

*Brent v. Ashley*,
   247 F.3d 1294 (11th Cir. 2001) ...........................................................29

*C.M. v. U.S.*,
   2020 WL 1698191 (D. Ariz. Mar. 30, 2020) ................................ 8, 17

*C.M. v. U.S.*,
   No. 5:21-cv-00234-JKP-ESC (W.D. Tex.) ..........................................9

*C.M. v. United States*,
   699 F. Supp. 3d 809 (D. Ariz. 2023)...................................................17

*Cabalce v. Thomas E. Blanchard & Assos.*,
   797 F.3d 720 (9th Cir. 2015) ........................................................ 28, 33

*Campbell-Ewald Co. v. Gomez*,
   577 U.S. 153 (2016) ...................................... 2, 28, 31, 32, 34, 35

*Cervantes v. City of San Diego*,
   5 F.3d 1273 (9th Cir. 1993) .................................................................24

*Chang v. Cnty. of Siskiyou*,
   2024 WL 3890000 (E.D. Cal. Aug. 21, 2024) ...................................20

*Coombs v. Munoz*,
   2010 WL 785342 (N.D. Cal. Mar. 3, 2013) ....................................... 11

*Cooper v. Molko*,
   512 F. Supp. 563 (N.D. Cal. 1981); .............................................. 21, 22

*Costello Publ'g Co. v. Rotelle*,
   670 F.2d 1035 (D.C. Cir. 1981)...........................................................12

*D.A. v. U.S.*,
  663 F. Supp. 3d 715 (W.D. Tex. 2023) ...................................................8, 20

*D.J.C.V. v. U.S.*,
  605 F. Supp. 3d 571 (S.D.N.Y. 2022) ...........................................................8

*Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*,
  932 F.3d 843 (9th Cir. 2019) .......................................................................12

*Disabled Rts. Action Comm. v. Las Vegas Events, Inc.*,
  375 F.3d 861 (9th Cir. 2004) .......................................................................11

*Doe I v. Cisco Sys., Inc.*,
  73 F.4th 700 (9th Cir. 2023).........................................................................14

*E.C.B. v. U.S.*,
  No. 2:22-cv-00915 (D. Ariz.) .........................................................................9

*E.L.A. v. U.S.*,
  2023 WL 3456889 (W.D. Wash. May 15, 2023) ...........................................8

*E.S.M. v. U.S.*,
  No. 4:21-cv-00029-JAS (D. Ariz.)..................................................................9

*In re Est. of Ferdinand Marcos, Hum. Rts. Litig.*,
  25 F.3d 1467 (9th Cir. 1994) .......................................................................17

*F.R. v. U.S.*,
  2022 WL 2905040 (D. Ariz. July 22, 2022) ..................................................8

*Flores Benitez v. Miller*,
  No. 3:22-cv-00884 (D. Conn.) ........................................................................9

*Flynt v. Shimazu*,
  940 F.3d 457 (9th Cir. 2019) .......................................................................26

*Forti v. Suarez-Mason*,
  694 F. Supp. 707 (N.D. Cal. 1988) ..............................................................18

*Fuentes-Ortega v. U.S.*,
  640 F. Supp. 3d 878 (D. Ariz. 2022) .............................................................8

*Gillespie v. Civiletti*,
    629 F.2d 637 (9th Cir. 1980) ...................................................................20

*Goose Pond Ag, Inc. v. Duarte Nursery, Inc.*,
    2020 WL 6043951 (E.D. Cal. Oct. 13, 2020) .........................................12

*Grossman v. City of Portland*,
    33 F.3d 1200 (9th Cir. 1994) .................................................................29

*Hahn v. Massage Envy Franchising, LLC*,
    2013 WL 12187499 (S.D. Cal. Sept. 17, 2013) .....................................10

*Harry Roberts (U.S.A.) v. United Mexican States*,
    4 R.I.A.A. 77 (1926) .............................................................................15

*HIBU Inc. v. Plotkin Fin., Inc.*,
    722 F. App'x 625 (9th Cir. 2018) .........................................................28

*Hodges v. Holmgren*,
    121 F.3d 715 (9th Cir. 1997) .................................................................24

*Huber v. Beth*,
    654 F. Supp. 3d 777 (E.D. Wis. 2023) .................................................22

*I.T. v. U.S.*,
    No. 4:22-cv-05333 (N.D. Cal.) ...............................................................9

*J.P. v. U.S.*,
    No. 2:22-cv-00683 (D. Ariz.) ..................................................................9

*Jama v. U.S. I.N.S.*,
    334 F. Supp. 2d 662 (D.N.J. 2004) ........................................................30

*Jesner v. Arab Bank, PLC*,
    584 U.S. 241 (2018) ................................................................. 14, 15, 35

*Jones v. Blanas*,
    393 F.3d 918 (9th Cir. 2004) ...........................................................24, 27

*K.O. v. U.S.*,
    No. 4:20-cv-12015-TSH (D. Mass.) ........................................................9

*Karpe v. Chao*,
    416 F. Supp. 3d 1021 (S.D. Cal. 2019) ........................................................ 13

*Keates v. Koile*,
    883 F.3d 1228 (9th Cir. 2018) ..................................................................... 13

*Khouzam v. Ashcroft*,
    361 F.3d 161 (2d Cir. 2004) ................................................................... 16, 17

*Lantzy v. Centex Homes*,
    31 Cal. 4th 363 (2003) ................................................................................ 27

*Lennar Mare Island v. Steadfast Ins. Co.*,
    139 F. Supp. 3d 1141 (E. D. Cal. 2015) ....................................................... 13

*Leticia v. U.S.*,
    2023 WL 7110953 (E.D.N.Y. Oct. 27, 2023) ................................................. 8

*Li v. Holder*,
    559 F.3d 1096 (9th Cir. 2009) ..................................................................... 17

*Lomayaktewa v. Hathaway*,
    520 F.2d 1324 (9th Cir. 1975) ..................................................................... 10

*M.A.N.H. v. U.S.*,
    No. 5:23-cv-00372 (C.D. Cal.) ...................................................................... 9

*M.S.E. v. U.S.*,
    No. 2:22-cv-01242-JZB (D. Ariz.) ................................................................. 9

*Makah Indian Tribe v. Verity*,
    910 F.2d 555 (9th Cir. 1990) ......................................................................... 6

*McDonald v. Antelope Valley Cmty. Coll. Dist.*,
    45 Cal. 4th 88 (2008) ................................................................................... 27

*Ms. L. v. U.S. Immigration and Customs Enforcement ("ICE")*,
    No. 18-cv-00428 (S.D. Cal. Dec. 8, 2023) ............................................ *passim*

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002) ............................................................................. 26, 27

*Nestlé USA, Inc. v. Doe*,
    593 U.S. 628 (2021) .................................................................................. 14

*Novoa v. GEO Grp.*,
    2018 WL 4057814 (C.D. Cal. Aug. 22, 2018) ......................................... 11

*Nunez Euceda v. U.S.*,
    2021 WL 4895748 (C.D. Cal. Apr. 27, 2021) ............................................ 8

*Nuru v. Gonzales*,
    404 F.3d 1207 (9th Cir. 2005) ........................................................... 16, 17

*O'Rourke v. Hayes*,
    378 F.3d 1201 (11th Cir. 2004) ............................................................... 29

*Page v. Clark Cnty. Fire Dist. 6*,
    2024 WL 3822639 (W.D. Wash. May 7, 2024) ................................... 21, 22

*Papa v. United States*,
    281 F.3d 1004 (9th Cir. 2002) ................................................................ 14

*Rankins v. United Parcel Serv., Inc.*,
    2024 WL 3416508 (N.D. Cal. July 15, 2024) .......................................... 25

*Republic of Philippines v. Pimentel*,
    553 U.S. 851 (2008) ................................................................................. 12

*Rezek v. U.S. Bank Nat'l Ass'n*,
    2020 WL 5257866 (S.D. Cal. Sept. 3, 2020) .......................................... 25

*Risk v. Kingdom of Norway*,
    707 F. Supp. 1159 (N.D. Cal. 1989),
    *aff'd sub nom. Risk v. Halvorsen*, 936 F.2d 393 (9th Cir. 1991) ................. 25

*Roberts v. City of Fairbanks*,
    947 F.3d 1191 (9th Cir. 2020) .................................................................. 7

*Roberts v. Legacy Meridian Park Hosp., Inc.*,
    2014 WL 294549 (D. Ore. Jan. 24, 2014) ............................................... 21

*Rosefield v. Rosefield,*
   221 Cal. App. 2d 431 (Ct. App. 1963) ................................................ 22, 23, 24

*S.M.F. v. U.S.,*
   2023 WL 6215319 (W.D. Wash. Sept. 25, 2023) ...................................... 9, 24

*Salim v. Mitchell,*
   183 F. Supp. 3d 1121 (E.D. Wash. 2016) ........................................ 24, 30, 34

*Sarei v. Rio Tinto, PLC,*
   487 F.3d 1193 (9th Cir. 2007) ........................................................................ 30

*Simmons v. Naphcare Inc.,*
   2019 WL 13177046 (C.D. Cal. Nov. 7, 2019) ............................................. 34

*Sosa v. Alvarez-Machain,*
   542 U.S. 692 (2004) ................................................................................ 14, 18

*Spurlin v. Air & Liquid Sys. Corp.,*
   568 F. Supp. 3d 1050 (S.D. Cal. 2021) ...................................................... 34, 35

*Surina v. Lucey,*
   168 Cal. App. 3d 539 (Ct. App. 1985) ........................................................ 23, 24

*Taveras v. Taveraz,*
   477 F.3d 767 (6th Cir. 2007) ........................................................................ 15

*Temple v. Synthes Corp., Ltd.,*
   498 U.S. 5 (1990) (*per curiam*) ..................................................................... 6

*Tinoco v. San Diego Gas & Elec. Co.,*
   327 F.R.D. 651 (S.D. Cal. 2018) .............................................................. 7, 9

*Transgo, Inc. v. Ajac Transmission Parts Corp.,*
   768 F.2d 1001 (9th Cir. 1985) ........................................................................ 6

*Twitter, Inc. v. Taamneh,*
   598 U.S. 471 (2023) ...................................................................................... 20

*United States v. Bowen,*
   172 F.3d 682 (9th Cir. 1999) ........................................................................ 7

*United States v. Nye Cnty., Nev.*,
   951 F. Supp. 1502 (D. Nev. 1996) ................................................................7

*Wallace v. Kato*,
   549 U.S. 384 (2007) ..................................................................... 26, 27

*Ward v. Apple Inc.*,
   791 F.3d 1041 (9th Cir. 2015) ................................................. 3, 6, 8, 13

*Western Watersheds Project v. Haaland*,
   22 F.4th 828 (9th Cir. 2022) ............................................................ 11

*Xuncax v. Gramajo*,
   886 F. Supp. 162 (D. Mass. 1995) ..................................................... 18

