PILLSBURY WINTHROP SHAW PITTMAN LLP
PAUL J. FRAIDENBURGH (280354)
MICHELLE A. HERRERA (209842)
J. RYAN STASELL (307431)
ALEXANDER P. CARROLL (339890)
11682 El Camino Real, Suite 200
San Diego, CA 92130
Telephone:  858-509-4000; Facsimile: 858-509-4010
Email:  paul.fraidenburgh@pillsburylaw.com
          michelle.herrera@pillsburylaw.com
          ryan.stasell@pillsburylaw.com
          alexander.carroll@pillsburylaw.com

PILLSBURY WINTHROP SHAW PITTMAN LLP
THOMAS C. HILL (DC 242974)
1200 Seventeenth Street, NW
Washington, DC  20036
Telephone:  202-663-8000; Facsimile: 202-663-8007
Email:  thomas.hill@pillsburylaw.com
(*Admitted Pro Hac Vice*)

Attorneys for Defendant MVM, Inc.

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PADRE (*alias*) and JUNIOR (*alias*), *on behalf of themselves and all others similarly situated,*<br><br>Plaintiffs,<br><br>vs.<br><br>MVM, INC.,<br><br>Defendant. | Case No. 3:24-cv-01265-DMS-AHG<br><br>**DEFENDANT MVM, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS UNDER RULES 12(b)(6) AND 12(b)(7)**<br><br>Date:         December 20, 2024<br>Time:         1:30 p.m.<br>Courtroom:  13A<br><br>Judge: Hon. Dana M. Sabraw<br>Complaint Filed:  July 23, 2024<br>Trial Date:  None Set |

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ............................................................................ 1

II.   REPLY ARGUMENT ..................................................................... 2

    A.    Plaintiffs' Claims are Barred by Derivative Sovereign Immunity. ......... 2

         1.    MVM's Contractual Authority was Validly Conferred in 2014. .................................................................................... 2

         2.    MVM did not "Exceed its Authority" in Transporting Junior. ................................................................................... 5

    B.    Plaintiffs' Civil Rights and State Law Claims Are Untimely ................. 8

         1.    Plaintiffs' Civil Rights Conspiracy Claims Are Time Barred ................................................................................... 8

         2.    Plaintiffs' State Law Claims Are Time Barred. ......................... 10

         3.    Equitable Tolling Does Not Save Plaintiffs' Claims ................... 14

    C.    The United States Government is a Required Party under Rule 19. ..... 15

III.   CONCLUSION .............................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ackerson v. Bean Dredging LLC*,
   589 F.3d 196 (5th Cir. 2009) ................................................................. 2

*Al Shimari v. CACI Premier Technology, Inc.*,
   368 F.Supp.3d 935 (E.D. VA 2019) ............................................... 4, 6, 7

*Arellano v. Olson*,
   2022 WL 3995472 (S.D. Cal. Aug. 31, 2022) .................................... 14

*Bagdasaryan v. City of Los Angeles*,
   2020 WL 2770193 (C.D. Cal. Feb. 4, 2020),
   R&R adopted, 2020 WL 2770689 (C.D. Cal. Mar. 24, 2020) ........... 11

*Bird v. Dep't of Hum. Servs.*,
   935 F.3d 738 (9th Cir. 2019) ......................................................... 9, 10

*Brent v. Ashley*,
   247 F.3d 1294 (11th Cir. 2001) ............................................................ 3

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*,
   797 F.3d 720 (9th Cir. 2015) ........................................................... 5, 7

*Campbell-Ewald Co. v. Gomez*,
   577 U.S. 153 (2016) ................................................................... *passim*

*Claraty v. Hall-Mills*
   (N.D. Cal. Mar. 15, 2019) .................................................................... 9

*Clover v. Camp Pendleton & Quantico Hous. LLC*,
   525 F. Supp. 3d 1140 (S.D. Cal. 2021) ............................................ 5, 7

*Coppinger-Martin v. Solis*,
   627 F.3d 745 (9th Cir. 2010) ............................................................... 8

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
   888 F.3d 640 (4th Cir. 2018) ............................................................... 3

*D.J.C.V. v. United States*,
   No. 20 CIV. 5747 (PAE), 2022 WL 1912254 (S.D.N.Y. June 3, 2022) ............. 4

ii

*Del Percio v. Thornsley*,
   877 F.2d 785 (9th Cir. 1989) ................................................................. 14

*Flores Benitez v. Miller*,
   687 F. Supp. 3d 304 (D. Conn. 2023) ......................................................4

*Flynt v. Shimazu*,
   940 F.3d 457 (9th Cir. 2019) ...........................................................9, 10

*Ganey v. Cnty. of San Diego*,
   2023 WL 8531086 (S.D. Cal. Dec. 8, 2023) .............................................9

*Garber v. City of Clovis*,
   698 F. Supp. 2d 1204 (E.D. Cal. 2010) ...................................................13

*Goldstar (Panama) S.A. v. United States*,
   967 F.2d 965 (4th Cir. 1992) ..................................................................4

*Grossman v. City of Portland*,
   33 F.3d 1200 (9th Cir. 1994) ..................................................................3

*Hamilton v. U.S. Bank Nat'l Ass'n*,
   2023 WL 3559329 (C.D. Cal. Mar. 15, 2023) ....................................11, 12

