1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16

| | |
|---|---|
| PADRE (alias) and JUNIOR (alias), on behalf of themselves and all others similarly situated, | Case No.: 24cv1265 DMS (AHG) |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| MVM, Inc., | |
| Defendant. | |

17
18
19
20
21
22
23
24
25
26
27
28

This case came on for hearing on December 20, 2024, on Defendant's motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7). Scott A. Gilmore, Mary S. Van Houten Harper, and Erika Inwald appeared and argued for Plaintiffs, and Paul Fraidenburgh appeared and argued for Defendant. After thoroughly considering the parties' briefs, including the amicus brief filed by Scholars of International Law,[1] the relevant legal authority, and the record, Defendant's motion is granted in part and denied in part as set out below.

/ / /

---

[1] Amici's motion for leave to file their amicus brief is granted.

# I.

## BACKGROUND

The Complaint in this case is based on the family separation policy at issue in *Ms. L. v. United States Immigration and Customs Enforcement*, Case No. 18cv428 DMS (AHG).[2]  In that case, this Court issued an injunction prohibiting the federal government from separating migrant parents and their minor children who had together crossed into the United States from Mexico unless certain conditions were met.  The Court also ordered the government to reunite those parents and children once the parents were released from government custody, and to reunite those parents and children who had already been released but not yet reunited.  Rather than seeking an injunction against the family separation policy, as the plaintiffs did in *Ms. L.*, Plaintiffs here seek damages from Defendant MVM, Inc., a private company that, as of at least 2014, had a contract with the United States Government to transport "unaccompanied minor" children detained by Immigration and Customs Enforcement ("ICE").  In the Complaint, Plaintiffs allege claims against Defendant for violations of safe conduct under the Alien Tort Statute ("ATS"), enforced disappearance under the ATS, torture under the ATS, cruel, inhuman and degrading treatment ("CIDT") under the ATS, civil rights conspiracy under 42 U.S.C. § 1985, failure to prevent civil rights conspiracy under 42 U.S.C. § 1986, child abduction under California Civil Code section 49(a), and intentional infliction of emotional distress. In response to the Complaint, Defendant filed the present motion.

# II.

## DISCUSSION

Defendant moves to dismiss the Complaint in its entirety.  It argues first for dismissal under Federal Rule of Civil Procedure 12(b)(7) on the ground that the United States is a required party to this case that cannot be joined.  Second, Defendant moves for dismissal

---

[2] This case was transferred to the undersigned judge pursuant to the Court's "Low Number" Rules, Civil Local Rules 40.1e-k.

under Rule 12(b)(6).  Under this rule, Defendant asserts it is entitled to derivative sovereign immunity from Plaintiffs' claims.  Defendant also contends Plaintiffs' civil rights conspiracy and failure to prevent civil rights conspiracy claims are time-barred, as are Plaintiffs' state law claims.  Defendant's final argument is that Plaintiffs have failed to set forth sufficient facts to support their claims for enforced disappearance, torture, civil rights conspiracy, failure to prevent civil rights conspiracy, and child abduction.

**A.    Dismissal under Rule 12(b)(7)**

"Failure to join a party that is required under Federal Rule of Civil Procedure 19 is a defense that may result in dismissal under Federal Rule of Civil Procedure 12(b)(7)." *Klamath Irrigation District v. United States Bureau of Reclamation*, 48 F.4th 934, 943 (9th Cir. 2022).  To determine whether dismissal under Rule 12(b)(7) is warranted, a court must engage in a three-part inquiry.  First, the court must "examine whether the absent party must be joined under Rule 19(a)." *Id.*  Second, the court must "determine whether joinder of that party is feasible.  Finally, if joinder is infeasible, we must 'determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Id.* (citing Fed. R. Civ. P. 19(b)).

Under Rule 19(a), joinder of a party is required if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  Here, Defendant argues the United States has several interests related to the subject matter of this case, most importantly, an interest in federal immigration policy, and that disposing of this case without joining the United States would impair or impede that interest.  Although the United States certainly has in interest in federal immigration policy, simply having an interest does not satisfy the threshold requirement of Rule 19(a)(1)(B).  To satisfy that requirement, Defendant must show the

United States has *claimed* an interest relating to the subject of this case, *Roberts v. City of Fairbanks*, 947 F.3d 1191, 204 (9th Cir. 2020), which it has not done. Indeed, at oral argument, defense counsel represented to the Court that when they received the Complaint they reached out to the Department of Justice and served them with copies of all of the pleadings. (*See* Transcript of Oral Argument at 35-36, ECF No. 53.) Despite that, the United States did not move to intervene or otherwise join this case. Absent a showing that the United States has claimed or is claiming an interest in this case, Defendant is not entitled to dismissal of this case pursuant to Rule 12(b)(7).

