Mary S. Van Houten Harper (D.C. Bar No. 1045137)*
Amanda Lee-DasGupta (D.C. Bar No. 1619712)*
Amanda V. Boltax (D.C. Bar No. 90013893)*
**Hausfeld LLP**
1200 17th Street NW, Suite 600
Washington, DC 20036
(202) 540-7200
mvanhouten@hausfeld.com
alee@hausfeld.com
mboltax@hausfeld.com

* *Admitted pro hac vice*

*Attorneys for Plaintiffs*
*(additional counsel on signature page)*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Padre (*alias*), Junior (*alias*), I.V.S. (*alias*) and A.V.L. (*alias*), by and through I.V.S. *on behalf of themselves and all others similarly situated*, <br><br> *Plaintiffs*, <br><br> v. <br><br> MVM, Inc., <br><br> *Defendant.* | Case No.: 3:24-cv-01265-DMS-AHG <br><br> **PLANTIFFS' SUPPLEMENTAL BRIEF FOR ATTORNEY FEES & LITIGATION EXPENSES FOR PLAINTIFFS' MOTION TO COMPEL [ECF NO. 70]** <br><br> Judge: Hon. Allison H. Goddard <br> Courtroom: 2C <br><br> Motion Filed: June 27, 2025 |

## I.    INTRODUCTION

Without any justifiable basis and inconsistent with controlling case law and the applicable regulatory framework, MVM repeatedly obstructed Plaintiffs' access to discoverable materials. Pretextually citing a broad limitation to its discovery obligations—a confidentiality clause in its contract with U.S. Immigration and Customs Enforcement ("ICE")—MVM thwarted Plaintiffs' attempts to resolve the parties' dispute through the meet-and-confer process, thereby forcing Plaintiffs to move to compel patently discoverable material. As a result, the initial briefing required Plaintiffs to spend substantial and unnecessary time on a manufactured dispute. But MVM did not stop there: it raised a primary objection to the discovery for the first time in its responsive brief—while misrepresenting controlling law and fact to this Court, necessitating supplemental briefing, and imposing further time and expense.

In granting Plaintiffs' motion to compel, the Court expressed a sentiment Plaintiffs share—MVM played a "game to avoid discovery." July 31, 2025 Tr. ("Tr.") 9:22–23. It took time and resources to play MVM's game, resources that Plaintiffs would have preferred to dedicate to other litigation efforts. Plaintiffs thus request an award of reasonable attorneys' fees for the work required to litigate the motion to compel before MVM finally met its straightforward discovery obligations.

## II.    BACKGROUND

### A. FACTUAL BACKGROUND

Though the parties had been engaged in discovery for months, it was not until MVM's original deadline for its responses to Plaintiffs' discovery requests that MVM raised, for the first time, that it was precluded from producing broad swaths of responsive discovery due to a confidentiality clause in its contract with ICE. *See* Van Houten Decl. ISO MTC at ¶¶ 5, 12–13, Dkt. No. 70-2. The parties raised the issue with the Court. The Court then instructed Plaintiffs to file an *ex parte* motion to compel,

specific to the confidentiality clause issue. *Id.* at ¶¶ 16–17, 20. The Court further directed that MVM should then "respond [to Plaintiffs' motion] indicating that they do not oppose producing information under the existing protective order in the case." Email from J. Goddard, June 13, 2025.

On June 27, 2025, Plaintiffs filed their *ex parte* motion, arguing, as MVM had asserted, that MVM's confidentiality agreement with ICE did not preclude discovery nor excuse substantive responses to their discovery requests. *See* MTC, Dkt. No. 70-1.

