PILLSBURY WINTHROP SHAW PITTMAN LLP
PAUL J. FRAIDENBURGH (280354)
MICHELLE A. HERRERA (209842)
DYLAN M. ASTE (281341)
ALEXANDER P. CARROLL (339890)
11682 El Camino Real, Suite 200
San Diego, CA 92130
Telephone: 858-509-4000; Facsimile: 858-509-4010
Email: paul.fraidenburgh@pillsburylaw.com
dylan.aste@pillsburylaw.com
michelle.herrera@pillsburylaw.com
alexander.carroll@pillsburylaw.com

Attorneys for Defendant MVM, Inc.
(*additional counsel on signature page*)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Padre (*alias*), Junior (*alias*), I.V.S. (*alias*), and A.V.L. (*alias*), *by and through I.V.S., on behalf of themselves and all others similarly situated,*<br><br>Plaintiffs,<br><br>vs.<br><br>MVM, INC.,<br><br>Defendant. | Case No. 3:24-cv-01265-DMS-AHG<br><br>**DEFENDANT MVM, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date: June 5, 2026<br>Time: 1:30 p.m.<br>Courtroom: 13A<br><br>Judge: Hon. Dana M. Sabraw<br><br>Complaint Filed: July 23, 2024<br>Trial Date: None Set |

**TABLE OF CONTENTS**


Page

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. MVM did not waive its right to file its motion to dismiss .......... 1

B. Count I: Failure to state a claim for violation of safe conduct. .......... 2

1. Plaintiffs' lack of lawful presence in the United States defeats their claim for violation of safe conduct. .......... 2

2. Plaintiffs' allegations of coordination with the Government defeat their claim for violation of safe conduct. .......... 4

C. Count II: Failure to state a claim for enforced disappearance. .......... 5

D. Count VIII: Failure to adequately plead § 52.1 Bane Act claim. .......... 6

1. Plaintiffs fail to allege interference by MVM itself. .......... 6

2. Plaintiffs fail to allege that MVM used threats, intimidation, or coercion to interfere with Plaintiffs' constitutional rights. .......... 8

E. Statute of Limitations: The Bane Act claim is time-barred as to certain members of the Third Minor Subclass. .......... 9

1. The Court should consider statute of limitations now. .......... 9

2. The two-year limitations period applies. .......... 9

3. The Third Minor Subclass definition is facially defective. .......... 10

III. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*United States v. Ali*,
2025 WL 1732852 (D. Ariz. June 23, 2025) ........ 3

*Austin B. v. Escondido Union Sch. Dist.*,
149 Cal. App. 4th 860 (2007) ........ 6, 8

*Bellaire Recovery, Inc. v. Premera Blue Cross Blue Shield of Alaska*,
2026 WL 826641 (C.D. Cal. Mar. 23, 2026) ........ 1

*United States v. Escobar-Temal*,
161 F.4th 969 (6th Cir. 2025) ........ 2

*Fleites v. MindGeek S.A.R.L.*,
617 F. Supp. 3d 1146 (C.D. Cal. 2022) ........ 7

*Gatto v. County of Sonoma*
98 Cal.App.4th 744, 760 (2002) ........ 10

*Geo Grp., Inc. v. Menocal*,
146 S. Ct. 774 (2026) ........ 4

*Jesner v. Arab Bank, PLC*,
584 U.S. 241 (2018) ........ 5

*Johnson v. Eisentrager*,
339 U.S. 763 (1950) ........ 2

*Kavafoglu v. Nielsen*,
2019 WL 172865 (S.D. Tex. Jan. 11, 2019) ........ 4

*Khan v. City of Lodi*
2025 WL 1651934, at *2-3 (E.D. Cal. June 11, 2025) ........ 10

*Kreek v. Wells Fargo & Co.*,
652 F. Supp. 2d 1053 (N.D. Cal. 2009) ........ 9

*Lessin v. Ford Motor Co.*,
2020 WL 6544705 (S.D. Cal. Nov. 6, 2020) ........ 7

*Lorenzo v. United States*,
2010 WL 11508278 (S.D. Cal. Oct. 21, 2010) (Sabraw, J.) .............................. 1

*Metwaly v. Barr*,
2021 WL 857744 (N.D. Ga. Mar. 8, 2021) .............................................. 4

