Amanda Lee-DasGupta (D.C. Bar No. 1619712)*
Mary S. Van Houten Harper (D.C. Bar No. 1045137)*
Mandy V. Boltax (D.C. Bar No. 90013893)*
Shana R. Herman (D.C. Bar No. 337541)*
**Hausfeld LLP**
1200 17th Street NW, Suite 600
Washington, DC 20036
Tel.: (202) 540-7200
alee@hausfeld.com
mvanhouten@hausfeld.com
mboltax@hausfeld.com
sherman@hausfeld.com

* *Admitted pro hac vice*

*Attorneys for Plaintiffs*
*(additional counsel on signature page)*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

Padre (*alias*), Junior (*alias*), I.V.S. (*alias*) and A.V.L. (*alias*), by and through I.V.S. *on behalf of themselves and all others similarly situated,*

*Plaintiffs*,

v.

MVM, Inc.,

*Defendant.*

Case No.: 3:24-cv-01265-DMS-AHG

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Judge: Hon. Dana M. Sabraw
Date: October 16, 2026
Time: 1:30 p.m.
Room: Courtroom 13A

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 1

- **A. History of the Litigation.** ........ 1
- **B. Summary of the Proposed Settlement Terms.** ........ 3
- **C. Proposed Settlement Class Member Benefits and Scope of the Release.** ........ 4
- **D. Notice and Claims Administration.** ........ 6
- **E. Proposed Settlement Class Notice Plan.** ........ 7

III. LEGAL STANDARD ........ 8

IV. ARGUMENT ........ 9

- **A. Certification of the Proposed Settlement Class Is Appropriate.** ........ 9
  - 1. The Settlement Class Satisfies Rule 23(a) Requirements. ........ 10
  - 2. The Proposed Settlement Class Satisfies Rule 23(b)(3). ........ 13
- **B. The Settlement Merits Preliminary Approval.** ........ 14
  - 1. The Class Representatives and Class Counsel Have Adequately Represented the Class. ........ 14
  - 2. The Parties Negotiated the Proposed Settlement at Arm's Length. ........ 14
  - 3. The Quality of Relief to the Class Weighs in Favor of Approval. ........ 16
    - a. Costs, Risks, and Delay of Trial and Appeal. ........ 16
    - b. The Effectiveness of Any Proposed Method of Distributing Relief to the Class. ........ 18
    - c. Proposed Method for Processing Claims. ........ 19
    - d. Proposed Award of Attorneys' Fees. ........ 19

4. The Proposed Settlement Treats All Settlement Class Members Equitably. 20
5. The Parties have No Other Substantive Agreements. 21
**C. The Proposed Notice Is the Best Practicable Under the Circumstances.** 21
**D. Proposed Service Awards.** 23
V. Appointment of Class Representatives and Class Counsel. 24
VI. Appointment of Settlement Administrator and Qualified Escrow Agent. 24
VII. CONCLUSION 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aichele v. City of Los Angeles*,
314 F.R.D. 478 (C.D. Cal. 2013) .......... 14

*Aichele v. City of Los Angeles*,
2015 WL 5286028 (C.D. Cal. Sept. 9, 2015) .......... 19

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .......... 13

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) .......... 10

*Benitez Gonzalez v. O.J. Smith Farms, Inc.*,
2021 WL 136209 (E.D.N.C. Jan. 13, 2021) .......... 22

*Birch v. Off. Depot, Inc.*,
2007 WL 9776717 (S.D. Cal. Sept. 28, 2007) .......... 23

*Churchill Vill., LLC v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) .......... 21

*Craft v. Cnty. of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008) .......... 20

*Dunsmore v. San Diego Cnty. Sheriff's Dep't*,
781 F. Supp. 3d 1091 (S.D. Cal. 2025) .......... 17

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980) .......... 13

*Evon v. Law Offs. of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) .......... 10

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......... 13

*Hart v. Colvin*,
2016 WL 6611002 (N.D. Cal. Nov. 9, 2016) .......... 9

*Howell v. Advantage RN, LLC*,
2020 WL 3078522 (S.D. Cal. June 9, 2020) .......... 17

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) .......... 22

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
308 F.R.D. 606 (N.D. Cal. 2015) .......... 11, 13

*In re Emulex Corp. Sec. Litig.*,
210 F.R.D. 717 (C.D. Cal. 2002) .......... 24

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
21 F.4th 1102 (9th Cir. 2021) .......... 20

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) .......... 8, 9

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .......... 12

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.*,
311 F.R.D. 532 (N.D. Cal. 2015) .......... 11

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) .......... 16

*In re Silvergate Cap. Corp.*,
2026 WL 973368 (S.D. Cal. Feb. 10, 2026) .......... 20

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) .......... 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
267 F.R.D. 291 (N.D. Cal. 2010) .......... 13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
229 F. Supp. 3d 1052 (N.D. Cal. 2017) .......... 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2017 WL 914066 (N.D. Cal. Mar. 6, 2017) .......... 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597 (9th Cir. 2018) .......... 14

*In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .......... 15

*Inland Empire-Immigrant Youth Collective v. Nielsen*, 2018 WL 1061408 (C.D. Cal. Feb. 26, 2018) .......... 10

*Lamb v. Bitech, Inc.*, 2013 WL 4013166 (N.D. Cal. Aug. 5, 2013) .......... 22

*Lane v. Brown*, 166 F. Supp. 3d 1180 (D. Or. 2016) .......... 16

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) .......... 12

*Lo v. Oxnard European Motors, LLC*, 2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) .......... 10

*Lopez v. Boykin Farms, Inc.*, 2026 WL 1196098 .......... 22

*Ms. L. v. U.S. Immigr. & Customs Enf't*, 331 F.R.D. 529 (S.D. Cal. 2018) .......... 10, 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .......... 13

*Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270 (N.D. Cal. 2016) .......... 10

*Nitsch v. Dreamworks Animation SKG Inc.*, 2016 WL 4424965 (N.D. Cal. July 6, 2016) .......... 13

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615 (9th Cir. 1982) .......... 16, 17

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) .......... 11

*Radcliffe v. Experian Info. Sols., Inc.*,
715 F.3d 1157 (9th Cir. 2013) ........ 15

*Rodriguez v. City of Los Angeles*,
No. CV 11-01135 DMG (JEMx), 2014 WL 12515334 (C.D. Cal. Nov. 21, 2014).. 14

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ........ 15, 21

*Roy v. Cnty. of Los Angeles*,
2018 WL 3436887 (C.D. Cal. July 11, 2018)........ 14, 19

*Sali v. Corona Reg'l Med. Ctr.*,
909 F.3d 996 (9th Cir. 2018) ........ 9, 11

*Schneider v. Chipotle Mexican Grill, Inc.*,
336 F.R.D. 588 (N.D. Cal. 2020)........ 22

