# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

PADRE, on behalf of himself and all others similarly situated, et al.,

*Plaintiffs*,

v.

MVM, Inc.,

*Defendant*.

Case No.: 3:24-cv-01265-DMS-AHG

**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## I. INTRODUCTION

Pending before the Court is the Plaintiffs' unopposed motion for preliminary approval of their proposed Settlement with Defendant MVM. Plaintiffs, thus, respectfully ask the Court for preliminary approval of the Settlement and the proposed class notice, and that the Court set a hearing date for final approval.

As described below, the proposed Settlement with MVM is likely to be approved as fair, adequate, and reasonable at a final approval hearing, and accordingly, the Court **GRANTS** Plaintiffs' Motion.

## II. BACKGROUND

Plaintiffs' lawsuit was filed on July 23, 2024, alleging that MVM, a private government contractor that provides security, staffing, and transportation services to federal agencies, participated in the separation of children from their parents at the U.S.-Mexico border pursuant to the federal Family Separation Campaign[1] that began in 2017. Herman Decl. ¶ 20; *see Padre v. MVM, Inc.*, No. 3:24-cv-01265-DMS-AHG, ECF No. 1 (S.D. Cal. July 23, 2024). Plaintiffs asserted claims under the Alien Tort Statute, federal civil rights statutes, and California law. Herman Decl. ¶ 20; *see* ECF No. 1. The case was assigned to me, as I also preside over the related action *Ms. L. v. U.S. Immigration & Customs Enforcement*, No. 18-cv-00428-DMS-AHG (S.D. Cal.) (hereafter "*Ms. L.*"), which culminated in a 2023 settlement with the federal government providing reunification-related relief and other benefits to *Ms. L.* class members. This Action seeks relief on behalf of essentially the same class certified in the related *Ms. L.* litigation.

On November 12, 2024, MVM moved to dismiss the Complaint in its entirety. The motion was fully briefed, and I heard oral argument on December 20, 2024.

---

[1] "Family Separation Campaign" is the term Plaintiffs used to define the allegation that the proposed Class Members "were allegedly separated pursuant to a federal government campaign that aimed to deter immigration to the United States by abducting migrant children from their parents." Herman Decl. ¶ 20.

Following argument, I granted the motion in part and denied it in part on March 3, 2025, further granting Plaintiffs leave to amend their Complaint as to claims that were deemed time-barred. ECF No. 54.

The Parties then proceeded to fact discovery following an April 11, 2025 Case Management Conference before Judge Goddard, after which extensive forensic collections, document review, and productions for the named class representatives and MVM were completed. Herman Decl. ¶ 16. Discovery also involved substantial motion practice in which Plaintiffs prevailed in a dispute concerning MVM's production of documents concerning government contracts. *See* ECF Nos. 70–74, 76, 81, 83, 84.

In December 2025, Plaintiffs filed an Amended Complaint adding two additional named class representatives. ECF No. 150. From April to June 2026, the Parties fully briefed a motion to dismiss the Amended Complaint and were awaiting decision, before reaching agreement on the present Settlement. *See* ECF Nos. 193, 201–02, 211–13. On June 26, 2026, Count II (Enforced Disappearance), Count III (Torture), and Count IV (Cruel, Inhuman, or Degrading Treatment) of the Amended Complaint were dismissed with prejudice. ECF No. 212.

The Parties commenced mediation in October 2024, by participating in an Early Neutral Evaluation Conference before Judge Goddard. *See* ECF No. 33. In March of 2026, the Parties appeared before Judge Goddard for a two-day in-person Settlement Conference. Herman Decl. ¶ 19; *see also* ECF Nos. 189–90. The Parties continued negotiating over the following months, ultimately reaching the significant proposed $48,750,000 Settlement now before the Court. Herman Decl. ¶ 19.

Now, following extensive discussions, facilitated most recently by Judge Goddard, the Parties have agreed to Settlement. *See id.* The Settlement Agreement was negotiated between the Parties following multiple in-person and video conference mediation sessions. *Id.*

Some of the material terms of the Settlement Agreements are as follows:

**Settlement Class Definition.** The Settlement Class definition is:

> All persons who qualify for inclusion as class members of the settlement class certified in *Ms. L. v. U.S. Immigration & Customs Enforcement*, No. 3:18-cv-00428-DMS-AHG (S.D. Cal.) and were separated from their parent or child between March 7, 2017, and January 20, 2021.