*Yearsley v. W.A. Ross Constr. Co.*,
   309 U.S. 18 (1940) ..................................................... 3, 28, 31

*Yeend v. Akima Glob. Servs., LLC*,
   347 F.R.D. 405 (N.D.N.Y. 2024) .........................................................8

*Yousuf v. Samantar*,
   699 F.3d 763 (4th Cir. 2012) ...........................................................30

*Zeleny v. Brown*,
   2019 WL 3430734 (N.D. Cal. July 30, 2019) .............................................24

**Statutes**

8 C.F.R. § 1208.18(a)(3) ................................................................. 16

8 U.S.C. § 1324 ............................................................................9

28 U.S.C. § 1350 ........................................................................ 2, 14

42 U.S.C. § 1985(3) .................................................................... 19, 24

42 U.S.C. § 1986 .......................................................................... 19

42 U.S.C. § 2000dd-0 ...................................................................... 15

Cal. Civ. Code § 49 ................................................................... 22, 24

Cal. Pen. Code § 279.1 ..................................................................25

Fed. R. Civ. P. 19 ..................................................6, 7, 8, 9, 12

Federal Tort Claims Act, 28 U.S.C. § 2680 ...................................... 13

Foreign Assistance Act, 22 U.S.C.A. § 2151n ................................... 18

**Other Authorities**

Convention Against Torture and Other Cruel, Inhuman or Degrading
    Treatment or Punishment, Dec. 10, 1984, T.I.A.S. No. 94-1120.1..............................15

International Convention for the Protection of All Persons from Enforced
    Disappearance, Dec. 23, 2010, 2716 U.N.T.S. 3..........................................18

Thomas H. Lee, *The Safe-Conduct Theory of the Alien Tort Statute*, 106
    Colum. L. Rev. 830A (2006) ............................................15

# I.    INTRODUCTION: "FAMILY UNIT DELETED"

This Court has called Family Separation[1] "one of the most shameful chapters in the history of our country." Settlement Hrg. Tr., *Ms. L. v. U.S. Immigration and Customs Enforcement ("ICE")*, No. 18-cv-00428 (S.D. Cal. Dec. 8, 2023), ECF No. 732 ("Tr.") at 9:11-12. MVM claims it is a "scapegoat" for that shameful chapter.[2] But a scapegoat has done nothing wrong and stands falsely accused—MVM was a willing conspirator.

In 2017, MVM, a security contractor, unlawfully agreed to help the U.S. government tear more than 4,500 migrant children away from their parents without the minimum due process required under the U.S. Constitution and international human rights law: a hearing and "objective findings of a lack of fitness or danger." *Id.* at 15:1; Compl. ¶¶ 1, 7-10. MVM secreted these children around the country, concealing their whereabouts and coercing them to comply through false promises that they were being brought to their parents. But the conspirators had no plans to reunify them. ICE and MVM "deleted" the "family unit" from their records, rendering children untraceable to their parents. They made it so hard to locate disappeared loved ones that seven years later—despite a court order—hundreds of children remain separated.

MVM knew what it was doing was wrong. It admits it "publicly denounced" the policy and does not purport to defend its constitutionality. Mot. at 1, 16. Yet it chose to violate federal law and its contract, which required MVM to comply with DHS regulations and standards and act in the "best interest of the child." Compl. ¶¶ 66-67. DHS standards specifically prohibit punitive family separation: "[a]t no time should ICE or contractor personnel use the threat of family separation or actual family separation to discipline or

---

[1] "Family Separation" (termed the "Family Separation Campaign" in the Complaint) denotes the practice of punitive family separations enjoined by this Court as unconstitutional in *Ms. L. See* Order Granting Pls.' Mot. for Classwide Prelim. Inj., No. 18-cv-00428 (S.D. Cal. June 26, 2018), ECF No. 83 ("*Ms. L.* PI").

[2] *See* Letter from P. Fraidenburgh, *Defendant MVM, Inc.'s Informal Statement In Support of Rule 12(b) Motion to Dismiss* (Oct. 17, 2024), at 1.

retaliate against a parent or child." *Id*. ¶ 107.

Family Separation was manifestly cruel and inhumane, and as this Court held in *Ms. L.*, it "clearly did not" "pass constitutional muster." Tr. at 14:17-23. This Court enjoined the practice except in delineated, non-punitive circumstances. *Id.* Plaintiffs Padre and Junior are father and son members of the *Ms. L.* class. Compl. ¶¶ 19, 142. They were brutally separated by MVM and ICE and were not reunified for six years. *Id*. ¶ 168. They now seek to hold MVM liable to the *Ms. L.* class under international, federal, and state law.

MVM's motion to dismiss should be denied, largely for one reason: punitive Family Separation violated the law—which is why it was enjoined. MVM concedes that Plaintiffs allege actionable human rights claims under the Alien Tort Statute, 28 U.S.C. § 1350, for cruel, inhuman, degrading treatment ("CIDT") and violations of safe conduct, which prohibits stripping foreign citizens of family integrity rights without due process. And while MVM concedes that Plaintiffs endured suffering amounting to torture, its defense that punitive Family Separation was a "lawful sanction," and therefore excused, does not withstand scrutiny. Nor does MVM credibly dispute that the conspirators concealed the whereabouts of seized children from their parents—amounting to enforced disappearance under international law. MVM's contention that the children were not abducted fails for similar reasons, as does MVM's dispute that Plaintiffs plausibly allege a civil rights conspiracy—MVM agreed to a concerted effort to deprive civil rights, motivated by racial and xenophobic animus.

These claims, moreover, are all timely: the ATS is subject to a ten-year statute of limitations. And under unique continuing-tort principles applicable in the child abduction context, Plaintiffs' claims did not accrue until their reunification.

MVM's "just following orders" immunity defense also fails. MVM is not entitled to government contractor immunity because it had no validly conferred authority to violate the Constitution—a requirement under the longstanding test for immunity. *See Campbell-*

1  *Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016); *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S.

2  18, 20-21 (1940). Nor is immunity proper here because MVM violated its contract and

3  federal standards and acted with discretion in its needlessly cruel and deceptive treatment

4  of Junior and other children. *See id.*

5      Finally, joinder of the Government is not required and thus will not release MVM

6  from facing liability here. It has long been the rule that a joint tortfeasor is not a necessary

7  party under Rule 19(a)(1)(A). *See Ward v. Apple Inc.*, 791 F.3d 1041, 1048-49 (9th Cir. 2015).

8  And MVM does not meet the threshold requirement for Rule 19(a)(1)(B): the Government

9  has not "claimed" an interest in this litigation. *Id.* To the contrary, the Government

10  specifically declined MVM's invitation to weigh in. Regardless, the Government has no

11  "legally protected" interest in perpetuating an enjoined policy and violating the *Ms. L.*

12  settlement agreement. *See id.* at 1051. Nor does this suit impede MVM's ability to *lawfully*

13  transport unaccompanied minors under its contract.

14      MVM was no scapegoat. MVM must explain to the jury and the victims why it

15  subjected thousands of children to the cruel practice it now denounces. Its motion to

16  dismiss should be denied.[3]

17  **II.    FACTS AND PROCEDURE**

18      In 2017, the United States and MVM launched a "concerted effort," Tr. at 14:25-

19  15:6, to separate thousands of migrant children from their parents. Compl. ¶ 1. The stated

20  goal was to punish and deter migrants—principally non-white asylum seekers from Central

21  American countries. *Id.* ¶¶ 4, 37, 40, 57. MVM was the willing lynchpin. *Id.* ¶¶ 70-75.

22  MVM had the exclusive contract with ICE to transport unaccompanied migrant children

23  from ICE custody. *Id.* at ¶¶ 62-69.

24      In or around March 2017, MVM agreed to a new project: rendering minors

25

26  [3] Plaintiffs do not oppose the Court taking judicial notice of MVM's exhibits—all of which

27  buttress Plaintiffs' opposition and flow from the Complaint. *See* ECF No. 43, Pls' Response to MVM's Request for Judicial Notice ("RJN").

28

unaccompanied. Acting in concert, MVM and ICE employees removed children from their parents, even ripping infants from their mother's arms. *Id.* at ¶¶ 77-79; 146. These families were separated without a hearing, "without objective findings of a lack of fitness or danger," and "with no plan to reunify them." Tr. at 14:25-15:6; Compl. ¶ 1. Children vanished into MVM's hands, incommunicado. Compl. ¶ 91. MVM took them thousands of miles away, "without the parents knowing where their children were" and "without the opportunity of children to contact their parents." Tr. at 15:4-6; Compl. ¶¶ 80, 130. MVM deceived children with false promises and lies. Compl. ¶¶ 153, 158, 160. MVM and ICE "deleted" family units from their records, failing to track the children they transported. *Id.* ¶ 88. These acts left families with little hope of reunification.

MVM's role in Family Separation violated the terms of its contract with ICE. Under the contract, MVM was required to comply with federal law and DHS policies and procedures. *Id.* ¶ 67. The contract also required that, "[i]n all cases, the best interest of the child is to be the primary consideration, and children are to be treated with special consideration for their unique needs—to include their safety, security, well-being, and immediate physical health needs." *Id.* ¶ 66. Family Separation was specifically prohibited: DHS policies instructed that "[a]t no time should ICE or contractor personnel use the threat of family separation or actual family separation to discipline or retaliate against a parent or child." *Id.* ¶ 107. Those same policies expressly stated that Family Separation "violates the best interests of the child." *Id.*

Family Separation was cruel and unlawful—and MVM knew it. MVM concedes it "openly denounced" the practice. *Id.* ¶¶ 93-110; Mot. at 1. Internally, the Government recognized that Family Separation was a "human rights abuse" and foresaw that "contractors" would "refus[e] to participate . . . on the grounds that the practice is illegal, immoral, or unethical." *Id.* ¶ 114. Yet MVM had no such qualms. Instead, MVM freely chose to step outside its legal and contractual obligations with ICE and form an *ultra vires*

agreement to carry out Family Separation. *Id.* ¶¶ 66, 67, 76, 79, 85-87, 89.

Plaintiffs—asylum seekers who were never referred for prosecution for illegal entry or reentry—are two of MVM's thousands of victims. *Id.* ¶ 91. While held at the border, Junior was taken from Padre without a determination that Padre was unfit or posed a danger. *Id.* ¶ 151. Junior was transported by MVM thousands of miles across the country to a shelter in New York. *Id.* ¶ 160. Though Junior begged MVM for information, MVM fed him lies that he was being brought to his father and concealed his true destination. *Id.* ¶¶ 153, 158. Unbeknownst to Junior, Padre was deported. *Id.* ¶ 150. It took six years before they were reunited in July 2023. *Id.* ¶ 168. The separation inflicted and continues to inflict severe emotional pain and suffering on both Padre and Junior, like thousands of other class members. *Id.* ¶ 169. Between 2017 and 2021, MVM separated over 4,500 children from their parents, earning tens of millions of dollars in the process. *Id.* ¶¶ 9, 181. Hundreds of children remain separated from their parents even now. *Id.* ¶ 91.