*In re Holly H.*,
   104 Cal. App. 4th 1324 (2002) ...............................................................13

*Jama v. U.S. I.N.S.*,
   334 F.Supp.2d 662 (D.N.J. 2004) .........................................................4, 5

*Lukovsky v. City & Cnty. of San Francisco*,
   535 F.3d 1044 (9th Cir. 2008) .................................................................8

*Martell v. Antelope Valley Hosp. Med. Ctr.*,
   67 Cal. App. 4th 978 (1998) ..................................................................14

*Mendez v. Optio Sols., LLC*,
   219 F. Supp. 3d 1012 (S.D. Cal. 2016) ....................................................6

*Miller v. Najera*,
   2020 WL 731176 (E.D. Cal. Feb. 13, 2020),
   R&R adopted, 2020 WL 7183577 (E.D. Cal. Dec. 7, 2020),
   aff'd, 2021 WL 6067244 (9th Cir. Dec. 20, 2021) ....................................14

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002) ........................................................................9, 10

*O'Rourke v. Hayes*,
    378 F.3d 1201 (11th Circ. 2004) ....................................................3

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) .......................................................................6

*Quintero Perez v. United States*,
    8 F.4th 1095 (9th Cir. 2021) ..........................................................4

*Rankins v. United Parcel Serv., Inc.*,
    2024 WL 3416508 ....................................................................11, 12

*Rezek v. U.S. Bank Nat'l Ass'n*,
    2020 WL 5257866 (S.D. Cal. Sept. 3, 2020) ..................................9

*Risk v. Kingdom of Norway*,
    707 F. Supp. 1159 (N.D. Cal. 1989)...........................................11, 12

*Salim v. Mitchell*,
    183 F.Supp.3d 1121 (E.D. Wash. 2016) .......................................4, 5

*Sarei v. Rio Tinto, PLC*,
    487 F.3d 1193 (9th Cir. 2007) .......................................................3, 4

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012) ...........................................6

*Wallace v. Kato*,
    549 U.S. 384 (2007) ....................................................................8, 9

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...............................................................1, 6, 7

*Wassmann v. S. Orange Cnty. Cmty. Coll. Dist.*,
    24 Cal. App. 5th 825 (2018)..........................................................11

*Yousuf v. Samantar*,
    699 F.3d 763 (4th Cir. 2012) .........................................................3

*Zeller v. Optavia, LLC*,
    2022 WL 17858032 (S.D. Cal. Dec. 22, 2022) ..............................3

iv

1

Statutes and Codes

2

United States Code

3     Title 42 Section 1981 ...................................................................................8

Title 42 Section 1983 ............................................................................3, 8, 9

4     Title 42 Section 1985 ...................................................................................8

5     Title 42 Section 1986 ...................................................................................8

6

California Civil Code

7     Section 49(a) ...........................................................................10, 11, 12, 13

8

California Family Code

9     Section 6500 ............................................................................................13

Section 6501 ............................................................................................13

10

California Penal Code

11    Section 279.1 ...........................................................................................13

12

Telephone Consumer Protection Act of 1991

13    47 U.S.C. § 227 ........................................................................................3

14

Rules and Regulations

15

Federal Rules of Civil Procedure

16    Rule 11 .....................................................................................................3

Rule 12 .....................................................................................................6

17    Rule 12(b)(6) ...........................................................................................15

18    Rule 12(b)(7) ...........................................................................................15

Rule 19 ...................................................................................................15

19    Rule 19(A)(1)(B) .....................................................................................15

20

21

22

23

24

25

26

27

28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION

Plaintiffs cannot overcome the defense of derivative sovereign immunity by alleging MVM exceeded its authority when transporting other, unidentified class members. Plaintiffs must allege that their own injuries arise from MVM exceeding its authority under its 2014 contract with the government. *See Warth v. Seldin*, 422 U.S. 490, 502 (1975) (plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class[.]"). Since the Complaint fails to allege any facts showing that MVM exceeded its contractual authority when it transported Junior from the San Diego Airport to New York, MVM is entitled to immunity and a dismissal of Plaintiffs' claims.

The Supreme Court has made it clear that a federal contractor who simply performs as directed by the government under a validly issued contract and without exceeding its authority is shielded from liability for injuries caused by its conduct. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 154 (2016), as revised (Feb. 9, 2016). That immunity extends to alleged violations of federal law. *Id.* Here, MVM did not separate Junior from Padre or otherwise exceed its contractual authority in transporting Junior. To the contrary, the Complaint alleges Junior was separated from Padre by the government and then "transferred to the custody of two MVM employees," at the San Diego Airport. Compl., ¶ 153. MVM employees escorted Junior on his flight to New York and then to a residence operated by ORR, where MVM's brief contact with Junior ended. Compl., ¶¶ 155-161. MVM's transportation of Junior was not an act of discretion, it was the core function of MVM's contract with ICE.

The Opposition's attempt to distract the Court from these facts by pointing to irrelevant allegations about unidentified class members and a new "*ultra vires*" contract should not be considered. Derivative sovereign immunity "shields" MVM from all of Plaintiffs' claims. *See Campbell-Ewald*, 577 U.S. at 154. Plaintiffs' remaining arguments wilt under scrutiny. The Complaint should be dismissed.