**B.    Dismissal under Rule 12(b)(6)**

Under Rule 12(b)(6), Defendant raises a number of arguments, including two based on the affirmative defenses of derivative sovereign immunity and statute of limitations. *See Boudreaux v. Axiall Corp.*, No. 18-0956, 2021 WL 4702810, at *5 (W.D. La. Oct. 7, 2021) (stating derivative sovereign immunity is an affirmative defense); *Southern Cal. Electrical Firm v. Southern Cal. Edison Co.*, 668 F.Supp.3d 1000, 1022 (C.D. Cal. 2023) ("An assertion that a suit is barred by the statute of limitations is an affirmative defense.") "Ordinarily affirmative defenses may not be raised by motion to dismiss, but this is not true when … the defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (citations omitted). The statute of limitations defense may also be raised on a motion to dismiss "[i]f the running of the statute is apparent on the face of the complaint[.]" *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (citations omitted). Before turning to Defendant's other arguments, the Court first addresses these two affirmative defenses.

1.    Derivative Sovereign Immunity

Defendant's lead argument under Rule 12(b)(6) is that it is entitled to derivative sovereign immunity from Plaintiffs' claims. As the name indicates, derivative sovereign immunity "extend[s] the federal government's immunity from liability, in narrow circumstances, to government agents carrying out the federal government's directions." *Childs v. San Diego Family Housing, LLC*, 22 F.4th 1092, 1097 (9th Cir. 2022). For

24cv1265 DMS (AHG)

derivative sovereign immunity to apply, three elements must be satisfied: (1) The federal government must be immune from the claims asserted, (2) the federal government must have authorized the defendant's actions, and (3) the federal government must have "'validly conferred' that authorization, meaning it acted within its constitutional power." *In re KBR, Inc. Burn Pit Litig.*, 744 F.3d 326, 342 (4th Cir. 2014) (quoting *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 20-21 (1940)). Because derivative sovereign immunity is an affirmative defense, Defendant bears the burden to prove these elements are met. *Boudreaux*, 2021 WL 4702810, at *5.

On element two, Defendant argues its conduct at issue in this case was authorized by virtue of its contract with the federal government "to escort and transport 'unaccompanied minor' children detained by ICE." (Compl. ¶ 7; Mem. of P. & A. in Supp. of Mot. at 19-20.) This alleged contract is referenced throughout the Complaint, but Defendant did not submit a copy of the contract with its motion. In the absence of that evidence, Defendant has not shown there are no disputed issues of fact such that the Court may decide this issue on the present motion. *See Scott*, 746 F.2d at 1378 (stating affirmative defense may be raised in motion to dismiss only if it raises no disputed issues of fact). Indeed, without the contract it is difficult, if not impossible, for this Court to determine whether the federal government "authorized and directed" Defendant's conduct at issue in this case. *See In re U.S. Office of Personnel Management Data Security Breach Litig.*, 928 F.3d 42, 69 (D.C. Cir. 2019) (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 167 (2016)) ("At the outset, KeyPoint's failure to place in the record its contract with OPM makes it particularly difficult for it to establish, on a motion to dismiss, that its alleged security lapses were 'authorized and directed' by OPM[.]"); *In re KBR, Inc.*, 744 F.3d at 345 ("At this point in the litigation, the record does not contain enough evidence to determine whether KBR acted in conformity with LOGCAP III, its appended task orders, and any laws and regulations that the contract incorporates.") It is likewise impossible for the Court to determine if Defendant had discretion in carrying out its contractual obligations, which would also defeat Defendant's claim of derivative sovereign immunity.

*Cabalce v. Thomas E. Blanchard & Assoc., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015) (quoting *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1001 (9th Cir. 2008)) (holding derivative sovereign immunity "is limited to cases in which a contractor 'had no discretion in the design process and completely followed government specifications.'")  In light of this gaping hole in the record, the Court cannot resolve the issue of derivative sovereign immunity on the present motion.[3]  Accordingly, Defendant's motion to dismiss on this ground is denied.

### 2.   Statute of Limitations

Next, Defendant argues Plaintiffs' civil rights conspiracy, failure to prevent civil rights conspiracy, and state law claims are time-barred.  This argument is based on certain undisputed facts set out in the Complaint, and is therefore properly raised in the present motion.  On the merits, the parties do not dispute the relevant statutes of limitations for the claims at issue.[4]   However, the parties do dispute when the claims accrued and whether Plaintiffs are entitled to equitable tolling.

### a.   *Civil Rights Conspiracy Claims*

"Although courts look to state law for the length of the limitations period, the time at which a § 1983 claim accrues 'is a question of federal law[.]'" *McDonough v. Smith*, 588 U.S. 109, 115 (2019) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).  Under federal law, "it is 'the standard rule that [accrual occurs] when the plaintiff has a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief[.]'" *Wallace*, 549 U.S. at 388 (quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)) (quotation marks omitted).