On July 1, 2025, MVM responded to the motion—focusing not on the confidentiality clause, as Plaintiffs anticipated, but rather arguing for the first time that the discovery would violate the Department of Homeland Security ("DHS") *Touhy* regulations. *See* Opp. to MTC, Dkt. No. 73. At no point in time, including in MVM's responses to Plaintiffs' discovery requests, did MVM raise that Plaintiffs ought to have followed or otherwise violated the *Touhy* regulations. *See id.*; *see also* Fraidenburgh Decl. ISO Opp. to MTC, Dkt. No. 73-1; Tentative Order to MTC, Dkt. No. 76 at 3–4.

Yet, in its opposition brief, MVM argued that Plaintiffs "have not fully complied with DHS' *Touhy* regulations" because Plaintiffs allegedly did not (1) "set forth in writing . . . the nature and relevance of the official information sought," 6 C.F.R. § 5.45(a), even though Plaintiffs had plainly issued discovery requests that MVM had declared under penalty of perjury were served on the government[1]; or 2) "document a plan of all reasonably foreseeable demands," even though such documentation is explicitly only required if requested, 6 C.F.R. § 5.45(b). Opp. to MTC, Dkt. No. 73 at 13.[2]

---

[1] *See* Fraidenburg Decl. ISO Opp. to MTC, Dkt. No. 73-1 at ¶ 7.

[2] The government's response to Plaintiffs' motion to compel was similar, singularly predicated on *Touhy*. *See* Gov't. Opp. to MTC, Dkt. No. 74 (arguing that "Plaintiffs made no attempt to comply with the *Touhy* process").

MVM further argued that Plaintiffs must file a separate action under the Administrative Procedures Act ("APA") against the government to compel the discovery. Opp. to MTC, Dkt. No. 73 at 13. But "[t]his misstates the law." Tentative Order, Dkt. No. 76 at 9. Under the governing case in the Ninth Circuit, *Exxon Shipping Co. v. Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994), "courts should assess a government agency's refusal to submit to discovery based on *Touhy* regulations according to the Federal Rules of Civil Procedure, rather than through a separate APA action." Tentative Order, Dkt. No. 76; *see also* Pls.' Suppl. Br., Dkt. No. 84 at 5–6 (collecting cites). MVM made no mention of *Exxon* in its initial response papers, nor did the government. *See* Opp. to MTC, Dkt. No. 73; Gov't Opp to MTC, Dkt. No. 74.

In tentatively granting Plaintiffs' motion, the Court dismissed outright any potential non-compliance with *Touhy*. Dkt. No. 76 at 5–7 (emphasizing that 6 C.F.R. § 5.43 requires "employees," like MVM, to forward a copy of the demand, which had occurred here based on MVM's sworn admissions). Further, guided by *Exxon*, the Court analyzed the motions under the Federal Rules of Civil Procedure, finding that any concerns could be addressed through a protective order. *Id.* at 7–8. The Court also provided the parties an opportunity to respond and set an in-person hearing. *Id.*

In MVM's supplemental brief responding to the Court's order, MVM again argued that the government had "not been afforded the protection of the *Touhy* process or the protections of the federal discovery rules." Dkt. No. 83 at 2. MVM also repeated that Plaintiffs failed to provide their discovery requests to the government, *see id.* at 4, despite the Court's ruling that service of Plaintiffs' requests clearly *had* been achieved consistent with the regulations. Finally, MVM argued that *Exxon* does not apply unless the government is a party to the case, *see id.*, even though *Exxon* explicitly holds otherwise. *See* 34 F.3d at 780 ("[D]istrict courts should apply the federal rules of

PLS.' SUPPL. BRIEF FOR ATTORNEY FEES &   CASE NO.: 3:24-cv-01265-DMS-AHG
LITIG. COSTS FOR PLS.' MOT. TO COMPEL

discovery when deciding on discovery requests made against government agencies, *whether or not the United States is a party to the underlying action*.") (emphasis added).

Plaintiffs, addressing these issues for the first time, detailed the relevant standards and implications under *Touhy*, *Exxon*, and their progeny. *See* Dkt. No. 84.