*Murray v. Terhune*,
2007 WL 1888353 (E.D. Cal. June 27, 2007) .......................................... 7

*Price v. Peerson*,
2013 WL 12140472 (C.D. Cal. Nov. 22, 2013) ........................................ 7

*Pugliese v. Superior Court*
146 Cal. App. 4th 1444, 1450 n.4 (2007) ............................................. 10

*Quinn v. Proctor & Gamble Co.*,
2026 WL 26081 (S.D. Cal. Jan. 5, 2026) .............................................. 1

*Reese v. Cnty. of Sacramento*,
888 F.3d 1030 (9th Cir. 2018) ........................................................... 8

*Rogers v. City of Grover Beach*
2025 WL 1927618 (E.D. Cal. July 14, 2025) ......................................... 10

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) ........................................................... 7

*Su v. Mayorkas*,
698 F. Supp. 3d 1168 (N.D. Cal. 2023) ............................................... 4

*Sudomir v. McMahon*,
767 F.2d 1456 (9th Cir. 1985) ........................................................... 4

*Swadener v. California*
2025 WL 1095377, at *3 (S.D. Cal. Mar. 3, 2025) ................................. 9, 10

*Taveras v. Taveraz*,
477 F.3d 767 (6th Cir. 2007) ........................................................... 3, 5

*Tremblay v. OpenAI, Inc.*,
742 F. Supp. 3d 1054 (N.D. Cal. July 30, 2024) ..................................... 1

*Trump et al. v. Barbara et al.*,
No. 25-365 (Jan. 27, 2026) ............................................................... 2

*Velarde v. City of Union City*, 2006 WL 3086718 (N.D. Cal. Oct. 30, 2006) .......... 10

*White v. Los Angeles Cnty.*, 2022 WL 2052655 (C.D. Cal. Mar. 3, 2022) .......... 10

*Wilson v. City of Oakland*, 2012 WL 669527 (N.D. Cal. Feb. 29, 2012) .......... 10

<u>Statutes and Codes</u>

United States Code
Title 8, Section 1158(a)(1) .......... 3

California Civil Code
Section 49(a) .......... 6, 7, 9, 10
Section 52.1 .......... 6

<u>Rules and Regulations</u>

Code of Federal Regulations
Title 8, Section 209.2(a)(1) .......... 4

Federal Rules of Civil Procedure
Rule 12 .......... 1
Rule 12(b)(6) .......... 1
Rule 12(c) .......... 1
Rule 12(g)(2) .......... 1
Rule 12(h)(2) .......... 1

Rule 12(b)(6) .......... 1, 7

<u>Other Authorities</u>

Thomas H. Lee, *The Safe-Conduct Theory of the Alien Tort Statute*, 106 Colum. L. Rev. 830, 905 (2006) .......... 2

# I. INTRODUCTION

Plaintiffs did not plead the necessary facts, so they argue procedure. Yet MVM's Motion is proper. When Plaintiffs do argue merits, they import facts not pled. Such efforts do not cure the FAC's defects: Plaintiffs were not lawfully present in the U.S., as necessary for safe conduct privilege; MVM did not enforce the disappearance of parents; and the Bane Act claim fails because the alleged constitutional interference occurred before any MVM transport. The Court should grant MVM's Motion.

# II. ARGUMENT

## A. MVM did not waive its right to file its motion to dismiss.

Rule 12(h)(2) preserves Rule 12(b)(6) defenses and permits them to be raised later, including through a motion brought under Rule 12(c) or at trial. Amended complaints supersede prior pleadings and permit renewed Rule 12 challenges to the operative complaint. *Tremblay v. OpenAI, Inc.*, 742 F. Supp. 3d 1054, 1057 (N.D. Cal. July 30, 2024) (rejecting the argument that the court should "disallow Defendants' motion to dismiss" because defendants "could have raised that issue in their first motion to dismiss and failed to do so," explaining that "an 'amended complaint supersedes the original, the latter being treated thereafter as nonexistent'"). Courts permit new Rule 12(b)(6) arguments when a complaint is amended. *See Quinn v. Proctor & Gamble Co.*, 2026 WL 26081, at *7 (S.D. Cal. Jan. 5, 2026) (collecting cases) ("Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion."); *Bellaire Recovery, Inc. v. Premera Blue Cross Blue Shield of Alaska*, 2026 WL 826641, at *4 (C.D. Cal. Mar. 23, 2026) ("Courts in this Circuit therefore have permitted defendants moving to dismiss an amended complaint to make arguments previously made and to raise new arguments that were previously available.").