*Spann v. J.C. Penney Corp.*,
314 F.R.D. 312 (C.D. Cal. 2016)........ 22

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) ........ 8

*Villegas v. J.P. Morgan Chase & Co.*,
2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ........ 15

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)........ 10

**Rules**

Fed. R. Civ. P. 23........ *passim*

**Other Authorities**

4 *Newberg on Class Actions* § 11:53 (4th ed. 2002) ........ 22

## I. INTRODUCTION

Plaintiffs Padre, Junior, I.V.S., and A.V.L. by and through I.V.S. ("Plaintiffs") hereby submit their Motion for Preliminary Approval of Class Action Settlement between Plaintiffs and Defendant MVM, Inc. ("MVM") (collectively, the "Parties"), which is memorialized in the Settlement Agreement Between Plaintiffs and MVM, Inc. (the "Settlement Agreement"). *See* Declaration of Shana Herman ("Herman Decl."), Ex. A. MVM has agreed not to oppose Plaintiffs' Motion. Settlement Agreement at Section 3.1.

In July 2024, Plaintiffs filed this class action lawsuit, seeking damages from federal contractor MVM for its alleged role in the separation of thousands of migrant children from their parents. Following over two years of hard-fought litigation, the Parties have executed the proposed Settlement Agreement. In recognition that the outcome of the Action is uncertain, and that achieving a final result through trial and likely appeals would impose substantial additional risk, delay, and expense on both Parties, the Parties negotiated and agreed to settle the Litigation on the terms and conditions set forth herein.

The Settlement Agreement is the product of well-informed, arm's-length negotiations, facilitated and supervised by Judge Goddard, whose experience and steady hand substantially assisted in this litigation's resolution. MVM's contribution of $48,750,000 to the Settlement Class is an excellent result for the proposed Settlement Class. The Settlement Agreement is fair and reasonable, and delivers immediate benefits to Settlement Class Members, and therefore, merits this Court's Preliminary Approval.

## II. BACKGROUND

### A. History of the Litigation.

Plaintiffs' lawsuit was filed on July 23, 2024, alleging that MVM, a private government contractor that provides security, staffing, and transportation services to

federal agencies, participated in the separation of children from their parents at the U.S.-Mexico border pursuant to the unconstitutional federal family separation campaign that began in 2017. *See Padre v. MVM, Inc.*, No. 3:24-cv-01265-DMS-AHG (S.D. Cal. July 23, 2024) ("*Padre*"), ECF No. 1. Plaintiffs asserted claims under the Alien Tort Statute for the violation of safe-conducts, civil rights conspiracy, and California law. *Id.* The case was assigned to Chief District Judge Dana M. Sabraw, who also presides over the related action *Ms. L. v. U.S. Immigration & Customs Enforcement*, No. 18-cv-00428-DMS-AHG (S.D. Cal.) (hereafter "*Ms. L.*"), which culminated in a 2023 settlement providing reunification-related relief against the federal government. The case seeks relief on behalf of almost the exact same class certified in the related *Ms. L.* litigation.

On November 12, 2024, MVM moved to dismiss the Complaint in its entirety. The motion was fully briefed, including an amicus brief submitted by international law scholars. The Court ultimately granted the motion in part and denied it in part on March 3, 2025, permitting nearly all of Plaintiffs' claims to proceed and granting Plaintiffs leave to amend their Complaint as to claims that were time-barred. *Padre*, ECF No. 54.

The Parties then proceeded to fact discovery following an April 11, 2025 Case Management Conference before Judge Goddard, after which extensive forensic collections, document review, and productions for the named class representatives and MVM were completed. Herman Decl. ¶ 16. Discovery also involved substantial motion practice in which Plaintiffs prevailed in a dispute concerning MVM's production of documents concerning government contracts. *See Padre*, ECF Nos. 70–74, 76, 81, 83–84. In December 2025, Plaintiffs filed an Amended Complaint adding two additional named class representatives. *Id.*, ECF No. 150. In April to June 2026, the Parties fully briefed MVM's motion to dismiss the Amended Complaint and were awaiting decision, before agreeing to the present Settlement. *See Id.*, ECF Nos. 193, 201–02, 211–13.

The Parties participated in an Early Neutral Evaluation Conference before Judge Goddard, and though Parties were unable to reach agreement at that time, Judge

Goddard continued settlement discussions thereafter. *See Id.*, ECF No. 33. In March 2026, the Parties appeared before Judge Goddard for a two-day in-person Settlement Conference. *Id.*, ECF No. 189–90. In advance of that session, the Parties exchanged comprehensive mediation briefs and Class Counsel prepared video testimony from Plaintiffs, who virtually attended the mediation. Herman Decl. ¶ 19. The Parties were unable to reach agreement at that session but continued negotiating over the following months, ultimately reaching the significant $48,750,000 Settlement now before the Court. *Id.* MVM denies all allegations of wrongdoing, liability, causation, injury, damages, and entitlement to relief. The Court has not decided who is right or wrong. The Settlement is simply a compromise to avoid the burden, expense, uncertainty, and disruption of continued litigation and is not an admission of liability, wrongdoing, fault, damages, or the validity of any claim or defense.

### B. Summary of the Proposed Settlement Terms.

Plaintiffs seek Preliminary Approval of the following Settlement Class:

> All persons who qualify for inclusion as class members of the settlement class certified in *Ms. L. v. I.C.E.*, No. 3:18-cv-00428-DMS-AHG (S.D. Cal.), and were separated from their parent or child between March 7, 2017, and January 20, 2021.

Herman Decl., Ex. A § 2. The proposed Settlement Class refers to the approximately 8,900 individual parents and children who Plaintiffs allege were separated pursuant to a federal government campaign aimed to deter immigration to the United States by abducting migrant children from their parents ("Family Separation Campaign"). Herman Decl. ¶ 20.