**Benefits.** In exchange for releasing claims against MVM in this litigation, the Settlement Class will receive $48,750,000. *See* Herman Decl. ¶ 19.

**Release.** In exchange for the foregoing relief, Plaintiffs have agreed to release "all Claims […] that have been, could have been, or in the future might have been, claimed in law or in equity, on account of, arising out of, resulting from, or in any way related to the facts as alleged in the Action," as well as "all Claims that could have been brought based, in whole or in part, on the facts, occurrences, or other matters that were alleged in the Complaint." Herman Decl., Ex. A § 1.21.

Notably, MVM denies all allegations of wrongdoing, liability, causation, injury, damages, and entitlement to relief. The Court has not decided who is right or wrong. The Settlement is simply a compromise to avoid the burden, expense, uncertainty, and disruption of continued litigation and is not an admission of liability, wrongdoing, fault, damages, or the validity of any claim or defense.

## III. DISCUSSION

In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (internal quotation omitted); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). "[T]here is [also] an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

In December of 2018, the Rules Committee revised Federal Rule of Civil Procedure 23 to formalize the preliminary approval process for district courts when first evaluating a proposed class action settlement. *See* Fed. R. Civ. P. 23(e)(1). Under the new rule, "[t]he court must direct notice [of the proposed settlement] in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

**A. The Proposed Settlement Class Satisfies the Requirements of Rules 23(a) and (b)(3).**

To certify a settlement class under Fed. R. Civ. P. 23, plaintiffs must satisfy the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as at least one of the three subsections of Rule 23(b). *See Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1002, 1004 (9th Cir. 2018) (citing Fed. R. Civ. P. 23(c)(1)(A)). A plaintiff seeking Rule 23(b)(3) certification must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The manageability requirement inherent in Rule 23(b)(3) does not apply to settlement classes. *See Hyundai*, 926 F.3d at 556 ("[T]he criteria for class certification are applied differently in litigation classes and settlement classes.").

As set forth herein, I find that each of the Rule 23(a) and (b)(3) criteria support certification of the Settlement Class.

**Rule 23(a) Requirements.**

***Numerosity*** is satisfied by a class as small as 40 entities. *Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS (MDD), 2011 WL 6300050, at *2 (S.D. Cal. Dec.

15, 2011). Here, the proposed Settlement Class contains approximately 8,900 members.

***Commonality.*** Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "[F]or purposes of Rule 23(a)(2), even a single common question will do." *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 283 (N.D. Cal. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). Even "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (quotation omitted). The commonality standard is even more liberal in a civil rights suit like this one, in which "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).

As the Court already found in *Ms. L.*, Plaintiffs present questions of law or fact common to the class, including that each plaintiff was subject to the same unlawful practice and suffered the same injury in violation of their family integrity rights. *See Ms. L. v. U.S. Immigr. & Customs Enf't*, 331 F.R.D. 529, 539 (S.D. Cal. 2018). Plaintiffs also present common questions in their allegations regarding MVM's role in this practice, including whether MVM intentionally participated in, or knowingly and substantially aided and abetted, the Family Separation Campaign by transporting separated children.

***Typicality.*** The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Sali*, 909 F.3d at 1006 (quotation omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of the absent class members . . . ." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). As in *Ms. L.*, Plaintiffs allege that they and all Class Members were unlawfully

separated, and Plaintiffs were typical of the class, permitting certification. *See Ms. L.*, 331 F.R.D. at 539 ("Plaintiffs' claims do not rest on the individual circumstances of each separation of parent and child. Rather, [p]laintiffs are challenging the [*sic*] practice of separating migrant parents and children . . ."). Any factual differences among Settlement Class Members do not preclude a finding of typicality. *See, e.g.*, *Inland Empire-Immigrant Youth Collective v. Nielsen*, No. EDCV 17–2048 PSG (SHKx), 2018 WL 1061408, at *9 (C.D. Cal. Feb. 26, 2018) (rejecting contention that differences in class of DACA recipients precluded class certification, despite "[w]hatever factual dissimilarities that may exist among the proposed class members").