Plaintiffs are members of the certified *Ms. L.* class. On June 26, 2018, this Court held that Family Separation violated Fifth Amendment due process, finding it was "brutal and offensive" and "so egregious, so outrageous" as to "shock the contemporary conscience." *Id.* ¶¶ 115-16 (quoting *Ms. L.* PI at 17). The Court enjoined further separations, except in non-punitive and delineated circumstances, and ordered family reunification. *Id.* As publicly reported—including in news articles that MVM seeks to judicially notice—the Government offered classwide compensation to the separated families as part of the negotiations to settle litigation challenging Family Separation. *See* Mot. at 6; RJN, Exs. 55, 57. The Government, however, rescinded that offer, as definitively confirmed in the October 16, 2023, settlement agreement in *Ms. L. See* No. 18-cv-00428, ECF No. 711-1 ("*Ms. L.* Settlement"). The *Ms. L.* Settlement was approved by the Court on December 11, 2023. *Id.*, ECF Nos. 721-1, 727.

On July 23, 2024, Plaintiffs filed this proposed class action seeking damages from MVM, the Government's co-perpetrator, on behalf of the entire *Ms. L.* class.

**III.    MVM'S RULE 12(B)(7) MOTION SHOULD BE DENIED.**

MVM cannot meet its "burden of persuasion" to establish that the United States is a required party, joinder is infeasible, and proceeding without this "indispensable" party would subvert "equity and good conscience." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

Joinder of the United States is not required for three reasons. *First*, as a "general rule," joint tortfeasors are not required parties under Rule 19(a)(1)(A). *Ward v. Apple Inc.*, 791 F.3d 1041, 1049 (9th Cir. 2015). *Second*, the United States has not *claimed* an interest in this case—the threshold requirement for Rule 19(a)(1)(B). *Id. Third*, this case does not impair any "legally protected" interest, because the United States has no legally protected interest in perpetuating an enjoined and unconstitutional practice of Family Separation. And nothing in this litigation encumbers a Government property interest or prevents MVM from lawfully transporting unaccompanied minors under its contract with the Government.

**A. Joint Tortfeasors Are Not Required Parties Under Rule 19(a)(1)(A).**

"It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990) (*per curiam*); Fed. R. Civ. P. 19, Advisory Committee's Note to 1966 Amend. ("[A] tortfeasor with the usual 'joint-and-several' liability is merely a permissive party . . ."). A "co-conspirator generally will not be a required party under Rule 19(a)(1)(A), which applies only when a party's absence prevents the court from 'accord[ing] complete relief among existing parties.'" *Ward*, 791 F.3d at 1049 (quoting Rule 19(a)(1)(A)).

MVM all but concedes that the United States is not a required party under Rule 19(a)(1)(A). It does not dispute that the United States is a joint tortfeasor, with MVM as its co-conspirator. Nor does it dispute that as "joint tortfeasors" MVM and its co-conspirator would be "jointly and severally liable for all compensatory damages." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1023 (9th Cir. 1985). Since Plaintiffs

only seek monetary remedies—damages and a rehabilitation fund—they can recover "complete relief" from MVM alone without requiring "the United States to take action or change any policy." *Tinoco v. San Diego Gas & Elec. Co.*, 327 F.R.D. 651, 658 (S.D. Cal. 2018). Thus, the United States is not a required party under Rule 19(a)(1)(A).[4]

## B. The United States Has Not Claimed an Interest Under Rule 19(A)(1)(B).

MVM also fails to meet the threshold requirement for Rule 19(a)(1)(B): the absent party must itself *claim* the interest." "[J]oinder is contingent . . . upon an initial requirement that the absent party claim a legally protected 'interest relating to the subject matter of the action.'" *Roberts v. City of Fairbanks*, 947 F.3d 1191, 1204 (9th Cir. 2020) (cleaned up). Joinder is "unnecessary" when the absent party "was aware of [the] action and chose not to claim an interest." *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999).

The United States has repeatedly declined to claim any interest in this litigation. Plaintiffs apprised the United States of this action in their Notice of Related Action, as did MVM in preparing its Rule 12 motion.[5] Yet the United States declined to intervene, just as it elected not to participate in the Early Neutral Evaluation ("ENE") Conference. *See* Mot. at 12-16 (providing no evidence that the United States sought to be included in this suit); Proof of Serv. of Pls' Notice of Related Cases, ECF No. 3-1 (listing the United States); Minute Entry, ECF No. 33 (showing that the United States did not participate in the ENE).

Since the United States is a joint tortfeasor and has not claimed an interest, MVM

---

[4] Like any joint tortfeasor, MVM is free to bring a third-party claim for indemnity or contribution. But "the fact that [a defendant] asserts a potential right to recover its litigation costs from the government" does not make "the government's presence required." *Anchorage v. Integrated Concepts & Rsch. Corp.*, 1 F. Supp. 3d 1001, 1014 (D. Alaska 2014); *see also United States v. Nye Cnty., Nev.*, 951 F. Supp. 1502, 1513 (D. Nev. 1996) (finding a defendant's desire to "later seek indemnification or contribution . . . does not meet the Rule 19 requirement").

[5] During the parties' September 5, 2024, meet and confer on MVM's Rule 12 motion pursuant to Chamber's Rule 6.A., MVM informed Plaintiffs of its invitation of the United States to participate in this action.

---

fails to establish any basis for mandatory joinder under Rule 19(a). *See Altmann v. Republic of Austria*, 317 F.3d 954, 971 (9th Cir. 2002) (holding joinder was "unnecessary" because "all necessary parties are aware of the litigation and have chosen not to claim an interest"); *Yeend v. Akima Glob. Servs., LLC*, 347 F.R.D. 405, 413 (N.D.N.Y. 2024) (holding in a human trafficking case against a government contractor, "where ICE has not made any affirmative motion to join the litigation . . . this subsection of Rule 19(a) is inapplicable."). The Rule 19 analysis can stop here.

### C. The United States Has No Legally Protected Interest in an Enjoined Policy.

MVM also fails to identify any "specific interest" of the United States that is "legally protected" and "may be impaired" absent joinder. *Ward*, 791 F.3d at 1049. MVM asserts that "this litigation will interfere with the Government's interest in federal immigration policy." Mot. at 15 (all caps removed). But the question is not whether the Government has a general interest in its "ability to enforce immigration policy." Mot. at 14. The question is whether the Government has a legally protected interest in one specific policy: Family Separation. It does not.

The United States has no interest in enforcing the enjoined and unconstitutional practice of Family Separation. Any effort to revive the practice is not "legally protected," *Ward*, 791 F.3d at 1051, since it would violate this Court's injunction and the *Ms. L.* Settlement. Nor does the Government have a legally protected interest in perpetuating a practice found unlawful by this Court, *see Ms. L.* PI, and nearly every other court to examine the issue.[6] Indeed, the Government has settled nearly every federal litigation arising from

---

[6] *See, e.g.*, *A.P.F. v. U.S.*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020); *B.A.D.J. v. U.S.*, 2022 WL 11631016, at *3 (D. Ariz. Sept. 30, 2022); *C.M. v. U.S.*, 2020 WL 1698191, *4 (D. Ariz. Mar. 30, 2020)); *D.A. v. U.S.*, 663 F. Supp. 3d 715, 741 (W.D. Tex. 2023); *D.J.C.V. v. U.S.*, 605 F. Supp. 3d 571, 593 (S.D.N.Y. 2022); *E.L.A. v. U.S.*, 2023 WL 3456889, at *4 (W.D. Wash. May 15, 2023); *F.R. v. U.S.*, 2022 WL 2905040, at *5 (D. Ariz. July 22, 2022); *Fuentes-Ortega v. U.S.*, 640 F. Supp. 3d 878, 883 (D. Ariz. 2022); *Leticia v. U.S.*, 2023 WL 7110953, at *13 (E.D.N.Y. Oct. 27, 2023); *Nunez Euceda v. U.S.*, 2021 WL 4895748, at *3

---

Family Separation,[7] as well as *Ms. L.* A public entity has no legally protected interest in a policy that is already enjoined and, thus, would not be impaired in a subsequent suit. S*ee Tinoco*, 327 F.R.D. at 659 (finding a public entity did not have an interest in a lawsuit regarding an ordinance because the lawsuit would not result in the ordinance's "invalidation or modification").[8]

Because the Government has no interest in enforcing an unenforceable policy, MVM fails to articulate how this case would conceivably impair the Government's ability to enforce immigration law or its broader federal interests in immigration. It is not enough to invoke the Government's broad and "pervasive" interest in immigration.[9] Mot. at 13. There is only one, specific immigration policy at stake in this case: Family Separation. Even enjoining Family Separation in *Ms. L.* did not impair those interests, as this Court made clear. *See Ms. L.* PI at 20-21 (emphasizing that, even with the injunction, "[t]he

---

(C.D. Cal. Apr. 27, 2021); *S.M.F. v. U.S.*, 2023 WL 6215359, at *4 (W.D. Wash. Sept. 25, 2023); *A.F.P. v. U.S.*, No. 1:21-cv-00780-DAD-EPG (E.D. Cal.), ECF No. 27; *C.M. v. U.S.*, No. 5:21-cv-00234-JKP-ESC (W.D. Tex.), ECF No. 31; *E.C.B. v. U.S.*, No. 2:22-cv-00915 (D. Ariz.), ECF No. 24; *E.S.M. v. U.S.*, No. 4:21-cv-00029-JAS (D. Ariz.), ECF No. 47; *Flores Benitez v. Miller*, No. 3:22-cv-00884 (D. Conn.), ECF No. 86; *I.T. v. U.S.*, 4:22-cv-05333 (N.D. Cal.), ECF No. 30; *J.P. v. U.S.*, No. 2:22-cv-00683 (D. Ariz.), ECF No. 59; *K.O. v. U.S.*, No. 4:20-cv-12015-TSH (D. Mass.), ECF No. 72; *M.A.N.H. v. U.S.*, No. 5:23-cv-00372 (C.D. Cal.), ECF No. 51; *M.S.E. v. U.S.*, No. 2:22-cv-01242-JZB (D. Ariz.), ECF No. 53.

[7] *See* RJN (collecting 44 FTCA cases, all of which were settled by the Government).

[8] Even if the Government had an ongoing interest in defending the legality of Family Separation—which it has not claimed—MVM can fairly represent that interest. MVM's selective insistence that it is unwilling to defend the practice, though convenient to its joinder arguments, *see* Mot. at 16, is belied by its attempts to defend the practice's constitutionality throughout the Motion. *See, e.g.*, *infra* Part IV.A.2, Part IV.C.