## II.   <u>REPLY ARGUMENT</u>

### A.   **Plaintiffs' Claims are Barred by Derivative Sovereign Immunity.**

"A federal contractor who simply performs as directed by the Government may be shielded from liability for injuries caused by its conduct. [Citation.] But no 'derivative immunity' exists when the contractor has 'exceeded [its] authority' or its authority 'was not validly conferred.'" *Campbell-Ewald*, 577 U.S. at 154 (citing *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 20-21 (1940)). Here, Plaintiffs' claims are barred by the doctrine of derivative sovereign immunity because: (1) MVM's contractual authority was validly conferred by the government in 2014; and (2) MVM did not "exceed its authority" in transporting Junior from San Diego to New York.

### 1.   **MVM's Contractual Authority was Validly Conferred in 2014.**

"Where the Government's 'authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress,' 'there is no liability on the part of the contractor' who simply performed as the Government directed." *Campbell-Ewald*, 577 U.S. at 154 (quoting *Yearsley,* 309 U.S. at 20-21). *See Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 206 (5th Cir. 2009) (dismissing claims against contractors because the contractors' work was undertaken "pursuant to contracts with the federal government that were for the purpose of furthering projects authorized by acts of Congress").

Here, the Complaint admits that "[s]ince at least 2014, MVM has had the exclusive contract with ICE to transport 'unaccompanied minors,' *i.e.*, 'UACs,' from DHS to ORR." Compl., ¶ 62. MVM's Motion describes in detail the valid award of MVM's contract. *See* Mot. 20-22. Plaintiffs concede in their Opposition that the constitutional authority for MVM's contract with ICE to transport unaccompanied migrant children was validly conferred. Opp., 30. However, Plaintiffs now argue for the first time the existence of an additional "*ultra vires* and unconstitutional agreement with ICE … distinct and severable from MVM's services contract for the transportation of unaccompanied minors." Opp., 30-31. The Complaint makes zero

2

1   mention of this allegedly separate agreement, so it must be disregarded. *Zeller v.*
2   *Optavia, LLC*, 2022 WL 17858032, at *2 (S.D. Cal. Dec. 22, 2022) (Sabraw, C.J.)
3   ("On a motion to dismiss under Rule 12(b)(6), a court's review is generally limited to
4   facts alleged on the face of the complaint and to exhibits attached to the complaint.").[1]

5       Plaintiffs fail to explain how the constitutionality of the government's 2017
6   Family Separation Policy is relevant to the question of whether MVM's contract was
7   validly awarded in 2014. It is not. Likewise, whether MVM's transportation of
8   unaccompanied minors after 2017 violated federal law is irrelevant to the question of
9   whether the 2014 contract was validly conferred. *See Cunningham v. Gen. Dynamics*
10  *Info. Tech., Inc.*, 888 F.3d 640, 648 (4th Cir. 2018) (in a suit against a contractor under
11  the Telephone Consumer Protection Act, "[t]he question is not whether informing
12  applicants of their enrollment eligibility violated the [TCPA], but rather whether
13  Congress had the authority to assign [the contractor] to complete that task.").

14      In support of their position that "following orders" is no defense, Plaintiffs cite
15  to three cases applying 42 U.S.C. § 1983: *O'Rourke v. Hayes*, 378 F.3d 1201 (11th
16  Circ. 2004), *Brent v. Ashley*, 247 F.3d 1294 (11th Cir. 2001), and *Grossman v. City of*
17  *Portland*, 33 F.3d 1200 (9th Cir. 1994), none of which address the issue of "validly
18  conferred authority," but instead analyze qualified immunity for state and local
19  officials – a form of immunity not at issue in this case.

20      Plaintiffs also cite to *Yousuf v. Samantar*, 699 F.3d 763 (4th Cir. 2012), and
21  *Sarei v. Rio Tinto, PLC*, 487 F.3d 1193 (9th Cir. 2007), to support their position that
22  the United States cannot validly authorize the acts in this case, because Plaintiffs have
23  alleged *jus cogens* violations. Opp., 30. *Yousuf* addressed foreign official immunity,
24  which shields foreign officials from being sued in U.S. courts, and *Sarei* addressed the

25

26  ---
[1] In addition to fabricating new facts in an effort to defeat MVM's meritorious motion,
27  Plaintiffs' Opposition contains numerous intentionally false statements and
    mischaracterizations that rise to the level of Rule 11 violations. For example, nowhere
    in MVM's Motion does MVM "concede[] that Plaintiffs endured suffering amounting
28  to torture" (Opp., 2:12-13). MVM's counsel has notified Plaintiffs' counsel of its
    intent to file a Rule 11 motion if this and other misrepresentations are not withdrawn.

1   Act of State Doctrine, which "prevents U.S. courts from inquiring into the validity of

2   the public acts of a recognized sovereign power committed within its own territory."

3   *Sarei*, 487 F.3d at 1210. These cases have no bearing on the case at hand.

4        In a further effort to confuse the "validly conferred" authority issue, Plaintiffs

5   cite to three easily distinguishable authorities (*Al Shimari*, *Salim*, and *Jama*), for the

6   incorrect proposition that derivative sovereign immunity is never appropriate when a

7   plaintiff alleges "unconstitutional acts or other human rights abuses." Opp., 30.