---

[3] In light of the factual questions surrounding element two, the Court declines to address whether Defendant has satisfied the other two elements of derivative sovereign immunity.
[4] The parties agree the statute of limitations for the § 1985, child abduction, and intentional infliction of emotional distress claims is two years, and the statute of limitations for the § 1986 claim is one year.

Determining when that occurs, however, "is not always so simple." *McDonough*, 588 U.S. at 115.

Here, Defendant argues Plaintiffs' claims accrued when they knew or had reason to know "of the injury which is the basis of the action." *TwoRivers v. Lewis*, 174 F.3d 987, 991-92 (9th Cir. 1999). Defendant asserts that occurred when Plaintiffs were separated on November 3, 2017, therefore their claims accrued on that date.

Plaintiffs do not deny they were aware of their injuries on that date or that they could have filed their claims at that time. Instead, they rely on *Wallace*, where the Court looked to the state law claim most analogous to the claim at issue to determine that claim's accrual date.[5] In *Wallace*, the claim at issue was one for unlawful arrest, and the Court stated the plaintiff "could have filed suit as soon as the allegedly wrongful arrest occurred, … so the

---

[5] Plaintiffs also argue *Wallace* is a continuing violations case in which the Court "held that a § 1983 claim based on false imprisonment is a continuing tort that accrues at the end, not the beginning, of the false imprisonment." (Opp'n to Mot. at 26.) This Court disagrees with that interpretation of *Wallace*. Contrary to Plaintiffs' argument, there is no mention in *Wallace* of the continuing violations theory, and the Court did not hold that a § 1983 claim for unlawful arrest accrues when the plaintiff is released from custody. Rather, the Court held that a § 1983 claim for unlawful arrest, and more specifically, a claim based on the plaintiff's detention without legal process, accrues when legal process is initiated against the plaintiff, not upon the plaintiff's release from custody. 549 U.S. at 389-91. To the extent Plaintiffs are relying on a continuing violations theory independent of *Wallace*, case law refutes application of that theory to the kinds of facts alleged in this case. *See Kovacic v. Cuyahoga County Dep't of Children and Family Services*, 606 F.3d 301, 307-08 (6th Cir. 2010) (stating continuing violation in § 1983 action "occurs when there are continued unlawful acts, not by continued ill effects from the original violation."). *See also Bird v. Dep't of Human Services*, 935 F.3d 738, 749 (9th Cir. 2019) (stating "continuing effect is insufficient to constitute a continuing violation."); *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (quoting *Grimes v. City and County of San Francisco*, 951 F.2d 236, 238-39 (9th Cir. 1991)) (quotation marks omitted) (affirming "that a 'mere continuing impact from past violations is not actionable.'"); *Belinda K. v. County of Alameda*, No. 10-CV-05797-LHK, 2011 WL 2690356, at *6 (N.D. Cal. July 8, 2011) (rejecting argument that child's placement outside parental custody was a continuing violation).

statute of limitations would normally commence to run from that date." *Id.* at 388. However, the Court noted there was "a refinement to be considered, arising from the common law's distinctive treatment of the torts of false arrest and false imprisonment, '[t]he … cause[s] of action [that] provid[e] the closest analogy'" to the plaintiff's claim for unlawful arrest. *Id.* (quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). Under the common law, false imprisonment consisted of detention without legal process, and thus the Court held the statute of limitations on the plaintiff's unlawful arrest claim began "when legal process" was initiated against the plaintiff. *Id.* at 389-90.

Plaintiffs argue this analysis of the accrual date applies with equal force to the claim at issue here, which arises out of the first Trump Administration's family separation policy. Under that analytical framework, Plaintiffs assert this Court should look to the common law tort most analogous to their family separation claim to determine the date of accrual. According to Plaintiffs, interference with the parental relationship provides the closest analog, and courts consider that kind of interference to be "a continuing tort because it encompasses the withholding of a child from his or her parent's custody." *Risk v. Kingdom of Norway*, 707 F.Supp. 1159, 1169 (N.D. Cal. 1989). Given that interpretation, two district courts have found the statute of limitations on a claim for interference with a parent's right to custody of their child "does not begin to accrue until the child is returned to the parent's rightful custody because the wrongful action (keeping the child away from his or her rightful custodian) begins when the child is first removed from the parent's rightful custody and continues until the parent's rightful custody is restored." *Blair v. Toran*, No. CV-99-956-ST, 1999 WL 1270802, at *22 (D. Or. Dec. 2, 1999); *Risk*, 707 F.Supp. at 1169 (same). *See also* Cal. Penal Code § 279.1 (stating crime of child abduction continues "for as long as the minor child is concealed or detained.") Under this approach, Plaintiffs argue their claims did not accrue until they were reunified on or about July 20, 2023.