The parties appeared for an in-person hearing before the Court on July 31, 2025, which was called because the Court found that "red flags" were "very clearly, flying high." Tr. 4:15–19. The Court expressed concern that MVM's brief reflected "an exercise in delay and avoiding discovery." Tr. 4:20. In particular, the Court admonished the government for representing non-compliance with *Touhy* as a "game to avoid discovery," Tr. 5:23–15:16, and admonished MVM for representing the same, Tr. 30:1–7; 32:6–33:6 (finding MVM's *Touhy* arguments "contrary and misleading"). MVM conceded that it was not accurate to argue that government was not afforded the protections of the Federal Rules. Tr. 19:14–20:10. Further, Judge Goddard concluded that MVM "presented a false picture of the state of the law in the Ninth Circuit to this Court" by failing to cite *Exxon* in its initial brief and advancing positions directly at odds with *Exxon*. Tr. 22:12–14. Both MVM and the government had no justification, and MVM's counsel admitted *Exxon* was "clear." Tr. 31:2–7.

In drafting the motion to compel and supplemental brief, as well as preparing for and attending the hearing, Plaintiffs incurred 209.5 hours in lodestar, amounting to $136,287.00, and $7,086.14 in expenses. *See* Ex. 1, Van Houten Decl. Exs. B & C.

**B. LEGAL STANDARD**

Under Rule 37, after granting a motion to compel, "the court *must . . .* require the party [ ] whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added). As this Court explained, "[a] key purpose of Rule 37 sanctions in a situation where one

party's discovery conduct necessitates a motion to compel is to discourage unnecessary involvement of the court in discovery." *Orthopaedic Hosp. v. Encore Med., L.P.*, No. 3:19-cv-00970-JLS-AHG, 2021 WL 5449041, at *8 (S.D. Cal. Nov. 19, 2021) (quoting *Marquis v. Chrysler Corp.*, 577 F.2d 624, 642 (9th Cir. 1978)) (cleaned up). Consequently, if the Court must get involved and grants a motion to compel, there is a *presumption* that fee-shifting sanctions will be awarded to the moving party. *Id.*

Only three exceptions are available under Rule 37: "[1] if the moving party failed to attempt in good faith to resolve the dispute without court action, [2] the opposing party's response was substantially justified, or [3] other circumstances exist that make an award of expenses unjust." *Hall v. Marriott Int'l, Inc.*, No. 3:19-cv-01715-JLS-AHG, 2021 WL 1906464, at *34 (S.D. Cal. May 12, 2021); Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). The burden of establishing an exception rests on the party being sanctioned. *Orthopaedic Hosp.*, 2021 WL 5449041, at *5; *see also Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983).

## III. RULE 37 MANDATES THAT MVM MUST PAY PLAINTIFFS' REASONABLE EXPENSES INCURRED IN LITIGATING THE MOTION TO COMPEL.

Since the Court granted Plaintiffs' motion to compel, Dkt. Nos. 76 & 87, there is a presumption that fee-shifting sanctions shall be awarded to Plaintiffs. MVM cannot demonstrate that any exceptions to the Rule are warranted, given the misleading nature of its positions in the dispute. Rule 37 thus mandates that MVM should pay Plaintiffs' reasonable expenses incurred in litigating the motion to compel.

### A. Plaintiffs Attempted to Resolve the Dispute Without the Court.

The first exception to Rule 37 only applies "if the moving party failed to attempt in good faith to resolve the dispute without court action." *Hall*, 2021 WL 1906464, at *34. The opposing party bears the burden of demonstrating that the moving party did

PLS.' SUPPL. BRIEF FOR ATTORNEY FEES &     CASE NO.: 3:24-cv-01265-DMS-AHG
LITIG. COSTS FOR PLS.' MOT. TO COMPEL

not do so. *Gopher Media, LLC v. Spain*, 2020 WL 6449193, at *2 (S.D. Cal. Nov. 3, 2020). Engaging in discovery conversations appropriately and timely demonstrates that the moving party did, in fact, attempt to resolve the dispute without court action. *See id.*