Addressing the issues will not prejudice any party and will avoid duplicative briefing, unnecessary expense, and needless expenditure of judicial resources. Plaintiffs have addressed the merits of MVM's motion; this Court should as well. *See Lorenzo v. United States*, 2010 WL 11508278, at *3 (S.D. Cal. Oct. 21, 2010) (Sabraw, J.).

**B. Count I: Failure to state a claim for violation of safe conduct.**

**1. Plaintiffs' lack of lawful presence in the United States defeats their claim for violation of safe conduct.**

Plaintiffs' arguments for violation of safe conduct are: (1) Plaintiffs were "lawfully present" when they crossed the border; and (2) any "alien who is not an enemy, regardless of how they came to be in the United States" is entitled to safe conduct passage. Opp. at 22. This misstates the pleaded facts, the history, and the law.

Lawful presence in the U.S. is a fundamental requirement for a safe conduct claim, not a manufactured "carve-out" as Plaintiffs contend. At the time of the founding, safe-conduct rights included limited distinction between lawful and unlawful entry, as "the concept of illegal immigration did not exist as we know it today." *United States v. Escobar-Temal*, 161 F.4th 969, 976 (6th Cir. 2025). Indeed, the Government began regulating immigration in the 1800s, roughly a century after passing the ATS. *See id.*

Following this regulation, the Supreme Court provided that <u>lawful</u> presence creates implied safe conduct rights. *See Johnson v. Eisentrager*, 339 U.S. 763, 770 (1950) ("Mere lawful presence in the country creates an implied assurance of safe conduct."). Historical sources bolster this principle. Br. for Prof. Ilan Wurman as Amicus Curiae Supp. Pet'rs, *Trump et al. v. Barbara et al.*, No. 25-365, at 11–17 (Jan. 27, 2026) (outlining that, based on U.S. law and European historical understanding dating back to the twelfth and thirteenth centuries, "aliens who came unlawfully would not have been under the king's protection" and, therefore, lack a right to safe conduct).

Plaintiffs' argument that safe conduct claims would be "effectively neutered" if unavailable to immigrants who illegally enter the country is unpersuasive. Opp. at 23. Non-citizens who enter the country legally (*e.g.*, passport, visa) and suffer torts may assert safe conduct claims. *See* Thomas H. Lee, *The Safe-Conduct Theory of the Alien Tort Statute*, 106 Colum. L. Rev. 830, 905 (2006) ("any Japanese tourist with a valid

passport and visa mugged in Detroit has a safe-conduct claim she might bring in U.S. federal court."). The doctrine's historical purpose is not to "promise safety to any alien who is not an enemy, regardless of how they came to be in the [U.S.]" as Plaintiffs contend. Opp. at 22. Accepting their view would mean any non-citizen who crosses the border instantly gains safe conduct rights, unless their country is at war with the U.S., undermining the doctrine's intent of preventing unsanctioned conduct that might provoke international conflict. *See Taveras v. Taveraz,* 477 F.3d 767, 773 (6th Cir. 2007). Instead, the doctrine protects lawfully present foreign nationals from conduct that provokes hostilities between their countries and the U.S. The lawful presence requirement comports with historical understanding, the founders' understanding of the privilege, and Supreme Court precedent.

Further, Plaintiffs do not allege they were lawfully present in the U.S. after crossing the border. While they argue they were "lawfully present based on their status as asylum seekers," Opp. at 22, their FAC only alleges that Padre, Junior, and AVL intended to seek asylum, not that they actually did. FAC at ¶¶143, 174. The only mention of any asylum claim is that IVS awaited "the adjudication of his asylum claim." *See* FAC at ¶182. But even if all Plaintiffs alleged applying for asylum (they did not), an asylum application does not create lawful presence. Plaintiffs' claim that "asylum-seekers *are* lawfully present in the United States" misstates the law. *See* Opp. at 22. Plaintiffs' cited asylum statute contemplates that an asylum application does not confer legal presence. *See* 8 U.S.C. § 1158(a)(1) (An alien in the U.S. may apply for asylum "irrespective of such alien's status."). This section conveys no intervening status and does not transform unlawful status into lawful presence. Courts across the country have held that an asylum application does not convey lawful status. *See United States v. Ali*, 2025 WL 1732852, at *6 (D. Ariz. June 23, 2025) ("the fact that Defendant applied for asylum did not suddenly make his presence lawful, and it is not reasonable to believe otherwise," and "the fact that the United States allowed [an asylum applicant] to move throughout the country and earn a living during that lengthy