The proposed Settlement Agreement provides for a non-reversionary monetary fund in the amount of $48,750,000 ("Settlement Fund"). Herman Decl., Ex. A §§ 1.25, 6.1. The Settlement Fund will be used to pay for (i) Notice and Settlement Administration Costs; (ii) Service Awards approved by the Court; (iii) Attorneys' Fees

and Expenses approved by the Court; (iv) Settlement benefits for the Settlement Class Members, and (v) any expenses, taxes, and tax-related expenses related to the maintenance of the Escrow Account. Herman Decl. ¶ 22; Herman Decl., Ex. A §§ 5.1, 5.3, 6.1. MVM will transfer $1,000,000 of the Settlement Fund into the Escrow Account within twenty-one calendar days of entry of the Preliminary Approval Order, and if finally approved, MVM (itself or through other Funding Sources) will transfer the rest of the Settlement Fund within thirty business days of the entry of the Final Approval Order. *Id.* §§ 5.1–5.2. The Settlement is designed to exhaust the Settlement Fund. To the extent there are any residual funds following the preceding payments, if economically feasible and practical, such funds will be distributed *pro rata* to Settlement Class Members. If such additional distribution is not economically feasible and practical given the funds remaining, or if an additional distribution is made and there are funds remaining after, it is proposed that any residual funds will be distributed by mutual agreement of the Parties to a Court-approved *cy pres* recipient. Herman Decl. ¶ 25.[1]

**C. Proposed Settlement Class Member Benefits and Scope of the Release.**

To receive compensation, Settlement Class Members must submit a valid Claim, which will be evaluated pursuant to the proposed Settlement Allocation Plan ("Plan"). Ex. D. The Plan includes three types of awards—the Baseline Award, Criteria-Based Award, and Extraordinary Injury Award—and an associated points system. Each class members will receive ten points for their Baseline Award, and if they submit additional information in their claim form, can receive additional points for Criteria-Based and Extraordinary Injury Awards. *Id.* The Plan, including point values, was developed with

[1] Pursuant to Federal Rule of Civil Procedure 23(e)(2)(C), Plaintiffs further notify the Court that they have reached a supplemental agreement with MVM, the only purpose of which is to ensure that the settlement agreement provides for class-wide resolution and to give MVM related termination rights. *See* Ex. B (filed under seal). The negotiation of this agreement was supervised by the Hon. Allison H. Goddard. *See* Ex. C (Mediator's Statement) ¶ 5.

experts on traumatic stress, who have substantiated the approach with a supporting Declaration. Ex. E.

***Baseline Award***. To submit a valid claim, Settlement Class Members must enter the following information to be verified by the Settlement Administrator: (a) name; (b) date of birth; (c) contact information (address, email address, cell phone number); and (d) Alien Identification number ("A-number"). Ex. D ¶ 2. If a Settlement Class Member does not submit a valid claim, the Settlement Class Member will release his or her claims against MVM without receiving a benefit from the Settlement Fund. Herman Decl., Ex. A §§ 4.1–4.3. The Released Claims are narrowly tailored to only claims arising out of or relating to this Action. *See Id.* §§ 4.1–4.3. Every verified Settlement Class Member will be entitled to a Baseline Award of no less than $3,000. Ex. D ¶ 1(a).

***Criteria-Based Award.*** An additional award will be available to qualifying Settlement Class Members based on a points system. *Id.* ¶¶ 1(b), 10–11. Points will be awarded to those who, through the claims process, demonstrate proof of certain objective criteria—the age of the child at the time of separation, the duration of the separation, and the length of time a parent did not know the location of their child during separation. *Id.* ¶ 1(b). With the assistance of experts, points have been assigned to each criterion to reflect the evidence-based distinctions in the relative amount of harm. *Id.* ¶ 7; *see* Ex. E. Parents separated from multiple children will receive one baseline award and will be eligible for a Criteria-Based Award for each separation. Ex. D ¶ 10.

***Extraordinary Injury Award***. Beyond the Baseline and Criteria-Based Awards, additional points will be awarded to Settlement Class Members who demonstrate sufficient proof of extraordinary circumstances that justify an additional award. *Id.* ¶ 1(c). Class Members seeking an Extraordinary Injury Award will be required to provide a narrative statement, written or verbal via phone or recording, explaining the extraordinary circumstances and acknowledge that they are providing the information under penalties of perjury. *Id.* ¶¶ 5, 12. Compensation for Settlement Class Members

who were separated for more than two (2) years or who have still not been reunited with their parent or child will be considered as an Extraordinary Injury Award and no narrative is required to substantiate that injury. *Id.* D ¶ 12.

Judge Goddard will be available to assist Class Counsel with resolving any disputes concerning the award of Criteria-Based points; and will decide points awarded for Extraordinary Injury. *Id.* ¶ 13. The Settlement Administrator will then calculate the total points per the Criteria-Based Award claimant and add any additional points per the Extraordinary Injury Award and add those to the points from the Baseline Award. Once all points are finalized, the Settlement Administrator will determine the dollar value of a point. *Id.* ¶ 14. For all Awards, the dollar value of a point will be determined by: (a) assessing the total number of points assigned to class members; and (b) dividing the net Settlement Fund by the total number of points assigned. *Id.* D ¶ 15. All Settlement Class Member awards may be subject to a *pro rata* adjustment, depending on the number of valid claims and the value of all cash payments claimed. Herman Decl. ¶ 26. After the Settlement Administrator finalizes the points and dollar value attributed to each Class Member, Class Counsel will submit a motion to the Court seeking an order for disbursement of the Settlement Fund to Class Members. This motion will present the settlement claims data to the Court and detail the method for disbursing payments to minor Class Members. *Id.* ¶ 27.

**D. Notice and Claims Administration.**

The proposed Settlement Administrator, JND Legal Administration, is a well-respected and reputable third-party administrator that has significant experience with class action settlements. *See* Declaration of Gina Intrepido-Bowden Regarding Proposed Settlement Notice Plan ("Admin. Decl.") ¶¶ 3–10, attached as Ex. F to Herman Decl. The Settlement Administrator shall effectuate the proposed Notice Plan, handle the Claims process, administer the Settlement Fund, and distribute Settlement benefits to Settlement Class Members. The Settlement Administrator's duties include those specified in the

Agreement. Herman Decl., Ex. A §§ 1.16, 3.6, 3.7, 11. The Notice and Settlement Administration Costs shall not exceed $1,000,000 to be paid by the Settlement Fund. *Id.* § 5.1.

**E. Proposed Settlement Class Notice Plan.**

Members of the proposed Settlement Class will be notified through the comprehensive proposed Notice Plan, which includes Direct notice to all Class Members for whom contact information is provided or located, targeted digital notice, internet search campaign, distribution of a press release, third party outreach to benefit administrators assisting in *Ms. L.*, possible radio and/or video/audio streaming media efforts, reminder notices (depending on claim rates), a settlement website that will provide detailed information about the case, and a settlement toll-free number with an interactive voice response (IVR), WhatsApp contact number with IVR and messaging ability, email address, and post office box. *See* Admin Decl. ¶¶ 16–53.

To complete direct notice, JND ran advanced skip-trace based on information from the available class list and identified potential addresses and/or phone numbers for 3,191 potential Class Members. *Id.* ¶ 22. The Department of Homeland Security has also agreed to provide JND with any contact information it has for the approximately 8,900 potential class members they have on record. Al Otro Lado, a legal services provider in the *Ms. L.* settlement, has provided contact information for almost 500 proposed Settlement Class members. *Id.* ¶ 23; Herman Decl. ¶ 21.