***Adequacy of Representation.*** Adequacy requires that Plaintiffs "(1) have no interests that are antagonistic to or in conflict with the interests of the class; and (2) be represented by counsel able to vigorously prosecute their interests." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 618 (N.D. Cal. 2015). Plaintiffs have alleged that all Class Members were subject to family separation and have the same legal claims. Plaintiffs allege that they and all Class Members were unlawfully separated under the Alien Tort Statute, federal civil rights statutes, and California law. Class representatives, with the assistance of Class Counsel, have more than adequately represented the Settlement Class. *See* Herman Decl. ¶¶ 11, 29–30. They have driven this litigation forward in all aspects for the betterment of all Class Members. *Id.*

Class Counsel have overseen over two years of complex litigation, as well as settlement negotiations in this case. Among other things, Class Counsel have engaged in extensive motion practice across two rounds of dismissal briefing, overseen thorough forensic collections and document review, successfully advocated for MVM's production of documents concerning its government contracts, executed third party subpoenas for evidence, coordinated with subject matter experts pertinent to Plaintiffs' claims, and prepared video testimony from Plaintiffs for an in-person

Settlement Conference.[2] *Id.* ¶ 29. Class Counsel have more than sufficient information to make an informed decision of the value of the Settlement compared to the risks of continued litigation. Class Counsel conducted significant investigation, discovery, and research, and worked with experts throughout the litigation, all of which weigh in favor of approving the settlement.[3] *Id.* ¶ 17.

**Rule 23(b)(3) Requirements.**

Rule 23(b)(3) calls for two separate inquiries: (1) do issues of fact or law common to the class "predominate" over issues unique to individual class members, and (2) is the proposed class action "superior" to other methods available for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.' What the rule does require is that common questions '*predominate* over any questions affecting only individual [class] members.'" *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (emphasis and brackets in original) (citation omitted). Predominance is satisfied when "common questions present a significant aspect of the case" such that significant facts and issues underlying the proposed classes' claims are subject to common proof. *In re Cathode*

---

[2] *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 229 F. Supp. 3d 1052, 1067 (N.D. Cal. 2017) ("[W]hile the parties reached the Settlement at an early phase of litigation, Class Counsel's careful pre-filing investigation and their extensive review of discovery materials indicate they had sufficient information to make an informed decision about the Settlement. Accordingly, this factor favors Settlement approval."), *enforcement granted*, No. 2672 CRB (JSC), 2017 WL 914066 (N.D. Cal. Mar. 6, 2017).

3 *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) (affirming settlement and conclusion that Plaintiffs had sufficient information to make an informed decision about the settlement where "Class Counsel conducted significant investigation, discovery and research, and . . . had worked with damages and accounting experts throughout the litigation"); *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (holding that formal discovery was not a necessary antecedent to class action settlement).

*Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. at 620 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)). "[I]f common questions are found to predominate . . . courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied." *Nitsch v. Dreamworks Animation SKG Inc.*, No. 14-CV-04062-LHK, 2016 WL 4424965, at *4 (N.D. Cal. July 6, 2016) (brackets in original) (quotation omitted).

Here, the common questions identified above predominate over any individual ones. Plaintiffs' claims depend, first and foremost, on MVM's alleged role in separating migrant families pursuant to the Family Separation Campaign. That question can be resolved using the same evidence for all Settlement Class Members, and thus, is the precise type of predominant question that makes a class-wide adjudication worthwhile. Courts routinely certify class-wide general damages under similar circumstances, particularly in loss of dignity or liberty cases, like here.[4]

As set forth herein, I find that the Rule 23(b) criteria support certification of the Settlement Class.

**B. The Proposed Settlement Is Fair Under Rule 23(e).**

The Court finds that the proposed Settlement satisfies all the relevant factors to demonstrate that preliminary approval is appropriate.

**1. The Class Representatives and Class Counsel have adequately represented the Class.**

The Court finds that Class Counsel, Hausfeld LLP, and the Class Representatives have adequately represented the Class, including in this proposed

---

[4] *Roy v. Cnty. of Los Angeles*, No. CV 12-09012-AB (FFMx), 2018 WL 3436887, at *3 (C.D. Cal. July 11, 2018) (finding general damages available for pain, suffering, emotional distress, and loss of dignity in § 1983 class action regarding unlawful detention); *Rodriguez v. City of Los Angeles*, No. CV 11-01135 DMG (JEMx), 2014 WL 12515334, at *6–7 (C.D. Cal. Nov. 21, 2014) (same); *Aichele v. City of Los Angeles,* 314 F.R.D. 478, 496 (C.D. Cal. 2013) (same).