[9] In asserting that the United States' interests in transporting immigrants "preempt the field," MVM relies solely on case law interpreting 8 U.S.C. § 1324, which penalizes persons who bring in or harbor non-citizens entering the United States without lawful status. *See* Mot. at 13 (collecting cases). This line of cases neither addresses Rule 19 nor establishes any relevant or valid interest in punitively separating families.

---

1  Government would remain free to enforce its criminal and immigration laws, and to
2  exercise its discretion in matters of release and detention consistent with law," but "[i]t
3  would just have to do so in a way that preserves the class members' constitutional rights
4  to family association and integrity").

5  **D. Neither MVM's Contract nor the *Ms. L.* Settlement Are Impaired, Since Both**
6  **Prohibit Punitive Family Separation.**

7       MVM fails to establish that this litigation would impair its contract or subject MVM
8  to "inconsistent obligations." Rule 19(a)(1)(B)(ii). Nothing in this case prevents MVM
9  from lawfully transporting unaccompanied minors under its contract with ICE. Nor does it
10 prevent the Government from fulfilling its obligations under the *Ms. L.* Settlement. *Cf.*
11 Mot. at 14. A party to a contract is only necessary if the litigation seeks to "decimate that
12 contract." *Anchorage*, 1 F. Supp. 3d at 1016; *see also Lomayaktewa v. Hathaway*, 520 F.2d
13 1324, 1326-27 (9th Cir. 1975). As this Court found, a "contractual party" may be "found
14 necessary" if "granting relief would cause the defendant to breach its contract with the
15 absent party, and, in the absence of joinder, would expose it to a serious risk of additional
16 litigation and inconsistent obligations." *Hahn v. Massage Envy Franchising, LLC*, 2013 WL
17 12187499, at *3 (S.D. Cal. Sept. 17, 2013) (Sabraw, C.J.).

18      That is not the case here. A money judgment would not cause MVM to breach its
19 contract with ICE for one simple reason: MVM's contract does not require unlawful
20 Family Separation—it prohibits it. Since MVM is contractually bound to comply with
21 federal law and applicable DHS policies and procedures and to act in the best interests of
22 the children, any judgment finding MVM responsible for its actions to separate families
23 would not alter MVM's contract. MVM is perfectly capable of paying damages to Plaintiffs
24 and the proposed class, while still lawfully transporting unaccompanied minors under its
25 ICE contract.

26      Because this case challenges MVM's now-terminated agreement to separate

27

28

families—not its contract with ICE—MVM's reliance on *Western Watersheds Project v. Haaland*, 22 F.4th 828 (9th Cir. 2022) is misguided. There, the plaintiff's cause of action was based on "challeng[ing] the issuance of certain oil and gas leases[,]" *i.e.*, challenging government awarded contracts. *See* Mot. at 14 (citing *Haaland*, 22 F.4th at 832). The Ninth Circuit acknowledged a legally protected contractual interest for an absentee that was party to a contract precisely because, there, the plaintiff's aim was to "decimate the contract." *Haaland*, 22 F.4th at 831, 842. Here, regardless of Plaintiffs' success in their lawsuit, MVM's current contract will remain intact. As in *Novoa v. GEO Grp.*, 2018 WL 4057814, at *5 (C.D. Cal. Aug. 22, 2018), ICE is not a necessary party because the relief sought "would be in harmony with, not in violation" of ICE's contract with MVM.

The relief sought in this case is also in harmony with the *Ms. L.* PI and Settlement. That agreement only released contractors from declaratory or injunctive relief—it specifically carved out damages claims. *Ms. L.* Settlement at 43-44. The damages sought in this case were thus specifically contemplated and permitted. Further, the injunction against the Government also effectively enjoins MVM, as a government contractor obligated to follow the law. Accordingly, this case and *Ms. L.* both obligate MVM to refrain from Family Separation. This is the opposite of an inconsistent obligation. *See Coombs v. Munoz*, 2010 WL 785342, at *3 (N.D. Cal. Mar. 3, 2013) ("Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident.").

Moreover, contrary to MVM's assertion, the equitable monetary relief sought by Plaintiffs can be fully "accorded in the absence of the United States." Mot. at 15. Plaintiffs demand that MVM provide "equitable relief in the form of a rehabilitation fund to provide for mental health, education, child development, and other services for the benefit of Class Members." Compl. ¶ 243. This request for monetary relief requires no participation from the United States. *See Disabled Rts. Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861,

880 (9th Cir. 2004) (finding complete relief existed without the absent party because the relief sought "would be available with or without [the absent government entity's] participation"). Indeed, this equitable fund would supplement—not conflict with—the United States' obligations to furnish certain benefits under *Ms. L.* MVM does not explain why the United States would object to MVM contributing additional funds to alleviate the suffering of class members. The remedies sought here are fully compatible with *Ms. L.*

In the end, MVM does not cite a single Rule 19 case that supports dismissal. The cases cited in its Motion are distinguishable for the same reasons: none involved a joint tortfeasor, and each involved a contract or property interest entirely absent here. In *Republic of Philippines v. Pimentel,* the absent foreign sovereign had a property interest in assets the plaintiffs sought to attach, making it a required party. 553 U.S. 851, 866 (2008). The absent party had a similar property interest in *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 853 (9th Cir. 2019), where a tribal-owned corporation owned a mine whose license was being challenged. And again, in *Backcountry Against Dumps v. U.S. Bureau of Indian Affs.*, 2021 WL 3611049, at *8 (S.D. Cal. Aug. 6, 2021), a tribal authority was deemed a required party because it had a property and contractual interest in leasing reservation land to a wind farm. Here, in contrast, the Government has no comparable property interest.

### E. Equity and Good Conscience Require the Case to Proceed.

Finally, even if the Court deemed joining the Government necessary but infeasible, this case should proceed "in equity and good conscience" under Rule 19(b). The United States' absence is not prejudicial to MVM, which can always seek contribution or indemnity from the United States, as well as discovery to defend itself. *See Goose Pond Ag, Inc. v. Duarte Nursery, Inc.*, 2020 WL 6043951, at *5 (E.D. Cal. Oct. 13, 2020); *Costello Publ'g Co. v. Rotelle*, 670 F.2d 1035, 1044 (D.C. Cir. 1981) (holding third-party discovery does not render an absent party necessary). But requiring Plaintiffs to join the Government

would be prejudicial. Unlike MVM, the Government would be unlikely to provide complete relief to the class: under the Federal Tort Claims Act, 28 U.S.C. § 2680, its liability is limited and encumbered by procedural impediments, such as exhaustion of administrative remedies, that MVM does not enjoy. The "general rule" is that a plaintiff may elect to sue whichever co-conspirator they choose, without bearing the unnecessary burden of pursuing them all. *Ward*, 791 F.3d at 1053. Indeed, for this reason, contractors may be found liable without naming the Government—particularly when sued for human rights violations. *See, e.g.*, *Al Shimari v. CACI Premier Tech., Inc.*, 368 F. Supp. 3d 935 (E.D. Va. 2019). Given the trauma that class members have already endured, they should not be forced to expend further time or resources when a defendant is readily available. For this class of indisputably harmed families, equity favors ensuring their day in court. *See, e.g.*, *Lennar Mare Island v. Steadfast Ins. Co.*, 139 F. Supp. 3d 1141, 1156 (E. D. Cal. 2015) (finding lack of adequate alternative remedy weighed against dismissing the case for failure to join).

## IV.    MVM'S RULE 12(B)(6) MOTION SHOULD BE DENIED.

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims[.]" *Karpe v. Chao*, 416 F. Supp. 3d 1021, 1024 (S.D. Cal. 2019). The Court must "take all well-pleaded factual allegations in the complaint as true, construing them in the light most favorable to the nonmoving party . . . ." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) (cleaned up). The complaint need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.    Plaintiffs State Human Rights Claims Under the Alien Tort Statute.

MVM largely does not contest Plaintiffs' ATS claims for committing, conspiring to commit, or aiding and abetting safe conduct violations (depriving foreign nationals of due

process); torture; CIDT; and enforced disappearance.

The ATS gives district courts "original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. Enacted in 1789, the ATS was intended to "furnish jurisdiction" for three international offenses, including the "violation of safe conducts." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 720, 724 (2004). In *Sosa*, the Supreme Court held that the ATS also furnishes jurisdiction, and a federal common law cause of action, for violations of modern norms of customary international law that are "defined with a specificity comparable to the features of the 18th-century paradigms." 542 U.S. at 725; *see also Doe I v. Cisco Sys., Inc.*, 73 F.4th 700, 716-34 (9th Cir. 2023) (reaffirming secondary liability under the ATS for knowingly aiding and abetting or conspiring to commit torture and CIDT).

The ATS applies to violations committed in the United States. *See Nestlé USA, Inc. v. Doe*, 593 U.S. 628, 634 (2021). And it applies with particular force to violations, such as Family Separation, committed against foreign nationals. One "principal objective" of the ATS was to "avoid foreign entanglements by ensuring the availability of a federal forum where the failure to provide one might cause another nation to hold the United States responsible for an injury to a foreign citizen." *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 253 (2018); *Nestlé*, 593 U.S. at 649 (Thomas, J., concurring) (noting the "United States' failure to redress such offenses threatened serious consequences in international affairs") (cleaned up). MVM concedes that Plaintiffs' ATS claims are timely: the ATS has a ten-year statute of limitations. *Papa v. United States*, 281 F.3d 1004, 1013 (9th Cir. 2002).

**1. It Is Uncontested That Family Separation Violated Safe Conducts and Was Cruel, Inhuman, and Degrading Treatment.**

MVM concedes that Counts I and IV are adequately alleged. With respect to Count I, MVM does not dispute that Plaintiffs properly pleaded safe conduct claims. Indeed, Family Separation is a paradigmatic safe conduct violation: "a violation of safe conducts

occurs when an alien's privilege to pass safely within and through the host nation is infringed and the alien consequently suffers injury to their 'person or property.'" *Taveras v. Taveraz*, 477 F.3d 767, 773 (6th Cir. 2007) (quoting 4 W. Blackstone, Commentaries on the Laws of England 68–69 (1769)). It has long been enshrined in international law that, absent a state of war, a foreign national present in the territory of another state is entitled to due process, even while properly detained.[10]

With respect to Count IV, MVM does not dispute that Plaintiffs stated plausible claims for CIDT. CIDT is prohibited by Article 16 of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, T.I.A.S. No. 94-1120.1 ("CAT"). The prohibition is incorporated into federal statutes, which define the term as "cruel, unusual, and inhumane treatment or punishment prohibited by the Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States." 42 U.S.C. § 2000dd-0. MVM does not dispute that CIDT is actionable under the ATS or that it was cruel. In fact, MVM asked the Court to take judicial notice that U.S. "Homeland Security Secretary Alejandro Mayorkas called the [family separation] policy 'cruel and inhumane.'" RJN, Ex. 56 at 220.

Thus, at a minimum, these uncontested causes of action (Counts I and IV) will proceed beyond the motion to dismiss because, as demonstrated here, neither contractor immunity nor mandatory joinder support dismissal.