8   Plaintiffs rely heavily on *Al Shimari*, where the court denied a contractor's derivative

9   immunity by holding that the United States has waived its sovereign immunity as to

10  ATS claims where violations of *jus cogens* norms (e.g., torture) are alleged. *Al Shimari*

11  *v. CACI Premier Technology, Inc.*, 368 F.Supp.3d 935, 970 (E.D. VA 2019). *Al*

12  *Shimari* goes against the substantial weight of federal authority, including Ninth

13  Circuit law, which has held that the United States is immune from suit under the ATS,

14  even for alleged violations of *jus cogens* norms. *See Quintero Perez v. United States*,

15  8 F.4th 1095, 1100–01 (9th Cir. 2021) (affirming dismissal of *jus cogens* claim against

16  United States under ATS due to sovereign immunity); *Goldstar (Panama) S.A. v.*

17  *United States*, 967 F.2d 965, 968 (4th Cir. 1992) ("[T]he [ATS] … has not been held

18  to imply any waiver of statutory immunity."). Federal district courts analyzing ATS

19  claims made by migrant families affected by the Family Separation Policy have

20  consistently held that such claims are barred by sovereign immunity. *See Flores*

21  *Benitez v. Miller*, 687 F. Supp. 3d 304, 326 (D. Conn. 2023) (dismissing all ATS

22  claims because the "United States has not consented to suits brought pursuant to the

23  ATS—even when violations of jus cogens norms are alleged"); *D.J.C.V. v. United*

24  *States,* No. 20 CIV. 5747 (PAE), 2022 WL 1912254, at *28 (S.D.N.Y. June 3, 2022).

25       Plaintiffs' reliance on *Salim v. Mitchell*, 183 F.Supp.3d 1121 (E.D. Wash.

26  2016), is equally misplaced. "Rather than merely acting at the direction of Government

27  personnel" the defendants in *Salim* "trained and supervised CIA personnel in applying

28  the[] phased torture program'" that defendants had designed and implemented, and for

4

which defendants "helped convince Justice Department lawyers to authorize specific coercive methods[.]" *Id.* at 1130. Unlike the defendants in *Salim*, MVM followed express instructions from the government, and had no involvement in developing the government's Family Separation Policy, or training government employees. Instead of being the architect of the policy, MVM is alleged to be only "the tool" the U.S. Government used to transport minors. Compl., ¶ 79.

*Jama v. U.S. I.N.S.*, 334 F.Supp.2d 662 (D.N.J. 2004), is also inapposite. In *Jama*, a private prison contractor was denied immunity when sued under the ATS where detained immigrants were "tortured, beaten, harassed, and otherwise mistreated" and "subjected to abysmal living conditions[.]" *Id.* at 666. Unlike in *Jama*, where it is evident the private contractor went "rogue" and intentionally engaged in torturing the detainees, there are no allegations in the Complaint that MVM took any actions in connection with the Family Separation Policy that were not expressly directed by the United States Government.

MVM's Motion clearly established that the authority for its 2014 contract with ICE was validly conferred, and Plaintiffs' cited authorities are either easily distinguishable, or inapplicable to this issue. Plaintiffs' attempt to allege for the first time in their Opposition the existence of a separate "*ultra vires*" agreement between MVM and ICE is improper and should be given no weight by the Court.

## 2. MVM did not "Exceed its Authority" in Transporting Junior.

A federal contractor who simply performs as directed by the government under a validly issued contract and without exceeding its authority is shielded from liability for injuries caused by its conduct. *Campbell-Ewald*, 577 U.S. at 154. However, no derivative sovereign immunity exists when a contractor exceeds its contractual authority. *Id.* Stated differently, where the claimed injuries "arise from [the contractor's] own discretionary activity," derivative immunity does not shield the contractor from liability. *Clover v. Camp Pendleton & Quantico Hous. LLC*, 525 F. Supp. 3d 1140, 1143 (S.D. Cal. 2021); *see also Cabalce v. Thomas E. Blanchard &*

1   *Assocs., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015) (contractor whose negligent exercise

2   of discretion in storing fireworks caused an explosion that injured plaintiffs was not

3   entitled to derivative sovereign immunity). "When a contractor violates both federal

4   law and the Government's explicit instructions … no 'derivative immunity' shields

5   the contractor from suit by persons adversely affected by the violation." *Campbell-*

6   *Ewald*, 577 U.S. at 166.

7        In a class action, named plaintiffs representing a class "must allege and show

8   that they personally have been injured, not that injury has been suffered by other,

9   unidentified members of the class to which they belong and which they purport to

10  represent." *Warth*, 422 U.S. at 502. "[I]f none of the named plaintiffs purporting to

11  represent a class establishes the requisite of a case or controversy with the defendants,

12  none may seek relief on behalf of himself or any other member of the class." *O'Shea*

13  *v. Littleton*, 414 U.S. 488, 494 (1974); *see also In re Sony Gaming Networks &*

14  *Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 956-57 (S.D. Cal. 2012)

15  (applying this rule in the context of a Rule 12 motion to dismiss).