/ / /

/ / /

The Supreme Court's approach to the facts and claims at issue in *Wallace*, however, did not establish a new rule for determining accrual dates for federal civil rights claims. On the contrary, the *Wallace* court reiterated the general rule that "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Id.* at 388. Subsequent cases bear this out. For instance, in *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 370 (2017), the Court stated sometimes a review of the common law:

> will lead a court to adopt wholesale the rules that would apply in a suit involving the most analogous tort. *But not always*. Common-law principles are meant to guide rather than to control the definition of § 1983 claims, serving "more as a source of inspired examples than of prefabricated components."

(emphasis added and citations omitted). The Court cautioned that "[i]n applying, selecting among, or adjusting common-law approaches, courts must closely attend to the values and purposes of the constitutional right at issue." *Id.*

Here, the constitutional right at issue is the right to family integrity. Although Plaintiffs cite two cases finding the accrual date for claims for interference with the parent-child relationship do not accrue until the child is returned to the parent's custody, *see Risk*, 707 F.Supp. at 1169; *Blair*, 1999 WL 1270802, Plaintiffs fail to cite any cases adopting that reasoning for § 1983, § 1985, or § 1986 claims based on family separation. They also fail to address the federal cases finding the accrual date for these kinds of constitutional claims is the date of separation, not the date of reunification. *See Kovacic*, 606 F.3d at 307-08 (stating "precipitating event" for § 1983 claim was initial removal of children from parent's custody, and claim filed more than two years after that date was untimely); *Ganey v. County of San Diego*, No. 23-cv-1448-CAB-AHG, 2023 WL 8531086, at *4-5 (S.D. Cal. Dec. 8, 2023) (citing *Claraty v. Hall-Mills*, No. 18-CV-06861-JCS, 2019 WL 1228237, at *4 (N.D. Cal. Mar. 15, 2019)) (finding § 1983 claims based on childrens' removal from plaintiffs' custody accrued when children were removed from parents); *Belinda K. v. County of Alameda*, No. 10-CV-05797-LHK, 2011 WL 2690356, at *6 (N.D. Cal. July 8, 2011) (adopting reasoning of *Kovacic* and finding plaintiff's claims based on child's

removal from her custody were time-barred); *Kirwin v. Kot*, No. CV-22-00471-TUC-RCC, 2024 WL 911745, at *6 (D. Ariz. Mar. 4, 2024) (finding claim for violation of right to familial association accrued when child was removed from parents' custody); *Ferry v. Kentucky Cabinet for Health and Family Services*, No. 3:17-CV-00525-TBR, 2018 WL 701287, at *3-5 (W.D. Ky. Feb. 2, 2018) (following *Kovacic* and finding §§ 1983 and 1985 claims based on removal of children from plaintiffs' custody accrued when children were removed).

Although the specific facts of *Wallace* called for a consideration of common law principles related to false imprisonment in determining the accrual date of a claim for unlawful arrest, Plaintiffs fail to explain why that analytical framework should apply here to a claim arising out of the first Trump Administration's policy to separate families crossing the border together. Consistent with the cases cited immediately above, this Court finds that such a claim accrues when the parent and child are separated, not when they are reunited. In this case, Padre and Junior were separated on November 3, 2017, and their claims therefore accrued on that date. With that accrual date, the statute of limitations on their § 1985 claim expired on November 3, 2019, *see Dean v. Johnson*, No. 2:22-cv-01054-JAM-JDP, 2023 WL 5516298, at *2 (E.D. Cal. Aug. 25, 2023) (stating § 1985 claim filed in California federal court is governed by California's two-year statute of limitations for personal injury actions), and the statute of limitations on their § 1986 claim expired on November 3, 2018. *See* 42 U.S.C. § 1986 (stating "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.") Because the present case was not filed until July 23, 2024, these claims are untimely.

Plaintiffs attempt to avoid this result by arguing they are entitled to equitable tolling of their statutes of limitations. Plaintiffs bear the burden of proving that equitable tolling applies. *See Honchariw v. County of Stanislaus*, 530 F.Supp.3d 939, 950 (E.D. Cal. 2021) (quoting *In re Marriage of Zimmerman*, 183 Cal. App. 4th 900, 912 (2010)). To meet that burden, Plaintiffs must demonstrate the following three elements: "(1) timely notice to the

defendant in filing the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim." *Lucchesi v. Bar-O Boys Ranch*, 353 F.3d 691, 694-95 (9th Cir. 2003) (citing *Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 924 (1983)).[6]

Plaintiffs have not met that burden here.  Indeed, there is no mention of equitable tolling anywhere in the Complaint.  Plaintiffs' arguments in their opposition brief do not cure that pleading defect.  *Pauna v. Zurich Ins. Co.*, No. CV 19-01365 TJH (SPx), 2020 WL 11339693, at *2 (C.D. Cal. Feb. 13, 2020) ("Arguments in a brief opposing a motion to dismiss do not cure defects in the allegations of the complaint.")  And even if the Court were to consider those arguments, they do not address the actual elements of equitable tolling.  They simply rely on the *Ms. L.* case and considerations of fairness and practicality. (Opp'n to Mot. at 27-28.)  Absent any factual allegations in the Complaint that address the requisite elements, equitable tolling does not save these claims from dismissal.