There is no basis for evading Rule 37's fee mandate predicated on this exception. Plaintiffs attempted in good faith to resolve the dispute without involving the Court. Plaintiffs appropriately and timely engaged in discovery conversations for months, including participating in a Rule 26(f) and Case Management Conference and issuing reasonable discovery requests. Plaintiffs also engaged in a back and forth with MVM specifically regarding the confidentiality clause. *See* Van Houten Decl. ISO MTC, Dkt. No. 70-2 at ¶ 12–20. At no point during any of these communications did MVM raise its *Touhy* objections.

The parties coordinated to raise the issue to the Court, and the Court instructed Plaintiffs to file the *ex parte* motion, predicated on the understanding that MVM was not opposed to the discovery but constrained by the government's objections. *See supra* Part II.A. Informed by this mistaken understanding, Plaintiffs worked with MVM to resolve the dispute prior to filing the motion, ultimately unsuccessfully. *See* Dkt. No. 70-2 at ¶ 12–20. Because Plaintiffs attempted in good faith to resolve the dispute without Court action, Rule 37(a)(5)(A)(i)'s exception does not apply.

### B. MVM's Position Was Not Substantially Justified Because It Was Based on Factual and Legal Misrepresentations.

Nor will MVM be able to show that its position in resisting Plaintiffs' discovery was "substantially justified." *Hargis v. Pacifica Senior Living Mgmt. LLC*, 2025 WL 2427836, at *3 (C.D. Cal. May 12, 2025). Based on Supreme Court and Ninth Circuit authority, a party's position is only "substantially justified" if there is a "genuine dispute" or "reasonable people could differ" on the appropriateness of the request. *Id.* (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). MVM clearly cannot demonstrate

that its objections to Plaintiffs' discovery requests were justified. *See, e.g.*, *Gopher*, 2020 WL 6449193, at *2 (finding a party's discovery position not justified where discovery responses were "inadequate, improper, and evasive, that its objections lacked merit, and that its confidentiality designations were abusive").

First, the Court already indicated that it would not be able to find MVM's position substantially justified given "how late in the game . . . the issue was raised about the confidentiality clause." Tr. 21:10–15. Indeed, only days before the (extended) deadline for MVM's discovery requests, MVM raised its objections with respect to confidentiality. Dkt. No. 70-2 at ¶ 12–13. Worse, in those discussions, MVM did not raise "any claim that the *Touhy* regulations had not been followed" in the meet-and-confer process, Tr. 21:7-15—thus undermining any productive resolution, even assuming *arguendo* MVM's concerns under *Touhy* were valid.

Second, MVM argued that Plaintiffs had failed to comply with the agency's *Touhy* procedures, which the Court found to be "contrary and misleading." Tr. 30:1-7; Dkt. No. 73 at 12–13. MVM reiterated those characterizations, which had no basis in fact or law, in its supplemental brief. Dkt. No. 83. At the July 31, 2025 hearing, MVM admitted that the government had received sufficient protections under *Touhy* and the Federal Rules of Civil Procedure. Tr. 20:9-10. There was simply no factual or legal basis for MVM's positions, much less were those positions substantially justified.

Finally, MVM "presented a false picture of the state of the law in the Ninth Circuit." Tr. 22:12-14. Specifically, in its initial opposition, MVM represented that it was necessary for Plaintiffs to pursue an APA action against the government, failing to cite controlling law in the Ninth Circuit, *Exxon*, that mandates the opposite standard. Tr. 22:24-23:4. Even after the Court alerted MVM to *Exxon* and gave MVM an opportunity to correct itself, MVM made further mischaracterizations. *See* Dkt. No. 83 at 3–5. MVM pointed to no authority for its position that *Exxon* did not apply and

exclusively cited case law outside this Circuit. *See id.* At the conference, MVM admitted that *Exxon*'s direction was "clear." Tr. 31:6–7. Thus, far from "substantially justified," MVM's positions contravened Ninth Circuit law and were objectively unreasonable.