interim does not render his otherwise unlawful presence lawful"); *Metwaly v. Barr*, 2021 WL 857744, at *6 (N.D. Ga. Mar. 8, 2021) (a "pending asylum application did not confer lawful immigration status"); *Kavafoglu v. Nielsen*, 2019 WL 172865, at *3 (S.D. Tex. Jan. 11, 2019) (The "mere filing of that application, without more, did not create or establish any new, 'lawful' status on their behalf."); *see also Sudomir v. McMahon*, 767 F.2d 1456, 1459 (9th Cir. 1985) (rejecting the argument that "those who apply [for asylum] are lawfully present," while providing "the issue is a close one," and stating such an interpretation "stretches [the statutory] language considerably to have it embrace an alien illegally present in the United States who has merely applied for asylum").[1] An alien's presence in the U.S. becomes lawful only upon the granting of asylum; until then, it is unlawful. *See* 8 C.F.R. § 209.2(a)(1) (allowing "the status of any alien who has been granted asylum" to then become a lawful resident provided certain criteria are met). Further, even if an asylum application equated lawful presence (it does not), Plaintiffs do not allege all Plaintiffs applied for asylum or MVM's conduct occurred after they applied. Just like an asylum application, a purported intent to seek asylum does not confer lawful presence.

### 2. Plaintiffs' allegations of coordination with the Government defeat their claim for violation of safe conduct.

Plaintiffs incorrectly claim MVM is reviving a derivative sovereign immunity defense; that is not the basis for MVM's safe conduct argument.[2] Opp. at 24. Rather, MVM's argument spotlights the fatal inconsistency of Plaintiffs' allegations when juxtaposed against the core purpose of safe-conduct rights. MVM cannot simultaneously be working "in coordination with public officials" to operate as the Government's "hammer," while also violating safe conduct rights that exist to prevent

---

[1] In limited circumstances, asylum applicants have been deemed "lawfully present" for purposes of applying for certain benefits, such as social security benefits. *Su v. Mayorkas*, 698 F. Supp. 3d 1168, 1172 (N.D. Cal. 2023).

[2] MVM notes that Plaintiffs mischaracterize *Geo Grp., Inc. v. Menocal*, 146 S. Ct. 774 (2026). The case addressed whether a contractor could immediately appeal a denial of *Yearsley* defense; the answer was "no." It does not undermine MVM's arguments.

"just war." FAC ¶¶ 7, 80, 222; *see Taveras,* 477 F.3d at 773.

The parties agree that the ATS's intent was to "avoid foreign entanglements by ensuring the availability of a federal forum where the failure to provide one might cause another nation to hold the United States responsible for an injury to a foreign citizen." *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 255 (2018). That is particularly so for safe conduct claims that are designed to prevent "just war" arising from torts visited upon aliens. *Taveras,* 477 F.3d at 773. Such concerns about provoking hostilities between the U.S. and foreign nations are non-existent where, as here, the purported tortfeasor is alleged to have acted "in coordination" with the Commander in Chief. The FAC alleges that the Trump Administration launched the so-called Family Separation Campaign using "state-sanctioned kidnapping." *See* FAC ¶¶ 2, 30-61 ("U.S. officials created and implemented the Family Separation Campaign."). In other words, as alleged, the U.S. weighed the risks and chose to pursue the "campaign." Thus, when safe conduct rights are granted by a sovereign, a claim cannot be brought against a party acting under the sovereign's direction. Because a safe conduct claim requires protection of the sovereign and lawful presence, and because the FAC alleges neither, the claim fails.

**C. Count II: Failure to state a claim for enforced disappearance.**

MVM's Motion presents a narrow challenge to Plaintiffs' claim for enforced disappearance, *i.e.* Padre and IVS do not plead facts sufficient to establish MVM enforced their disappearance. Instead of addressing this issue, Plaintiffs argue MVM's Motion should be denied because the Court previously found Plaintiffs stated a claim for enforced disappearance as to separated children. Plaintiffs distract from the point.