JND will verify its skip-traced information with Al Otro Lado's information, and with any additional class contact information provided by the Department of Homeland Security or its contracted benefits administrators. Admin Decl. ¶¶ 26–27, 30–31. Where contact information is verified, JND will provide personalized direct notice via WhatsApp and/or U.S. mail, depending on the form of contact information available, including a unique ID number to facilitate engagement with the claims process. *Id.* ¶¶ 27,

31. Where JND is unable to verify its information, it will disseminate direct notice that is not personalized to protect the information of potential Class Members. *Id.*

JND will initiate publication notice to supplement direct notice dissemination. Admin Decl. ¶ 17. Targeting key demographics and geographic areas, JND will use digital and social media platforms to feature ads tied to related content and Spanish-language sites. *Id.* ¶¶ 34–38. JND will also place Responsive Search Ads tied to key terms entered in a search engine. *Id.* ¶ 39. The press release will be sent to media outlets in the United States and Spanish Latin America, helping to amplify notice even further. *See Id.* ¶ 41. Outreach through Benefit Administrators supporting the *Ms. L.* settlement will also leverage existing relationships with class members to notify them about the Settlement Agreement. *Id.* ¶ 43.

These efforts are supported by the settlement website, where Class Members may obtain more information about the case in both Spanish and English. The website will emphasize important information and deadlines, provide links to essential case documents, including the Long Form Notice, and will allow Class Members to file an online claim or print a Claim Form to submit by mail. Class Members can contact JND for assistance or with questions through various methods, addressing potential challenges related to fluency or literacy. *Id.* ¶¶ 47–49.

## III. LEGAL STANDARD

In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) ("*Hyundai*") (internal quotation omitted); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). "[T]here is [also] an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

In December of 2018, the Rules Committee revised Federal Rule of Civil Procedure 23 to formalize the preliminary approval process for district courts when first evaluating a proposed class action settlement. *See* Fed. R. Civ. P. 23(e)(1). Under the new rule, "[t]he court must direct notice [of the proposed settlement] in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Ultimately, "[p]reliminary approval of a settlement is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Hart v. Colvin*, 2016 WL 6611002, at *5 (N.D. Cal. Nov. 9, 2016).

## IV. ARGUMENT

### A. Certification of the Proposed Settlement Class Is Appropriate.

To certify a settlement class under Fed. R. Civ. P. 23, plaintiffs must satisfy four prerequisites—numerosity, commonality, typicality, and adequacy of representation—as well as at least one of the three subsections of Rule 23(b). *See Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1002, 1004 (9th Cir. 2018) ("*Sali*") (citing Fed. R. Civ. P. 23(c)(1)(A)). A plaintiff seeking Rule 23(b)(3) certification must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The manageability requirement inherent in Rule 23(b)(3) does not apply to settlement classes. *See Hyundai*, 926 F.3d at 556 ("[T]he criteria for class certification are applied differently in litigation classes and settlement classes.").

**1. The Settlement Class Satisfies Rule 23(a) Requirements.**

Numerosity is satisfied by a class as small as 40 entities. *Lo v. Oxnard European Motors, LLC*, 2011 WL 6300050, at *2 (S.D. Cal. Dec. 15, 2011). As this Court has already recognized, the Settlement Class contains thousands of families. *See Ms. L. v. U.S. Immigr. & Customs Enf't*, 331 F.R.D. 529, 536 (S.D. Cal. 2018) (finding numerosity to be satisfied for the same class definition because there were as many as 700 families that fell within the proposed class definition); *see also* Admin. Decl. ¶ 11 (estimating 8,900 class members in preliminary analysis of class data).

***Commonality***. Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "[F]or purposes of Rule 23(a)(2), even a single common question will do." *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 283 (N.D. Cal. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). Even "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012). The commonality standard is even more liberal in a civil rights suit like this one, in which "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).

As the *Ms. L.* Court found, Plaintiffs present common questions of law or fact, including that each plaintiff was subject to the same unlawful practice and suffered the same injury in violation of their family integrity rights. *Ms. L.*, 331 F.R.D. at 539. Plaintiffs also present common questions as to MVM's role in this unlawful practice, including whether MVM intentionally participated in, or knowingly and substantially aided and abetted, the Family Separation Campaign by transporting separated children.[2]

[2] To the extent that there are any minor variations in the Class Members individual factual circumstances, this Court should find that the proposed Settlement Class satisfies commonality notwithstanding. *See, e.g.*, *Inland Empire-Immigrant Youth Collective v.*

***Typicality***. The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Sali*, 909 F.3d at 1006 (quotation omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of the absent class members." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).

Plaintiffs Padre, Junior, I.V.S., and A.V.L., just like the plaintiffs in *Ms. L.*, were unlawfully separated and thus typical of the class. *See Ms. L.*, 331 F.R.D. at 539. Plaintiffs were subject to a class-wide policy that inflicted a common, baseline harm in violation of family integrity. As with *Ms. L.*, this permits certification. *See id.* ("Plaintiffs' claims do not rest on the individual circumstances of each separation of parent and child. Rather, [p]laintiffs are challenging the [*sic*] practice of separating migrant parents and children . . .").

***Adequacy of Representation***. Adequacy requires that Plaintiffs "(1) have no interests that are antagonistic to or in conflict with the interests of the class; and (2) be represented by counsel able to vigorously prosecute their interests." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 618 (N.D. Cal. 2015) ("*CRT*"). "The mere potential for a conflict of interest is not sufficient to defeat class certification; the conflict must be actual, not hypothetical." *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.*, 311 F.R.D. 532, 541 (N.D. Cal. 2015) (quotation omitted). There is no conflict between Plaintiffs' interests and those of absent Class Members. Plaintiffs alleged that all Class Members were subject to Family Separation and have the same legal claims that they were unlawfully separated under the Alien Tort Statute, civil rights statute, and California state laws. *See Padre*, ECF No. 1.

---

*Nielsen*, 2018 WL 1061408, at *9 (C.D. Cal. Feb. 26, 2018) (rejecting contention that differences in class of DACA recipients precluded class certification, despite "[w]hatever factual dissimilarities that may exist among the proposed class member").