Settlement. Class Counsel are experienced class action lawyers who, following significant investigation, discovery, motion practice, work with trauma experts, and intense negotiation, have more than sufficient information to make an informed decision as to the value of the Settlement compared to the risks of continued litigation. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("[E]xtensive review of discovery materials indicates [Plaintiffs have] sufficient information to make an informed decision about the Settlement. As such, this factor favors approving the Settlement."), *aff'd sub nom. In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597 (9th Cir. 2018), and *aff'd sub nom. In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 741 F. App'x 367 (9th Cir. 2018); *see also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Nat'l Rural Telecomms. Corp. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." (internal citation omitted)).

**2. The Parties negotiated the proposed Settlement at arm's length.**

The Court also finds that the Settlement satisfies the second Rule 23(e)(2) factor, which asks the Court to confirm that the proposed settlement was negotiated at arm's length. *See* Fed. R. Civ. P. 23(e)(2)(B); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

The Settlement was reached only after prolonged, well-informed, and extensive arm's-length negotiations—including in-person mediation sessions and additional negotiations—between experienced and knowledgeable counsel facilitated by Judge

Goddard. *See* Herman Decl. ¶¶ 15, 19. The use of a court-affiliated mediator supports the conclusion that the settlement process was not collusive. *See* Fed. R. Civ. P. 23(e)(2)(B) advisory committee's note to 2018 amendment ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in [the parties'] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (noting that private mediation "tends to support the conclusion that the settlement process was not collusive"); *see also In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) (including that use of a mediator and fact that some discovery had been completed "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement" (citation omitted)).

Moreover, MVM has not promised the Class Representatives preferential treatment in exchange for the settlement. *See* Herman Decl. ¶ 24; *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (stating preferential treatment for class representatives can create a conflict of interest). Here, the Settlement funds will be distributed, and Class Counsel will be reimbursed expenses and fees from the common fund, subject to the Court's approval. Class Counsel will ask the Court to approve a nominal service award to the Class Representatives out of the Settlement funds to reimburse them for their efforts on behalf of the Settlement Class over the past several years, but neither Class Counsel nor MVM made any promises about requesting such awards. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) ("[T]he class settlement agreement provided no guarantee that the class representatives would receive incentive payments . . . .").

**3. The quality of relief to the Class weighs in favor of approval.**

The third factor to be considered is whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the

effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, "[t]he relief . . . to class members is a central concern." *See* Fed. R. Civ. P. 23(e)(2)(C) advisory committee's note to 2018 amendment.

**a. Costs, risks, and delay of trial and appeal.**

Plaintiffs maintain that the liability claims for violations under the Alien Tort Statute, federal civil rights statutes, and California law are strong, given MVM's alleged role in facilitating the separation of migrant families pursuant to the Family Separation Campaign. However, the claims against MVM were disputed, and MVM vigorously opposed the lack of joinder of the Government and maintained that it was acting pursuant to its contractual obligations and therefore immune from liability altogether. Herman Decl. ¶ 12. For all these reasons, the substantial Settlement that has been achieved here is an excellent result for the proposed Settlement Class.[5]

In achieving the Settlement after two years of litigation, this result has saved years in litigation and related expenses for the Parties. Even if Plaintiffs obtained class certification, successfully opposed a motion for summary judgment, and subsequently

---

[5] *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. Of San Francisco*, 688 F.2d 615, 629 (9th Cir. 1982) ("The track record for large class action [civil rights] cases demonstrates that many years may be consumed by trial(s) and appeal(s) before the dust finally settles."); *Lane v. Brown*, 166 F. Supp. 3d 1180, 1189 (D. Or. 2016) (concluding, in class action involving alleged civil rights violations, that risk and expense of further litigation strongly favored approval of settlement); *Dunsmore v. San Diego Cnty. Sheriff's Dep't*, 781 F. Supp. 3d 1091, 1099 (S.D. Cal. 2025) (granting motion for preliminary approval of settlement agreement in class action alleging civil rights violations because settlement would "result in a substantial and tangible recovery, without the considerable risk, expense, and delay of summary judgment motions, trial, and post-trial litigation").

proved liability at trial, they still would face the significant risk of uncertain recovery for the Class because the fact and amount of damages are uncertain.