---

[10] *See, e.g.*, *Harry Roberts (U.S.A.) v. United Mexican States*, U.S.A-Mexico Claims Comm'n, 4 R.I.A.A. 77, 80 para. 8 (1926), https://legal.un.org/riaa/cases/vol_IV/77-81.pdf (awarding damages to U.S. national subjected to inhumane prison conditions in Mexico); *see generally* Thomas H. Lee, *The Safe-Conduct Theory of the Alien Tort Statute*, 106 Colum. L. Rev. 830, 837 (2006) (noting that the "general implied safe conduct" "was a unilateral commitment by a sovereign to protect the person or property of any alien with whose sovereign the host country was not at war"), cited with approval in *Jesner*, 584 U.S. at 290-91 (Gorsuch, J., concurring).

**2. Family Separation Was Torture, Not a Lawful Sanction.**

Family Separation has been recognized as a form of psychological torture by medical experts, Compl. ¶¶ 173-78, and the current U.S. Ambassador-at-Large for Global Criminal Justice.[11] Indeed, this Court catalogued the evidence showing that Family Separation caused irreparable harm to Plaintiffs and the class, "agonizing for the parents who have endured them" and creating "a highly destabilizing, traumatic experience that has long term consequences on child well-being, safety, and development." *Ms. L*. PI at 18-19.

MVM does not dispute that Family Separation meets the definition of torture. *See* Mot. at 24-25. Instead, MVM attempts to excuse torture by invoking an exception under Article 1 of the CAT, which states that torture "does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions." This exception exempts the suffering inherent in "judicially imposed sanctions and other enforcement actions authorized by law," such as imprisonment or the death penalty. 8 C.F.R. § 1208.18(a)(3). But as the Ninth Circuit makes clear, the "lawful sanctions" exception cannot swallow the rule. *Nuru v. Gonzales*, 404 F.3d 1207, 1221–22 (9th Cir. 2005) (holding the exception does not apply if it "defeats the object and purpose of CAT," *i.e.*, the "absolute prohibition on torture"); *see also Khouzam v. Ashcroft*, 361 F.3d 161, 169 (2d Cir. 2004) (same).

MVM contends that its alleged acts of torture were incidental to "lawful sanctions," solely because its "transportation of migrants was pursuant to a validly issued government contract." Mot. at 25. But Family Separation was an *unlawful* sanction, as this Court and courts around the nation have nearly unanimously held. *See supra* n.6. The legality of Family Separation is "no longer in dispute." Tr. at 13:23-24. Indeed, MVM itself claims it will not defend the practice. *See* Mot. at 19. No contract could render it lawful: "A government cannot exempt torturous acts from CAT's prohibition merely by authorizing

---

[11] Beth Van Schaack, *The Torture of Forcibly Separating Children from Their Parents*, JUST SECURITY, Oct. 18, 2018, https://www.justsecurity.org/61138/torture-forcibly-separating-children-parents/.

them as permissible forms of punishment in its domestic law." *Nuru*, 404 F.3d at 1221; *id.* at 1222 ("The official sanctioning of torture necessarily defeats the object and purpose of the Convention. CAT outlaws torture absolutely"). In fact, MVM's contract did not authorize punitive Family Separation—it prohibited it. Compl. ¶¶ 62-67, 107.

To the extent MVM suggests that Family Separation was "incidental" to the Government's enforcement of the immigration laws, including its authorities to detain certain noncitizens, courts have rejected that argument, too—including this Court. *See, e.g.*, *Ms. L.* PI at 13, 20-21; *C.M. v. United States*, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020) ("[T]he United States was not enforcing federal law when it separated [p]laintiffs."). Family Separation was not merely an "incidental" side-effect of detention or otherwise-lawful governmental powers; separation was the intended goal, deliberately inflicted to punish and deter migrants, which "serve[s] no compelling or legitimate government interest." *C.M. v. United States*, 699 F. Supp. 3d 809, 828 (D. Ariz. 2023). Indeed, neither Padre nor Junior was even charged with a criminal offense.

The Court should not condone MVM's attempt to deem Family Separation lawful. Courts "cannot . . . ever view torture as a lawful method of punishment." *Nuru*, 404 F.3d at 1223. "It would totally eviscerate the CAT to hold that once someone is accused of a crime, it is a legal impossibility for any abuse on that person to constitute torture." *Khouzam*, 361 F.3d at 169; *cf. Li v. Holder*, 559 F.3d 1096, 1108–09 (9th Cir. 2009) (holding that "pretextual prosecution" may constitute persecution). Setting these arguments aside, MVM does not otherwise dispute that it conspired with the Government to commit torture. There is thus no basis to dismiss Plaintiffs' cause of action for torture.

### 3. MVM Forcibly Disappeared Children, Concealing Their Whereabouts.

Finally, with respect to Count II, MVM does not dispute that enforced disappearance is a cognizable cause of action under the ATS. "The prohibition against causing 'disappearance' is . . . universal, definable, and obligatory." *In re Est. of Ferdinand*

*Marcos, Hum. Rts. Litig.*, 25 F.3d 1467, 1475 (9th Cir. 1994); *Xuncax v. Gramajo*, 886 F. Supp. 162, 184 (D. Mass. 1995). Instead, MVM contends Plaintiffs' forcible disappearance does not meet the definition of the offense under international law.

To do so, MVM relies on an incomplete definition of enforced disappearance from the last century. Under contemporary customary international law, an enforced disappearance is "the arrest, detention, abduction or any other form of deprivation of liberty by agents of the State or by persons or groups of persons acting with the authorization, support or acquiescence of the State, followed by [1] a refusal to acknowledge the deprivation of liberty or by [2] concealment of the fate or whereabouts of the disappeared person, which place such a person outside the protection of the law." International Convention for the Protection of All Persons from Enforced Disappearance, art. 2, Dec. 23, 2010, 2716 U.N.T.S. 3, 56 ("CED").[12] The U.S. Department of State recognizes the contemporary definition and "condemns all enforced disappearances" that occur when "[t]hose responsible refuse to acknowledge the deprivation of liberty or conceal the victims' fates and whereabouts."[13] *Sosa* requires application of this international law definition—with both the refusal and concealment prongs, 542 U.S. at 725—rather than the incomplete definition adopted over thirty years ago by the district court in *Forti v. Suarez-Mason*, 694 F. Supp. 707, 710 (N.D. Cal. 1988) (cited by MVM, Mot. at 23).

Plaintiffs properly plead all elements of enforced disappearance. Plaintiffs allege in detail how MVM, acting in concert with ICE agents, absconded with Junior and other children, secreting them away from their parents without legal process—*i.e.*, an abduction

---

[12] The prohibition on enforced disappearances is enshrined in U.S. domestic law. *See, e.g.*, Foreign Assistance Act, 22 U.S.C.A. § 2151n; U.S. Department of State, *Human Rights Reporting Gateway Information*, https://hrgshr.state.gov/en/info (last visited Dec. 1, 2024).

[13] Press Statement, Anthony J. Blinken, Sec'y of State, International Day of the Victims of Enforced Disappearances (Aug. 29, 2021), https://www.state.gov/international-day-of-the-victims-of-enforced-disappearances/.

or deprivation of liberty. *See, e.g.*, Compl. ¶¶ 76-82. Plaintiffs also plead that the U.S. government and MVM refused to share information about separated families' whereabouts and systematically refused Plaintiffs and the class opportunities to communicate. *See* Compl. ¶¶ 153, 155-56, 158, 160-64. Indeed, MVM employees lied to Junior directly—falsely promising that he would be brought to his father and refusing to tell Junior about his location or destiny. *See* Compl. ¶¶ 153, 158, 160.

This Court already admonished the concealment of victims' fates and whereabouts in *Ms. L.*: "[T]he government has no system in place to keep track of, provide effective communication with, and promptly produce alien children." *Ms. L.* PI at 14. It also specifically admonished withholding information regarding the disappeared children: "In effect, these parents have been left in a vacuum, without knowledge of the well-being and location of their children, to say nothing of the immigration proceedings in which those minor children find themselves." *Id.* at 15 (cleaned up). Plaintiffs' *eventual* communication and reunification—ordered in *Ms. L.*—does not mean the offense never occurred.

## B. Plaintiffs Adequately Allege a Conspiracy Under §§ 1985 and 1986: Family Separation Was a Concerted Effort, Driven by Animus.

Plaintiffs sufficiently plead a conspiracy under 42 U.S.C. §§ 1985(3) and 1986. As this Court found in *Ms. L.*—and as the Complaint plausibly alleges—punitive family separation was a "concerted effort." Tr. at 15:3. MVM agreed to play an indispensable role in that concerted effort, as reflected in DHS's own description of the unaccompanied minor transfer process. Compl. ¶¶ 62-67. And MVM's gratuitously cruel treatment of non-white, foreign national children cannot be explained without animus. The fact that this conscience-shocking enterprise was "lucrative," Mot. at 27, is no defense.

A claim under 42 U.S.C. § 1985(3) requires "(1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the

conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980). Satisfying the second prong involves alleging "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Bedford v. City of Hayward*, 2012 WL 4901434, at \*14 (N.D. Cal. Oct. 15, 2012) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Plaintiffs meet this standard.

*First*, Plaintiffs plausibly allege "concerted action" that cannot occur without an agreement—a conspiracy. The Complaint details precisely how "MVM and DHS carried out the Family Separation Campaign through a coordinated modus operandi." Compl. ¶ 76. Indeed, MVM's integral role as the "contract transporter" is detailed in DHS's Inspector General Report. *Id.* ¶ 81. It must be accepted as true that MVM was so central to the scheme—as the sole transporter of separated children—that it facilitated and executed most if not all punitive separations inflicted on the *Ms. L.* class. *Id.* ¶¶ 70, 75. In addition, MVM deprived children of the opportunity to contact their parent or guardian and participated in a shared record-keeping system that "intentionally deleted family units," making it difficult to track families, and causing separated children to vanish "without a trace." *Id.* ¶¶ 86-91, 151-161. MVM's "role in" Family Separation was "so systemic" that it was "aiding and abetting every wrongful act committed by that enterprise." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 496 (2023). Because such actions were "unlikely to have been undertaken without an agreement," Plaintiffs plausibly allege "concerted effort." *Chang v. Cnty. of Siskiyou*, 2024 WL 3890000, at \*10 (E.D. Cal. Aug. 21, 2024).

*Second*, Plaintiffs also sufficiently allege the conspiracy was motivated by "racial and xenophobic animus against non-white immigrants." Compl. ¶¶ 36, 49, 59-60. This animus is not just plausible: it has been recognized by other courts. *See, e.g.*, *D.A. v. United States*, 663 F. Supp. 3d 715, 734 (W.D. Tex. 2023) (finding that Family Separation was "plausibly . . . motivated by discriminatory animus against Latino immigrants"). MVM agreed with

DHS to transport and harbor children disappeared from their parents, knowing that Family Separation was driven by racist and xenophobic intent. Compl. ¶¶ 73-75. These allegations are enough. *Bedford*, 2012 WL 4901434, at *14 ("Defendants cite no authority that [p]laintiff must allege racial animus on behalf of each individual conspirator, rather than merely alleging 'some racial or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action.'") (quoting *Griffin*, 403 U.S. at 102).