16       Here, the Complaint fails to allege that MVM violated federal law and the

17  government's explicit instructions when transporting Junior. In fact, as to Plaintiffs

18  Padre and Junior, the Complaint alleges that MVM did exactly what its contract with

19  the government had instructed it to do - "escort and transport" an unaccompanied

20  minor (Junior) who had been "detained by ICE" "from DHS custody to ORR." Compl.,

21  ¶¶ 7, 62.[2]

22       Plaintiffs' Opposition relies on *Al Shimari* to misstate the *Campbell-Ewald* rule

---

[2] In their Opposition, Plaintiffs cite to the Settlement Hearing Transcript from the *Ms. L.* litigation in an impermissible attempt to (1) augment the allegations in their Complaint, and (2) advocate a *res judicata* effect on MVM, a non-party to those proceedings. See Opp. at 1:4; 2:3; 3:18; 4:4, 7; 16:22; 19:19; 29:18, 21, 22; 31:3. Elsewhere, Plaintiffs make sweeping conclusions regarding the United States' intention of claiming an interest in this litigation or intent to provide monetary compensation to the *Ms. L.* class. Opp. at 5, 7. Plaintiffs failed to request judicial notice of these and other extraneous materials in their opposition. Nor could they, because the materials are offered for the truth of the "facts" stated therein as evidence. *See Mendez v. Optio Sols., LLC*, 219 F. Supp. 3d 1012, 1014 (S.D. Cal. 2016).

1   as a disjunctive test, stating that "'the Supreme Court has held that derivative immunity

2   … is not awarded to government contractors who violate the law or the contract.' *Al*

3   *Shimari*, 368 F. Supp. 3d at 970." Opp., 31. *Campbell-Ewald* makes clear that a

4   contractor must violate both federal law **and** the government contract to lose

5   immunity. Both are necessary conditions. *See Campbell-Ewald*, 577 U.S. at 154, 166.

6       The Opposition fails to identify any allegations in the Complaint showing that

7   MVM violated any government instruction or "exceeded its authority" under its 2014

8   contract when it transported Junior from the San Diego Airport to New York. *See*

9   *Campbell-Ewald*, 577 U.S. at 154 (a federal contractor is shielded from liability when

10  it acts as directed by the government under a validly issued contract and does not

11  exceed its authority). Plaintiffs cannot circumvent this defense by alleging that MVM

12  exceeded its authority when transporting "other, unidentified class members." *See*

13  *Warth*, 422 U.S. at 502. Instead, they must demonstrate that their own injuries resulted

14  from MVM acting beyond its authority under its 2014 government contract, which

15  explicitly tasked MVM with transporting unaccompanied minors.

16      In this case, MVM neither separated Junior from Padre nor exceeded its

17  contractual authority in transporting Junior. The Complaint admits that MVM's first

18  interaction with Junior occurred when he "was transferred to the custody of two MVM

19  employees" at the San Diego Airport. Compl. ¶ 153. MVM employees then escorted

20  Junior on his flight to New York and transported him to a residence operated by the

21  ORR, where MVM's involvement with Junior concluded. Compl., ¶¶ 155-161. Thus,

22  MVM did not "exceed its authority" or violate the government's "explicit instructions"

23  in its dealings with Junior and MVM is not alleged to have ever interacted with Padre.

24      Plaintiffs also fail to show their injuries resulted from an exercise of discretion

25  by MVM. The rule set out in *Cabalce, supra*, and as interpreted by this district in

26  *Clover, supra*, applies to injuries that arise from the contractor's discretionary activity

27  under the contract with the government. Here, the alleged harm to Plaintiffs Padre and

28  Junior did not arise from any exercise of MVM's discretion on the contract, it arose

7

1    from their separation alone, which was completed by the government prior to MVM's

2    involvement. Even if Plaintiffs had alleged facts showing their injuries arose from

3    MVM's transportation of Junior from San Diego to New York (as opposed to the

4    government's prior act of separating Junior from Padre), such transportation could not

5    be characterized as an "act of discretion" but merely as performance of the core

6    function of MVM's government contract (i.e., the transportation of a minor). As such,

7    derivative sovereign immunity applies and requires dismissal of Plaintiffs' claims.

8        **B.    Plaintiffs' Civil Rights and State Law Claims Are Untimely.**

9        Plaintiffs' own allegations establish their civil rights and state law claims are

10   stale. In a pained effort at revival, Plaintiffs lump the claims together and argue the

11   factual predicate for each is MVM's alleged abduction of Junior that carries a delayed

12   accrual date under state law. In so doing, Plaintiffs contradict their Complaint; ignore

13   precedent that establishes federal law determines when a civil rights claim accrues;

14   and misstate the Ninth Circuit's treatment of the continuing violation doctrine.

15       **1.    Plaintiffs' Civil Rights Conspiracy Claims Are Time Barred.**

16       Federal law determines the accrual date for Plaintiffs' civil rights conspiracy

17   claims. *Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983

18   cause of action is a question of federal law that is *not* resolved by reference to state

19   law.") (emphasis in original); *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d

20   1044, 1048 (9th Cir. 2008) ("[F]ederal law determines when a civil rights claim

21   *accrues*.") (emphasis in original). "[U]nder federal law, a claim accrues when the

22   plaintiff knows or has reason to know of the injury which is the basis of the action."

23   *Id*. (citation and quotation omitted). "[I]n the context of civil rights claims under 42

24   U.S.C. §§ 1981, 1983, 1985, and 1986, … a plaintiff's claim accrues when the plaintiff

25   learns of the actual injury[.]") *Coppinger-Martin v. Solis*, 627 F.3d 745, 749 (9th Cir.

26   2010) (citation and quotation omitted).[3]

27

28   ──────────────
     [3] This is true even when the extent of the injury is unknown. *Wallace*, 49 U.S. at 391.