### b.    *State Law Claims*

On the state law claims for child abduction and intentional infliction of emotional distress, Plaintiffs again rely on the continuing violations doctrine to support their argument that these claims did not accrue until Padre and Junior were reunited on July 20, 2023. Defendant again disagrees and argues the statute of limitations for these claims accrued on November 3, 2017.

### i.    *Child Abduction*

On the child abduction claim, Plaintiffs rely specifically on *Risk*, *Blair*, and California Penal Code § 279.1 to support their continuing violations theory.  *Risk* and California Penal Code § 279.1 support Plaintiffs' argument that under California law child

---

[6] "Federal courts … apply [the] forum state's law regarding tolling, including equitable tolling when not inconsistent with federal law." *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999).

24cv1265 DMS (AHG)

abduction is a continuing tort, and that the statute of limitations does not accrue until the parent and child are reunited. *See Risk*, 707 F.Supp. at 1169-70 (stating statute of limitations had not run on claim for interference with parental relationship where children had yet to be reunited with their parent); Cal. Penal Code § 279.1 (stating crime of child abduction continues "for as long as the minor child is concealed or detained.") In accordance with this authority, the Court finds this claim accrued when Padre and Junior were reunited on July 20, 2023. Applying that accrual date, this claim is timely.[7]

### ii. *Intentional Infliction of Emotional Distress*

On the intentional infliction of emotional distress claim, Plaintiffs rely on *Rankins v. United Parcel Serv., Inc.*, No. 23-cv-05785-JSC, 2024 WL 3416508, at *3 (N.D. Cal. July 15, 2024), to support application of the continuing violations doctrine. *Rankins* does support application of the continuing violations doctrine to claims for intentional infliction of emotional distress if "'the defendant engaged in a pattern of reasonably frequent and similar acts [that] may, in a given case, justify treating the acts as an indivisible course of conduct actionable in its entirety, notwithstanding that the conduct occurred partially outside and partially inside the limitations period.'" 2024 WL 3416508, at *3 (quoting *Willis v. City of Carlsbad*, 48 Cal. App. 5th 1104, 1124 (2020)) (quotation marks omitted). *See also Murray v. Oceanside Unified School Dist.*, 79 Cal. App. 4th 1338, 1362-64 (2000) (stating continuing violations doctrine could apply to claim for intentional infliction of emotional distress). Here, however, Plaintiffs have not alleged that kind of conduct. Rather, Plaintiffs' claim for intentional infliction of emotional distress is based on Defendant's "transportation of abducted children[,]" which Plaintiffs allege was "extreme,

---

[7] In its reply brief, Defendant raised, for the first time, another argument as to why this claim is untimely, namely, that Junior turned 18 in November 2019. (Reply at 13-14.) The Court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Even if the Court were to consider the argument, Defendant has failed to explain how Junior's coming of age affects the statute of limitations analysis.

outrageous, and designed to inflict severe emotional distress on Plaintiffs and Class Members to achieve a deterrent effect." (Compl. ¶ 239.) Based on these allegations, the continuing violations doctrine does not apply to Plaintiffs' claim for intentional infliction of emotional distress.

Instead, Plaintiffs' claim accrued once Plaintiffs' "emotional distress reached the 'severe' level[.]" *Risk*, 707 F.Supp. at 1169 (citations omitted). *See also Wassman v. South Orange County Community College Dist.*, 24 Cal. App. 5th 825, 853 (2018) (quoting *Cantu v. Resolution Trust Corp.*, 4 Cal. App. 4th 857, 889 (1992) ("'A cause of action for intentional infliction of emotional distress accrues, and the statute of limitations begins to run, once the plaintiff suffers severe emotional distress as a result of outrageous conduct on the part of the defendant.'") Plaintiffs allege that occurred when Padre and Junior were separated on November 3, 2017. (Compl. ¶¶ 169-70.) Based on that accrual date, Plaintiffs' statute of limitations expired on November 3, 2019. Plaintiffs' claim filed on July 23, 2024, is therefore untimely.[8]

### 3.    Failure to State a Claim

Defendant's final argument in support of its motion to dismiss is that Plaintiffs have failed to sufficiently plead their claims for enforced disappearance and torture under the ATS, their claims under §§ 1985 and 1986, and their claim under California Civil Code section 49(a). These arguments are governed by the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive a motion to dismiss under the standard set out therein, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial

---

[8] As with their civil rights conspiracy claims, Plaintiffs rely on equitable tolling to save their state law claims. For the reasons set out above, the Court finds Plaintiffs intentional infliction of emotional distress claim is also not subject to equitable tolling on the present record.