### C. No Other Circumstances Make an Award of Expenses Unjust.

The final Rule 37 exception considers whether an award of expenses would be unjust. Where, as here, the opposing party's conduct "spawned multiple rounds of unnecessary briefing on issues that could have been easily avoided if [the opposing party's] counsel had taken a more cooperative and collaborative tack," sanctions are in the interest of justice. *Orthopaedic Hosp.*, 2021 WL 5449041, at *9–10.

MVM's positions throughout the parties' early discovery process, including their failure to raise *Touhy* and misstatements of fact and law, "spawned multiple rounds of unnecessary briefing" and oral argument. *Id.* Had MVM taken a more cooperative approach, the parties simply could have raised a process for government's review of the discovery, without a protracted briefing process. Instead, Plaintiffs were forced to file a motion (that they originally believed MVM would not oppose), draft supplemental briefing, and prepare for a substantive argument on issues that were ultimately manufactured. Even assuming MVM "dropped the ball" rather than "hid the ball," Tr. 33:2–4, MVM's conduct appears to be aimed at resisting the discovery process. Under these circumstances, there is nothing "unjust" in awarding fees.

### IV. PLAINTIFFS' FEES ARE REASONABLE AND SHOULD BE AWARDED IN THEIR ENTIRETY.

If fee-shifting sanctions are awarded, courts in the Ninth Circuit utilize the lodestar method for assessing reasonableness. *Hall*, 2021 WL 1906464, at *35. Under the lodestar method, the Court must "multiply[ ] the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). To demonstrate that Plaintiffs' hourly

rates are reasonable and in line with prevailing rates in the Southern District of California, Plaintiffs may produce affidavits from counsel, as well as evidence "that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987).

The skill, reputation, and experience of each of the Hausfeld LLP attorneys who billed time to this dispute are set forth in the accompanying affidavit and attached exhibits. *See* Ex. 1, Van Houten Decl. Plaintiffs have also included a description of each of the attorneys' professional backgrounds and a resume specific to Hausfeld's human rights practice. *See id.*, Ex. A.

Plaintiffs' proposed rates, hours billed, and a description of the work for each attorney or paralegal who worked on this dispute are listed in Exhibit B. Specifically, Hausfeld dedicated a total of 209.5 hours to the motion to compel, supplemental briefing, and hearing—amount to $136,287.00. *See id.*, Ex. B at ¶ 22.

Both in the Southern District of California and in their home offices, the rates of Plaintiffs' counsel are reasonable, particularly when compared against the rates of other lawyers with comparable skill and experience. Indeed, this Court approved rates similar to those proposed by Plaintiffs for work done years ago. *See, e.g.*, *Herring Networks, Inc. v. Maddow*, No. 3:19-cv-1713-BAS-AHG, 2021 WL 409724, at *7 (S.D. Cal. Feb. 5, 2021) (approving hourly rates for work done in 2019 and 2020 of $1,150 and $1,130 for two partners at Gibson, Dunn & Crutcher LLP; $720 for a senior associate; $470 for two mid-level associates with three years of experience each; and $265 for an experienced paralegal); *Hall*, 2021 WL 1906464, at *34–35 (approving an hourly rate of $550 for a mid-level associate with 4–5 years of experience for work done in 2021).

The hourly rates of Plaintiffs' counsel are also hundreds of dollars lower than those approved recently by the Ninth Circuit in an antitrust case in Los Angeles. *LA*

Pls.' Suppl. Brief for Attorney Fees & Litig. Costs for Pls.' Mot. to Compel

Case No.: 3:24-cv-01265-DMS-AHG

*Int'l Corp. v. Prestige Brands Holdings, Inc.*, "2026 WL 504763 at *12–14 (9th Cir. Feb. 24, 2026) (approving hourly rates of $1,314 for the named partners and $1,001 for junior partners). The Ninth Circuit emphasized that "[f]irst-rate attorneys who prevail in litigation are entitled to receive fees commensurate with their skill, experience, and reputation, even if their clients [] don't have Fortune 500 budgets to hire big law firms to represent them." *Id.* at *14. Plaintiffs' counsel have similar skill, experience, and reputation as the attorneys in these cases, yet seek even lower rates.