Plaintiffs allege that Padre and IVS and each and every other putative parental class member were subjected to enforced disappearance. FAC ¶ 212 ("Defendant intentionally and knowingly participated in, conspired in, and aided and abetted the enforced disappearance of Plaintiffs and the Class.") The facts Plaintiffs plead in support of the claim all relate to the alleged forced disappearance of children. *Id.*, § II ("MVM Separates and Forcibly Disappears Thousands of Children"). While Plaintiffs

insist that parents of separated children may assert a claim for enforced disappearance for harm parents allegedly suffered as a result, that is not what they allege in the FAC. Plaintiffs' Opposition does not contest that they do not plead facts supporting their claim that MVM aided and abetted the enforced disappearance of Padre and IVS. Plaintiffs' enforced disappearance claim should be dismissed as pleaded.

### D. Count VIII: Failure to adequately plead § 52.1 Bane Act claim.

#### 1. Plaintiffs fail to allege interference by MVM itself.

Plaintiffs fail to allege that MVM itself interfered with their rights to family integrity or equal protection. *See Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (2007) (the essence of a claim is that the defendant interfered). In urging otherwise, Plaintiffs argue that the Court's earlier finding—that MVM had a "direct role" in family separations because MVM transported Junior away from Padre—necessarily requires the Court to find that MVM interfered with AVL's constitutional rights, too. *See* Opp. at 27-28. Not so.

Here, Plaintiffs allege AVL's constitutional rights were violated when she was separated from IVS based on race, ethnicity, alienage, or national origin; and without finding the parent unfit or dangerous. But this conduct occurred at the moment of separation, and any alleged Bane Act violation was complete then. Indeed, this Court has already concluded that a claim based on violation of the right to family integrity accrues at separation, not reunification. *See* Order at 9. Plaintiffs do not (and cannot) allege MVM was involved in the separation. Indeed, Plaintiffs specifically allege that MVM transported AVL only "after A.V.L. was taken." *Id.* ¶ 178. This is critically distinguishable from Plaintiffs' § 49(a) claim.

In previously denying MVM's motion to dismiss the § 49(a) claim, the Court found that, "regardless of whether Defendant's employees were involved in the actual 'unlawful taking' of Junior away from Padre, [Plaintiffs'] allegations would suffice to show Defendant was engaged in the 'unlawful withholding of the minor children' from the custody of the parents, which is enough to state a claim under section 49(a)." Order

at 20. Accordingly, while continued withholding can violate § 49(a), Plaintiffs have not identified a single Bane Act case holding that mere transportation following the deprivation of constitutional rights can constitute interference with those rights. The cases establish the opposite. *See Price v. Peerson,* 2013 WL 12140472, at *13 (C.D. Cal. Nov. 22, 2013) (dismissing Bane Act claim where alleged constitutional violation was attributable to other actors); *Murray v. Terhune*, 2007 WL 1888353, at *5–6 (E.D. Cal. June 27, 2007), *R. & R. adopted*, 2007 WL 2726570 (E.D. Cal. Sept. 17, 2007) (holding, in a § 1983 action, defendants could not have violated plaintiff's constitutional rights where the alleged violation preceded defendant's conduct).

Plaintiffs alternatively argue that even if MVM is not directly liable for a Bane Act violation, MVM purportedly conspired with the Government to violate it. *See* Opp. at 27-28. The FAC contains no such allegations. While the FAC does allege that MVM conspired to commit other violations, FAC ¶¶ 232-246, Plaintiffs make no such allegation with respect to AVL's Bane Act claim, *id.* ¶¶ 247-50.[3] If Plaintiffs intended to premise their Bane Act claim on a conspiracy theory, they must plead it as such; and Plaintiffs clearly knew how to plead conspiracy when they wanted to. Plaintiffs cannot now attempt to amend their FAC through allegations raised for the first time in opposition to a motion. *See Schneider v. Cal. Dep't of Corr.,* 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."); *Lessin v. Ford Motor Co.,* 2020 WL 6544705, at *3 (S.D. Cal. Nov. 6, 2020) ("[A] Complaint cannot be amended through allegations made in an opposition to a motion to dismiss."). Because Plaintiffs

[3] Reincorporating prior allegations by reference, *see* FAC ¶ 247, does not substitute for pleading the alleged conspiracy as part of the Bane Act claim itself. *See Fleites v. MindGeek S.A.R.L.*, 617 F. Supp. 3d 1146, 1167 (C.D. Cal. 2022) (noting if plaintiff is attempting to use a claim of civil conspiracy "as a means to impute tort liability . . . for some or all of the various torts that she pleads, she must amend her complaint to make clear which tort causes of action" defendant "allegedly conspired to commit").

fail to allege MVM interfered with any constitutional rights or MVM conspired with the Government to do so, the Court should dismiss this claim.