Plaintiffs and their counsel, Hausfeld, have vigorously prosecuted this case on behalf of the Settlement Class and have more than adequately represented the Settlement Class. *See* Herman Decl. ¶¶ 11, 29–30. They have driven this litigation forward in all aspects for the betterment of the entire Settlement Class. *Id.*

Class Counsel has overseen over two years of complex litigation, as well as settlement negotiations in this case. Among other things, Class Counsel have engaged in extensive motion practice across two rounds of dismissal briefing, overseen thorough forensic collections and document review, successfully advocated for MVM's production of documents concerning its government contracts, executed third-party subpoenas for evidence, coordinated with subject matter experts pertinent to Plaintiffs' claims, and prepared video testimony from Plaintiffs for an in-person Settlement Conference.[3] *Id.* ¶ 28. Class Counsel have more than sufficient information to make an informed decision of the Settlement value compared to risks of continued litigation. Class Counsel's significant investigation, discovery, research, and work with experts throughout the litigation all weigh in favor of approving the Settlement.[4] *Id.* ¶ 17.

Class Counsel are experienced lawyers who have skillfully litigated many complex class actions such as this one and have successfully resolved many of those cases in this Circuit. *Id.* ¶ 11; *see also* Hausfeld Firm Resume, Ex. G to Herman Decl.

---

[3] *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 229 F. Supp. 3d 1052, 1067 (N.D. Cal. 2017) ("[W]hile the parties reached the Settlement at an early phase of litigation, Class Counsel's careful pre-filing investigation and their extensive review of discovery materials indicate they had sufficient information to make an informed decision about the Settlement. Accordingly, this factor favors Settlement approval."), enforcement granted, 2017 WL 914066 (N.D. Cal. Mar. 6, 2017).

4 *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), as amended (June 19, 2000) (affirming settlement and that Plaintiffs had sufficient information to make an informed decision about the settlement where "Class Counsel conducted significant investigation, discovery and research, and . . . had worked with damages and accounting experts throughout the litigation"); *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (holding that formal discovery was not a necessary antecedent to class action settlement).

Class Counsel have brought that experience to bear on behalf of the proposed Settlement Class and in this Settlement.[5] *Id.* ¶ 11.

**2. The Proposed Settlement Class Satisfies Rule 23(b)(3).**

Rule 23(b)(3) calls for two separate inquiries: (1) do issues of fact or law common to the class "predominate" over issues unique to individual class members, and (2) is the proposed class action "superior" to other methods available for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.' What the rule does require is that common questions 'predominate over any questions affecting only individual [class] members.'" *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (citation omitted; brackets in original). Predominance is satisfied when "common questions present a significant aspect of the case" such that significant facts and issues underlying the proposed classes' claims are subject to common proof. *CRT*, 308 F.R.D. at 620 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)). "[I]f common questions are found to predominate . . . courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied." *Nitsch v. Dreamworks Animation SKG Inc.*, 2016 WL 4424965, at *4 (N.D. Cal. July 6, 2016) (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 314 (N.D. Cal. 2010)).

Here, the common questions identified above predominate over individual ones. Plaintiffs' claims depend on MVM's alleged role in separating migrant families pursuant to the Family Separation Campaign. That question is resolved using the same

---

[5] *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (citation omitted).

evidence for all Settlement Class Members, and thus is the precise type of predominant question that makes class-wide adjudication worthwhile. Courts routinely certify class-wide damages under similar circumstances, particularly in loss of dignity or liberty cases, like here.[6]

**B. The Settlement Merits Preliminary Approval.**

As amended, Rule 23 now provides a checklist of factors to consider when assessing whether a proposed settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (although the Ninth Circuit previously used lists of factors to be considered, the revised Rule 23 now "directs the parties to present [their] settlement . . . in terms of [this new] shorter list of core concerns."). Ultimately, as the Ninth Circuit has explained, the key "underlying question remains this: Is the settlement fair?" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018).

**1. The Class Representatives and Class Counsel Have Adequately Represented the Class.**

Plaintiffs and their Counsel have adequately represented the Settlement Class as required by diligently and zealously prosecuting this litigation on behalf of the proposed Settlement Class. *See supra* Section IV.A.1; Herman Decl. ¶¶ 11, 29.

**2. The Parties Negotiated the Proposed Settlement at Arm's Length.**

The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this can be "described as [a] 'procedural' concern[], looking to the

---

[6] *Roy v. Cnty. of Los Angeles*, 2018 WL 3436887, at *3 (C.D. Cal. July 11, 2018) (finding general damages available for pain, suffering, emotional distress, and loss of dignity in § 1983 class action regarding unlawful detention); *Rodriguez v. City of Los Angeles*, No. CV 11-01135 DMG (JEMx), 2014 WL 12515334, at *6–7 (C.D. Cal. Nov. 21, 2014) (same); *Aichele v. City of Los Angeles*, 314 F.R.D. 478, 496 (C.D. Cal. 2013) (same).

conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note to 2018 amendment; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("*Rodriguez*") ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

Here, the settlement process has been arm's length in all respects. The proposed Settlement was reached only after aggressive litigation and prolonged, well-informed, and extensive arm's-length negotiations—including an in-person mediation session and additional negotiations—facilitated by Judge Goddard. *See* Ex. C. ¶¶ 2–3. The use of a court-affiliated mediator indicates there was no collusion here. *See* Fed. R. Civ. P. 23(e)(2)(B) advisory committee's note to 2018 amendment ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in [the parties'] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.").[7]

Moreover, MVM has not promised the Class Representatives preferential treatment in exchange for settlement. *See Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (stating preferential treatment for class representatives can create a conflict of interest). The baseline awards for all class members who submit a claim will be distributed *per capita*, with the Criteria-Based and Extraordinary Injury distributed in accordance with the proposed Allocation Plan. Class Counsel will be reimbursed expenses and fees, all subject to the Court's approval. Class Counsel will ask the Court to approve a nominal service award to the Class Representatives to

---

[7] *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (stating that private mediation "tends to support the conclusion that the settlement process was not collusive"); *see also In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) (including that use of mediator and fact that some discovery had been completed "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement") (internal citation omitted).

reimburse them for their efforts on behalf of the Settlement Class, but neither Class Counsel nor MVM have made any promises about requesting such awards.[8]

**3. The Quality of Relief to the Class Weighs in Favor of Approval.**

The third factor to consider is whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C) advisory committee's note to 2018 amendment.

**a. Costs, Risks, and Delay of Trial and Appeal.**

Plaintiffs maintain that the liability claims for violations under the Alien Tort Statute, civil rights statutes, and California state laws are strong, given MVM's alleged role in facilitating the separation of migrant families pursuant to the Family Separation Campaign. However, the claims against MVM were disputed. MVM vigorously opposed the lack of joinder of the Government and maintained that it was acting pursuant to its contractual obligations, and therefore, immune from liability altogether. Herman Decl. ¶ 12. For all these reasons, the substantial settlement that has been achieved here is an excellent result for the proposed Settlement Class.[9] Therefore, while

---

[8] *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) ("[T]he class settlement agreement provided no guarantee that the class representatives would receive incentive payments[.]").