Reaching this Settlement prior to the completion of fact discovery, depositions and trial, minimizes further trauma to the Class Representatives and Class Members by avoiding the adversarial process of testifying, as well as the risk of having testimony and personal documents publicized. The timing of this Settlement is further beneficial to the Settlement Class given the availability of third-party resources connected to the parallel *Ms. L.* settlement, *see* Admin. Decl. ¶¶ 23–24, 26, 30, 43, which may not be available in perpetuity. *See Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625, 629 (9th Cir. 1982) (emphasizing that "[d]uring the remainder of the litigation, and probably an appeal, many of the immediate and tangible benefits accruing from the settlement would be lost" in explaining why "voluntary conciliation and settlement are the preferred means of dispute resolution . . . in complex class action litigation . . . where the subject matter is [a civil rights violation]").

Under these circumstances, while Plaintiffs maintain that they have "strong claims," "significant risk and uncertainty remain such that continuing the case could lead to protracted and contentious litigation." *See Howell v. Advantage RN, LLC*, No. 17-CV-883 JLS (BLM), 2020 WL 3078522, at *4 (S.D. Cal. June 9, 2020).

**b. The effectiveness of any proposed method of distributing relief to the Class.**

The Settlement provides the Settlement Class with significant relief. The total value of the Settlement with MVM is $48,750,000.00. That total value accounts for a minimum award of $3,000 per Class Member before any additional award for the specific circumstances of the Class Member's separation. The Court accepts Class Counsel's representations (and takes judicial notice of the sources cited in support) of the following data concerning the Class Members: The majority of Class Members

came to the United States from Guatemala, Honduras, El Salvador, and Mexico.[6] As of 2021, the median monthly personal earnings, adjusted from annual data, for those ages 16 and older were approximately $2,100, $2,200, $2,500, and $2,500, among Hispanics of Guatemalan, Honduran, Salvadoran, and Mexican origin located in the United States, respectively.[7] For Class Members located outside of the United States, this value is even more significant. As recently as 2024–26, the average monthly earnings of employees in Guatemala, Honduras, El Salvador, and Mexico were roughly GTQ 3605 ($471.89), HNL 11248 ($418.43), $507 USD, and MXN 11249 ($662.57), respectively.[8] Moreover, this settlement supplements the benefits provided to Class Members through the *Ms. L.* settlement with significant financial compensation.

**c. The method for processing Claims.**

Plaintiffs have advised the Court as to their proposed method of processing Claims. Settlement Class Members may submit a Claim Form for (1) a Baseline Award of no less than $3,000 per individual, and (2) optionally an additional Criteria-Based or Extraordinary Injury award based upon a dollar-value points system. Other

---

[6] *See* Elliot Spagat, *US Identifies 3,900 Children Separated at Border Under Trump*, ASSOCIATED PRESS (June 8, 2021, 1:17 PM), https://apnews.com/article/az-state-wire-donald-trump-immigration-lifestyle-government-and-politics-54e2e5bbff270019d8bda3c81161c7c7 ("Nearly 60% of children separated under the zero-tolerance policy were Guatemalans (2,270), followed by Hondurans (1,150), Salvadorans (281), [and] Mexicans (75) . . . .").

[7] Pew Research Center, *Economic Characteristics*, U.S. Hispanic Population Data (Detailed Tables), https://docs.google.com/spreadsheets/d/1vxtbpCROMbOhemXCb4g8ZukOpGLjWtAv/edit?gid=1392774476#gid=1392774476 (last visited Aug. 27, 2026).