Indeed, a jury could reasonably infer from Plaintiffs' allegations that MVM did more than acquiesce: MVM *shared* discriminatory animus against the non-white, foreign national children it separated. MVM dehumanized these children in an otherwise inexplicable manner. For example, exercising its own discretion, MVM lied to children that they were being brought to see their parents, kept them in the dark as to their whereabouts, forced terrified toddlers to march through an airport without support, and refused to comfort young children "sobbing uncontrollably, crying out 'mommy' and 'daddy.'" Compl. ¶¶ 153-57. MVM notoriously sequestered children in vacant office buildings overnight without proper bathing facilities. *See id.* ¶¶ 82-83. These actions cannot be understood apart from animus. Given the stated goal of Family Separation, a reasonable jury could conclude MVM denied these children dignity because of their race and nationality. That inference must be drawn in Plaintiffs' favor. *See Roberts v. Legacy Meridian Park Hosp., Inc.*, 2014 WL 294549, at *3 (D. Ore. Jan. 24, 2014) (citing *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008)).[14]

MVM claims its actions were only motivated by economic interest rather than racial animus. But MVM would have received the same pay whether it comforted children or

---

[14] At the very least, whether racial animus motivated MVM's participation in the conspiracy is a "factual issue inappropriate for resolution on a motion to dismiss." *See Cooper v. Molko*, 512 F. Supp. 563, 570 (N.D. Cal. 1981); *Page v. Clark Cnty. Fire Dist. 6*, 2024 WL 3822639, at *8 (W.D. Wash. May 7, 2024) (denying a motion to dismiss because it was possible "the evidence will uncover a more sinister intent to deprive [the plaintiff] of his rights based on his race").

degraded them: financial interest cannot explain MVM's mistreatment. Besides, these motivations are not mutually exclusive. The fact that a conspirator also profited by depriving victims of constitutional rights does not defeat a § 1985 claim. *See, e.g.*, *Page.*, 2024 WL 3822639, at *7 (denying the motion to dismiss despite acknowledging that "[t]here could have been multiple motivations" behind the alleged conspiracy including a "financial" one and one aimed at denying "fundamental rights"); *Cooper*, 512 F. Supp. at 569-70 (denying motion to dismiss despite acknowledging there could be other motivations for the conspiracy besides "class-based animus").

The only argument MVM provides for failure to state a claim under § 1986 is that Plaintiffs do not state a claim under § 1985. As Plaintiffs properly plead a claim under § 1985, MVM's "argument for dismissing the § 1986 claim must fail." *Huber v. Beth*, 654 F. Supp. 3d 777, 799 (E.D. Wis. 2023); *Page*, 2024 WL 3822639, at *9.

**C. Plaintiffs State California Law Claims for Child Abduction and IIED.**

MVM does not meaningfully dispute that Plaintiffs have sufficiently pled causes of action for intentional infliction of emotional distress ("IIED") (Count VIII)[15] or even tortious interference with parental rights (Count VII). It nonetheless attempts to undermine Plaintiffs' cause of action for child abduction under Section 49 of the California Civil Code (Count VII) by again insisting, despite its "denounce[ment]" of Family Separation, that its actions were permissible. MVM cannot have its cake and eat it, too.

Section 49 forbids "[t]he abduction or enticement of a child from a parent, or from a guardian entitled to its custody[.]" Cal. Civ. Code § 49. In the seminal case interpreting Section 49, *Rosefield v. Rosefield*, the court held that a third-party who helped a father abduct

---

[15] MVM's passing suggestion, without explanation, that Plaintiffs have not "alleged all necessary elements" of their IIED claim, Mot. at 34, need not be considered. Plaintiffs allege in detail why Family Separation is "extreme, outrageous, and designed to inflict severe emotional distress . . . to achieve a deterrent effect," as well as MVM's knowing and indispensable role in causing that distress. Compl. ¶¶ 61-140; 238-241.

a child from his mother (who had legal custody) was liable as a participant and co-conspirator for "wrongfully abduct[ing], harbor[ing], conceal[ing] and secret[ing] the child." 221 Cal. App. 2d 431, 434 (Ct. App. 1963). The court held that if a conspiracy is established, the co-conspirator would be liable not only for his own actions, but also for the actions of the abducting party. *Id.* at 435. "Put simply, a third party may not interfere with the parents' right to custody, even if motivated by kindness or affection toward the child." *Surina v. Lucey*, 168 Cal. App. 3d 539, 543 (Ct. App. 1985).

MVM does not dispute that, as the sole ICE contractor responsible for the transportation of children to ORR, it played an indispensable role in taking custody and physically transporting thousands of children, including Junior, away from their parents or legal guardians without due process. *See* Compl. ¶¶ 61-91. It does not dispute that it corralled groups of young children into unmarked vehicles and shepherded them sometimes thousands of miles away from their parents, without so much as a phone call. *See id.* ¶ 80. Nor does it dispute that, as a result of its conspiracy with the Government, children were "essentially orphaned." *Id.* ¶ 91 (quoting *Ms. L.* PI at 7).

Nonetheless, as with Plaintiffs' ATS claims, MVM insists that it is not liable because it was "fulfilling its duties" under its contract, pursuant to "federal immigration policy in place at the time." Mot. at 33. MVM cannot both denounce Family Separation as unconstitutional when convenient to its joinder arguments *and* rely on its constitutionality when convenient to defeat Plaintiffs' claims on the merits. The cases MVM cites in its defense did not involve allegations of the type or degree of unconstitutional conduct alleged here.[16] Indeed courts considering child abduction claims in the Family Separation context

---

[16] *See* Mot. at 33 (citing *Wilson v. Wilson*, 2020 WL 4590281, at *1 (N.D. Cal. May 12, 2020) (finding abduction insufficiently pled where "the complaint focuses on *alleged interference* with [plaintiff's] relationship with and access to his daughter"); *McClain v. SBC Sheriff Dep't*, 2018 WL 6118516, at *5 (C.D. Cal. Jan. 24, 2018) (in a pro se case, finding abduction insufficiently pled where the court also dismissed claims that state social workers acted unlawfully in removing children from an allegedly abusive household)).

allow them to proceed.[17] Nor is MVM's conduct excused, assuming *arguendo* MVM was not itself responsible for the *initial* separation of Padre and Junior. *See* Mot. at 33; *Rosefield*, 221 Cal. App. 2d at 434 (articulating liability for co-conspirators); *Hodges v. Holmgren*, 121 F.3d 715, at *1 (9th Cir. 1997) ("Under California law, acts that further a conspiracy to abduct and conceal a child, or that aid and abet the abduction and concealment of a child, are actionable").

In any event, MVM does not argue against Plaintiffs' common law claim for tortious interference with parental rights, which may proceed regardless of the disposition of Section 49. *See Surina*, 168 Cal. App. 3d at 543.

### D. Plaintiffs' State Law and Civil Rights Claims Are Timely.

Motions to dismiss "based on the running of the statute of limitations . . . can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993). When "timeliness of a claim turns on when it began to accrue," as it does here, "the claim should be dismissed only if the facts are so clear that the question of accrual can be decided as a matter of law." *Zeleny v. Brown*, 2019 WL 3430734, at *2 (N.D. Cal. July 30, 2019).

Plaintiffs' state law and § 1985 claims are timely because they are continuing violations and therefore did not accrue until Plaintiffs were reunified on or around July 20, 2023. Compl. ¶ 169. Plaintiffs' Complaint, filed July 23, 2024, was thus within California's two-year statute of limitations for personal injury claims. Cal. Civ. Proc. Code § 335.1.[18]

Under the continuing tort doctrine, a plaintiff can "recover for unlawful acts

---

[17] *See, e.g.*, *S.M.F.*, 2023 WL 6215319, at *9 (W.D. Wash. Sept. 25, 2023) (finding abduction sufficiently pled under Texas law where daughter was compelled to leave her mother without her mother's consent and her location subsequently concealed) (collecting cases).
[18] A state's personal injury statute of limitations applies to § 1985(3) claims. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004).

occurring outside the limitations period if they continued into that period." *Rezek v. U.S. Bank Nat'l Ass'n*, 2020 WL 5257866, at *5 (S.D. Cal. Sept. 3, 2020); *Rankins v. United Parcel Serv., Inc.*, 2024 WL 3416508, at *3 (N.D. Cal. July 15, 2024) ("[The continuing tort doctrine] aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them.") (internal quotation marks omitted).

In California, child abduction or interference with parental rights is a "continuing tort because it encompasses the withholding of a child from his or her parent's custody." *Risk v. Kingdom of Norway*, 707 F. Supp. 1159, 1169 (N.D. Cal. 1989), *aff'd sub nom. Risk v. Halvorsen*, 936 F.2d 393 (9th Cir. 1991) (citing *Surina*, 168 Cal. App. 3d at 542). Therefore, the statute of limitations for a child abduction claim does not begin to run until a child is returned to their parent's custody. *See id.* (finding the statute of limitations "ha[d] not run" because the plaintiff was not yet reunited with his children); *Blair v. Toran*, 1999 WL 1270802, at *22 (D. Ore. Dec. 2, 1999) ("[A] parent's right to custody . . . is a continuing tort" and "the statute of limitations on such a claim does not begin to accrue until the child is returned to the parent's rightful custody."); *cf.* Cal. Pen. Code § 279.1 (establishing that child abduction or concealment crimes "are continuous in nature, and continue for as long as the minor child is concealed or detained").

Under this rule, the statute of limitations did not begin to accrue until Plaintiffs were reunited in July 2023. Their claims for child abduction and/or interference with parental relations (Count VII) are thus timely. The same principle extends to Plaintiffs' IIED claim (Count VIII), which MVM concedes is based on "substantially similar" conduct as the child abduction claim. Mot. at 19; *see Rankins*, 2024 WL 3416508, at *3 (applying the continuing tort doctrine to IIED claim).

The distinctive accrual rules for child abduction also extend to Plaintiffs' § 1985 claim (Count V) under the continuing violations analysis set forth by the Supreme Court in

*Wallace v. Kato*, 549 U.S. 384, 389 (2007). *Wallace* held that "accrual occurs when the plaintiff has a complete and present cause of action." *Id.* (internal quotation marks omitted). To determine the moment of accrual, courts look to the common law "tort [that] provides the proper analogy." *Id.* In *Wallace*, false imprisonment was the closest analog. *Id.* As a continuing tort, the false imprisonment tort's "distinctive" accrual rule governed: the claim only begins to accrue "when the alleged false imprisonment ends." *Id.* Here, the "proper analogy" is child abduction—a close relative of false imprisonment—and the accrual rule is the same: the limitations period begins once the family is reunified.