Plaintiffs cannot rely on alleged "distinctive [state law] rules for child abduction" to determine when their civil rights conspiracy claims accrued. Opp., 25:25-26. Nor can they credibly dispute that they became aware of their alleged injury when they became separated in November 2017. Where a federal civil rights claim is based on the separation of a minor from his parent, the claim accrues at the time of separation. *See Ganey v. Cnty. of San Diego*, 2023 WL 8531086, at *5 (S.D. Cal. Dec. 8, 2023) ("Civil rights claims based on child removal accrue when the child is removed from the parent."); *Claraty v. Hall-Mills*, at *4 (N.D. Cal. Mar. 15, 2019) (same). A parent's inability to regain custody of the minor until a later point in time "is merely a 'continuing impact from a past violation' that does not toll the statute of limitations." *Ganey*, 2023 WL 8531086, at *5 (quoting *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 748 (9th Cir. 2019).

The continuing violations doctrine does not save Plaintiffs' civil rights claims from dismissal. The Ninth Circuit recognizes that the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) sharply circumscribed the doctrine. *See* Mot., 31:1-32:17. The Supreme Court did not come to a different conclusion in *Wallace*, as Plaintiffs suggest. Opp., 26:14-19. The *Wallace* Court did not address *Morgan* or the continuing violation doctrine, and did not "[hold] that a § 1983 claim based on false imprisonment is a continuing tort" (Opp., 26:18). Equally disingenuous is Plaintiffs' contention that the Ninth Circuit resurrected the continuing violations doctrine in *Flynt v. Shimazu*, 940 F.3d 457 (9th Cir. 2019). Opp., 26:19-23. In *Flynt*, the court acknowledged that the term "continuing violation" is a "misnomer" in that it refers not to one continuing violation, but rather to a series of repeated violations. *Id*. at *463, n.3. Plaintiffs have not alleged a series of repeated violations by MVM;[4] although they attempt to disclaim it (Opp., 9:10), the gravamen of their

---

[4] For this reason, *Rezek v. U.S. Bank Nat'l Ass'n*, 2020 WL 5257866 (S.D. Cal. Sept. 3, 2020), where the plaintiff alleged frequent acts of employment discrimination both before and during the limitations period, is inapposite.

claims **is** the continued effect of past violations. The *Flynt* court acknowledged *Bird's* rejection of the continuing violation doctrine in this context. *Id*. at 464, n. 5. Nor have Plaintiffs alleged that the continuing enforcement of a statute caused a repeating harm, as the plaintiffs did in *Flynt*.

The "systematic branch" of the continuing violations doctrine does not save Plaintiffs' civil rights claims from dismissal either. Opp., 26:24-25. Plaintiffs urge that it applies to all class actions by rote. It does not. While *Bird* left room for the systematic branch to apply to class-wide pattern or practice claims, a plaintiff must still prove, among other things, that the practice or policy remained in effect within the statute of limitations period. *Bird*, 935 F.3d at 747. Here, Plaintiffs' limitations period is the two-year period preceding the filing of their complaint, *i.e.*, July 23, 2022 to July 23, 2024. Plaintiffs have not identified a policy or practice that was in effect during that period. Assuming for the sake of argument that MVM engaged in an unlawful policy or practice (it did not), it ended in November 2017, with respect to Padre and Junior, and January 2, 2021, with respect to the larger putative class. Compl., ¶ 1 (the U.S. government unlawfully separated families "[b]etween 2017 and 2021"); ¶ 74 (MVM agreed to transport children separated under the Family Separation Policy between March 7, 2017 and January 1, 2021). To the extent either branch of the continuing violations doctrine has any teeth following *Morgan* and *Bird*, Plaintiffs have pleaded themselves out of both.

### 2.    Plaintiffs' State Law Claims Are Time Barred.

California law determines the accrual date for Plaintiffs' state law claims for intentional infliction of emotional distress ("IIED") and child abduction under California Civil Code section 49(a). In an effort to obfuscate the issues before the Court, Plaintiffs merge these claims together, argue they are both based on child abduction, and contend that neither claim accrued until Padre and Junior were reunited. Different accrual rules apply to each claim, and they merit separate treatment.

///

***Plaintiffs' IIED Claim.*** This claim is based on MVM's transportation of children that were allegedly abducted by the U.S. government. Compl., ¶¶ 1, 6, 9, 41, 132-33, 239. The Complaint alleges MVM's transportation of Junior occurred in November 2017. *Id.*, ¶¶ 143-153, 161. An IIED claim accrues when the plaintiff suffers severe emotional distress as result of outrageous conduct by the defendant. *Wassmann v. S. Orange Cnty. Cmty. Coll. Dist.*, 24 Cal. App. 5th 825, 853 (2018). *Accord Hamilton v. U.S. Bank Nat'l Ass'n*, 2023 WL 3559329, at *9 (C.D. Cal. Mar. 15, 2023) (IIED claim time barred even though plaintiff alleged his emotional distress continued into the limitations period). A contrary rule "would permit IIED plaintiffs to wait for decades before bringing suit as long as they allegedly suffered continuing and increasing emotional distress due to the defendant's long-known wrongful conduct." *Bagdasaryan v. City of Los Angeles*, 2020 WL 2770193, at *9 (C.D. Cal. Feb. 4, 2020), R&R adopted, 2020 WL 2770689 (C.D. Cal. Mar. 24, 2020).