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). In *Iqbal*, the Court began this task "by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 680. It then considered "the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.

### a. *Enforced Disappearance*

Defendant does not dispute that enforced disappearance is a cognizable claim under the ATS. Instead, it argues Plaintiffs have failed to set forth facts to support the elements of that claim, which it describes as (1) the abduction by a state official or by persons acting under state approval or authority, and (2) refusal by the state to acknowledge the abduction or detention. (Mem. of P. & A. in Supp. of Mot. at 23.) Plaintiffs do not dispute the first element of the claim, but they assert the second element can be met by either refusal to acknowledge the abduction *or* concealment of the fate or whereabouts of the concealed person.

The Court agrees with Plaintiffs. As stated in Plaintiffs' opposition and Amici's brief in support thereof, the International Convention for the Protection of All Persons from Enforced Disappearance defines "enforced disappearance" as:

> the arrest, detention, abduction or any other form of deprivation of liberty by agents of the State or by persons or groups of persons acting with the authorization, support, or acquiescence of the State, followed by a refusal to acknowledge the deprivation of liberty *or* by concealment of the fate or whereabouts of the disappeared person, which place such a person outside the protection of the law.

/ / /

24cv1265 DMS (AHG)

International Convention for the Protection of All Persons from Enforced Disappearance, Dec. 23, 2010, 2716 U.N.T.S. 3, art. 2 (emphasis added).  Indeed, even Defendant's cited authority, which predates the Convention by more than 20 years, is consistent with this definition.  *See Forti v. Suarez-Mason*, 694 F.Supp. 707, 711 (N.D. Cal. 1988) (stating enforced disappearance is characterized by "(1) abduction by state officials or their agents; followed by (2) official refusals to acknowledge the abduction *or to disclose the detainee's fate*.") (emphasis added).  Accordingly, the Court will address the elements as set out by Plaintiffs.

On the first element, Plaintiffs have set forth sufficient facts in support.  Specifically, Plaintiffs allege government agents and/or Defendant's staff "physically removed" children from their parents, (Compl. ¶ 77, 79 n.29), and detained them separately from their parents, "sometimes for days." (*Id.* ¶ 78.)  Plaintiffs further allege that Defendant's staff later transported these separated children "to ORR-operated shelters around the country[,]" sometimes flying these children "thousands of miles away from their parents, from the southwest to the east coast." (*Id.* ¶ 80.)  Plaintiffs also allege Defendant "would harbor some children incognito in makeshift detention centers, including in vacant office buildings or hotel rooms." (*Id.* ¶ 82.)  These allegations are sufficient to support the "arrest, detention, abduction" element of Plaintiffs' enforced disappearance claim.

Plaintiffs also allege sufficient facts to support the second element.  They allege generally that "parents were given no information on the welfare or whereabouts of their children and no means to reunite with them." (*Id.* ¶ 77.)  Plaintiffs allege Defendant "participated in a bureaucratic record-keeping system that intentionally 'deleted' family units and prevented their reunification." (*Id.* ¶ 86.)  They further allege more specifically that when Junior was separated from Padre, the woman who separated them "did not communicate where she was taking the children, why they were being separated, or how they could remain in contact." (*Id.* ¶ 147.)  Plaintiffs further allege that "[t]wo days passed with no word on [Junior's] welfare or whereabouts." (*Id.* ¶ 149.)  And when Junior arrived at the ORR shelter, they "had no information about Junior's father." (*Id.* ¶ 162.)  For the

next week, "Junior had no idea what was happening to him or where his father was located." (*Id.* ¶ 163.)  For several weeks after that, Junior was held "incommunicado, with no way to communicate with his family[,]" and "[h]is family was not informed of his whereabouts." (*Id.* ¶ 164.)  When Junior was finally able to speak with his mother in Guatemala, she "did not know where his father was." (*Id.* ¶ 165.)  These allegations are sufficient to support the "concealment" element of Plaintiffs' enforced disappearance claim.  Accordingly, the Court denies Defendant's motion to dismiss this claim for failure to allege sufficient facts.

### *b.*    *Torture*

Defendant moves to dismiss Plaintiffs' torture claim on the ground Plaintiffs have failed to allege facts to support their allegation that Plaintiffs' "suffering was not inherent in or incident to lawful sanctions."[9]  (*Id.* ¶ 210.)  Specifically, Defendant argues the Complaint contradicts that allegation because it alleges Defendant's transportation of children like Junior "was pursuant to a validly issued government contract." (Mem. of P. & A. in Supp. of Mot. at 25.)  Notably, Defendant fails to cite any authority to support its argument that conduct performed pursuant to a government contract renders that conduct exempt from claims of torture.  This argument, therefore, does not warrant dismissal of Plaintiffs' claim.