The total hours billed on this dispute are likewise reasonable. The work that Plaintiffs seek to compensate does not include meeting and conferring with MVM or reviewing deficient discovery responses—only fees incurred in drafting the motion to compel and supplemental briefing and attending the hearing. *See Hargis*, 2025 WL 2427836, at *9. Further, Hausfeld attorneys appropriately coordinated tasks to avoid unnecessary duplication. *See id.* The core team dedicated to these tasks consisted of one partner, one associate, and one paralegal. *See* Ex. 1, Van Houten Decl. at ¶ 21. As the hours demonstrate, a second partner and associate were used surgically. *Id.*

## V. CONCLUSION

MVM's ill-founded denial and delay of Plaintiffs' discovery required lengthy motion practice to resolve. Accordingly, and for all the reasons stated herein, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for attorney fees, calculated based on hours reasonably expended at rates reasonably charged.

Dated: March 4, 2026                    Respectfully Submitted,

                                        */s/ Mary S. Van Houten Harper*
                                        Mary Sameera Van Houten Harper*

---

PLS.' SUPPL. BRIEF FOR ATTORNEY FEES &     CASE NO.: 3:24-cv-01265-DMS-AHG
LITIG. COSTS FOR PLS.' MOT. TO COMPEL

10

Amanda Lee-DasGupta*
Mandy Boltax*
**Hausfeld LLP**
1200 17th Street NW, Suite 600
Washington, DC 20036
Tel.: (202) 540-7200
mvanhouten@hausfeld.com
alee@hausfeld.com
mboltax@hausfeld.com

Katie R. Beran*
**Hausfeld LLP**
325 Chestnut Street
Philadelphia, PA 19106
Tel.: (215) 985-3270
kberan@hausfeld.com

James Gotz*
**Hausfeld LLP**
One Marina Park Drive, Suite 14010
Boston, MA 02210
Tel.: (617) 207-0600
jgotz@hausfeld.com

Ashley Crooks*
Erika A. Inwald*
**Hausfeld LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel.: (646) 357-1100
acrooks@hausfeld.com
einwald@hausfeld.com

Paul L. Hoffman (SBN 71244)
John C. Washington (SBN 315991)
**Schonbrun Seplow Harris Hoffman & Zeldes LLP**

PLS.' SUPPL. BRIEF FOR ATTORNEY FEES &
LITIG. COSTS FOR PLS.' MOT. TO COMPEL

CASE NO.: 3:24-cv-01265-DMS-AHG

11

200 Pier Avenue, #226
Hermosa Beach, CA 90254
Tel.: (310) 717-7373
hoffpaul@aol.com
jwashington@sshhzlaw.com

Helen I. Zeldes (SBN 220051)
**Schonbrun Seplow Harris Hoffman & Zeldes LLP**
501 West Broadway, Suite 800
San Diego, CA 92101
Tel.: (619) 400-4990
hzeldes@sshhzlaw.com

Andrew Fels*
**Al Otro Lado**
511 E. San Ysidro Boulevard, #333
San Ysidro, CA 92173
Tel.: (323) 238-9935
andrew@alotrolado.com

*Admitted pro hac vice*

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 4, 2026, I filed the foregoing document and supporting papers with the Clerk of the Court for the United States District Court, Southern District of California, by using the Court's CM/ECF system. I also served counsel of record via this Court's CM/ECF system.

*/s/ Mary S. Van Houten Harper*
Mary Sameera Van Houten Harper