**2. Plaintiffs fail to allege that MVM used threats, intimidation, or coercion to interfere with Plaintiffs' constitutional rights.**

The FAC fails to establish the second Bane Act element, "interference or attempted interference was by threats, intimidation or coercion." *Austin B.*, 149 Cal. App. 4th at 883 (the claim's essence is that defendant interfered "by the specified improper means (*i.e.*, 'threats, intimidation or coercion')").

Plaintiffs allege that "MVM irrefutably acted with threat, intimidation, and coercion" by "forcibly transporting children," "deceiving children repeatedly during transport," and "failing to disclose any details regarding the children's ultimate destinations." Opp. at 29. These allegations do not suffice. As Plaintiffs acknowledge, AVL (and the UACs) had already been separated by the Government before coming into MVM's custody. *See* FAC ¶ 178. And Plaintiffs fail to address any of the case law explaining that "[s]peech alone" cannot support a Bane Act claim unless the speech involves a threat of violence. *See* Mot. at 26 (citing multiple cases).

Moreover, none of this alleged conduct was the means by which the alleged interference with constitutional rights occurred. Plaintiffs' own pleading (and this Court's prior Order) establishes that the alleged constitutional violations (separation based on protected characteristics and without due process) had already occurred before involvement by MVM. *See* Order at 9. Because the alleged constitutional violations occurred before MVM's alleged transportation, any conduct by MVM could not have been the specified improper means by which the alleged constitutional interference occurred. Accordingly, *Reese v. Cnty. of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) does not save Plaintiffs' claim. *Reese* held that the "threat, intimidation, or coercion" element can be inherent in the constitutional violation itself. *See id.* at 1043. As explained, however, Plaintiffs fail to allege that MVM, rather than the Government, committed the alleged violation. Because Plaintiffs failed to allege that MVM's

conduct caused the constitutional interference, Plaintiffs cannot establish the second element of AVL's Bane Act claim, which should be dismissed.

**E. Statute of Limitations: The Bane Act claim is time-barred as to certain members of the Third Minor Subclass.**

**1. The Court should consider statute of limitations now.**

Plaintiffs argue the Court should defer consideration of MVM's defense to the Bane Act claim. Opp. at 32. But because the defense concerns a newly defined subclass (Third Minor Subclass) asserting a new claim, MVM properly raises it now. Although courts generally need not resolve statute-of-limitations defenses for absent class members at the pleading stage, that principle does not require defendants to forfeit facially apparent defenses—especially where, as here, plaintiffs have defined subclasses by age in a manner that has timeliness defects. The Third Minor Subclass is facially defective because it necessarily includes individuals with time-barred claims. Where a proposed subclass is facially time-barred, the Court may address the defect on a motion to dismiss. *See, e.g., Kreek v. Wells Fargo & Co.*, 652 F. Supp. 2d 1053, 1065 (N.D. Cal. 2009) (holding that while individual plaintiffs could continue their actions based on tolling, clearly untimely "class allegations are dismissed" as time barred). Doing so here promotes judicial efficiency, preserves judicial resources, and avoids potentially certifying a defined subclass that includes members who could never have brought timely claims.

**2. The two-year limitations period applies.**

Plaintiffs point out that "either a two- or three-year statute of limitations can apply" to Bane Act claims. Opp. at 33-34.[4] MVM agrees. But which limitations period could apply is not the question. The question is which limitations period applies to Plaintiffs' claim. Because Plaintiffs' claim asserts a constitutional rights violation, the period is two years, not three. This Court held in *Swadener v. California* that Bane Act claims based on constitutional rights violations have a two-year statute of limitations.

[4] Plaintiffs conceded the two-year statute of limitations applies to their § 49(a) claims, and Plaintiffs have withdrawn their § 49(a) claim as to IVS. *See* Opp. at 31 n.18.