[9] *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 629 (9th Cir. 1982) ("*Officers*") ("The track record for large class action [civil rights] cases demonstrates that many years may be consumed by trial(s) and appeal(s) before the dust finally settles."); *Lane v. Brown*, 166 F. Supp. 3d 1180, 1189 (D. Or. 2016) (concluding, in class action involving alleged civil rights violations, that risk and expense of further litigation strongly favored approval of settlement); *Dunsmore v. San*

Plaintiffs maintain they have "strong claims," "significant risk and uncertainty remain such that continuing the case could lead to protracted and contentious litigation." *Howell v. Advantage RN, LLC*, 2020 WL 3078522, at *4 (S.D. Cal. June 9, 2020). With this settlement being achieved only two years after Plaintiffs filed their initial complaint and prior to significant fact discovery, briefing and disputes involving class certification and summary judgment, and trial preparation, this result has saved years in litigation and related expenses for the Parties.

The speed at which this settlement was achieved is especially profound. Although being Named Plaintiffs in the current political climate carries significant risk in itself, reaching this settlement prior to the completion of fact discovery, depositions, and trial minimizes further trauma to Class Representatives and Class Members by avoiding the adversarial process of testifying, as well as the risk of having testimony and personal documents publicized. The timing of this settlement is further beneficial given the unique moment in which this settlement was achieved. As part of the settlement administration process, Class Counsel and the Settlement Administrator are utilizing third-party resources that are uniquely connected to the Settlement Class given the parallel litigation of *Ms. L. See* Admin. Decl. ¶¶ 24, 26, 30, 43. It is possible that the assistance of these resources would no longer be available after further litigation. *See* Herman Decl. ¶ 14; *see also Officers*, 688 F.2d at 625, 629 (emphasizing that "[d]uring the remainder of the litigation, and probably an appeal, many of the immediate and tangible benefits accruing from the settlement would be lost" in explaining why "voluntary conciliation and settlement are the preferred means of dispute resolution . . .

---

*Diego Cnty. Sheriff's Dep't*, 781 F. Supp. 3d 1091, 1099 (S.D. Cal. 2025) (granting motion for preliminary approval of settlement agreement in class action alleging civil rights violations because settlement would "result in a substantial and tangible recovery, without the considerable risk, expense, and delay of summary judgment motions, trial, and post-trial litigation").

in complex class action litigation . . . where the subject matter is [a civil rights violation]").

**b. The Effectiveness of Any Proposed Method of Distributing Relief to the Class.**

The Settlement provides the Settlement Class with significant relief. The total value of the settlement with MVM is $48,750,000.00. That total value accounts for a ***minimum award*** of $3,000 per Class Member. The majority of Class Members came to the United States from Guatemala, Honduras, El Salvador, and Mexico.[10] As of 2021, the median monthly personal earnings, adjusted from annual data, for those ages 16 and older were approximately $2,100, $2,200, $2,500, and $2,500, among Hispanics of Guatemalan, Honduran, Salvadoran, and Mexican origin located in the United States, respectively.[11] For Class Members located outside of the United States, this value is even more significant. As of 2024–26, the average monthly earnings of employees in Guatemala, Honduras, El Salvador, and Mexico were roughly GTQ 3605 ($471.89), HNL 11248 ($418.43), $507, and MXN 11249 ($662.57), respectively.[12] Moreover, this settlement supplements benefits to Class Members from the *Ms. L.* settlement, affording

---

[10] *See* Elliot Spagat, *US Identifies 3,900 Children Separated at Border Under Trump*, ASSOCIATED PRESS (June 8, 2021, 1:17 PM EDT), https://apnews.com/article/az-state-wire-donald-trump-immigration-lifestyle-government-and-politics… ("Nearly 60% of children separated under the zero-tolerance policy were Guatemalans (2,270), followed by Hondurans (1,150), Salvadorans (281), [and] Mexicans (75) . . . .").

[11] Pew Research Center, *Economic Characteristics*, U.S. Hispanic Population Data Detailed (Tables), https://docs.google.com/spreadsheets/d/1vxtbpCROMbOhemXCb4g8ZukOpGLjWtAv/edit?gid=1392774476#gid=13… (last visited Sept. 16, 2026).

[12] Int'l Lab. Org., *Guatemala*, ILOSTAT, https://ilostat.ilo.org/data/country-profiles/gtm/ (last visited Sept. 16, 2026); Int'l Lab. Org., *Honduras*, ILOSTAT, https://ilostat.ilo.org/data/country-profiles/hnd/ (last visited Sept. 16, 2026); Int'l Lab. Org., *El Salvador*, ILOSTAT, https://ilostat.ilo.org/data/country-profiles/slv/ (last visited Sept. 16, 2026); Int'l Lab. Org., *Mexico*, ILOSTAT, https://ilostat.ilo.org/data/country-profiles/mex/ (last visited Sept. 16, 2026).

Class Members with the missing piece of redress—monetary compensation.

**c. Proposed Method for Processing Claims.**

As detailed in Section II.C., all Settlement Class Members may submit a Claim Form for (1) a Baseline Award of no less than $3,000 per individual and (2) optionally an additional Criteria-Based or Extraordinary Injury Award based upon a dollar-value points system. *See* Ex. D. Other recently approved settlements in similar cases support this approach.[13] The Claim Form will be a user-friendly dynamic webpage, available in English and Spanish and accessible on any smart phone, whereby Class Members will respond to a few questions regarding their separation by selecting relevant options from drop-down menus. Herman Decl. ¶ 27. Class Members seeking relief for extraordinary injury can provide a narrative statement. Ex. D. ¶ 12. To prevent fraud, the claim form asks Class Members provide basic identifying information, which the Settlement Administrator will verify by comparing to the Class List. *Id.* ¶ 3.

**d. Proposed Award of Attorneys' Fees.**

Class Counsel has litigated this case for over two years on contingency—and has advanced thousands of dollars in costs. Class Counsel will request 25% of the

---

[13] *See Aichele v. City of Los Angeles*, 2015 WL 5286028, at *1 (C.D. Cal. Sept. 9, 2015) (approving a points-based allocation plan accounting for variation in duration and circumstances of custody with a minimum award of $4,000 per eligible claimant in a multi-million-dollar settlement); Order Granting Final Approval of Class Action Settlement and Granting Mot. for Atty'ys Fees & Costs at 5, *Roy v. Cnty. of Los Angeles*, No. CV 12-09012 BRO (FFMx) (C.D. Cal. Feb. 3, 2022), ECF No. 638 (approving settlement with range in award amount based in part on duration of immigration detention); Order re Final Approval of Class Action Settlement at 3, *Scott v. Cal. Forensic Med. Grp.*, No. 2:16-cv-03084 DSF (RAOx) (C.D. Cal. June 22, 2021), ECF No. 285 (approving settlement with formula for distribution based on the number of days that class members were delayed in receiving treatment); Class Action Settlement Agreement at 7, *Barnes v. District of Columbia*, No. 1:06-cv-00315-RCL (D.D.C. Nov. 4, 2013), ECF No. 465-2, *approved*, Final Order of Approval of Settlement (D.D.C. Mar. 18, 2014), ECF No. 484 (establishing allocation for overdetained class with a base distribution for first day and additional for subsequent days of overdetention).