[8] Int'l Lab. Org., *Guatemala*, ILOSTAT, https://ilostat.ilo.org/data/country-profiles/gtm/ (last visited Sept. 16, 2026); Int'l Lab. Org., *Honduras*, ILOSTAT, https://ilostat.ilo.org/data/country-profiles/hnd/ (last visited Sept. 16, 2026); Int'l Lab. Org., *El Salvador*, ILOSTAT, https://ilostat.ilo.org/data/country-profiles/slv/ (last visited Sept. 16, 2026); Int'l Lab. Org., *Mexico*, ILOSTAT, https://ilostat.ilo.org/data/country-profiles/mex/ (last visited Sept. 16, 2026).

recently approved settlements in similar cases support this approach.[9] The Claim Form, to be submitted online or printed and mailed, is designed to be accessible to Class Members, who will need to provide basic identifying information to be verified by the Settlement Administrator. Herman Decl. ¶ 27; Ex. D; Admin. Decl. ¶ 48. Class Members will share the basic circumstances of their separation using drop-down menus or check-boxes. Herman Decl. ¶ 27. Class Members seeking relief for Extraordinary Injury will have the option to submit a narrative statement. Ex. D. ¶ 12. The Settlement Administrator will be reachable through various contact methods and available to assist Class Members with the Claim Form. Admin. Decl. ¶¶ 48, 52–54.

**4. The Settlement treats all Settlement Class Members equitably.**

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement Agreement is fair, reasonable, and adequate because it treats all Settlement Class Members equitably and does not treat Plaintiffs or any other Settlement Class Member preferentially. Each Class Member who submits a valid Claim Form will receive a baseline award of $3,000. Class Members may submit additional information

---

[9] *See Aichele v. City of Los Angeles*, CV 12–10863–DMG (FFMx), 2015 WL 5286028, at *1 (C.D. Cal. Sept. 9, 2015) (approving a points-based allocation plan accounting for variation in duration and circumstances of custody with a minimum award of $4,000 per eligible claimant in a multi-million-dollar settlement); Order Granting Final Approval of Class Action Settlement & Granting Mot. for Att'ys' Fees & Costs at 5, *Roy v. Cnty. of Los Angeles*, No. CV 12-09012 BRO (FFMx) (C.D. Cal. Feb. 3, 2022), ECF No. 638 (approving settlement with range in award amount based in part on duration of immigration detention); Order re Final Approval of Class Action Settlement at 3, *Scott v. California Forensic Med. Grp.*, No. 2:16-cv-03084 DSF (RAOx) (C.D. Cal. June 22, 2021), ECF No. 285 (approving settlement with formula for distribution based on the number of days that class members were delayed in receiving treatment); Class Action Settlement Agreement at 7, *Barnes v. District of Columbia*, No. 1:06-cv-00315-RCL (D.D.C. Nov. 4, 2013), ECF No. 465-2, *approved*, Final Order of Approval of Settlement (D.D.C. Mar. 18, 2014) ECF No. 484 (establishing allocation for overdetained class with a base distribution for first day and additional for subsequent days of overdetention).

to obtain further monetary Criteria-Based or Extraordinary Injury awards based on a points-dollar system. *See generally* Ex. D. The value of all Settlement Class Member Benefits available under the Criteria-Based and Extraordinary Injury categories will be uniformly adjusted depending on the number of Valid Claims and points assigned. Ex. D ¶¶ 14, 15. Thus, the Settlement Class Member Benefits distribution method will be equitable and effective.

In light of all of the foregoing, the proposed Settlement merits preliminary approval as it is likely to be finally approved after the Fairness Hearing.

**C. The Proposed Notice Is the Best Practicable Under the Circumstances.**

Where there is a class settlement, Rule 23(e)(1)(B) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez*, 563 F.3d at 962 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

In Rule 23(b)(3) actions, "the court must direct to class members the best notice that is practicable under the circumstances," and that notice "must clearly and concisely state in plain, easily understood language:" (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The notice plan proposed by Plaintiffs with the advice and assistance of JND provides a thorough approach to notice. *See* Admin. Decl. ¶¶ 12–47; *see also, e.g.*, *Ross v. Trex Co.*, No. C 09-00670 JSW, 2013 WL 791229, at *1 (N.D. Cal. Mar. 4, 2013) ("[A]ctual notice is not required. . . . Due Process does not entitle a class

member to 'actual notice,' but rather to the best notice practicable, reasonably calculated under the circumstances to apprise him of the pendency of the class action and give him a chance to be heard." (quotation omitted)). The rigorous notice plan proposed by JND satisfies requirements imposed by Rule 23 and the Due Process clause of the United States Constitution.