Plaintiffs do not allege that the doctrine applies merely because the "effects" of MVM's violations continued, as MVM suggests. *See* Mot. at 31, 35. To the contrary, Plaintiffs allege a six-year separation, maintained by the conspiracy between MVM and ICE until July 2023. Indeed, in the *Ms. L.* Settlement, the Government acknowledged that un-reunified families were "Ongoing Separations." *Ms. L.*, ECF No. 711-1 at 41.

MVM also asserts that the continuing violations doctrine has been effectively abrogated for all federal civil rights claims. *See* Mot. at 31-32 (relying on *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) and *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 748 (9th Cir. 2019)). This is wrong. Five years after *Morgan*, the *Wallace* Court held that a § 1983 claim based on false imprisonment is a continuing tort that accrues at the end, not the beginning, of the false imprisonment. 549 U.S. at 389. And two months after deciding *Bird* in August 2019, the Ninth Circuit made clear that the continuing violations doctrine was alive and well: "[w]hen the continued enforcement of a statute inflicts a continuing or repeating harm, a new claim arises (and a new limitations period commences) with each new injury." *Flynt v. Shimazu*, 940 F.3d 457, 462 (9th Cir. 2019). *Bird* itself clarified that the "systematic branch" of the continuing violations doctrine continues to "apply to class-wide pattern-or-practice claims," 935 F.3d at 748, like the claims at issue here.[19]

---

[19] *Morgan* also supports the application of the continuing violations doctrine in the unique

In any event, every case cited by MVM is distinguishable—not one involves child abduction or interference with parental rights and the distinct accrual rules that attach. The nature of the claim determines the accrual rule. *See Wallace*, 549 U.S. at 389.

Additionally, the highly unusual circumstances of this case warrant equitable tolling of Plaintiffs' claims. Under California law—applicable to Plaintiffs' federal civil rights[20] and state-law claims—"equitable tolling is a judge-made doctrine" that "operates . . . to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370 (2003). The principles underpinning the doctrine support its application in this case. *First*, a statute of limitations is properly tolled "during the voluntary pursuit of alternate remedies." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 105 (2008). Here, the class took legal action against MVM's co-conspirator in *Ms. L.*; class counsel in *Ms. L.* was a lead negotiator in global financial settlement talks; and the Government made offers to compensate all separated families. MVM seeks judicial notice of these reports. *See, e.g.*, RJN, Ex. 57 (Miriam Jordan, *Families Members Separated at the Border May Each Get Up to $450,000*, N.Y. TIMES (Oct. 28, 2021)). When the *Ms. L.* Settlement was docketed in October 2023, it provided for no financial compensation, making clear that the Government's offer of classwide compensation was definitively rescinded. Plaintiffs filed suit within a year. *Second*, the exact purpose of the conspiracy alleged in this case was to separate minors from their best advocates—their parents—and detain and remove those parents to the countries they fled. Requiring Plaintiffs to proceed against MVM before Padre's July 2023 re-entry

---

context of Family Separation. Because Family Separation involved a massive, concerted effort, with numerous constituent parts, it is analogous to the type of hostile work environment claim that "will not be time barred so long as all acts which constitute the claim are part of the same unlawful . . . practice and at least one act falls within the time period." *Morgan*, 536 U.S. at 122.

[20] *See Jones*, 393 F.3d at 927 (applying forum state tolling law to federal civil rights claims).

1  to the United States is, thus, neither fair nor practical.[21]

2       **E.  MVM Is Not Entitled to Government Contractor Immunity.**

3       In the face of these plausible allegations, MVM attempts to evade suit by invoking

4  immunity. But its chief case is its worst enemy. In *Campbell-Ewald Co. v. Gomez*, 577 U.S.

5  153, 166 (2016), the Supreme Court rejected the notion—resurrected by MVM—that a

6  contractor enjoys "derivative sovereign immunity" that is absolute and co-extensive with

7  the government's: "Do federal contractors share the Government's unqualified immunity

8  from liability and litigation? We hold they do not." *Id.* at 166.

9       The Supreme Court holds that no "derivative immunity" exists when, as here,

10 (1) the contractor "exceeded his authority" or (2) the authority to perform the task "was

11 not validly conferred." *Campbell-Ewald*, 577 U.S. at 166-67 (reaffirming the test for

12 analyzing contractor immunity under *Yearsley*, 309 U.S. 18). Nor is immunity proper if the

13 contractor had *any* discretion in carrying out the project. *See Cabalce v. Thomas E. Blanchard

14 & Assos.*, 797 F.3d 720, 732 (9th Cir. 2015). Applying these standards here, MVM has no

15 plausible basis to immunity.

16      **1.  MVM's Authority to Commit Unconstitutional Family Separation Was Not

17           Validly Conferred.**

18      A contractor cannot claim immunity where the "authority to carry out a project was

19 not validly conferred, that is, if what was done was [not] within the constitutional power of

20 Congress" and thus the Executive Branch. *Yearsley*, 309 U.S. at 20-21; *Campbell–Ewald*,

21 577 U.S. at 167. If a task was unconstitutionally assigned, it is no defense that the contractor

22 "simply performed as the Government directed." *Campbell–Ewald*, 577 U.S. at 167.

23      *Yearsley* follows the longstanding—and internationally recognized—principle that

24

25 [21] Ultimately, a ruling on equitable tolling is fact-intensive and should await a fully

26 developed record. *HIBU Inc. v. Plotkin Fin., Inc.*, 722 F. App'x 625, 626 (9th Cir. 2018).

27 (determining "whether the statute of limitations period has been equitably tolled . . .

   requires consideration of matters outside the pleadings.").

28

1   "just following orders" is no defense when a subordinate officer or contractor is requested

2   to perform an unconstitutional, conscience-shocking task. As the Eleventh Circuit

3   explained in an analogous context, "since World War II, the 'just following orders' defense

4   has not occupied a respected position in our jurisprudence and officers in such cases may

5   be held liable under § 1983 if there is a reason why any of them should question the validity

6   of that order." *O'Rourke v. Hayes*, 378 F.3d 1201, 1210, n.5 (11th Cir. 2004) (internal

7   quotation marks omitted). Indeed, "following orders does not immunize government

8   agents from civil rights liability." *Brent v. Ashley*, 247 F.3d 1294, 1305 (11th Cir. 2001); *see*

9   *also Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994) (holding civil rights

10  defendants are not "immune for the results of their official conduct simply because they

11  were enforcing policies or orders promulgated by those with superior authority"). The

12  same holds for contractors: "if, by its own laws, the sovereign could not lawfully take these

13  actions on its own, it could not delegate the task to a private contractor." *Al-Quraishi v.*

14  *Nakhla*, 728 F. Supp. 2d 702, 736 (D. Md. 2010) (denying immunity to contractor accused

15  of torturing detainees at Abu Ghraib prison in Iraq).

16      Here, MVM had no "validly conferred authority" to execute Family Separation. As

17  this Court determined in *Ms. L.*, the Fifth Amendment prohibits ICE from separating

18  families "without objective criteria." Tr. at 15:21; *see also Ms. L.* PI. By extension, ICE

19  could not constitutionally confer authority on MVM to execute a "brutal" and "offensive"

20  policy that "shocks the conscience and violates Plaintiffs' constitutional right to family

21  integrity." Tr. at 14:5-10; *Ms. L.* PI at 16. Indeed, the legality of Family Separation cannot

22  be disputed. *See* Tr. at 13:23-24; *supra* n.6 (collecting FTCA cases which found the practice

23  unlawful). This vitiates contractor immunity.

24      Further, governments may not validly confer authority to commit human rights

25  abuses such as torture and CIDT—claims which MVM does not meaningfully contest

26  here. "[T]orture [and] cruel, inhuman and degrading treatment" are "by definition, acts

27

28

that are not officially authorized by the Sovereign." *Yousuf v. Samantar*, 699 F.3d 763, 776 (4th Cir. 2012); *accord Sarei v. Rio Tinto, PLC*, 487 F.3d 1193, 1210 (9th Cir. 2007) (holding persecutory "acts of racial discrimination cannot constitute official sovereign acts"). If the United States itself cannot authorize the acts, those acts necessarily cannot be validly conferred to MVM.

Indeed, MVM fails to cite a single case that immunized a government contractor from unconstitutional acts or other human rights abuses. To the contrary, courts decline to extend immunity to government contractors sued for facially repugnant violations of human rights. For example, in *Al Shimari v. CACI Premier Tech., Inc.*, the district court denied immunity to a government contractor sued for subjecting Abu Ghraib detainees to torture and CIDT—*jus cogens* violations.[22] 368 F. Supp. 3d at 970. In *Salim v. Mitchell*, the district court denied a motion to dismiss where the court could not conclude that a CIA contractor's role in a detainee torture program reflected "authority . . . legally and validly conferred." 183 F. Supp. 3d 1121, 1131 (E.D. Wash. 2016). And in *Jama v. U.S. I.N.S.*, the district court denied immunity to a private prison contractor sued by detained immigrants for torture under the ATS, finding the contractor breached its "overarching duty under the Contract to ensure the safety of detainees." 334 F. Supp. 2d 662, 689 (D.N.J. 2004). MVM does not cite, much less distinguish, these authorities.

Nor can MVM confuse the issues by contending that MVM's services contract with ICE was legally authorized. Mot at 21-22. The point is irrelevant: Plaintiffs do not challenge MVM's contract and do not dispute whether ICE may constitutionally hire a contractor to transport unaccompanied children. What Plaintiffs challenge is MVM's *ultra vires* and unconstitutional agreement with ICE to violate the family integrity rights of Plaintiffs and

---

[22] A jury found the contractor liable for $3 million in compensatory and $11 million in punitive damages per plaintiff. Verdict Form, *Al Shimari v. CACI Premier Tech., Inc.*, No. 1:08-cv-00827 (E.D. Va. Nov. 12, 2024), ECF No. 1812, *available at* https://www.law360.com/articles/2259735/attachments/0.

the class. This agreement is distinct and severable from MVM's services contract for the transportation of unaccompanied minors. MVM cannot invoke a "just following orders" defense when it knew the task was unlawful and, as this Court put it, "simply cruel." Tr. at 15:10. It cannot now seek protection by purporting those orders were validly conferred.

### 2. MVM Breached Its Contractual Duties to Comply with DHS Standards and the Best Interests of the Child.

*Yearsley* and *Campbell-Ewald* foreclose MVM's immunity for a second reason: MVM's *ultra vires* agreement with ICE to abscond with unconstitutionally separated children was outside the scope of, and in violation of, its contract. *See Campbell-Ewald*, 577 U.S. at 166; *Yearsley*, 309 U.S. at 21. In these cases, "the Supreme Court has held that derivative immunity . . . is not awarded to government contractors who violate the law or the contract." *Al Shimari*, 368 F. Supp. 3d at 970 (denying contractor immunity from torture claims). Yet MVM knowingly violated these constraints, including its requirements to comply with federal law and applicable DHS policies and procedures and to act in the best interests of the children. *See* Compl. ¶¶ 66-67; Mot. at 2.