Plaintiffs contend *Risk v. Kingdom of Norway*, 707 F. Supp. 1159 (N.D. Cal. 1989), supports their argument that their IIED claim is timely. The opposite is true. In *Risk*, the plaintiff alleged he suffered severe emotional distress beginning in 1984 when his children were removed to Norway. The court found plaintiff's IIED claim filed five years later was time barred, reasoning: "[T]he act of taking Risk's children and continuing to keep them is not a course of conduct that only becomes outrageous over time, and Risk himself has alleged that the taking of the children inflicted 'severe' emotional distress beginning in July 1984." *Id.* at 1169.[5] Here, Plaintiffs allege they suffered severe emotional distress beginning in November 2017. Compl., ¶¶ 26, 169-170. Their IIED claim is therefore untimely.

*Rankins v. United Parcel Serv., Inc.*, 2024 WL 3416508, does not support a different outcome. There, the court found the California continuing violations doctrine applied to plaintiff's IIED claim based on allegations that defendants' "continuous

---

[5] The *Risk* court correctly evaluated the timeliness of plaintiff's IIED claim and his Cal. Civ. Code §49(a) separately, and came to different conclusions for each.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 3:24-cv-01265-DMS-AHG

1   acts" of sexual harassment before and after the limitations period amounted to a hostile

2   work environment. *Id*. at \*3-4. Here, in contrast, Plaintiffs do not allege that MVM

3   undertook any acts after November 2017 that caused them emotional distress. The

4   *Rankins* court acknowledged that in order for the California continuing violation

5   doctrine to apply, "a plaintiff must show the defendant engaged in a pattern of

6   reasonably frequent and similar acts that may, in a given case, justify treating the acts

7   as an indivisible course of conduct actionable in its entirety, notwithstanding that the

8   conduct occurred partially outside and partially inside the limitations period." *Id*. at \*3

9   (cleaned up). Even when construed favorably, Plaintiffs' allegations do not support

10  the application of the continuing violation doctrine to their IIED claim. *See Hamilton*,

11  2023 WL 3559329, at \*9 (declining to apply continuing violation doctrine to IIED

12  claim where plaintiff "failed to direct this Court to authority supporting his theory of

13  the application of the doctrine of continuing harm to the facts of this case.")

14           ***Plaintiffs' Cal. Civ. Code § 49(a) Claim.***  Plaintiffs argue that "child abduction

15  or interference with parental rights is a 'continuing tort because it encompasses the

16  withholding of a child from his or her parent's custody[,]'" (Opp., 25:7-9, citing *Risk*,

17  707 F. Supp. at 1169), and then jump to the bald conclusion that "the statute of

18  limitations for a child abduction does not begin to run until the child is returned to

19  their parent's custody[,]" again citing *Risk* (*Id*., 25:11-12.) The *Risk* court made no

20  such finding. Instead, the court found that the statute "has not run" because the

21  defendants continued to withhold the minor children from their father up to and after

22  the date he filed his complaint. *Id*. at 1169. *Risk* does not support the indefinite tolling

23  of all Section 49(a) claims until reunification of a parent and child is achieved.

24           Here, Plaintiffs do not allege MVM withheld Junior from Padre during the

25  applicable two-year limitations period. Plaintiffs do not allege any interaction between

26  MVM and Junior after November 2017. Compl., ¶ 161. They do not allege MVM

27  thereafter "withheld" Junior from Padre, or that Junior was even in MVM's custody.

28  To the contrary, they allege Junior was released to the custody of his uncle in February

2018. Compl., ¶¶ 143-149, 167. MVM did not prevent Junior and Padre from reuniting after Junior was placed in his uncle's custody.

Moreover, the Complaint alleges that Junior was 16 when he was separated from Padre in November 2017. Compl., ¶ 143. By November 2019, then, Junior had turned 18. Section 49(a) prohibits the abduction "of a child from a parent." To the extent a continuing tort doctrine ever applied to Plaintiffs' child abduction claim (MVM contends it did not), it ended when Junior reached the age of majority five years ago. *See* Cal. Fam. Code §§ 6500, 6501 (A minor is an individual who is younger than 18 years of age; an adult is an individual who is 18 years of age or older.) The principle that minors and adults are treated differently is deeply embedded in California jurisprudence. *In re Holly H.*, 104 Cal. App. 4th 1324, 1334 (2002). "While minors do not have the same freedoms as adults, and are specially protected by the law, these legal disabilities and privileges ***are removed*** when a person turns 18." *Id*. at 1336 (emphasis added). California Penal Code § 279.1, which Plaintiffs point to as support for their argument about the continuing nature of abduction and concealment laws, actually defeats it. Section 279.1 specifically states that such offenses "continue for as long as the ***minor child*** is concealed or detained." (Emphasis added.)

Any recourse Section 49(a) may have provided Plaintiffs ended when Junior turned 18. Taken to its logical extreme, Plaintiffs' argument that the statute of limitations on a Section 49(a) claims does not begin to run until a parent and child are reunited would produce absurd results. Consider, for example, a hypothetical scenario where Junior and Padre are not reunited until Junior turns 30 in 2032. Under Plaintiffs contorted theory, a Section 49(a) claim against MVM – based on an alleged "abduction" that took place 15 years prior – would ***still*** be timely. Plaintiffs' theory about when the statute of limitations on a Section 49(a) claim begins to run is contrary to the purposes a statute of limitations is designed to serve. *See Garber v. City of Clovis*, 698 F. Supp. 2d 1204, 1212 (E.D. Cal. 2010) ("The policies underlying statutes of limitations include giving defendants reasonable repose, protecting parties from

13

1  defending stale claims where factual obscurity through the loss of time, memory or

2  supporting documentation may present unfair handicaps, and stimulating plaintiffs to

3  pursue their claims diligently.").