///

---

[9] The Convention Against Torture defines torture as:  "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. *It does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions*."  U.N. Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, art. 1, para. 1 (emphasis added).

24cv1265 DMS (AHG)

Defendant does cite a case dismissing torture claims arising from the family separation policy at issue here on the ground the separations arose from "lawful sanctions," namely, the government "enforcing criminal provisions barring illegal entry and by prosecuting individuals who violated said provisions." *C.D.A. v. United States*, No. CV 21-469, 2023 WL 2666064, at *27 (E.D. Pa. Mar. 28, 2023). However, the Complaint in this case alleges "[t]he forced separations deliberately inflicted grievous harm on migrant children and their parents, *even those who entered the United States lawfully*, all to terrify other potential immigrants." (Compl. ¶ 5) (emphasis added). (*See also id.* ¶ 42) (stating federal agents and contractors, including Defendant, "would take children away from their parents while they were held in immigration detention-*including some who crossed lawfully at ports of entry and sought asylum*-without the parents ever being criminally prosecuted or detained.") (emphasis added). Indeed, that appears to be what happened to Padre and Junior. (*See id.* ¶ 150) ("Padre was never prosecuted for any crime and never transferred out of immigration detention until, on or around December 26, 2017, he was removed to Guatemala without his son.") These allegations take this case outside the holding of *C.D.A.*. Accordingly, Defendant's motion to dismiss Plaintiffs' torture claim is denied.

### c.    Sections 1985 and 1986[10]

Next, Defendant argues Plaintiffs have failed to set forth sufficient facts to support their claims under §§ 1985 and 1986. To state a claim under § 1985, Plaintiffs must plead facts to support the following elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in their person or property or deprived of any right or privilege of a citizen of the United States.

---

[10] Although the Court grants Defendant's motion to dismiss these claims as untimely, the Court proceeds to address whether Plaintiffs have alleged sufficient facts to support these claims in the event Plaintiffs file an amended complaint that addresses equitable tolling.

24cv1265 DMS (AHG)

*Gaetz v. City of Riverside*, 722 F.Supp.3d 1054, 1068-69 (C.D. Cal. 2024) (citing *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992)).

Here, Defendant argues Plaintiffs have failed to set forth sufficient facts to support the first and second elements. "To meet the first element, 'the plaintiff must state specific facts to support the existence of the claimed conspiracy.'" *Id.* at 1069 (quoting *Burns v. King*, 883 F.2d 819, 821 (9th Cir. 1989)).

> Allegations that identify "the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose," and allegations that identify "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of … constitutional rights," have been held to be sufficiently particular to properly allege a conspiracy.

*Steshenko v. Albee*, 70 F.Supp.3d 1002, 1015 (N.D. Cal. 2014) (citations omitted). Contrary to Defendant's argument, Plaintiffs have met their pleading burden. Specifically, Plaintiffs allege Defendant participated in a conspiracy with the United States Government, and more particularly, agents of the Department of Homeland Security, to deprive Plaintiffs of their rights to equal protection by separating them at the border "due to their national origin, race, and ethnicity[.]" (Compl. ¶ 17.) According to Plaintiffs, that conspiracy began as early as March 6, 2017, when General John Kelly, then Secretary of Homeland Security, confirmed the family separation campaign during an interview on CNN, (*id.* ¶ 8), and continued until January 1, 2021. (*Id.* ¶ 180.) Plaintiffs allege the object of the conspiracy was to "deter non-white immigration to the United States" by "threaten[ing] asylum seekers with, in essence, state-sanctioned kidnapping." (*Id.* ¶ 4.) Plaintiffs further allege Defendant agreed to participate in the conspiracy by separating migrant children from their parents, (*id.* ¶¶ 10, 42, 79), and transporting those children away from their parents. (*Id.* ¶ 9.) These allegations, and numerous others, set forth sufficient facts to satisfy the first element of Plaintiffs' § 1985 claim.

On the second element, Defendant argues Plaintiffs have failed to set forth any facts to support Defendant's discriminatory animus. *See Griffin v. Breckenridge*, 403 U.S. 88,

102 (1971) (stating the second element "means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.")  Again, the Court disagrees.  Plaintiffs allege the proponents of the family separation campaign echoed white nationalist conspiracy theories about "an intentional effort to promote the immigration of non-white migrants to Europe and the United States to bring about the extinction of the 'white race.'"  (Compl. ¶ 3.)  Plaintiffs also allege Defendant, "in concert with DHS agents, treated parents and children from allied states (including Guatemala, Honduras, El Salvador, and Mexico) as enemies on American soil, depriving them, due to their national origin, race, and ethnicity, of due process and the right to family integrity."  (*Id.* ¶ 17.)  Plaintiffs further allege the family separation campaign "was motivated by racial and xenophobic animus against non-white immigrants, in particular, individuals of Latino origin and from Central America[,]" and that this animus was "openly and repeatedly expressed" by officials in the first Trump Administration.  (*Id.* ¶ 36.)  These allegations set forth sufficient facts to meet the second element of Plaintiffs' § 1985 claim.[11]  Accordingly, Defendant's motion to dismiss this claim is denied.[12]