2025 WL 1095377, at *3 (S.D. Cal. Mar. 3, 2025).[5] MVM cited *Swadener* in its Motion, but Plaintiffs' Opposition did not acknowledge this decision. In *Gatto v. County of Sonoma*—also not addressed by Plaintiffs—the California Court of Appeal held that civil rights violations alleged under the Bane Act sound in tort and, therefore, are subject to California's personal-injury statute of limitations. 98 Cal. App. 4th 744, 760 (2002). Although California later extended its personal-injury statute of limitations from one to two years, *Gatto* remains good law, and none of the cases cited by Plaintiffs warrant a different conclusion.[6]

**3. The Third Minor Subclass definition is facially defective.**

The Third Minor Subclass includes children separated from March 7, 2017, to January 1, 2021, who were under 21 on July 9, 2025. FAC ¶ 193. This definition captures individuals who turned 18 before July 23, 2022—two years before the Complaint was filed. For these individuals, minority tolling had expired and the two-year statute of limitations ran before the suit commenced. Therefore, Count VIII should be dismissed for any subclass member who turned 18 prior to July 23, 2022.[7]

## III. CONCLUSION

MVM thus respectfully requests that the Court grant its Motion.

---

[5] This Court reiterated that position in this case by applying a two-year limitations period to Plaintiffs' claims alleging other constitutional torts. *See* Order at 9–12. The Bane Act claim alleges the same underlying constitutional violations (family integrity and equal protection). *See* FAC ¶¶ 247–50.

[6] *Khan v. City of Lodi* and *Rogers v. City of Grover Beach* observed that courts might apply either a two- or three-year limitations period—without analyzing which period applied to constitutional tort claims like those here. *See Khan*, 2025 WL 1651934, at *2-3 (E.D. Cal. June 11, 2025), *R. & R. adopted*, 2025 WL 1927618 (E.D. Cal. July 14, 2025); *Rogers*, 2020 WL 5868038, at *4 (C.D. Cal. Aug. 21, 2020), *R. & R. adopted*, 2020 WL 5847302 (C.D. Cal. Sept. 29, 2020). *Wilson v. City of Oakland*, 2012 WL 669527, at *3 n. 6 (N.D. Cal. Feb. 29, 2012) observed that courts "often conflate" California's Unruh, Ralph, and Bane Acts, but did not endorse a three-year limitations period. *Pugliese v. Superior Court* merely applied *Gatto* to conclude that the statutory three-year limitations period for domestic violence actions applied to a civil rights claim premised on domestic violence. 146 Cal. App. 4th 1444, 1450 n.4 (2007). The only authority relied on by *White v. Los Angeles Cnty.*, 2022 WL 2052655, at *3 (C.D. Cal. Mar. 3, 2022), was the other case Plaintiffs cited, *Velarde v. City of Union City*, 2006 WL 3086718, at *5 (N.D. Cal. Oct. 30, 2006). But *Velarde* failed to consider *Gatto* or any other California authority for its conclusion.

[7] Because this definition necessarily includes purported class members reunited and turned 18 prior to July 23, 2022, this same conclusion applies to § 49(a) claims.

Dated: May 29, 2026

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Dylan M. Aste*

Paul J. Fraidenburgh (280354)
Michelle A. Herrera (209842)
Dylan M. Aste (281341)
Alexander P. Carroll (339890)
11682 El Camino Real, Suite 200
San Diego, CA 92130
Telephone: 858-509-4000
Facsimile: 858-509-4010
Email: paul.fraidenburgh@pillsburylaw.com
Email: michelle.herrera@pillsburylaw.com
Email: dylan.aste@pillsburylaw.com
Email: alexander.carroll@pillsburylaw.com

Thomas C. Hill (DC 242974)
(*Admitted Pro Hac Vice*)
Jeffrey J. Izant (DC 1510804)
(*Admitted Pro Hac Vice*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
Telephone: 202-663-8000
Facsimile: 202-663-8007
Email: thomas.hill@pillsburylaw.com
Email: jeffrey.izant@pillsburylaw.com

Robert L. Wallan (126480)
David L. Stanton (208079)
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017
Telephone: 213-488-7100
Facsimile: 213-629-1033
Email: robert.wallan@pillsburylaw.com
Email: david.stanton@pillsburylaw.com

Attorneys for Defendant MVM, Inc.