Settlement Fund as attorneys' fees and will also ask the Court for unreimbursed costs, all of which will be detailed in a forthcoming motion for an award of fees and reimbursement of costs. Herman Decl. ¶ 29. This request is fair and reasonable. *See In re Silvergate Cap. Corp.*, 2026 WL 973368, at *4 (S.D. Cal. Feb. 10, 2026) ("Under the percentage-of-recovery method, the Ninth Circuit has determined a benchmark for a reasonable fee award is 25% of the common fund."). Many courts, in this circuit and others, award the benchmark fee award in cases involving complex legal issues and high risk assumed by the attorneys, such as in this Action. *See, e.g.*, *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1126–27 (C.D. Cal. 2008) (awarding 25% of settlement fund in a complex and risky human rights case); *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1120–22 (9th Cir. 2021) (affirming award of 25% of settlement fund in a novel and risky privacy rights case). Furthermore, the proposed Settlement Agreement, and its benefits to members of the proposed Settlement Class, are not contingent on the approval of any fee award. Herman Decl., Ex. A § 6.4.

**4. The Proposed Settlement Treats All Settlement Class Members Equitably.**

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement Agreement is fair, reasonable, and adequate because it treats all Settlement Class Members equitably and does not treat Plaintiffs or any other Settlement Class Member preferentially. Specifically, each member who submits a valid claim form will receive a baseline award of $3,000 and, optionally, can provide additional information to obtain further monetary Criteria-Based or Extraordinary Injury awards based on the points-dollar system described above. *See generally* Ex. D. The dollar value of all Settlement Class Member Benefits available under the Criteria-Based and Extraordinary Injury categories will be uniformly adjusted depending on the number of Valid Claims

and points assigned. *Id.* ¶¶ 14–15 Thus, the Settlement Allocation Plan will be equitable and effective. Accordingly, the Court should find the proposed Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class Members.

**5. The Parties have No Other Substantive Agreements.**

Courts also must evaluate any agreement made in connection with the proposed settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). As noted above, the Parties have entered into a supplemental agreement regarding the proportion of the class who may request exclusion and MVM's termination rights regarding the Settlement Agreement. *See* Ex. B. Judge Goddard mediated the arm's length negotiation of this supplemental agreement. *See* Ex. C. No other agreements exist concerning the Settlement Agreement.

**C. The Proposed Notice Is the Best Practicable Under the Circumstances.**

Pursuant to Fed. R. Civ. P. 23(c)(2)(B), "[f]or any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Where there is a class settlement, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez*, 563 F.3d at 962 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

Plaintiffs' proposed Notice Plan, developed with the advice and assistance of JND, provides a thorough approach with a multi-method digital and print campaign tailored to the demographics and behaviors of the Settlement Class, utilizing WhatsApp, social media, and direct outreach, designed so that notice will reach all Class Members. *See* Admin. Decl. ¶¶ 11–46; *id.*, Ex. 2 (Long Form Notice), Ex. 3 (Mailed Notice), Ex. 4 (WhatsApp Notice). The Notice Plan satisfies Rule 23 and the Due Process clause of

the U.S. Constitution because, among other things, it informs Settlement Class Members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Settlement Class, the claims asserted, and the benefits offered; (3) the binding effect of a judgment if the Settlement Class Member does not request exclusion; (4) the process for submitting objections and exclusions, including the time and method for objecting or requesting exclusion and that Settlement Class Members may make an appearance through counsel; (5) information regarding Plaintiffs Counsel's request for awards of fees and expenses; and (6) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B); *see also* 4 *Newberg on Class Actions* § 11:53 (4th ed. 2002) (stating notice is "adequate if it may be understood by the average class member"); *Lamb v. Bitech, Inc.*, 2013 WL 4013166, at *4 (N.D. Cal. Aug. 5, 2013).

Accordingly, the Notice Plan is designed to be the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the settlement.[14]

---

[14] *See Lopez v. Boykin Farms, Inc.*, 2026 WL 1196098, and *3 (E.D.N.C. Mar. 16, 2026) (finding that adequate notice was provided to a class of migrant farmworkers where the notice plan included dissemination through WhatsApp and Facebook); *Benitez Gonzalez v. O.J. Smith Farms, Inc.*, 2021 WL 136209, at *2 (E.D.N.C. Jan. 13, 2021) (approving method for distributing notice to a class of migrant farmworkers that included a WhatsApp component); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 328 (N.D. Cal. 2018) (finding class notice adequate where 23 million of 79 million class members had no known mailing or email address so alternative routes of publishing notice in two widely circulated magazines and through targeted social media advertising were used); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 596 (N.D. Cal. 2020) (deeming sufficient a notice plan "which called for an extensive digital media plan to publish the notice settlement," including through a settlement website and advertising on various websites, in a magazine, and in newspaper); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 330–32 (C.D. Cal. 2016) (finding a notice plan "utiliz[ing] a combination of individual notice to known class members in the form of Email Notices and Post–Card Notices and a schedule of publication notices in English and Spanish in magazines, on certain internet networks, on Facebook, and in a press release" to be the "best practicable notice to class members").

Finally, the proposed Notice Plan satisfies the requirements of Rule 23(h)(1), as it will notify the Settlement Class that Class Counsel may apply to the Court for an award of attorneys' fees of up to 25% of the Settlement Fund, plus reimbursement of costs and Service Awards. *See* Admin. Decl., Ex. 2. Thus, the Court should approve the Notice Plan, including the form and content of the Notices.

The Court should also approve the proposed Claim Form and Claim process. The Claim Form is easily understood and may be submitted online via the Settlement Website. Admin. Decl. ¶ 47. The Settlement Administrator will review all Claim Forms to determine their validity, eligibility, and the financial award to which the Settlement Class Member may be entitled, and the Claim review process is robust. *See* Herman Ex. D.