Moreover, the contents of the notice satisfactorily inform Class Members of their rights under the Settlement. *See* Admin. Decl., Exs. 2, 3; *see also* 4 *Newberg on Class Actions* § 11:53 (4th ed. 2002) (stating that notice is "adequate if it may be understood by the average class member"). Accordingly, the notice program, through direct mail, email and phone where available and the press release, internet search campaign, targeted digital notice, as well as the other accompanying forms of notice, are reasonable and adequate and are fairly calculated to apprise Class Members of their rights under the Settlement Agreement.

The Court finds that proposed notice of the Settlement Agreement satisfies the requirements of Rule 23(e)(1).

## IV. CONCLUSION

For the foregoing reasons, the Court hereby preliminarily approves the Settlement Agreement and Settlement Allocation Plan, and ORDERS the following:

(1) The Court certifies, for settlement purposes, the following Settlement Class:

> All persons who qualify for inclusion as class members of the settlement class certified in *Ms. L. v. U.S. Immigration & Customs Enforcement*, No. 3:18-cv-00428-DMS-AHG (S.D. Cal.) and were separated from their parent or child between March 7, 2017, and January 20, 2021.

(2) The Court appoints Hausfeld LLP as Class Counsel for settlement purposes. Class Counsel shall communicate with Class Members as necessary, as well as oversee and monitor the administration of the notice program, the settlement

program, the distribution program, and generally the work of the Settlement Administrator and Qualified Escrow Agent, all to ensure the settlement program advances in accordance with the terms of the Order. Any issues concerning the same shall be brought by Class Counsel to Judge Goddard or the Court's attention for resolution as needed.

(3) The Court appoints Plaintiffs Padre, Junior, I.V.S., and A.V.L. by and through I.V.S. as Class Representatives, for settlement purposes.

(4) The Court finds that the Settlement Agreement has been negotiated at arm's length.

(5) The Court finds the Settlement Agreement is within the range of settlements that could be approved as fair, reasonable, and adequate, and in the best interests of the Settlement Class.

(6) The Court approves the notice content and plan for providing notice of the Settlement to members of the Settlement Class.

(7) The Court approves the content and plan for processing the Claim Form.

(8) The Court appoints JND Legal Administration as Settlement Administrator. As the Settlement Administrator, JND Legal Administration will report to Class Counsel regarding the costs incurred in administering the Settlement, including Notice and Claims Administration on a monthly basis, or as otherwise reasonably requested by Class Counsel.

(9) The Court appoints Huntington Bank as the Qualified Escrow Agent. As the Qualified Escrow Agent, Huntington Bank will report to Class Counsel regarding interest and investment earnings on the Settlement Fund, disbursements made, taxes and tax-related payments, and any expenses associated with maintaining the Escrow Account on a monthly basis, or as otherwise reasonably requested by Class Counsel.

(10) The Court orders the Parties to ensure that the relevant notices as required by the Class Action Fairness Act, 28 U.S.C. § 1711, *et seq*. are disseminated in accordance with the Settlement Agreement. Ex. A § 11.

(11) The Court stays all proceedings in the Action, excepting the notice and exclusion process, until the Court rules on final approval for the Settlement. If final approval of the Settlement is not obtained, the Settlement is null and void, and the Parties will revert to their positions ex ante without prejudice to their rights, claims, or defenses.

(12) Finally, the Court sets the following schedule:

| Event | Timeline for Compliance |
|---|---|
| Deadline for disseminating direct Class notice to best available contact information | December 15, 2026 |
| Deadline for filing affidavit regarding notice dissemination | January 14, 2027 |
| Plaintiffs to file a motion for an award of attorneys' fees, costs, and service awards | January 21, 2027 |
| Deadline for Class Members to Request Exclusion or Object to the Settlement | February 22, 2027 |
| Deadline for Class Counsel and Settlement Administrator to Verify Exclusion Requests | April 23, 2027 |
| Plaintiffs to file motion for final approval of Settlement | May 27, 2027 |
| Deadline for Class Members to file a claim | June 17, 2027 |
| Hearing on motions for final approval and attorneys' fees, costs, and service awards | July 23, 2027, at 1:30 p.m. |

**IT IS SO ORDERED.**

Dated: November 17, 2026

THE HONORABLE DANA M. SABRAW
UNITED STATES DISTRICT COURT JUDGE