*First*, MVM does not contend that separating children from their parents or legal guardians without due process was in their best interest. Nor could MVM contend that it was acting in Junior's best interest when its agents lied that he was being brought to his father and then flew him—without his knowledge or consent—to the other side of the country, depriving him of six years of relations with his father. Compl. ¶¶ 153-61. MVM does not even try to claim it was acting in the best interests of the sobbing, terrified toddlers that MVM refused to aid or comfort as they were forced through San Diego airport and flown thousands of miles away from their parents, or to entrust those toddlers to be carried by detained teenagers who were not trained in child welfare. *Id.* ¶¶ 154-57.

*Second*, agreeing to separate children to punish and intimidate migrants is a breach of the DHS standards MVM was contractually obligated to follow. As the Complaint

alleges, an official DHS October 2016 Report of the ICE Advisory Committee on Family Residential Centers concluded that "the separation of families for purposes of immigration enforcement or management are never in the best interest of children." Compl. ¶ 107.

MVM breached DHS standards that specifically prohibited using Family Separation as an intimidation tactic: "[a]t no time should ICE or contractor personnel use the threat of family separation or actual family separation to discipline or retaliate against a parent or child." *Id.* MVM was warned this was a harmful violation of family integrity: "threatening families with separation as means of control or retaliation breaks down the families and erodes the appropriate parent/child relationship." *Id.* And MVM was specifically instructed that coercive Family Separation violated the best interests of the child: "[f]amily separation in these circumstances raises serious concerns and violates the best interests of the child—which requires prioritizing family integrity and the maintenance of emotional ties and relationships among family members." *Id.*

MVM also breached Customs and Border Controls National Standards on Transport, Escort, Detention, and Search, which instruct that "CBP will maintain family unity to the greatest extent operationally feasible, absent a legal requirement or an articulable safety or security concern that requires separation." *Id.* ¶ 108.

MVM's violation of its contractual obligation to adhere to these standards defeats it claim to immunity: "When a contractor violates both federal law and the Government's explicit instructions, as here alleged, no 'derivative immunity' shields the contractor from suit by persons adversely affected by the violation." *Campbell-Ewald*, 577 U.S. at 166. MVM is not immune for cruelly degrading children and their parents, just as a contractor was not immune for its cruel and degrading treatment of detainees in *Al Shimari*, 368 F. Supp. 3d at 970 ("To the extent that plaintiffs have alleged that [the contractor] conspired with and aided and abetted military personnel in committing acts of torture, CIDT, and war crimes, [the contractor] would not have acted in accordance with the U.S. Code and

1    international regulations. When a contractor breaches the terms of its contract with the
2    government or violates the law, sovereign immunity will not protect it.").

3        MVM's motion ignores these requirements altogether, simply claiming that its
4    contract authorized it to transport unaccompanied minors. Yes, but its contract forbade
5    MVM from punitively separating *accompanied* minors, such as Junior, from their parents.
6    *See* Compl. ¶ 110. MVM cannot claim immunity under a contract it breached and exceeded.

7        **3.  MVM Had Discretion to Act More Humanely.**

8        "[D]erivative sovereign immunity . . . is limited to cases in which a contractor had
9    *no* discretion." *Cabalce*, 797 F.3d at 732 (emphasis added). MVM had discretion and
10   exercised it, thus obviating its claim to immunity on this ground.

11       *First*, MVM had discretion (but chose not) to refuse to transport abducted children,
12   The Government recognized this discretion internally, in a Department of Health and
13   Human Services memorandum acknowledged: "[t]he separation of children from their
14   families could be considered a human rights abuse, resulting in the **refusal to participate** by
15   grantees, contractors, or staff on the grounds that the practice is illegal, immoral, or
16   unethical." Compl. ¶ 114 (emphases added). MVM claims it "denounced" Family
17   Separation and felt "tremendous empathy" for the children it traumatized. Mot. at 1. But,
18   in its discretion, it chose to go along with a practice it concedes was cruel and degrading.

19       *Second*, exercising discretion, MVM acted in ways that gratuitously traumatized
20   children. Nothing in MVM's contract required it to deceive children about being taken to
21   their parents. Compl. ¶¶ 152-162. Nor did MVM's contract require it to withhold
22   information from children on their whereabouts, their destinations, or the whereabouts of
23   their parents or guardians. *Id.* ¶¶ 62-67, 107-110. Similarly, MVM used its discretion to
24   disregard measures to track separated families and maintain "manifests logging
25   transported children" that were "irregular, ad hoc, and disorganized, often consisting of
26   notes on emailed word documents" that were "buried in inboxes rather than logged in a

27
28

database." *Id.* ¶¶ 80-90. MVM's discretionary acts were needlessly injurious and foreclose its immunity, just as the gratuitous acts of the contractors who implemented the CIA's enhanced interrogations were discretionary and fatal to any claimed immunity. *See Salim*, 183 F. Supp. 3d at 1131 (denying immunity where CIA contractors had a role in designing interrogation techniques that injured detainees and did not "merely act[] at the direction of the Government").

*Finally*, MVM had discretion to pursue measures to track the separated family unit or assist children in communicating with their parent or understanding their whereabouts—as Junior himself begged—and warn families of the risks they might not be reunified. Compl. ¶¶ 152, 158, 160-161. These acts were not specifically directed or prohibited by MVM's contract. As this Court has recognized, failing to use discretion to avoid harm defeats immunity. S*ee Spurlin v. Air & Liquid Sys. Corp.*, 568 F. Supp. 3d 1050, 1056 (S.D. Cal. 2021) ("There being no government instruction expressly prohibiting Defendants from providing asbestos-related health warnings, the Court finds that Defendants' liability for failing to warn Mr. Spurlin of the dangers of asbestos did not arise from full compliance with their government contract duties."). In short, Plaintiffs' allegations that MVM violated both federal law and its contract, and abused its discretion, are sufficient to survive a motion to dismiss and defeat MVM's immunity defense.[23]

### 4. The Supreme Court Has Foreclosed MVM's Claim to Absolute Derivative Sovereign Immunity.

Unmoored from the proper legal standards, MVM claims that a contractor is immune whenever the Government is immune. Mot. at 16-17. In *Campell-Ewald*, however,

---

[23] Should the Court require further findings, a determination of MVM's immunity should await summary judgment. At a minimum, Plaintiffs are entitled to discovery on the full terms of MVM's contract (which is not publicly available in its entirety) and its communications with ICE. *See, e.g.*, *Simmons v. Naphcare Inc.*, 2019 WL 13177046, at *4 (C.D. Cal. Nov. 7, 2019) (denying motion to dismiss and finding discovery necessary).

the Supreme Court rejected that very argument, finding the contractor liable even where the government had absolute immunity under the Telephone Consumer Protection Act. 577 U.S. at 166.   Indeed, the Court expressly held that contractor immunity is not coextensive with sovereign immunity: "Do federal contractors share the Government's unqualified immunity from liability and litigation? We hold they do not." 577 U.S. at 166; *id.* (emphasizing that contractor immunity, "unlike the sovereign's, is not absolute"). The Supreme Court even questioned the *use* of the term, "derivative sovereign immunity," emphasizing that there is "no authority for the notion that private persons performing Government work acquire the Government's embracive immunity." *Id.* To the contrary, a contractor cannot cloak itself in "blanket protection from suit, simply by contracting with the United States." *Spurlin*, 568 F. Supp. 3d at 1053. Accordingly, MVM's lengthy discussion of the United States' potential immunity is immaterial.

In any case, the Government is not necessarily immune from suit here. MVM does not challenge the original ATS cause of action for safe conducts, *see supra* Part IV.A.1, for which sovereign immunity arguably does not apply at all.[24] And every court but one has held that the Government is not entitled to immunity under the FTCA for carrying out Family Separation. *See* ECF No. 42-2, RJN (collecting cases); *supra* n.6. Thus, MVM is not protected from suit, even if it *could* derive complete immunity from the United States.

## V.    CONCLUSION

Plaintiffs respectfully request the Court deny MVM's motion to dismiss. In the alternative, Plaintiffs request leave to amend the Complaint.

---

[24] It is highly doubtful that common-law sovereign immunity would apply to safe conduct violations, when the Judiciary Act of 1789 was enacted specifically to "avoid foreign entanglements by ensuring the availability of a federal forum where the failure to provide one might cause another nation to hold the United States responsible for an injury to a foreign citizen." *Jesner*, 584 U.S. at 255. It is also doubtful that the United States can properly assert immunity for violations of CAT. *See Al Shimari*, 368 F. Supp. 3d at 970.

Dated: December 3, 2024

Respectfully submitted,

/s/ *Scott A. Gilmore*

Scott A. Gilmore (SBN 284961)
Amanda Lee-DasGupta (*pro hac vice*)
Mary S. Van Houten Harper (*pro hac vice*)
Amanda V. Boltax (*pro hac vice*)
**Hausfeld LLP**
888 16th Street N.W., Suite 300
Washington, DC 20006
(202) 540-7200
sgilmore@hausfeld.com
alee@hausfeld.com
mvanhouten@hausfeld.com
mboltax@hausfeld.com

Katie R. Beran (*pro hac vice*)
**Hausfeld LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
(215) 985-3270
kberan@hausfeld.com

James Gotz (*pro hac vice*)
**Hausfeld LLP**
One Marina Park Drive, Suite 14010
Boston, MA 02210
(617) 207-0600
jgotz@hausfeld.com

Ashley Crooks (*pro hac vice*)
Erika A. Inwald (*pro hac vice*)
**Hausfeld LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
(646) 357-1100
acrooks@hausfeld.com
einwald@hausfeld.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Paul L. Hoffman (SBN 71244)
John C. Washington (SBN 315991)
**Schonbrun Seplow Harris Hoffman & Zeldes LLP**
200 Pier Avenue, Suite 226
Hermosa Beach, California 90254
(310) 717-7373
hoffpaul@aol.com
jwashington@sshhzlaw.com

Andrew Fels (*pro hac vice*)
**Al Otro Lado**
3214 Fountain Park Blvd.
Knoxville, TN 37917
(865)-567-4881
andrew@alotrolado.com

*Attorneys for Plaintiffs*

1

## **<u>CERTIFICATE OF SERVICE</u>**

2       I certify that on December 3, 2024, I filed the foregoing document and supporting

3 papers with the Clerk of the Court for the United States District Court, Southern District

4 of California, by using the Court's CM/ECF system. I also served counsel of record via

5 this Court's CM/ECF system.

6                                                    /s/ *Scott A. Gilmore*

7                                                    Scott A. Gilmore

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28