4  **3.    Equitable Tolling Does Not Save Plaintiffs' Claims.**

5  Under California law, a plaintiff must meet three conditions to equitably toll a

6  statute of limitations: "(1) he must have diligently pursued his claim; (2) his situation

7  must be the product of forces beyond his control; and (3) the Defendant must not be

8  prejudiced by the application of equitable tolling." *Arellano v. Olson*, 2022 WL

9  3995472, at *5 (S.D. Cal. Aug. 31, 2022). Facts supporting equitable tolling must be

10  alleged in the complaint. *Id*. at *7. Here, Plaintiffs do not identify any facts pleaded in

11  the complaint that could conceivably support equitable tolling. First, they argue that

12  Plaintiffs diligently pursued their claim against MVM because they were members of

13  the class certified in the *Ms. L* case. However, the plaintiffs in *Ms. L* asserted ***different***

14  ***claims against different defendants.*** *See Del Percio v. Thornsley*, 877 F.2d 785, 786

15  at n. 1 (9th Cir. 1989) (equitable tolling does not apply where the plaintiff raised

16  separate and distinct claims against different parties in the earlier proceeding).

17  Moreover, equitable tolling does not apply where the second action is filed in the same

18  forum as the first. *See Martell v. Antelope Valley Hosp. Med. Ctr.*, 67 Cal. App. 4th

19  978, 985 (1998) ("[A]ppellants pursued successive claims in the *same* forum, and

20  therefore equitable tolling did not apply." (emphasis in original)). *Accord*, *Miller v.*

21  *Najera*, 2020 WL 731176, at *9 (E.D. Cal. Feb. 13, 2020), R&R adopted, 2020 WL

22  7183577 (E.D. Cal. Dec. 7, 2020), aff'd, 2021 WL 6067244 (9th Cir. Dec. 20, 2021).

23  Second, Plaintiffs suggest their delay in filing should be excused because they

24  believed they would receive damages in the *Ms. L* litigation. Opp., 27:16-18. Their

25  Complaint, however, contains no allegations to support this argument. Notably, the

26  plaintiffs in *Ms. L* ***never*** sought damages, only equitable relief. Plaintiffs do not plead

27  any facts that suggest forces beyond their control precluded the timely filing of their

28  Complaint, a required element of equitable tolling. In fact, their ability to participate

14

1    in the *Ms. L* litigation defeats their argument that it would have been unfair or

2    impractical to file suit against MVM prior to their reunification.

3         Lastly, Plaintiffs do not even address the third prong of equitable tolling – the

4    lack of prejudice to MVM. Here, it is palpable. MVM was not a party to the *Ms. L*

5    litigation, had no opportunity to participate in the case and secure evidence necessary

6    to defend the claims Plaintiffs have alleged against MVM six years after the separation

7    of Padre and Junior, and had no notice that it would be on the receiving end of claims

8    for damages following the government's settlement of the claims asserted in *Ms. L*.

9        **C.**    **The United States Government is a Required Party under Rule 19.**

10       MVM moved to dismiss pursuant to Rule 12(b)(7) *not* on the ground that it was

11   a joint tortfeasor, but on the grounds that the United States has a protectible interest in

12   its contractual relationship with MVM and in being able to contract with private parties

13   generally to carry out federal immigration policy. That argument was based on the

14   Complaint's specific allegation that, "[s]ince at least 2014, MVM has had the

15   exclusive contract with ICE to transport" unaccompanied minors (Compl., ¶ 62), and

16   that MVM's contractual relationship with the federal government "continued unabated

17   throughout the Class Period." Compl., ¶ 131. In a bizarre attempt to circumvent this

18   result, Plaintiffs have reversed course, stating: "[T]his case challenges MVM's now-

19   terminated agreement to separate families—***not its contract with ICE***[.]" Opp., 10-11

20   (emphasis added). Plaintiffs should not be rewarded for fabricating a new contract that

21   is not alleged in the Complaint in an attempt to survive MVM's Rule 12(b)(7) motion.

22   Further, as an active participant in the Related Case, in which it is actively

23   administering its settlement with an identical class of plaintiffs concerning overlapping

24   relief, it is disingenuous for Plaintiffs to state that the United States has not claimed an

25   interest under Rule 19(A)(1)(B).

26   **III.**    **CONCLUSION**

27       For the foregoing reasons, MVM respectfully requests that the Court grant its

28   Motion to Dismiss under Rules 12(b)(6), and 12(b)(7).

15

1  | Dated: December 13, 2024

2  PILLSBURY WINTHROP SHAW PITTMAN LLP

3

4  By:  *s/ Paul J. Fraidenburgh*

5  Paul J. Fraidenburgh
   Thomas C. Hill
6  Michelle A. Herrera
   J. Ryan Stasell
7  Alexander P. Carroll

8

9  Attorneys for Defendant MVM, Inc.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 3:24-cv-01265-DMS-AHG