///

///

_____

[11] Defendant suggests Plaintiffs' § 1985 claim is also subject to dismissal because Defendant's conduct was motivated by economic interests rather than discriminatory animus.  (Mem. of P. & A. in Supp. of Mot. at 27.)  Although the Complaint details the lucrative government contracts governing Defendant's transportation of "unaccompanied minors," those allegations are not necessarily relevant to the discriminatory animus element.  Rather, they appear to be directed at explaining Defendant's role in the conspiracy.

[12] Defendant moves to dismiss Plaintiffs' § 1986 claim on the ground that the § 1985 claim fails to state a claim.  *See Washington v. Duty Free Shoppers*, 696 F.Supp. 1323, 1327 (N.D. Cal. 1988) (citing *Trerice v. Pedersen*, 769 F.2d 1398 (9th Cir. 1985)) ("A plaintiff cannot state a claim under § 1986 absent a valid claim under § 1985(3).")  Because the Court finds Plaintiffs have sufficiently pleaded their claim under § 1985, the Court denies Defendant's motion to dismiss the § 1986 claim, as well.

          *d.*       *California Civil Code Section 49(a)*

The final claim at issue is Plaintiffs' claim under California Civil Code section 49(a). This statute provides: "The rights of personal relations forbid: (a) The abduction or enticement of a child from a parent, or from a guardian entitled to its custody[.]" Cal. Civ. Code § 49(a). Defendant argues Plaintiffs have failed to plead child abduction here because Defendant was acting pursuant to its government contract for the transportation of "unaccompanied" minors, and because there are no allegations Defendant "abducted or enticed Junior from Padre." (Mem. of P. & A. in Supp. of Mot. at 33.)

As noted, Defendant fails to cite any authority to support its argument that because it was allegedly acting pursuant to a government contract, it cannot be held liable for this claim. Absent any authority, the Court rejects this argument. Furthermore, and contrary to Defendant's second argument, the Complaint does allege facts to support the claim. Specifically, the Complaint alleges that after Junior was separated from Padre, he was transferred into the custody of two of Defendant's employees at the San Diego International Airport. (Compl. ¶ 153.) Those employees "falsely promised [Junior and three other children] that they were being brought to their parents." (*Id.*) Defendant's employees then boarded an aircraft with Junior and the three other children "without telling them their destination," (*id.* ¶ 155), and during the flight "repeated the false promise that [Junior] was being taken to his father." (*Id.* ¶ 158.) While delivering these "false promises," Defendant's employees were actually transporting Junior and the three other children across the country to New York. (*Id.* ¶ 160.) Regardless of whether Defendant's employees were involved in the actual "unlawful taking" of Junior away from Padre, these allegations would suffice to show Defendant was engaged in the "unlawful withholding of the minor children" from the custody of the parents, which is enough to state a claim under section 49(a). *See Risk*, 707 F.Supp. at 1169 (citing *Surina v. Lucey*, 168 Cal. App. 3d 539, 542 (1985)) (stating section 49(a) "has been applied to bar both the unlawful taking of a minor child from custody and the unlawful withholding of the minor child from custody.") Accordingly, Defendant's motion to dismiss this claim is denied.

**III.**

**CONCLUSION AND ORDER**

For the reasons set out above, the Court grants in part and denies in part Defendant's motion to dismiss. Specifically, Defendant's motion under Rule 12(b)(7) is denied. Defendant's motion under Rule 12(b)(6) is denied as to derivative sovereign immunity. On the statute of limitations, Defendant's motion is granted as to Plaintiffs' claims under §§ 1985 and 1986, denied as to Plaintiffs' claim under California Civil Code section 49(a), and granted as to Plaintiffs' intentional infliction of emotional distress claim. Defendant's motion to dismiss based on insufficient facts is denied as to all claims at issue, i.e., enforced disappearance, torture, §§ 1985 and 1986, and California Civil Code section 49(a).

In accordance with their request, Plaintiffs are granted leave to file a First Amended Complaint that cures the pleading deficiencies concerning equitable tolling. Plaintiffs are cautioned that if their First Amended Complaint does not cure these deficiencies, the claims at issue will be dismissed with prejudice and without leave to amend. The First Amended Complaint shall be filed on or before **March 14, 2025**. Because the case will proceed on at least one claim, the parties shall contact the Magistrate Judge's Chambers to schedule a Case Management Conference forthwith.

**IT IS SO ORDERED**.

Dated: March 3, 2025

Hon. Dana M. Sabraw
United States District Judge

24cv1265 DMS (AHG)