**D. Proposed Service Awards.**

Plaintiffs will request a service award of $15,000.00 per Class Representative. These representatives have faithfully represented the Class throughout this litigation, including producing documents, preparing for noticed depositions, participating in conferences before the Court, and monitoring the progress of the case. Herman Decl. ¶ 30. In addition, Plaintiffs' participation in this litigation exposed them to unique and tangible risks of persecution, deportation, detainment, and targeted violence. *See Padre*, ECF No. 38. These proposed service awards are modest and do not fully reflect the contribution these parties have made during this litigation, but acknowledge their service on behalf of the whole Class. Such awards are routine in the Ninth Circuit and are justified in cases that reached settlement prior to class certification, particularly where, as here, coming forward posed a risk to the named plaintiff. *See Birch v. Off. Depot, Inc.*, 2007 WL 9776717, at *2 (S.D. Cal. Sept. 28, 2007) (Sabraw, J.) (awarding service awards of $15,000 and $10,000 because "Plaintiffs greatly assisted Class Counsel and committed a significant amount of effort in order to obtain the benefits on behalf of the class" and because the service awards were "well within amounts awarded

by courts"); Order Granting Final Approval of Settlement at 2, *Cortes v. Univ. & State Emps. Credit Union*, No. 3:22-cv-00444 (S.D. Cal. July 8, 2024) (Sabraw, J.), ECF No. 49 (granting $10,000 service award in settlement reached prior to class certification).

**V. Appointment of Class Representatives and Class Counsel.**

Plaintiffs incorporate by reference prior discussion of Named Plaintiffs' vigorous representation of the proposed class. *See supra* Section IV.D. Ultimately, the proposed Settlement Agreement would not have been possible had Plaintiffs not stepped forward to represent the interests of the Settlement Class. *See* Herman Decl. ¶ 30. The Named Plaintiffs should be appointed as Class Representatives for settlement purposes. *See id.*

Likewise, Hausfeld is well-qualified to act as lead counsel for the Class and finalize a favorable settlement agreement for the Class. *See supra* Section IV.A.1; Inwald Decl., Ex. G to Herman Decl. Class Counsel have vigorously prosecuted this action and will continue to do so through final approval. *See* Herman Decl. ¶¶ 29; *see, e.g.*, *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) (assessing "the attorneys' professional qualifications, skill, experience, and resources . . . [and] the attorneys' demonstrated performance in the suit itself"). Considering Hausfeld's work in this litigation, its extensive expertise, and the resources committed to representing the Class, Hausfeld should be appointed Class Counsel under Rule 23(g).

**VI. Appointment of Settlement Administrator and Qualified Escrow Agent.**

After careful consideration of multiple bids from respected and seasoned settlement administrators, Plaintiffs request the appointment of JND Legal Administration as Settlement Administrator. As more thoroughly detailed in the attached Declaration, JND has extensive experience, including significant and complex class actions. Admin Decl. ¶¶ 3–10; *id.*, Ex. 1. In 2023, this Court relied on JND to conduct notice administration in *In Re Packaged Seafood Prods. Antitrust Litig.*, No. 3:15-md-02670-DMS-MSB, ECF No. 3024 at 2 (S.D. Cal. Mar. 13, 2023). Where JND stands out as a qualified Settlement Administrator for the proposed Settlement Class is

its history in providing notice to classes consisting of undocumented immigrants. Admin Decl. ¶ 8. Based on this experience, JND has developed a notice plan to address the challenges in reaching such a population.

Plaintiffs further respectfully request that the Court appoint Huntington Bank as the Qualified Escrow Agent. *See* Herman Decl., Ex. A §§ 1.11, 3.2(f).

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the accompanying proposed order preliminarily approving the Settlement Agreement and the Settlement Allocation Plan, directing notice of the Settlement, appointing Class Counsel and the Class Representatives for settlement purposes, appointing a Settlement Administrator and the Qualified Escrow Agent, and setting a hearing for the purpose of deciding whether to grant final approval of the Settlement. As set forth in the Proposed Order, Plaintiffs propose a schedule for final approval and related deadlines.

| Event | Timeline for Compliance Following Entry of Preliminary Approval Order |
|---|---|
| Deadline for disseminating direct Class notice to best available contact information | 14 days |
| Deadline for filing affidavit regarding notice dissemination | 28 days |
| Plaintiffs to file a motion for an award of attorneys' fees, costs, and service awards | 35 days |
| Deadline for Class Members to Request Exclusion or Object to the Settlement | 66 days |
| Deadline for Class Counsel and Settlement Administrator to Verify Exclusion Requests | 126 days |
| Plaintiffs to file motion for final approval of Settlement | 154 days<br>(28 days prior to Fairness Hearing) |
| Hearing on motions for final approval and attorneys' fees, costs, and service awards | 182 days |
| Deadline for Class Members to file a claim | 224 days |

Dated: September 18, 2026

Respectfully Submitted,

*/s/ Amanda Lee-DasGupta*
Amanda Lee-DasGupta*
Mary Sameera Van Houten Harper*
Mandy Boltax*
Shana R. Herman*
**Hausfeld LLP**
1200 17th Street NW, Suite 600
Washington, DC 20036
Tel.: (202) 540-7200
mvanhouten@hausfeld.com
alee@hausfeld.com
mboltax@hausfeld.com
sherman@hausfeld.com

Katie R. Beran*
**Hausfeld LLP**
325 Chestnut Street
Philadelphia, PA 19106
Tel.: (215) 985-3270
kberan@hausfeld.com

James Gotz*
**Hausfeld LLP**
One Marina Park Drive, Suite 14010
Boston, MA 02210
Tel.: (617) 207-0600
jgotz@hausfeld.com

Ashley Crooks*
Erika A. Inwald*
**Hausfeld LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel.: (646) 357-1100
acrooks@hausfeld.com
einwald@hausfeld.com

Paul L. Hoffman (SBN 71244)
John C. Washington (SBN 315991)
**Schonbrun Seplow Harris Hoffman & Zeldes LLP**
200 Pier Avenue, #226
Hermosa Beach, CA 90254
Tel.: (310) 717-7373
hoffpaul@aol.com
jwashington@sshhzlaw.com

Helen I. Zeldes (SBN 220051)
**Schonbrun Seplow Harris Hoffman & Zeldes LLP**
501 West Broadway, Suite 800
San Diego, CA 92101
Tel.: (619) 400-4990
hzeldes@sshhzlaw.com

Andrew Fels*
**Al Otro Lado**
511 E. San Ysidro Boulevard, #333
San Ysidro, CA 92173
Tel.: (323) 238-9935
andrew@alotrolado.com

* *Admitted pro hac vice*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on September 18, 2026, I filed the foregoing document and supporting papers with the Clerk of the Court for the United States District Court, Southern District of California, by using the Court's CM/ECF system. I also served counsel of record via this Court's CM/ECF system.

*/s/ Amanda Lee-DasGupta*
Amanda Lee-DasGupta